## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC., <br><br> Plaintiff, Counter-Defendant <br><br> v. <br><br> SCENTAIR TECHNOLOGIES, LLC, <br><br> Defendant, Counter-Plaintiff | C.A. No. 20-984-RGA-MPT |

### LETTER TO THE HONORABLE RICHARD G. ANDREWS
### FROM BRIAN R. LEMON, ESQ. REGARDING PROLITEC'S 12(c) MOTION

Dated: December 6, 2022

Marc C. Levy
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com

Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel: (302) 984-6300
blemon@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff Prolitec Inc.*

Dear Judge Andrews:

Pursuant to the Court's request, Prolitec provides the following letter brief regarding Prolitec's Motion for Judgment on the Pleadings (D.I. 104) ("the Motion") seeking dismissal of the patent counterclaims filed by ScentAir Technologies, LLC under Section 101 of the Patent Act. The Motion is not only timely under the Federal Rules and the Court's scheduling order, but also provides the Court with an opportunity to substantially narrow the issues presented in the case. As discussed below, the Motion presents strong grounds supporting the conclusion that the claims of the patents asserted by ScentAir claim unpatentable subject matter. Further, the Court's disposition of the Motion does not require the Court to dispose of the issues presented in the pending claim construction briefing concerning the ScentAir patents. And thus, by addressing the Motion now, the Court has an opportunity to avoid spending resources on issues that likely will be moot. For these reasons, as discussed in more detail below, Prolitec respectfully requests that the Motion be considered at this time.

**The Motion Is Timely and Allowable**

Under FRCP 12(c), judgment on the pleadings must be filed "[a]fter the pleadings are closed – but early enough not to delay trial." Here, trial is not scheduled to begin until January 22, 2024, over 13 months away, and the discovery cutoff is not until March 30, 2023, almost 4 months away. Other courts facing the same or even less time to trial have held that Rule 12(c) motions were timely and would not work to delay trial. *See, e.g., Mykey Tech., Inc. v. Intelligent Comput. Solutions, Inc.*, No. 2:13-ml-02461-AG (PLAx), 2016 U.S. Dist. LEXIS 205253, *13 (C.D. Cal. Sept. 26, 2016) (considering 12(c) motion brought after discovery had closed but when trial was "not scheduled to commence until next year"); *Eucalyptus Real Estate, LLC v. Innovative Work Comp Sols., LLC*, No. 21-4091-DDC-GEB, 2022 U.S. Dist. LEXIS 211917, *9 (D. Kan. Nov. 22, 2022) (in a non-patent case, finding a 12(c) motion timely when trial was scheduled in less than a year). Accordingly, with such a significant time to go until trial, the current 12(c) motion will not delay trial.

Prolitec's filing of the Motion is compliant with the current scheduling order, which provides that opening briefs for case dispositive motions must be filed not later than September 7, 2023. (D.I. 72). The original Scheduling Order included an additional provision that motions under Rule 56 could not be filed more than 10 days before this deadline without request leave of Court. (D.I. 17 at 9). Because the Motion is filed under Rule 12 and not Rule 56, the 10-day request period does not apply.

Finally, Prolitec did not unnecessarily delay the filing of the 12(c) motion. The case was stayed from September 24, 2021, through July 25, 2022. Before the stay, the parties had been working towards a potential settlement. (D.I. 50). Accordingly, virtually no discovery had occurred before the stay other than the exchange of the parties' respective infringement and invalidity contentions. After the stay, Prolitec's counsel worked diligently to assess the strength of an *Alice* motion in light of the claim construction positions that the parties were exchanging. Once Prolitec's counsel confirmed that the claim construction positions would not impact the Section 101 arguments, work started on the Motion.

**The Merits of the Motion Are Strong**

The claims in the ScentAir Patents (U.S. Patent Nos. 9,446,162; 9,460,404; 9,927,789; and 10,838,388) are highly susceptible to a successful Section 101 patentability challenge because they are directed to unpatentable abstract ideas. According to the technical fields for the patents, the disclosed technology is directed towards "managing conflicting scheduled scent events" for related scent delivery devices, or relatedly, "the scheduling of the delivery of scents." The ScentAir Patents describe that the "managing" and "scheduling" are performed by a central controller that is implemented on a general-purpose computer that communicates with the scent delivery devices over a generic network.

