IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC., <br><br> *Plaintiff and Counterclaim Defendant,* <br><br> v. <br><br> SCENTAIR TECHNOLOGIES, LLC, <br><br> *Defendant and Counterclaim Plaintiff.* | Civil Action No. 20-984-WCB |

**MEMORANDUM OPINION AND ORDER**

In this patent case, plaintiff and counterclaim defendant Prolitec Inc. has filed a motion to stay the counterclaims filed by defendant and counterclaim plaintiff ScentAir Technologies, LLC, pending *ex parte* reexamination of the patent claims asserted by ScentAir. Dkt. No. 186. For the reasons set forth below, the motion is GRANTED.

**I.      Background**

Prolitec filed this action against ScentAir on July 24, 2020, alleging infringement of four patents owned by Prolitec. Dkt. No. 1. Subsequently, ScentAir brought counterclaims for infringement of four patents owned by ScentAir. Dkt. No. 33. On December 16, 2022, Judge Andrews severed ScentAir's counterclaims from Prolitec's claims and later set a separate schedule for the proceedings involving the counterclaims. Dkt. Nos. 117, 145. On June 28, 2023, the parties stipulated that three of ScentAir's four asserted patents would be dropped from the case. Dkt. No. 177. The only remaining ScentAir patent that is now asserted in this case is U.S. Patent No. 10,838,388 ("the '388 patent").

On February 10, 2023, Prolitec filed a petition with the United States Patent and Trademark Office ("the PTO") requesting an *ex parte* reexamination of the '388 patent. The petition asserted six prior art references in total.[1] On March 23, 2023, the PTO examiner granted Prolitec's petition and instituted reexamination proceedings, finding that the prior art references asserted in Prolitec's petition presented a substantial question of patentability as to all 20 claims of the '388 patent. Dkt. No. 187-1. On July 14, 2023, the examiner issued a non-final office action in the reexamination proceeding, rejecting all 20 claims as either anticipated by Hamada or obvious in view of Hamada and Jonsson. Dkt. No. 203-2 at 6, 15.[2] ScentAir's response to the office action is due on September 14, 2023. *Id.* at 4.

## II. Discussion

The question whether district court proceedings should be stayed when post-grant proceedings are instituted on some or all of the patent claims at issue in the district court litigation has arisen frequently, particularly in the years since the enactment of the Leahy-Smith America Invents Act ("AIA") in 2011. The principles governing that question have been developed by courts in numerous cases involving different types of post-grant proceedings, including reexamination, *inter partes* review, post-grant review, and covered business methods ("CBM") review.

It is well settled that the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort

---

[1] The references asserted in the petition were Japanese Patent Publication No. 2009-217641 ("Hamada"); John Wakerly, *Computer Organization and Programming in Reference Data for Engineers* (9th ed. 2002) ("Wakerly"); James F. Kurose & Keith W. Ross, *Computer Networking: A Top-Down Approach* (2012) ("Kurose"); U.S. Patent Publication No. 2008/0081635 ("Jonsson"); U.S. Patent No. 6,799,266 ("Stotzer"); and U.S. Patent Publication No. 2013/0131883 ("Yamada"). Dkt. No. 203-3 at 3–4.

[2] Citations to Dkt. No. 203-2 refer to the page numbers of the PDF document.

for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). That inherent authority includes the discretion to stay judicial proceedings pending post-grant proceedings, including reexamination, that will consider the validity of an issued patent. *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (The court has "consistently recognized the inherent power of the district courts to grant a stay pending reexamination of a patent."); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (Courts have inherent power to stay proceedings, "including the authority to order a stay pending conclusion of a PTO reexamination."); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved.").