The claims mirror the abstract ideas described in the technical fields, as follows:

- '162 Patent: identify overlapping activation time periods for related devices, and manipulate those periods to prioritize one of the devices (*see* claim 1);

- '404 Patent: identify overlapping time periods for scheduled events and anti-events, and manipulate command data to prioritize the anti-events (*see* claim 1);

- '388 Patent: convert out-table instructions into command data for scent delivery devices, and receive status updates from those devices (*see* claim 1); and

- '789 Patent: manipulate initiation times for scent delivery devices by applying a skew parameter or an adjustment duration to the command data (*see* claim 1).

Further, as noted above, the abstract ideas are implemented using the generic computer components and conventional communication equipment described in the ScentAir Patents. This is not a situation in which the patents disclose or the claims cover an advancement in the underlying technology. Instead, the core idea of the patents centers around remotely "managing" and "scheduling" scent delivery devices using well-known, conventional technology operating in its normal manner. The dependent claims do not add any technological improvements to these abstract ideas.

ScentAir will likely contend there are factual disputes involved in deciding the Motion. This is incorrect. The unpatentability of the claims of the ScentAir patents is evident within the four corners of its patents. The specifications for the '162, '404, and '388 Patents identify only a single problem to be solved by the disclosed technology – preventing over-scenting and other "undesirable operations." *See, e.g.,* '162 Patent, col. 6:4-11; '404 Patent, col. 5:59-6:20; '388 Patent, col. 6:4-17. The manner in which the patents solve this problem is through the abstract ideas of "managing" and "scheduling" the scent delivery devices. *See, e.g., Mymail, Ltd. V. ooVoo, LLC*, No. 17-CV-04487-LHK, 17-CV-004488-LHK< 2020 U.S. Dist. LEXIS 80972, *48-49 (N.D. Cal. May 7, 2020) (looking to specification to identify a supposed problem solved by the patent to assess whether claims are directed to an abstract idea).

The operative First Amended Counterclaims confirm that all four ScentAir Patents are directed towards solving the problem of "desired scent profiles varying by location, time, and day." *See* First Am. Counterclaims, ¶¶ 32, 47, 60, 76. To solve this supposed problem, ScentAir has alleged in the counterclaims – identically for each of the ScentAir Patents – that a system of "one or more scent delivery devices . . . are configured to release a fragrance or a scent in a controlled manner." *See id.* As explained above, the supposed inventive configurations claimed in each of the ScentAir Patents amounts to no more than an abstract idea. ScentAir's conclusory

allegations in the Amended Counterclaims, untethered to the claim language, cannot create an issue of fact. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 Fed App'x 529, 538 (Fed. Cir. 2020).

**The Motion Can Significantly Streamline this Litigation**

The Motion can substantially streamline and simplify this litigation because it targets each of the four asserted ScentAir Patents for claiming unpatentable subject matter. Accordingly, if the Motion succeeds, it will sweep away all of ScentAir's patent-related counterclaims. The savings to the Court in this event would be significant. In particular, because the Motion does not depend upon the Court adopting any particular claim construction, the Court would not need to decide any of the claim construction issues presented for the ScentAir Patents, the briefing for which comprises the final 35 pages of the Joint Claim Construction Brief that the parties recently filed. *See* D.I. 107. The opposite is not true – the Court will still need to decide the patentability questions even if claim construction is decided. Thus, deciding the Motion now can be used a gating issue to determine if claim construction on the ScentAir Patents even needs to be addressed. There will also be attendant efficiencies gained in discovery disputes and dispositive motions on the ScentAir Patents that will not need to be raised or addressed as the case progresses if the Motion succeeds.

Even if the Motion is not granted, it can still serve to clarify and narrow the patentability issues for ScentAir's patents for the Court. As noted above, Prolitec expects that ScentAir will argue that the Motion is not appropriate under Rule 12 because there are supposed factual disputes. Having ScentAir identify and commit to those supposed factual disputes now will allow the parties and the Court to focus in on these disputes with later briefing.

**Conclusion**

For the foregoing reasons, Prolitec respectfully requests that the Court consider the Motion now and provide the parties with a briefing and hearing schedule.

Respectfully submitted,

/s/ Brian R. Lemon

Brian R. Lemon (#4730)

cc: Counsel of Record (via CM/ECF and E-Mail)