While the authority of district courts to stay litigation pending post-grant proceedings in the PTO was well established before the AIA, the practice has become more common following the enactment of that statute. Over the past ten years, district courts have come to consider three factors when determining whether to grant a stay pending PTO proceedings with respect to a patent in suit: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Princeton Digit. Image Corp. v. Konami Digit. Entm't Inc.*, Nos. CV 12-1461 *et al.*, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing cases). The courts have recognized that granting a stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at

*1 (E.D. Tex. Mar. 11, 2015) (citing cases); *see also Novoluto GmbH v. Uccellini LLC,* No. 6:20-cv-2284, 2021 WL 2251911, at *2 (D. Ore. May 19, 2021); *RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937, 2020 WL 373341, at *3 (D. Del. Jan. 23, 2020); *Nasdaq, Inc. v. IEX Grp., Inc.,* No. 18-3014, 2019 WL 8268544, at *5 (D.N.J. Sept. 13, 2019).

Courts have adopted those principles based in part on guidance from Congress in several forms. Most recently, Congress addressed the subject of stays of litigation pending PTO post-grant proceedings in the 2011 legislation dealing with CBM review. In the uncodified portion of the AIA directed to CBM review, Congress set forth four factors governing whether a stay should be granted pending CBM review by the Patent Trial and Appeal Board ("PTAB"). Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011).

Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant proceedings, with a fourth factor added. *See Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013) ("This [CBM] statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination . . . ."). The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, was intended to ensure that courts apply their discretion to grant stays liberally so as to minimize the

duplicative litigation of patent validity issues in parallel forums.³ *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058, at *3 (D. Del. Aug. 21, 2019).

While Congress's four-factor test for granting stays in the CBM context does not expressly extend to other types of post-grant proceedings, such as *ex parte* reexaminations, courts have found that the policy considerations governing the issuance of stays are similar with respect to all post-grant proceedings. For that reason, the Federal Circuit and various district courts have held that courts may weigh the fourth factor set forth in the CBM statute when considering staying cases that are co-pending with other types of post-grant proceedings. *See, e.g.*, *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2020 WL 5517283, at *3 (D. Del. Sept. 11, 2020); *Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013). As other courts have done, I will address the "burden of litigation" factor as a component of the factor directed to "simplifying the issues."

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review. As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM review proceedings. 157 Cong.

---

³ The four-factor test was added to the AIA through an amendment offered by Senator Charles Schumer. The provision was added in order to encourage district courts to issue stays when district court litigation and post-grant proceedings were co-pending. Senator Schumer commented: "Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation." 157 Cong. Rec. 3416 (2011).

Rec. 3416 (2011); *see Market-Alerts*, 922 F. Supp. 2d at 490 n.4; *British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366, 2019 WL 4740156, at *3 (D. Del. Sept. 27, 2019).

Congress's desire to enhance the role of the PTO in deciding validity questions and to limit the burden of litigation on courts and parties was not restricted to CBM review proceedings. The AIA's legislative history indicates that Congress viewed both CBM review and *inter partes* review as serving the policy of adjudicating patent validity in an efficient manner. *See* H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant proceedings were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. 2710 (2011) (*inter partes* review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Charles Grassley); *id.* at 12984 (post-grant proceedings, including *inter partes* review, were meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl); *see NFC Tech.*, 2015 WL 1069111, at *5; *see also* Joel Sayres & Julie Wahlstrand, *To Stay or Not to Stay Pending IPR? That Should Be a Simpler Question*, 17 CHI.-KENT J. INTELL. PROP. 52, 56–59 (2018) (discussing indications of Congress's intent in enacting the *inter partes* review framework).

In light of the similar policies underlying the CBM and *inter partes* review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings. Moreover, given the close parallels between *inter partes* review and other forms of post-grant proceedings, courts have applied similar stay analysis in the context of reexaminations, such as the *ex parte* reexamination at issue in this case. *See TC Tech. LLC v. Sprint Corp.*, No. 16-153, 2021 WL 4521045, at *3 (D. Del. Oct. 4, 2021); *British Telecomms.*, 2020 WL 5517283, at *4; *Goldfinch Design Studio LLC v. Collector's Universe, Inc.*, No. 20-2542, 2020 WL 5017351, at *1 (D.N.J. Aug. 25, 2020); *BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-cv-133, 2013 WL 2462105,

at *1 n.1 (D. Del. June 6, 2013); *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012); *Round Rock Rsch. LLC v. Dole Food Co.*, Nos. 11-1239 et al., 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012). Courts have applied similar analysis in the two settings in recognition of the fact that the benefits of reexamination are the same as those served by CBM review: giving the PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of the need to decide some patent validity issues, and saving the courts from adjudicating infringement claims based on patents of questionable validity. *See also Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).").

That point is made clear by the legislative history of the 1980 statute authorizing the PTO to conduct administrative reexaminations of issued patents. Early versions of the 1980 statute contained a section providing for a stay of court proceedings during reexamination. The stay provision was omitted from the final version of the statute on the ground that it was unnecessary. *See id.* The House Report on the bill that became the 1980 statute explained that a stay provision was unnecessary because "such power [to stay] already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." H.R. Rep. No. 96-1307, part 1 (1980), at 4. Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested in the PTO "where the most expert opinions exist and at much reduced costs." *Id.*; *see Ethicon*, 849 F.2d at 1426.

Because of the benefits conferred by PTO post-grant proceedings, courts have concluded that the "liberal policy" in favor of staying cases pending CBM review also applies to staying cases pending other post-grant proceedings. *See British Telecomms.*, 2020 WL 5517283, at *4 (citing cases). In addition to the numerous decisions cited in *British Telecommunications*, *see id.*, courts in many other cases have noted, and acted on, the liberal policy in favor of issuing stays pending post-grant proceedings. *See, e.g.*, *Abcellera Biologics, Inc. v. Berkeley Lights, Inc.*, No. 20-cv-8624, 2021 U.S. Dist. LEXIS 161897, at *3 (N.D. Cal. Aug. 26, 2021); *ClearPlay v. DISH Network LLC*, No. 2:14-cv-191, 2021 WL 2515008, at *2 (D. Utah June 18, 2021); *Kirsch Rsch. & Dev., LLC v. GAF Materials, LLC*, No. CV 20-13683, 2021 WL 2434082, at *2 (D.N.J. June 15, 2021); *Novoluto*, 2021 WL 2251911, at *3; *Automated Layout Techs., LLC v. Precision Steel Sys., LLC*, No. 4:20-cv-3127, 2021 WL 1820433, at *4 (D. Neb. May 6, 2021); *Caravan Canopy Int'l, Inc. v. Home Depot U.S.A., Inc.*, No. CV 19-6224, 2021 WL 831028, at *2 (C.D. Cal. Feb. 25, 2021); *Mobile Tech, Inc. v. Invue Sec. Prods. Inc.*, No. 3:18-cv-52, 2020 WL 9173107, at *2 (W.D.N.C. Mar. 5, 2020).

Although the three-factor test set forth above informs the court's decision whether to issue a stay pending post-grant proceedings, that test merely provides general guidance; it is not a rigid template for decision. Rather, district courts retain the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test." *Murata Mach. USA*, 830 F.3d at 1362. "[U]ltimately the Court must decide stay requests on a case-by-case basis," and whether a stay should be granted turns in each case on the totality of the circumstances. *British Telecomms.*, 2020 WL 5517283. Courts in numerous other cases have also ruled that stay requests must be decided on a case-by-case basis. *See, e.g.*, *id.* (collecting cases); *IOENGINE*, 2019 WL 3943058, at *3 (collecting additional cases).

With that caveat, I turn to each of the principal specific factors courts have recognized as bearing on whether to grant a motion for a stay pending post-grant proceedings in the PTO.

### A.  *Simplification of the Issues*

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial.  As explained in *NFC Technology*, with respect to *inter partes* review:

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed.  Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

2015 WL 1069111, at *4; *RetailMeNot*, 2020 WL 373341, at *3 (quoting *IOENGINE*, 2019 WL 3943058, at *8).  The same is true for *ex parte* reexaminations.  *See In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

In *British Telecommunications*, the court described the litigation before it as "a prime example of a case in which a reexamination decision has the greatest likelihood of simplifying issues at trial."  2020 WL 5517283, at *9.  The PTO in that case granted reexamination of the sole claim asserted in the litigation, and the court issued the stay after the PTO granted reexamination, but before the examiner issued an initial decision.  *Id.* at *2.  Here, not only has the reexamination request been granted, but the examiner has already rejected all the asserted claims in a non-final office action.  Given that the reexamination in this case has proceeded farther than it had in *British Telecommunications*, it is even more unlikely in this case than in *British Telecommunications* that the claims will ultimately be confirmed by the examiner in a final action (or pursuant to any subsequent review of the examiner's final action).

In *Virtual Agility, Inc. v. Salesforce.com, Inc.*, the Federal Circuit noted the significance of the simplification factor when post-grant proceedings are instituted on all the claims at issue in the district court litigation. 759 F.3d 1307, 1314 (Fed. Cir. 2014). The court emphasized that CBM review had been instituted "on all asserted claims of the sole asserted patent." *Id.* The post-grant proceedings could therefore "dispose of the entire litigation," which the court referred to as "the ultimate simplification." *Id.*; *see also Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1372 (Fed. Cir. 2014) ("Certainly [the] simplification factor weighs more strongly in favor of a stay when *all* of the litigated claims" are undergoing review.). The same is true here, and such disposal of the counterclaim case is likely in view of the examiner's non-final office action. The simplification factor is thus at its apex.

ScentAir argues that even in view of the non-final office action, it is unlikely that the asserted claims will ultimately be canceled. In support of that assertion, ScentAir cites the report of its expert, Robert Dezmelyk, who offered the opinion that the Hamada reference "discloses a system much different from the systems and methods recited in the '388 Patent claims." Dkt. No. 203 at 13. The assertion that ScentAir will ultimately prevail in the reexamination proceeding, however, is entirely speculative. The record shows that the examiner made an initial finding that the asserted claims are invalid; to reach that conclusion, the examiner was required to conduct "a thorough study" of the patent and "a thorough investigation of the available prior art relating to the subject matter of the claimed invention." 37 C.F.R. § 1.104(a). The Federal Circuit has made clear that it is inappropriate for a district court, in considering a motion for a stay pending post-grant review, to review the merits of the PTO's determination as to whether the claims are likely invalid. In *VirtualAgility*, the court made that clear in the analogous context of a motion for a stay pending CBM review:

> The district court erred as a matter of law to the extent that it decided to 'review' the PTAB's determination that the claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. . . . To do so would overwhelm and dramatically expand the nature of the stay determination. . . . The stay determination is not the time or the place to review the PTAB's decisions to institute a CBM proceeding.

759 F.3d at 1313; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1317 (Fed. Cir. 2015); *Benefit Funding Sys. v. Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1386 (Fed. Cir. 2014).

Here, the examiner has determined that there is a substantial question of patentability and, preliminarily, that the claims are invalid in view of the new prior art. On its face, the examiner's rejection makes it appear likely that the results of the reexamination may obviate the need for a trial on ScentAir's counterclaims or at least alter the nature of such a trial. As Chief Judge Connolly explained in a closely analogous setting, the examiner's non-final office action in the reexamination proceeding rejecting all the claims of the challenged patent

> increases the likelihood that at least some of the claims will be cancelled or modified. "If all or some of the asserted claims are cancelled, this litigation would be simplified" or mooted entirely. . . . "If all or some of the asserted claims are modified, this could render much of the parties' and the Court's resources wasted— if, for instance, the Court construes claim terms that are subsequently eliminated by amendment in the reexamination."

*TTI Consumer Power Tools, Inc. v. Lowe's Home Centers LLC*, No. 22-673, 2022 WL 16739812, at *1 (D. Del. Nov. 7, 2022) (quoting *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010)).

ScentAir argues that the reexamination proceeding is unlikely to result in the cancellation of all 20 claims of the '388 patent. For support, ScentAir relies on PTO statistics showing that *ex parte* reexamination results in all claims being canceled only 13.1 percent of the time, whereas

confirmation of all claims occurs 20.9% of the time. Dkt. No. 203 at 12 (citing Dkt. No. 203-7 at 2).

What ScentAir's interpretation of the reexamination statistics overlooks is that there is an approximately 79 percent chance that at least some claims of the '388 patent are likely to be canceled or amended. Even if the reexamination proceeding concludes without all the claims being canceled, the cancellation or amendment of some of the claims is likely to nonetheless simplify the issues for trial. As Prolitec points out, if all or some of the asserted claims are canceled or modified, the parties' resources may be wasted if they "provide expert opinions or prepare dispositive motions on claims that are no longer in the case." Dkt. No. 187 at 4–5. For that reason, the high likelihood that at least some of the claims will be canceled or modified weighs in favor of a stay. *See Round Rock*, 2012 WL 1185022, at *1 ("[W]ith so many claims in play, the law of probabilities makes it almost certain that some of the claims will be rejected or modified, and others of them, even if neither rejected nor modified, will garner additional prosecution history that may be relevant to claim construction.").

Moreover, it appears that many of the claims of the '388 patent are likely to rise and fall together. The examiner's decision to institute the reexamination focused heavily on the "in table" and "out table" limitations of the claims. Dkt. No. 187-1 at 4–8. The '388 patent has only three independent claims, and the "in table" and "out table" limitations are recited in each of those claims. To the extent that amendment or cancellation of the claims is required, it will likely be due to the "in table" and "out table" limitations. Thus, the likelihood that most or all the claims of the '388 patent will be affected by the reexamination is somewhat higher than might otherwise be the case.

In sum, the statistics cited by ScentAir do not bolster its argument. To the contrary, they support Prolitec's contention that the reexamination in this case is likely to result in the cancellation or amendment of at least some of the asserted claims. I conclude that the reexamination proceeding is likely to simplify this litigation and reduce the burden on the parties and on the court by resulting in the cancellation or amendment of at least some of the asserted claims. The simplification factor therefore cuts strongly in favor of granting a stay.

### B. State of the Proceedings

As noted, one of the factors courts have considered in determining whether to issue a stay pending post-grant proceedings is the state of the district court proceedings, i.e., how far along the district court case is at the time the motion for a stay is filed.

In this case, fact discovery has been completed and expert discovery has just begun with respect to the counterclaims. A trial date has been set for March 11, 2024, and thus as of the time the motion for a stay was filed, approximately eight months remained before trial. ScentAir argues that the stay motion has been filed late in the pretrial period, well after the time in which stays have been sought in a number of other cases involving disputes over the issuance of stays pending PTO review. Nonetheless, stays have been granted in a number of other cases that involved motions for a stay that were filed at times much later relative to the trial date as compared to this case. *See, e.g.*, *TC Tech.*, 2021 WL 4521045, at *7 (stay granted less than two months before trial); *British Telecomms.*, 2020 WL 5517283, at *5 (stay granted less than three months before trial); *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-cv-361, 2021 WL 465424, at *3 (E.D. Tex. Feb. 9, 2021) (stay granted three months before trial); *Ramot At Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, No. 2:19-cv-225, 2021 WL 121154, at *2 (E.D. Tex. Jan. 13, 2021) (stay granted six weeks before trial); *CyWee Grp. Ltd. v. Samsung Elec. Co.*, No. 2:17-cv-140, 2019 WL 11023976,

at *6–7 (E.D. Tex. Feb. 14, 2019) (stay granted three months before trial); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-11, 2016 WL 1162162 (E.D. Tex. Mar. 23, 2016) (stay granted within two months of trial); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, No. 03-CV-2223, 2006 WL 1897165, at *8–10 (D. Colo. July 11, 2006) (stay granted less than three months before trial; court cited cases in which stays were granted as little as 20 days before trial).[4]

While some of the pretrial proceedings in this case have been completed, a large portion of the remaining work in the case for the parties and the court lies in the future. The parties have not completed expert discovery, nor have they filed dispositive motions. And many courts have observed that preparation for trial and trial itself are typically the most burdensome and expensive parts of the litigation. *See British Telecomms.*, 2020 WL 5517283, at *6 (recognizing that "the most burdensome parts of the case for the parties and the court—preparation for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future"); *see also Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (holding that the district court abused its discretion when it denied a stay prior to trial, explaining that "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come"); *AGIS Software*, 2021 WL 465424, at *3 (Even after completion of discovery and pretrial briefing, with jury selection pending, "there remain significant resources yet to be expended by the parties."); *Ramot At Tel Aviv Univ.*, 2021 WL 121154, at *2 (same); *NFC Tech.*, 2015 WL

---

[4] In its brief, ScentAir notes that in some of the cases cited above, the courts considered the impact of the COVID-19 pandemic in evaluating the state-of-proceedings factor. Dkt. No. 203 at 15. It is true that those concerns are less weighty for a trial scheduled for March 2024, as compared to cases such as *British Telecommunications* and *TC Technology*, in which the motions to stay were filed during the pandemic. However, the fact that this case is significantly farther from trial than those cases offsets any impact that pandemic-related considerations had in those cases.

14

1069111, at *3 ("[I]t appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future.").

It is worth noting that the stay entered today may be of modest duration. The PTO examiner has entered a non-final rejection of the two claims in suit, and has directed that a response to that rejection is due by September 14, 2023, subject to an extension. ScentAir can expedite the reexamination process by filing its submission early, without seeking an extension. A final action by the examiner in the reexamination proceeding therefore may be issued within a reasonably short period of time, at which point I can consider whether to extend the stay depending on the examiner's decision.

### C. Undue Prejudice or Clear Tactical Advantage

The third factor that courts consider in determining whether to issue a stay of district court litigation pending post-grant proceedings is whether a stay would result in undue prejudice to the non-moving party or provide a clear tactical advantage to the moving party. In evaluating whether undue prejudice or a clear tactical advantage exists, courts in this district typically examine four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *IOENGINE*, 2019 WL 3943058 (collecting cases). These factors, on balance, indicate that a stay will not unduly prejudice Prolitec, nor will it provide a clear tactical advantage for ScentAir.

Regarding the timing of the request for reexamination and the request for a stay, Prolitec explains that it learned of "most of" the references asserted in its petition "as part of an investigation that began in late 2022 and extended to February 2023." Dkt. No. 187 at 7. In particular, Prolitec represents that it discovered four of the six asserted references—all except Hamada and Yamada—during that investigation. Dkt. No. 205 at 5. ScentAir disputes the

15

relevance of the four newly discovered references, but offers only the unsupported assertion that those references are "substantively equivalent to the nearly two dozen other secondary references Prolitec cited in its February 2021 [invalidity] contentions." Dkt. No. 203 at 7. Although the record on this point is somewhat thin, I am not persuaded that Prolitec acted with undue delay given that Prolitec discovered four of the six references it asserted in the reexamination petition, including the Jonsson reference on which the examiner relied in the non-final office action, just prior to Prolitec's filing its petition for reexamination.

The timing of Prolitec's request for a stay also does not indicate undue delay on its part. Until June 28, 2023, the '388 patent was one of four patents that ScentAir had asserted against Prolitec. Two days after the parties stipulated to drop the other three patents from the case, Prolitec approached ScentAir about requesting a stay pending reexamination of the '388 patent. Dkt. No. 187 at 7. Ten days later, Prolitec filed its motion for a stay pending *ex parte* reexamination. *Id.* In view of that timing, I am persuaded that Prolitec has acted in good faith and without undue delay in seeking reexamination and requesting a stay of this proceeding.

With respect to the status of the review proceeding, the PTO has already issued a non-final office action rejecting the asserted claims. This court and others have issued stays after a request for *ex parte* reexamination was granted, but before the examiner reached an initial decision. *See, e.g.*, *British Telecomms.*, 2020 WL 5517283, at *2; *Goldfinch*, 2020 WL 5017351, at *1; *BodyMedia*, 2013 WL 2462105, at *1 n.1; *Ever Win Int'l*, 902 F. Supp. 2d at 504–05. Here, the review proceeding is even farther along than in those cases, so the risk of prejudice is lower than in other cases where courts have granted a stay. *See TC Tech.*, 2021 WL 4521045, at *9. Moreover, the potential burden of conducting appellate proceedings in the PTO does not constitute undue prejudice to ScentAir, as it is likely that, even in the absence of a stay, the reexamination

16

and a possible administrative appeal would be ongoing before any judgment in the district court litigation became final.

Finally, with respect to the relationship between the parties, it is undisputed that Prolitec and ScentAir are direct competitors. ScentAir adds that it intends to seek a permanent injunction should it prevail on its counterclaim for infringement of the '388 patent. Dkt. No. 203 at 11. Those factors generally weigh against granting a stay. *See, e.g.*, *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 WL 3013343, at *3–4 (D. Del. June 17, 2013); *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662, 2013 WL 424754, at *2–3 (D. Del. Jan. 31, 2013). However, when "there are a number of active firms in the relevant market," the fact that the parties are competitors carries less weight in the analysis. *Neste*, 2013 WL 424754, at *3. And Prolitec has identified at least thirteen firms that operate in the "premium diffuser market." Dkt. No. 205 at 8 (citing Dkt No. 205-1, Exh. B ¶ 48; Dkt. No. 203, Exh. E).

Moreover, I note that ScentAir's complaint of potential injury is largely speculative. In its brief, ScentAir argues that a stay would "permit Prolitec . . . to continue to try and develop and grow a market for its [accused] Aera products at the expense of ScentAir." Dkt. No. 203 at 11. But as Prolitec points out, the Aera products launched in September 2016, more than four years before the '388 patent issued. Dkt. No. 205 at 7 (citing Dkt. No. 203, Exh. E ¶ 42). Thus, it seems unlikely that Prolitec would be able to "develop and grow" the market for the Aera products in a significant way during the period that this action is stayed, given that the parties' products have already coexisted in the market for nearly seven years.

In view of the four factors bearing on the issue of undue prejudice to the patent owner or unfair tactical advantage to the patent challenger, I conclude that there is some risk of prejudice to ScentAir given the fact that the parties are direct competitors. However, in view of the large

number of firms in the relevant market, as well as the other factors bearing on the issue of prejudice, that risk does not weigh heavily in the analysis. As a result, the "undue prejudice or clear tactical advantage" factor weighs only slightly against granting a stay.

### III.    Conclusion

After weighing all the factors that bear on whether to grant a stay pending reexamination of the asserted claims of the '388 patent, I conclude that a stay of the counterclaim proceedings is warranted. Although the risk of prejudice to ScentAir weighs slightly against granting a stay, that risk is outweighed by the potential that the reexamination proceedings will simplify the issues in this case. Accordingly, all further proceedings in this matter relating to ScentAir's counterclaims are stayed, and the scheduling order for those proceedings is vacated. The stay will extend until the examiner in the reexamination proceeding issues a final office action. Depending on the examiner's disposition of the case, I will determine at that time whether to further extend the stay. Any further proceedings with respect to the counterclaims, including Prolitec's motion for judgment on the pleadings, Dkt. No. 104, will be addressed following the termination of the stay. To be clear, this stay of ScentAir's counterclaims for infringement of the '388 patent does not affect the severed proceeding regarding Prolitec's claims in its complaint for infringement of its own patents.

The parties are directed to advise the examiner of the entry of the stay of this litigation. In addition, if a final action in the reexamination is not entered within six months of the date of this order, the parties are directed to file a report with the court regarding the status of the reexamination proceeding.

IT IS SO ORDERED.

SIGNED this 8th day of August, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE