# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,

               Plaintiff,

v.

SCENTAIR TECHNOLOGIES, LLC.,

               Defendant.

C.A. No. 20-984-WCB

## EXHIBIT 1

## JOINT STATEMENT OF UNCONTESTED FACTS

The following facts are undisputed or have been agreed or stipulated to by the parties.

## I.    PARTIES

1.    Plaintiff Prolitec Inc. ("Plaintiff" or "Prolitec") is a corporation organized under the laws of Wisconsin having its principal place of business at 1235 West Canal Street, Milwaukee, WI 53233.

2.    Defendant ScentAir Technologies, LLC ("Defendant" or "ScentAir") is a corporation organized under the laws of Delaware with its principal place of business at 3810 Shutterfly Road, Suite 900, Charlotte, NC 28217.

## II.    ASSERTED PROLITEC PATENTS

3.    This is an action for patent infringement of U.S. Patent No. 9,162,004 (the "'004 patent"), and U.S. Patent No. 9,745,976 (the "'976 patent") (collectively, "the Asserted Patents"), owned by Plaintiff.

### A.    The '004 Patent

4.    The '004 patent is entitled "Removable Cartridge for Liquid Diffusion Device and Cartridge Insert Thereof."

5.    The '004 patent was filed on February 2, 2015, and issued on October 20, 2015.

6.    The named inventors of the '004 patent are Matthew Ansley and Nathan Sward.

7.    Prolitec is the owner by assignment of the '004 patent.

### B.    The '976 Patent

8.    The '976 patent is entitled "Removable Cartridge for Liquid Diffusion Device and Cartridge Insert Thereof."

9.    The '976 patent was filed August 25, 2015, and issued on August 29, 2017.

10.    The '976 patent is a continuation of, and claims priority to, the '004 patent.

11.     The named inventors of the '976 patent are Matthew Ansley and Nathan Sward.

12.     Prolitec Inc. is the owner by assignment of the '976 patent.

13.     ScentAir became aware of the '004 Patent and the '976 Patent on or about July 24, 2020, when this action was commenced.

### C.     Asserted Claims

14.     The patent claims at issue are claims 17 and 23 of the '004 patent and claims 15–17 and 22 of the '976 patent (collectively, the "Asserted Claims").

15.     Claims 17 and 23 of the '004 patent depend from claim 9 of the '004 patent.

16.     Claims 15–17 and 22 of the '976 patent depend from claim 9 of the '976 patent.

## III.    ACCUSED PRODUCTS

17.     ScentAir makes a scenting product called the ScentAir Breeze. The ScentAir Breeze consists of a vertical atomization device (the "Breeze Device") and a fragrance cartridge (the "Breeze Fragrance Cartridge" or "Breeze Cartridge").

18.     ScentAir launched the ScentAir Breeze in April 2020.

19.     ScentAir has service agreements in the United States under which ScentAir leases a Breeze Device and provides Breeze Cartridges to a customer in exchange for a monthly fee.

20.     ScentAir stopped engaging in new service agreements for the Breeze Device and Breeze Cartridges in the United States in October 2022.

# Exhibit 2P

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,

          Plaintiff,

v.

SCENTAIR TECHNOLOGIES, LLC,

          Defendant.

C.A. No. 20-984-WCB

**EXHIBIT 2P**

**<u>PLAINTIFF'S STATEMENT OF ISSUES OF FACT</u>**

**<u>THAT REMAIN TO BE LITIGATED</u>**

Plaintiff Prolitec Inc. ("Prolitec") presents the following statement of issues of fact that remain to be litigated, which is based on Prolitec's current understanding of the defenses of Defendant ScentAir Technologies LLC ("ScentAir"), and the proceedings in the action to date.

To the extent that Plaintiff's Statement of Issues of Law to be Litigated, as set forth in PTO Exhibit 3P, contains issues of fact, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified below is more appropriately considered an issue of law, Prolitec incorporates such issues by reference into PTO Exhibit 3P. By including a fact herein, Prolitec does not assume the burden of proof or production with regard to that fact. Prolitec reserves the right to revise this statement in light of the Court's rulings.

## ISSUES OF FACT ON WHICH PLAINTIFF BEARS BURDEN OF PROOF

**I.    DIRECT INFRINGEMENT**

    **A.    U.S. Patent No. 9,162,004 (the "'004 patent")**

1.    Whether ScentAir has directly infringed claims 17 and 23 of the '004 patent by making, using, selling, offering to sell, and/or importing the ScentAir Breeze, a scent delivery system (the "Breeze" or "Accused Instrumentality"), which consists of a SVD4200B, SVD4200W, SVD4210B, or SVD4210W model vertical atomization device (the "Breeze Device") and a SVC4200 model fragrance container (the "Breeze Cartridge"), within the United States.

        a.    Whether the Breeze infringes every limitation of claims 17 and 23 of the '004 patent, either literally or under the doctrine of equivalents.

    **B.    U.S. Patent No. 9,745,976 (the "'976 patent")**

2.    Whether ScentAir has directly infringed claims 15–17 and 22 of the '976 patent by making, using, selling, offering to sell, and/or importing the Breeze in the United States.

      a.   Whether the Breeze infringes every limitation of claims 15–17 and 22 of the '976 patent, either literally or under the doctrine of equivalents.

## II.    INDIRECT INFRINGEMENT

### A.    The '004 Patent

3.    Whether ScentAir has induced infringement of claims 17 and 23 of the '004 patent by supplying one or more Breeze Cartridges and/or Breeze Devices to end users in the United States who use the Breeze as instructed and/or intended by ScentAir.

      a.   Whether the Breeze infringes every limitation of claims 17 and 23 of the '004 patent, either literally or under the doctrine of equivalents.

      b.   Whether ScentAir acted with specific intent to induce others to infringe the '004 patent.

      c.   Whether ScentAir's conduct led end users to directly infringe claims 17 and 23 of the '004 patent.

### B.    The '976 Patent

4.    Whether ScentAir has induced infringement of claims 15–17 and 22 of the '976 patent by supplying one or more Breeze Cartridges and/or Breeze Devices to end users in the United States who use the Breeze as instructed and/or intended by ScentAir.

      a.   Whether the Breeze infringes every limitation of claims 15–17 and 22 of the '976 patent, either literally or under the doctrine of equivalents.

      b.   Whether ScentAir acted with specific intent to induce others to infringe the '976 patent.

## III.   CONTRIBUTORY INFRINGEMENT

### A.   The '004 Patent

5.   Whether ScentAir has contributed to others' infringement of claims 17 and 23 of the '004 patent by supplying one or more Breeze Cartridges and/or Breeze Devices to end users in the United States who use the Breeze as instructed and/or intended by ScentAir.

a.   Whether someone other than ScentAir directly infringed every limitation of claims 17 and 23 of the '004 patent, either literally or under the doctrine of equivalents, with the Breeze.

b.   Whether ScentAir had knowledge of both the '004 patent and the direct infringement of the '004 patent.

c.   Whether ScentAir sold, offered for sale, or imported within the United States one or more Breeze Cartridges and/or Breeze Devices.

d.   Whether the Breeze Cartridge and/or the Breeze Device have no substantial non-infringing uses.

e.   Whether the Breeze Cartridge and/or the Breeze Device constitute a material part of the components of the Breeze.

f.   Whether ScentAir knew that the Breeze Cartridge and/or the Breeze Device was especially made or adapted for use in the Breeze.

### B.   The '976 Patent

6.   Whether ScentAir has contributed to others' infringement of claims 15–17 and 22 of the '976 patent by supplying one or more Breeze Cartridges and/or Breeze Devices to end users in the United States who use the Breeze as instructed and/or intended by ScentAir.

    a.   Whether someone other than ScentAir directly infringed every limitation of claims 15–17 and 22 of the '976 patent, either literally or under the doctrine of equivalents, with the Breeze.

    b.   Whether ScentAir had knowledge of both the '976 patent and the direct infringement of the '976 patent.

    c.   Whether ScentAir sold, offered for sale, or imported within the United States one or more Breeze Cartridges and/or Breeze Devices.

    d.   Whether the Breeze Cartridge and/or the Breeze Device have no substantial non-infringing uses.

    e.   Whether the Breeze Cartridge and/or the Breeze Device constitute a material part of the components of the Breeze.

    f.   Whether ScentAir knew that the Breeze Cartridge and/or the Breeze Device was especially made or adapted for use in the Breeze.

## IV.    INFRINGEMENT UNDER § 271(f)

### A.    The '004 Patent

7.    Whether ScentAir has infringed claims 17 and 23 of the '004 patent under § 271(f)(1) by supplying or causing to be supplied all or a substantial portion of the components of the Breeze from the United States to a foreign country.

    a.   Whether the Breeze, as it is intended to be combined outside of the United States, embodies every limitation of claims 17 and 23 of the '004 patent, either literally or under the doctrine of equivalents.

b.  Whether ScentAir actually supplied or caused to be supplied components from the United States that make up all or a substantial portion of the components of the Breeze.

c.  Whether ScentAir specifically intended to induce the combination of the components into the Breeze.

8.  Whether ScentAir has infringed claims 17 and 23 of the '004 patent under § 271(f)(2) by supplying or causing to be supplied one or more Breeze Cartridges and/or Breeze Devices from the United States to a foreign country.

a.  Whether the Breeze embodies every limitation of claims 17 and 23 of the '004 patent, either literally or under the doctrine of equivalents.

b.  Whether ScentAir actually supplied or caused to be supplied one or more Breeze Cartridges and/or Breeze Devices from the United States to a foreign country.

c.  Whether ScentAir knew or should have known that the Breeze Cartridge and/or the Breeze Device were especially made or adapted for use in the Breeze.

d.  Whether the Breeze Cartridge and/or the Breeze Device have no substantial non-infringing uses.

e.  Whether ScentAir intended for the Breeze Cartridge and/or the Breeze Device to be combined into the Breeze.

**B.     The '976 Patent**

9.  Whether ScentAir has infringed claims 15–17 and 22 of the '976 patent under § 271(f)(1) by supplying or causing to be supplied all or a substantial portion of the components of the Breeze from the United States to a foreign country.

5

    a.   Whether the Breeze, as it is intended to be combined outside of the United States, embodies every limitation of claims 15–17 and 22 of the '976 patent, either literally or under the doctrine of equivalents.

    b.   Whether ScentAir actually supplied or caused to be supplied components from the United States that make up all or a substantial portion of the components of the Breeze.

    c.   Whether ScentAir specifically intended to induce the combination of the components into the Breeze.

10.    Whether ScentAir has infringed claims 15–17 and 22 of the '976 patent under § 271(f)(2) by supplying or causing to be supplied one or more Breeze Cartridges and/or Breeze Devices from the United States to a foreign country.

    a.   Whether the Breeze embodies every limitation of claims 15–17 and 22 of the '976 Patent, either literally or under the doctrine of equivalents.

    b.   Whether ScentAir actually supplied or caused to be supplied one or more Breeze Cartridges and/or Breeze Devices from the United States to a foreign country.

    c.   Whether ScentAir knew or should have known that the Breeze Cartridge and/or the Breeze Device were especially made or adapted for use in the Breeze.

    d.   Whether the Breeze Cartridge and/or the Breeze Device have no substantial non-infringing uses.

    e.   Whether ScentAir intended for the Breeze Cartridge and/or the Breeze Device to be combined into the Breeze.

## V.    RELIEF AND DAMAGES

11.    Whether Prolitec is entitled to a judgment that ScentAir directly infringed claims 17 and 23 of the '004 patent.

12.    Whether Prolitec is entitled to a judgment that ScentAir directly infringed claims 15–17 and 22 of the '976 patent.

13.    Whether Prolitec is entitled to a judgment that ScentAir induced infringement of claims 17 and 23 of the '004 patent.

14.    Whether Prolitec is entitled to a judgment that ScentAir induced infringement of claims 15–17 and 22 of the '976 patent.

15.    Whether Prolitec is entitled to a judgment that ScentAir contributorily infringed claims 17 and 23 of the '004 patent.

16.    Whether Prolitec is entitled to a judgment that ScentAir contributorily infringed claims 15–17 and 22 of the '976 patent.

17.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 17 and 23 of the '004 patent under § 271(f)(1).

18.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 15–17 and 22 of the '976 patent under § 271(f)(1).

19.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 17 and 23 of the '004 patent under § 271(f)(2).

20.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 15–17 and 22 of the '976 patent under § 271(f)(2).

21.    Whether Prolitec is entitled to a permanent injunction enjoining ScentAir; ScentAir's officers, agents, servants, employees and attorneys; and other persons in active concert

or participation with ScentAir, and their parents, subsidiaries, divisions, successors and assigns, from further infringement of claims 17 and 23 of the '004 patent.

22.    Whether Prolitec is entitled to a permanent injunction enjoining ScentAir; ScentAir's officers, agents, servants, employees and attorneys; and other persons in active concert or participation with ScentAir, and their parents, subsidiaries, divisions, successors and assigns, from further infringement of claims 15–17 and 22 of the '976 patent.

23.    Whether Prolitec is entitled to a judgment awarding reasonable royalties for ScentAir's infringement and, if so, the amount of such reasonable royalties.

24.    Whether Prolitec is entitled to a judgment awarding pre-judgment and post-judgment interest.

25.    Whether Prolitec is entitled to a judgment awarding attorneys' fees and costs.

## ISSUES OF FACT ON WHICH DEFENDANT BEARS BURDEN OF PROOF

### VI.    INVALIDITY OF THE ASSERTED PATENTS

#### A.    The '004 Patent

26.    Whether ScentAir can prove, by clear and convincing evidence and pursuant to 35 U.S.C. § 102, that claims 17 and/or 23 of the '004 patent are invalid as anticipated by ScentAir's prior art references.

27.    Whether ScentAir can prove, by clear and convincing evidence and pursuant to 35 U.S.C. § 112, that claims 17 and/or 23 of the '004 patent are invalid as indefinite.

**B.**     **The '976 Patent**

28.     Whether ScentAir can prove, by clear and convincing evidence and pursuant to 35 U.S.C. § 102, that claims 15, 16, 17 and/or 22 of the '976 patent are invalid as anticipated by ScentAir's prior art references.

29.     Whether ScentAir can prove, by clear and convincing evidence and pursuant to 35 U.S.C. § 112, that claims 15, 16, 17 and/or 22 of the '976 patent are invalid as indefinite.

# Exhibit 2D

**IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF DELAWARE**

PROLITEC INC.,

       Plaintiff, Counter-Defendant

v.

SCENTAIR TECHNOLOGIES, LLC,

       Defendant, Counter-Plaintiff

C.A. No. 20-984-WCB

**EXHIBIT 2D**

**SCENTAIR'S ISSUES OF FACT THAT REMAIN TO BE LITIGATED**

Pursuant to Local Rule 16.3(c)(4), Defendant, ScentAir Technologies, LLC ("ScentAir"), submits the following issues of fact that remain to be litigated.  ScentAir incorporates by reference any issues of fact that are set forth in its response to any comparable statement submitted or filed by Plaintiff Prolitec Inc. ("Prolitec").

ScentAir bases this statement on the parties' pleadings, the parties' documentary and testimonial evidence, ScentAir's current understanding of Prolitec's claims and defenses, and the Court's rulings to date. Although ScentAir has tried to anticipate issues to the extent possible, Prolitec may not raise all of these issues at trial and/or may seek to modify these issues or raise additional issues. Accordingly, ScentAir may not raise all of the issues set forth herein at trial and/or may seek to modify these issues or raise additional issues. In addition, some of Prolitec's arguments or evidence may be objectionable and the subject of pending motions or motions to be filed at a later date.

ScentAir also intends to offer evidence to rebut evidence offered by Prolitec. ScentAir reserves the right to amend or supplement this statement to respond to any new positions or evidence offered by Prolitec, or to any future ruling of this Court, and/or to amend or supplement this statement consistent with the pretrial order, the parties' agreements, or as otherwise permitted by the Court. ScentAir also reserves the right to amend or supplement this statement in response to Prolitec's pretrial order submissions, pretrial proceedings, trial proceedings, or post-trial briefing.

By including a fact herein, ScentAir does not assume the burden of proof, persuasion, or production with regard to that fact, unless required to do so by law. For instance, Prolitec bears the burden of proof with respect to infringement. As a result, ScentAir reserves the right to object to and/or contest those alleged facts and present any rebuttal evidence in response to those alleged

facts when identified by Prolitec. Any fact not specifically admitted in the parties' Statement of Uncontested Facts should be considered contested, even if not specifically identified. To the extent this statement contains issues of law, they are incorporated by reference into ScentAir's Statement of Issues of Law That Remain to Be Litigated. To the extent ScentAir's Statement of Issues of Law That Remain to Be Litigated contains issues of fact, they are hereby incorporated herein by reference. To the extent that a fact or issue of fact in one section applies to another section, claim, or theory, it is incorporated therein as well without separate identification.

## I.  ISSUES ON WHICH SCENTAIR BEARS THE BURDEN OF PROOF

### A.  Invalidity Under § 102

1.  Whether ScentAir has proven, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102 as anticipated.

2.  Whether ScentAir has proven, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentDirect.

3.  Whether ScentAir has proven, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentStream.

4.  Whether ScentAir has proven, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentBox.

5.  Whether ScentAir has proven, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102 as anticipated by the Air/Q.

6.  Whether ScentAir has proven, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102 as anticipated.

7.  Whether ScentAir has proven, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentDirect.

8.      Whether ScentAir has proven, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentStream.

9.      Whether ScentAir has proven, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102 as anticipated by the ScentBox.

10.     Whether ScentAir has proven, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102 as anticipated by the Air/Q.

**B.      Requested Relief**

11.     Whether ScentAir has proven, by a preponderance of the evidence, that this is an exceptional case warranting ScentAir an award of its attorneys' fees and costs under 35 U.S.C. § 285, and if so, in what amount.

## II.    ISSUES ON WHICH PROLITEC BEARS THE BURDEN OF PROOF

**A.      Direct Infringement Under Doctrine of Equivalents**

12.     Whether Prolitec has shown by a preponderance of the evidence that ScentAir infringes, under the doctrine of equivalents, claims 17 and 23 of the '004 Patent by making, using, selling, offering to sell, and/or importing the ScentAir Breeze, including SVD4200B, SVD4200W, SVD4210B, or SVD4210W atomization device (the "Breeze Device") and SVC 4200 model fragrance cartridge (the "Breeze Fragrance Cartridge").

13.     Whether Prolitec has shown by a preponderance of the evidence that ScentAir infringes, under the doctrine of equivalents, claims 15-17 and 22 of the '976 Patent by making, using, selling, offering to sell, and/or importing the ScentAir Breeze Device and the Breeze Fragrance Cartridge.

**B.      Indirect Infringement**

14.     Whether Prolitec has shown by a preponderance of the evidence that ScentAir actively induced infringement of claims 17 and 23 of the '004 Patent.

a.  Whether Prolitec has shown that a combination of the Breeze Device and Breeze Cartridge infringe each and every limitation of claims 17 and 23 of the '004 Patent.

b.  Whether Prolitec has shown that ScentAir acted with specific intent to induce another to infringe the '004 Patent.

c.  Whether Prolitec has shown that ScentAir actively induced another to directly infringe claims 17 and 23 of the '004 Patent.

15.  Whether Prolitec has shown by a preponderance of the evidence that ScentAir actively induced infringement of claims 15-17 and 22 of the '976 Patent.

a.  Whether Prolitec has shown that a combination of the Breeze Device and Breeze Cartridge infringe each and every limitation of claims 15-17 and 22 of the '976 Patent.

b.  Whether Prolitec has shown that ScentAir acted with specific intent to induce another to infringe the '976 Patent.

c.  Whether Prolitec has shown that ScentAir actively induced another to directly infringe claims 15-17 and 22 of the '976 Patent.

16.  Whether Prolitec has shown by a preponderance of the evidence that ScentAir contributorily infringed claims 17 and 23 of the '004 Patent.

a.  Whether Prolitec has shown that someone other than ScentAir directly infringed each and every limitation of claims 17 and 23 of the '004 Patent.

b.  Whether Prolitec has shown that ScentAir had knowledge of the '976 Patent, and that the components supplied or caused to be supplied were infringing.

c. Whether Prolitec has shown that ScentAir sold, offered for sale, or imported within the U.S. one or more such components.

d. Whether Prolitec has shown that such components have no substantial non-infringing uses.

e. Whether Prolitec has shown that such components constitute a material part of the infringing apparatus.

f. Whether ScentAir knew that such components were especially made or adapted for use as part of an infringing apparatus.

17.    Whether Prolitec has shown by a preponderance of the evidence that ScentAir contributorily infringed claims 15-17 and 22 of the '976 Patent.

a. Whether Prolitec has shown that someone other than ScentAir directly infringed each and every limitation of claims 15-17 and 22 of the '976 Patent.

b. Whether Prolitec has shown that ScentAir had knowledge of the '976 Patent, and that the components supplied or caused to be supplied were infringing.

c. Whether Prolitec has shown that ScentAir sold, offered for sale, or imported within the U.S. one or more such components.

d. Whether Prolitec has shown that such components have no substantial non-infringing uses.

e. Whether Prolitec has shown that such components constitute a material part of the infringing apparatus.

f. Whether ScentAir knew that such components were especially made or adapted for use as part of an infringing apparatus.

- 5 -

18.    Whether Prolitec has shown by a preponderance of the evidence that ScentAir has infringed claims 17 and 23 of the '004 Patent under § 271(f)(1).

    a.    Whether Prolitec has shown the components supplied or caused to be supplied by ScentAir, would directly infringe each and every limitation of claims 17 and 23 of the '004 Patent,

    b.    Whether Prolitec has shown that ScentAir actually supplied or caused to be supplied components from the United States that make up all or a substantial portion of an infringing apparatus.

    c.    Whether Prolitec has shown that ScentAir specifically intended to induce the combination.

19.    Whether Prolitec has shown by a preponderance of the evidence that ScentAir has infringed claims 15-17 and 22 of the '976 Patent under § 271(f)(1).

    a.    Whether Prolitec has shown the components supplied or caused to be supplied by ScentAir as combined outside of the U.S., would directly infringe each and every limitation of claims 15-17 and 22 of the '976 Patent.

    b.    Whether Prolitec has shown ScentAir actually supplied or caused to be supplied components from the United States that make up all or a substantial portion of an infringing apparatus.

    c.    Whether Prolitec has shown ScentAir specifically intended to induce the combination.

20.    Whether Prolitec has shown by a preponderance of the evidence that ScentAir has infringed claims 17 and 23 of the '004 Patent under § 271(f)(2).

a.   Whether Prolitec has shown the components supplied or caused to be supplied by ScentAir, as combined outside of the U.S., would directly infringe each and every limitation of claims 17 and 23 of the '004 Patent.

b.   Whether Prolitec has shown that ScentAir actually supplied or caused to be supplied any component of a patented invention from the United States to a foreign country.

c.   Whether Prolitec has shown that ScentAir knew or should have known that the components were especially made or adapted for use in an infringing apparatus.

d.   Whether Prolitec has shown that the components supplied have no substantial non-infringing uses.

e.   Whether Prolitec has shown that ScentAir intended for the components to be combined into an infringing apparatus.

21.     Whether Prolitec has shown by a preponderance of the evidence that ScentAir has infringed claims 15-17 and 22 of the '976 Patent under § 271(f)(2) by supplying or causing to be supplied components of a patented invention from the United States to a foreign country.

a.   Whether Prolitec has shown the components supplied or caused to be supplied by ScentAir, as combined outside of the U.S., would directly infringe each and every limitation of claims 15-17 and 22 of the '976 Patent.

b.   Whether Prolitec has shown that ScentAir actually supplied or caused to be supplied any component of a patented invention from the United States to a foreign country.

c.   Whether Prolitec has shown that ScentAir knew or should have known that the components were especially made or adapted for use in an infringing apparatus.

    d.   Whether Prolitec has shown that the components supplied have no substantial non-infringing uses.

    e.   Whether Prolitec has shown that ScentAir intended for the components to be combined into an infringing apparatus.

**C.    Damages and Relief**

22.    Whether Prolitec is entitled to a judgment that ScentAir directly infringed under the doctrine of equivalents claims 17 and 23 of the '004 Patent.

23.    Whether Prolitec is entitled to a judgment that ScentAir directly infringed under the doctrine of equivalents claims 15-17 and 22 of the '976 Patent.

24.    Whether Prolitec is entitled to a judgment that ScentAir induced infringement under the doctrine of equivalents of claims 17 and 23 of the '004 Patent.

25.    Whether Prolitec is entitled to a judgment that ScentAir induced infringement under the doctrine of equivalents of claims 15-17 and 22 of the '976 Patent.

26.    Whether Prolitec is entitled to a judgment that ScentAir contributorily infringed under the doctrine of equivalents claims 17 and 23 of the '004 Patent.

27.    Whether Prolitec is entitled to a judgment that ScentAir contributorily infringed under the doctrine of equivalents claims 15-17 and 22 of the '976 Patent.

28.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 17 and 23 of the '004 Patent under § 271(f)(1) and the doctrine of equivalents.

29.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 15-17 and 22 of the '976 Patent under § 271(f)(1) and the doctrine of equivalents.

30.    Whether Prolitec is entitled to a judgment that ScentAir infringed claims 17 and 23 of the '004 Patent under § 271(f)(2) and the doctrine of equivalents.

31.     Whether Prolitec is entitled to a judgment that ScentAir infringed claims 15-17 and 22 of the '976 Patent under § 271(f)(2) and the doctrine of equivalents.

32.     If ScentAir is found to have infringed a valid claim, whether Prolitec is entitled to a permanent injunction from further infringement of claims 17 and 23 of the '004 Patent.

33.     If ScentAir is found to have infringed a valid claim, whether Prolitec is entitled to a permanent injunction from further infringement of claims 15-17 and 22 of the '976 Patent.

34.     If ScentAir is found to have infringed a valid claim, whether Prolitec is entitled to a judgment awarding reasonable royalties for infringement, and if so, the amount of such reasonable royalties.

35.     If ScentAir is found to have infringed a valid claim, whether Prolitec is entitled to a judgment awarding pre-judgment and post-judgment interest.

36.     Whether this is an exceptional case, in Prolitec's favor, and if so whether Prolitec is entitled to a judgment awarding attorneys' fees and costs under 35 U.S.C. § 285.

Exhibit 3P

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROLITEC INC.,

    Plaintiff,

v.

SCENTAIR TECHNOLOGIES, LLC,

    Defendant.

C.A. No. 20-984-WCB

**EXHIBIT 3P**

**PLAINTIFF'S STATEMENT OF ISSUES OF LAW
THAT REMAIN TO BE LITIGATED**

Plaintiff Prolitec, Inc. presents the following statement of issues of law that remain to be litigated. This statement is based on the current status of the case, and the Court's rulings to date. The following statement of law is not exhaustive, and Prolitec reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports.

To the extent that Plaintiff's Statement of Issues of Fact to be Litigated, set forth in PTO Exhibit 2P, contains issues of law those issues are incorporated herein by reference. Likewise, should the Court determine that any issue of law identified below is more appropriately considered issue of fact, Prolitec incorporates such issues by reference into PTO Exhibit 2P. By including a fact herein, Prolitec does not assume the burden of proof or production with regard to that fact. Prolitec reserves the right to revise this statement in light of the Court's rulings.

## I.    INFRINGEMENT

A patent grants the patentee the right to exclude others from by making, selling, using, importing, or offering to sell the patented invention anywhere in the United States. 35 U.S.C. § 154(a). Infringement can occur directly or indirectly. *See id.* §§ 271(a)-(c). In addition, infringement may occur through exporting components of an invention for combination outside of the United States. *Id.* § 271(f).

Infringement is a question of fact. *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013). To prove infringement, the patentee must show by a preponderance of the evidence, i.e., that it is more likely than not, that an accused product embodies all limitations of the claim either literally or under the doctrine of equivalents. *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). "A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient." *Martek BioSciences Corp. v. Nutrinova, Inc.*, 579 F.3d

1

1363, 1372 (Fed. Cir. 2009) (internal citations and quotations omitted); *Liquid Dynamics Corp. v. Vaughan Co.*, Inc., 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." (citation omitted)).

### A.    Direct Infringement

Direct infringement occurs when the accused infringer "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a).

Transactions that do not transfer title, such as leases and service contracts, constitute "sales" for the purposes of § 271(a) when "the transaction contemplates delivery and possession of a completed invention." *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 799 (S.D. Tex. 2009); *see Transocean Offshore Deepwater Drilling, Inc. v. Maesk Drilling U.S., Inc.*, 699 F.3d 1340, 1356-57 (Fed. Cir. 2012) (reversing noninfringement JMOL and thus rejecting reasoning that a contract for on-site drilling services with the infringing product was not a sale or offer for sale in *Transocean Offshore Deepwater Drilling, Inc. v. Maesk Drilling U.S., Inc.*, Civil Action No. H-07-2393, 2011 WL 2604769, at \*5 (S.D. Tex. June 30, 2011)); *Key Energy Servs. v. C.C. Forbes*, Civil Action No. 2:08-cv-346-CE, U.S. Dist. LEXIS 171753, at \*6-7 (E.D. Tex. May 24, 2011); *see also Minton v. Nat'l Ass'n of Sec. Dealers*, 226 F. Supp. 2d 845, 872-73 (E.D. Tex. 2002) (finding that lease of a patented telecommunications network and software program constituted a sale), *aff'd by, Minton v. NASD, Inc.*, 336 F.3d 1373 (Fed. Cir. 2003); *In re Kollar*, 286 F.3d 1326, 1330 n.3 (Fed. Cir. 2002) ("[A] commercial transaction arranged as a 'license' or a 'lease' of a product . . . may be tantamount to a sale . . . because the product is just as immediately transferred to the buyer as if it were sold." (internal quotations and citations omitted)).

An accused infringer directly infringes even if the infringing product was actually manufactured by an agent or independent contractor. *Pelligrini v. Analog Devices, Inc.,* 375 F.3d 1113, 1118 (Fed. Cir. 2004) ("[O]ne cannot escape liability for infringement as a manufacturer of infringing products simply by employing an agent or independent contractor to carry out the actual physical manufacturing") (citing *Crowell v. Baker Oil Tools, Inc*., 143 F.2d 1003, 1004 (9th Cir.), *cert. denied*, 323 U.S. 760 (1944) ("It is obvious that one may infringe a patent if he employ an agent for that purpose or have the offending articles manufactured for him by an independent contractor")).

A determination of direct infringement under 35 U.S.C. § 271(a) requires a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the court construes the claims at issue to define their scope and meaning as a matter of law. *See, e.g.*, *id.* at 979. Second, the evidence is examined to determine whether the claims as construed by the court are infringed by the accused instrumentalities, which is a question of fact to be decided by the jury. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008).

"Direct infringement has long been understood to require no more than the unauthorized use of a patented invention. . . . Thus, a direct infringer's knowledge or intent is irrelevant." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011). Moreover, an accused product that allegedly adds unclaimed features, performs additional functions, or carries out claimed functions in a more efficient manner does not negate or avoid infringement. *E.g.*, *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380 (Fed. Cir. 2001).

### 1.    Infringement Under the Doctrine of Equivalents

A product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the

accused product and the claimed elements of the patented invention. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. *Id.* at 24. Equivalency is assessed at the time of infringement, not the time of the patent's issuance. *Id.* at 37.

A party can show infringement under the doctrine of equivalents if every limitation of the asserted claim, including a limitation's "equivalent," is found in the accused product, where an "equivalent" differs from the claimed limitation only insubstantially. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). Infringement under the doctrine of equivalents is also proven where it is shown "on an element-by-element basis that 'the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'" *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016) (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). The patent itself need not "spell out a claim element's function, way, and result in order for the doctrine of equivalents to apply as to that element." *Intendis*, 822 F.3d at 1362. Furthermore, claims may recite preambles that define the environment in which a claim operates, such that an accused infringer may directly infringe even if they do not provide that environment. *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1373-75 (Fed. Cir. 2011).

One-to-one correspondence between components of the accused product and elements of the asserted claim is not required to establish equivalence. Two components of the accused product can be equivalent to a single element of the asserted claim. *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 123-26 (1877) (finding infringement where the accused product used two

4

different components to perform the same function as a single cutting component in the claimed invention); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) ("[T]wo physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, as long as no claim limitation is thereby wholly vitiated.").

However, the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994). The doctrine of equivalents also cannot render a claim limitation inconsequential or ineffective. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). If a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve. *Warner-Jenkinson*, 520 U.S. at 39 n.8.

### B.     Indirect Infringement

#### 1.     Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A party is liable for inducing infringement of a patent if:

> (a) the party took some action during the time the patent was in force intending to encourage or assist actions by others;

> (b) the party was aware of the patent and knew that the acts, if taken, would constitute infringement of that patent or the party believed there was a high probability that the acts, if taken, would constitute infringement of the patent but deliberately avoided confirming that belief; and

> (b) use by others of the party's product infringes one or more of the asserted claims of the patent.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1330 (Fed. Cir. 2016).

Induced infringement requires proof of direct infringement by a third party. *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). Induced infringement may be "based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material." *Power Integrations*, 843 F.3d at 1335. "Section 271(b), on inducement, does not contain the 'substantial noninfringing use' restriction of 271(c), on contributory infringement. Thus, a person can be liable for inducing an infringing use of a product even if the product has substantial noninfringing uses." *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l, Ltd.*, 887 F.3d. 1117, 1133 (internal citations and quotations omitted). A defendant's "good-faith" belief regarding patent validity is not a defense to a claim of induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 643-44 (2015).

### 2.    Contributory Infringement

35 U.S.C. § 271(c) states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Contributory infringement is predicated on direct infringement by another party. *Forest Lab'ys Holdings Ltd. v. Mylan Inc.*, 206 F. Supp. 3d 957, 974 (D. Del. 2016).

A component has no "substantial noninfringing use" if the component has no meaningful use other than to infringe the claims of a patent. *See, e.g.*, *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363-64 (Fed. Cir. 2006). When applying this standard to a separate and distinct component that is embedded into a larger package, the analysis must remain focused only

on whether the specific component—and not the entire package—is capable of substantial noninfringing uses. *See Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 524 (Fed. Cir. 2016) (compiling cases). Moreover, a use of the component that is hypothetical, "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental" does not quality as "substantial noninfringing use" under 35 U.S.C. § 271(c). *Vita-Mix Corp. v. Basic Holding, Inc.*, 582 F.3d 1371, 1327 (Fed. Cir. 2009); *see, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001).

### 3.    Infringement Under § 271(f)

35 U.S.C. § 271(f) imposes infringement liability on parties who export one or more components of a patented invention in a manner that facilitates combination of the component(s) outside of the United States that would constitute infringement but for being located outside of the United States. § 271(f)(1) applies when a substantial portion of the components of a patented invention is exported, while § 271(f)(1) applies when a single component of a patented invention is exported.

§ 271(f)(1) states:

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

Courts have deemed "all or a substantial portion of the components of the patented invention" a quantitative, rather than qualitative, assessment, and thus "a single component does not constitute a substantial portion of the components that can give rise to liability under § 271(f)(1)." *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 142, 146-151 (2017). The statute

does not require that an accused infringer "'actively induce' a third party to combine the components of the accused products to be liable under § 271(f)(1)." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 654 (Fed. Cir. 2017). Infringement may be found where the accused infringer "had the specific intent to combine the components itself." *Id.*

§ 271(f)(2) states:

Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such components are uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

Importantly, in contrast to §§ 271(b) and (c), direct infringement is not required to prove infringement under § 271(f). *See Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1367-68 (Fed. Cir. 2001). "If § 271(f)(2) required actual assembly abroad, then infringement would depend on proof of infringement in a foreign country. This requirement would both raise the difficult obstacle of proving infringement in foreign countries and pose the appearance of 'giving extraterritorial effect to United States patent protection.'" *Id.* (quoting *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 17 (Fed. Cir. 1984)).

## II.    INVALIDITY

Under § 282 of the Patent Act, patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Although the burden of proof for invalidity is always clear and convincing evidence, the finder of fact may give less weight to prior art references that were previously considered by the PTO. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F. 3d 1253, 1260-61 (Fed. Cir. 2012) ("[I]t may be

harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly, whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder.").

### A.    Prior Art

A party seeking to invalidate a patent has the burden under the Federal Rules of Evidence to show by clear and convincing evidence that the documents it intends to assert as prior art are authentic, admissible, and were publicly available before the relevant dates to qualify as prior art under 35 U.S.C. § 102. Fed. R. Evid. 803, 901 and 902. "Whether a reference is prior art is a question of law based on underlying factual questions." *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1367 (Fed. Cir. 2019). To demonstrate that an asserted reference is prior art to the asserted patent, the patent challenger "must prove, by clear and convincing evidence, that it predates the critical date." *ATEN*, 932 F.3d at 1368.

### B.    Anticipation

To show a patent is invalid as anticipated, a defendant must demonstrate, by clear and convincing evidence, "that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention." 35 U.S.C. § 102; *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). "[The] anticipating reference must be enabling." *Sanofi-Synthelabo*, 550 F.3d at 1082. "[I]nvalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). "There must be no difference between the claimed invention and the reference disclosure,

as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991), *overruled on other grounds by Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009).

Where a single device is described by multiple references from different authors at different times, those documents should be seen as "several prior art references with separate dates of creation, rather than a single prior art reference." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1351-52 (Fed. Cir. 2008). And where "[t]here is no evidence that the software programs and code were in existence at the same time or that they were combined in a single apparatus . . . [a] reconstructed interpretation of how [the device] might have been constructed does not constitute prior art for purposes of anticipation." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630, 2012 WL 2576136, *3 (N.D. Cal. July 3, 2012).

## III. PATENT REMEDIES

### A. Permanent Injunction

The Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To obtain an injunction under § 283, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant,

a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

### 1.    Irreparable Injury

"Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "The patentee's unwillingness to license the patented technology also weighs in favor of a finding of irreparable harm." *Evonik Degussa GmbH v. Materia, Inc.*, Civ. No. 09-636 (NLH/JS), 2017 WL 3434156, at *2 (D. Del. Aug. 10, 2017) (citing *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363-64 (Fed. Cir. 2012)).

### 2.    Inadequacy of Other Remedies

The nature of the competitive relationship between the parties, as well as the patentee's unwillingness to license the patented technology, also weigh in favor of a conclusion that the patentee has no adequate remedy at law. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) ("As the district court correctly observed, the issues of irreparable harm and adequacy of remedies at law are inextricably intertwined."). "Additionally, 'a patent holder's . . . engagement in lengthy litigation to protect [the] business decision,' [not to license the patented technology] as occurred here, also weighs in favor of finding the remedy at law inadequate." *Evonik*, 2017 WL 3434156 at *2 (quoting *Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharms. Inc.*, USA, 821 F. Supp. 2d 681, 694 (D.N.J. 2011)) (alterations in original).

### 3.    Balancing Hardships

Balancing the hardships between the parties "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd.*, 598 F.3d at 862. Factors that may be considered "include[ ] the parties' sizes, products, and revenue sources." *Id.* "A party cannot escape an

injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011); *Evonik*, 2017 WL 3434156 at *3. Furthermore, the balance of the hardships does not favor the defendant when "[a]ny harms Defendants may suffer as a result of an injunction 'were almost entirely preventable and were the result of its own calculated risk.'" *Sanofi-Aventis Deutschland GmbH*, 821 F. Supp. 2d at 695 (quoting *Sanofi-Synthelabo v. Apotex*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

### 4.    Public Interest

"[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. 'The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (quoting *Sanofi-Synthelabo*, 470 F.3d at 1383); *see also Sanofi-Aventis Deutschland GmbH*, 821 F. Supp. 2d at 696 ("If generic pharmaceutical companies were free to disregard patent rights and simply piggy back off the innovations of others, then the incentives the patent system is designed to promote, namely those that encourage continued investment in costly drug development, would disappear.").

### B.    Reasonable Royalty

Where a claimant meets its burden of proof on damages, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. 35 U.S.C. § 284. The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003). "Further section 284 is clear that expert testimony is not necessary to

the award of damages, but rather 'may [be] received…as an aid." *Id*. at 1382 (citing 35 U.S.C. § 284 (2000)).

The purpose of compensatory damages is to make the patent owner "whole" or "fully compensate" him for the infringement, such that the patent owner is restored to the financial position he would have been in had the infringement not occurred. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), *cert. denied*, 560 U.S. 935 (2010); *Rite- Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("[T]he Supreme Court has interpreted [Section 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement.") (emphasis in original).

"For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). The common approach to determining a reasonable royalty is to consider the outcome of a hypothetical arms-length negotiation between a willing licensor and licensee just before infringement began. *Lucent Techs.*, 580 F.3d at 1324-25. In other words, the reasonable royalty is "the royalty upon which the parties would have agreed had they successfully negotiated an agreement" at that time. *Id.* In applying the construct of the hypothetical negotiation, the fact-finder must assume that the patents-in-suit are valid, enforceable, and infringed. *See id.*

Courts consider a variety of factors in determining the reasonable royalty that the parties would have agreed to in the "hypothetical negotiation," outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). These include:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a

license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific*, 318 F. Supp. at 1120.

While the Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions and district courts have repeatedly applied the analysis, the factors are not exclusive, and some or all of the factors may be relevant to a particular case, depending on the facts of the case. *See, e.g.*, *Energy Transp. Gp., Inc. v. Sonic Innovations, Inc.*, C.A. No. 05-422 (GMS), 2011 WL 2222066, at *21 n.29 (D. Del. June 7, 2011); *Rite-Hite Corp.*, 56 F.3d at 1555; *Lucent Techs.*, 580 F.3d at 1325.

As described in *Georgia-Pacific*, there is no mathematical formula to determining reasonable royalties:

> [A] multiplicity of inter-penetrating factors bear[s] upon the amount of a reasonable royalty. But there is no formula by which these factors can be rated precisely in the order of their relative importance or by which their economic significance can be automatically transduced into their pecuniary equivalent. In discharging its responsibility as fact finder, the Court has attempted to exercise a discriminating judgment reflecting its ultimate appraisal of all pertinent factors in the context of the credible evidence.

*Georgia-Pacific*, 318 F. Supp. at 1120-21. "Any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs.*, 580 F.3d at 1325 (citing *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)). Similarly, in *Summit 6*, the Federal Circuit "recognized that estimating a reasonable royalty is not an exact science. The record may support a range of reasonable royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case.

Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination. That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible." *Id.*

Fundamentally, a reasonable royalty must be tied to the particular facts of the case, including the claimed invention and the accused products. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[A reasonable royalty] must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time.").

Although a patentee is only entitled to compensation for the incremental benefit provided by its invention, "[i]t is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages. . . . the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *accord Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Varian Med. Sys.*, 561 F. App'x 934, 947 (Fed. Cir. 2014) ("But if the claimed invention adds significant value to the conventional element(s), the damages award may reflect that value"). This is because, "[i]n practice, 'all inventions are for improvements; all involve the use of earlier knowledge; all stand upon accumulated stores of the past.'" *AstraZeneca*, 782 F.3d at 1338 (quoting *Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592, 593 (2d Cir. 1933)).

Improvements on conventional elements add substantial value when they are important to the invention's commercial viability. *See AstraZeneca*, 782 F.3d at 1339; *Solutran, Inc. v. U.S. Bankcorp*, Case No. 13-cv-02637 (SRN/BRT), 2018 U.S. Dist. LEXIS 220064, at \*52-53 (D. Minn. Dec. 11, 2018). In *AstraZeneca*, the court rejected the defendant's argument that the patented drug formulation using a subcoating that allowed the drug to be absorbed by the small intestine (where it is most effective) rather than the stomach was "only a minor, incremental improvement over the [conventional] active ingredient," and instead found that the formulation "substantially create[d] the value" of the drug due to its superior delivery. *AstraZeneca*, 782 F.3d at 1339. Similarly, the *Solutran* court found that "the patented method . . . created a novel combination that made it possible for [the infringer] to commercialize [the conventional element] for a segment of the retail market that had previously relied on more expensive and less desirable methods." *Solutran*, 2018 U.S. Dist. LEXIS 220064, at \*52-53.

"[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

### C.    Pre-Judgment and Post-Judgment Interest

"[P]rejudgment interest should ordinarily be awarded absent some justification for withholding such an award," and should be awarded from the date of infringement to the date of judgment. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983).

"Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999); 28 U.S.C. § 1961(a). Post-judgment interest is governed by regional circuit law. *Transmatic*, 180 F.3d at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993). Courts in this district

routinely award post-judgment interest in patent infringement cases. *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

### D.    Exceptional Case

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554; *see, e.g.*, *In re PersonalWeb Techs. LLC*, 85 4th 1148, 1144-63 (Fed. Cir. 2023) (finding an exceptional case where the party brought a case that was objectively baseless, frequently changed infringement positions, unnecessarily prolonged litigation post-claim construction, had an unreasonable position and conduct, and submitted inaccurate declarations). District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances based on a preponderance of the evidence. *Id.* at 554, 557. "[A] district court may award minimal or no fees after considering the amount of success to the prevailing party." *SSL Servs. LLC v. Citrix Sys. Inc.*, 769 F.3d 1073, 1087 (Fed. Cir 2014).

# Exhibit 3D

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**FOR THE DISTRICT OF DELAWARE**

PROLITEC INC.,

           Plaintiff, Counter-Defendant

v.

SCENTAIR TECHNOLOGIES, LLC,

           Defendant, Counter-Plaintiff

C.A. No. 20-984-WCB

**EXHIBIT 3D**

**SCENTAIR'S ISSUES OF LAW THAT REMAIN TO BE LITIGATED**

Defendant ScentAir Technologies, LLC ("ScentAir") presents the following issues of law that remain to be litigated. This statement is based on the current status of the case and the Court's rulings to date. ScentAir reserves the right to modify or supplement this statement in response to subsequent Court rulings and/or Prolitec's attempts to introduce different or additional issues of fact.

The following statement of law is not exhaustive and ScentAir reserves the right to prove any matters identified in the pleadings, interrogatory responses, and/or expert reports. ScentAir intends to offer evidence as to the issues of fact and issues of law identified in the Pretrial Order. ScentAir further intends to offer evidence to rebut evidence offered by Prolitec.

Should the Court determine that any issue identified here is more appropriately considered an issue of fact, ScentAir incorporates such issues by reference into its statement of issues of fact that remain to be litigated. To the extent that ScentAir's statement of issues of fact that remain to be litigated contains issues that the Court determines to be issues of law, those issues are incorporated herein by reference. ScentAir does not assume the burden of proof with respect to any of the below-listed issues of law.

## I.      INFRINGEMENT

Prolitec bears the burden of proving patent infringement by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). This requires Prolitec to show that it is more likely than not that ScentAir has infringed one or more of the asserted claims. *Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

Patent "infringement is a question of fact." *Apple, Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009)).

A.    **Direct Infringement**

To establish direct infringement, a patentee "must establish by a preponderance of evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citing *Advanced Cardiovascular Sys.*, 261 F.3d at 1336). A determination of infringement requires two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the disputed terms must be defined consistent with how those terms would be understood by a person of skill in the art. *Id.*; *Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Second, the evidence is analyzed to determine whether the accused product infringes by comparing the accused product to the properly construed claims. *Markman*, 52 F.3d at 97.

"One may not be held liable under § 271(a) for 'making' or selling' less than a complete invention." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F. 3d 1246, 1252 n.2 (Fed. Cir. 2000).

1.    **Doctrine of Equivalents**

When an accused product does not literally infringe a claim, it "may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997) (citation omitted). An element of the claimed invention is met under the doctrine of equivalents if an element in the accused product "performs substantially the same function in substantially the same way to obtain substantially the same result." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). The "role played by each element in the context of the specific patent claim . . . inform[s] the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different

from the claimed element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997).

The patentee must "provide particularized testimony and linking argument" as to whether the function, way, result test is met in order to support a finding of infringement under the doctrine of equivalents. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). A patentee cannot simply demonstrate "the equivalency of the accused products as a whole" without providing "any factual basis or expert testimony to support an object inquiry on an element-by-element basis." *Miken Composites LLC v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1340-41 (Fed. Cir. 2008) (internal quotation omitted). Instead, the patentee must present evidence on a "limitation-by-limitation basis." *Texas Instruments*, 90 F.3d at 1567. "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice. *Id*. "[W]ithout these requirements, the fact-finder has no analytical framework for making its decision and is 'put to sea without guiding charts when called upon to determine infringement under the doctrine [of equivalents].'" *Id*. at 1566-67 (citation omitted). In addition, "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Inline Connection Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417, 447-48 (D. Del. 2005).

"The doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *V-Formation v. Benetton Group SpA*, 401 F.3d 1307, 1313 (Fed. Cir. 2005) (internal quotations and citations omitted). Thus, "[i]t is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson*, 520 U.S. at 29. In other words, the doctrine of equivalents

"cannot be employed in a manner that wholly vitiates a claim limitation. *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys. Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) (citing *Warner-Jenkinson*, 520 U.S. at 29-30); *Deere & Co v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). The doctrine of equivalents cannot be used to expand a claim limitation to the point that it embraces a structure either explicitly or implicitly excluded from the claim. *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005).

A "device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995); *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1327 (Fed. Cir. 2013). Such an alteration cannot serve as a basis of infringement where doing so involves ignoring warnings in a user manual and using the product in a manner not specified. *Neonatal Prod. Grp., Inc. v. Shields*, 276 F. Supp. 3d 1120, 1142-44 (D. Kan. 2017). Nor can an alteration serve as a basis of infringement particularly where performing the alteration serves no "functional purpose not already accomplished by other means." *High Tech Med.*, 49 F.3d at 1555.

A patentee's infringement theory cannot "ensnare" the prior art, and the patent holder bears the burden of proving that its asserted range of equivalents does not do so. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323-24 (Fed. Cir. 2009). The patentee bears the burden of proving patentability of a hypothetical claim. *Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017). A patentee cannot "transfer the responsibility of defining the range of equivalents to which he is entitled to the district court." *Id.* at 1287.

## B.    Indirect Infringement

### 1.    Induced Infringement

"A finding of inducement requires both an underlying instance of direct infringement and a requisite showing of intent." *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005).  A party may only be found liable for inducement of infringement if it: (1) knew of the patent; (2) intentionally encouraged acts that constitute direct infringement; (3) knew or was willfully blind to the fact that the intentionally encouraged acts would constitute direct infringement; and (4) another party directly infringed the claim.  35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71 (2011); *Info-Hold v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) ("To prove inducement of infringement, the patentee must 'show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement.'") (citation omitted).  "The mere existence of direct infringement . . . , while necessary to find liability for induced infringement, is not sufficient for inducement." *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015).

"Inducement can be found where there is '[e]vidence of active steps taken to encourage direct infringement,' which can in turn be found in 'advertising an infringing use or instructing how to engage in an infringing use.'" *Id.* (citation omitted).  "But such instructions need to evidence 'intent to encourage infringement.'" *Id.* at 631 (citation omitted).  There must be a causal connection between an affirmative act of the alleged infringer and the direct infringement.  "To prove induced infringement, [a plaintiff is] required to show not only that [the defendant] intended to cause, but also that [the defendant] did in fact cause, [the direct infringer] to infringe the patents-in-suit." *Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *8 (Fed. Cir. Dec. 16, 2021).

- 5 -

## 2.     Contributory Infringement

Establishing a claim of contributory infringement requires the patentee show: (a) direct infringement of the patent by a third party; (b) the alleged contributory infringer sold, offered for sale, or imported within the U.S. a component of a patented product; (c) the component constitutes a material part of the claimed invention; (d) the component has no substantial, noninfringing use; and (e) the alleged infringer knew of the patent and knew that the component was especially made or adapted for use in an infringing product.  *See* 35 U.S.C. §271(c); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

## 3.     Infringement Under § 271(f)(1)

Section 271(f)(1) provides that:

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

If the exported components do not constitute all of the patented invention or a substantial portion of the patented invention, there can be no liability under § 271(f)(1).  Liability cannot be found when there is a lack of evidence that the accused infringer, rather than another subsidiary or third party, was the party supplying the components or causing the components to be supplied. *See Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 648 (E.D. Tex. 2017), *appealed on other grounds*, 914 F.3d 1310 (Fed. Cir. 2019).

## 4.     Infringement Under § 271(f)(2)

Section 271(f)(2) provides that:

> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part,

knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

To prevail on a claim under 35 U.S.C. § 271(f)(2), the patentee bears the burden of proving a lack of substantial non-infringing uses for the exported component. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012). Liability under § 271(f)(2) requires a showing that the defendant (i) intended the combination of components to occur outside the U.S., (ii) knew that the combination it intended was covered by a U.S. patent, and (iii) knew that the combination it intended would be infringing if it occurred in the United States. *WesternGeco LLC v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 749 (S.D. Tex. 2013), *aff'd*, 791 F.3d 1340, 1344 (Fed. Cir. 2015), *cert. granted, judgment vacated*, 136 S. Ct. 2486 (2016), *reinstated on relevant ground*, 837 F.3d 1358 (Fed. Cir. 2016).

## II.    INVALIDITY

The presumption that a patent is valid under 35 U.S.C. § 282 can be rebutted by clear and convincing evidence. *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014). After an accused infringer comes "forward with invalidating prior art," the burden shifts to the patentee to "show that the prior art does not actually invalidate the patent or that it is not prior art." *Research Corp. Tech., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010).

### A.    Anticipation

A patent challenger may challenge the validity of a patent based on prior-art products and systems. *See* 35 U.S.C. § 102(a)(1). The patent challenger may rely on physical prior art products combined with collections of documents describing the design and operation of those prior art products. *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 518-19 (D. Del. 2022); *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-cv-366, 2020 WL 3047989, at *6 (D. Del. June 8, 2020). The combination of the prior art device and collection of documents still constitutes

a single prior art reference, because it is permissible to "use several documents as evidence about how a single prior art system worked." *Brit. Telecomms.*, 2020 WL 3047989, at *6; *see also See IP Innovation LLC v. Red Hat, Inc.*, No. 2:07-CV-447, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010); *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024, 2016 WL 861065, at *2 (N.D. Cal. Mar. 5, 2016).

A claim is anticipated if "each and every limitation is found either expressly or inherently" in the prior art product or system. *See Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998). Extrinsic evidence can be considered to prove what is disclosed in the prior art product or system and educating the decision-maker as to what the prior art means to a person of ordinary skill in the art. *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1345 (Fed. Cir. 2018).

## III.    REMEDIES

### A.    Permanent Injunction

"[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and [] such discretion must be exercised consistent with traditional principles of equity . . . ." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). To obtain such injunctive relief, a patentee must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* "An injunction should not be granted lightly . . . because it is a 'drastic and extraordinary remedy.'" *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. 11-484-RGA, 2014 WL 4695765, at *3 (D. Del. Sept. 12, 2014) (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165 (2010)). "Indeed, if the plaintiff's injury can be adequately redressed with a less

severe remedy, 'recourse to the additional and extraordinary relief of an injunction' is not warranted." *Id.* (citation omitted).  Likewise, a plaintiff's general "assertion that the public interest favors a strong patent system . . . is insufficient to compel an injunction."  *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 6118447, at *13 (D. Del. Nov. 20, 2013) (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012)).

### B. Reasonable Royalty

Upon a finding that the accused product infringes, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  The "amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence."  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, the Federal Circuit has recognized that "one possible way to do [it] is through a proper analysis of the *Georgia-Pacific* factors.  *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018).  "The standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation.  *Id.* at 1349 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015)).  This hypothetical negotiation approach "tries, at best as possible, to recreate the ex ante licensing negotiation scenario and to describe the resulting agreement."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

When an infringing device includes "both patented and unpatented features," a reasonable royalty must be calculated based on the value added by such [patented] features."  *Ericsson, Inc.*

*v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  A patentee cannot assess damages on the entire market value of the accused product unless "the patented feature creates the basis for customer demand or substantially creates the value of the component parts."  *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) (emphasis added).  "It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of the [overall product]."  *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).  "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."  *Ericsson*, 773 F.3d at 1226; *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("[T]he question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone.").

In determining a reasonable royalty, "the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  "Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *Id.*  Any evidence offered to support a reasonable royalty "must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).  Experts cannot be "a black box into which data is fed at one end and from which an answer emerges at the other." *GPNE Corp. v. Apple, Inc.*, No. 12-02885, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) (internal quotations omitted) (citation omitted).

"[T]here must at least be enough evidence in the record to allow the factfinder to formulate a royalty," and where there is not "enough evidence in the record to allow the factfinder to

formulate a royalty," then "plaintiffs are not entitled to collect any royalty . . . ." *Devex Corp. v. Gen. Motors Corp.*, 667 F.3d 347, 363 (3d Cir. 1981); *Ericsson*, 773 F.3d at 1226 ("A jury must ultimately apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features using reliable and tangible evidence."); *see also ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 522-23 (Fed. Cir. 2012) (affirming exclusion of plaintiff's damages expert and finding that the court had "sufficient basis to preclude [plaintiff] from presenting any evidence of damages at trial").

## C.    Pre-Judgement and Post-Judgment Interest

An award of prejudgment interest is not required whenever infringement is found. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983). However, prejudgment interest may be awarded on any award of damages. *See* 35 U.S.C. § 284.

"Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993).

## D.    Exceptional Case

Section 285 of the Patent act authorizes a district court to award attorneys' fees in patent litigation in exceptional cases. *See* 35 U.S.C. § 285. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The party seeking to recover attorneys' fees has the burden of proving their entitlement to such

fees by a preponderance of the evidence.  *Id.* at 557.  Courts determine whether a case is exceptional on a case-by-case basis by considering the totality of the circumstances.  *Id.* at 554.

# Exhibit 4

**JOINT TRIAL EXHIBIT LIST**                    Prolitec, Inc. v. ScentAir Technologies LLC, C.A. No. 20-cv-984-WCB

| JX | Description |
|---|---|
| 1 | Browne Dep. Prolitec Ex. 32, SCENTAIR_00015415 Native CAD model (unstamped) "1107-A001__Main Asm__8-21-19.STEP" |
| 2 | Screenshot of CAD drawing  Ex. 32 SCENTAIR_00015415 Browne Dep. Ex. 37 (stamped) |
| 3 | SCENTAIR_00014626 "How-to Replace the ScentAir Breeze Fragrance Cartridge.mp4" |
| 4 | Physical sample of ScentAir Breeze in box (Hultmark Dep. Ex. 51) |
| 5 | Physical sample of ScentAir Breeze in box (Hultmark Dep. Ex. 52), SVD4210B |

# Exhibit 5P

**PLAINTIFF PROLITEC'S TRIAL EXHIBIT LIST**                    Prolitec, Inc. v. ScentAir Technologies LLC, C.A. No. 20-cv-984-WCB

| PX | Bates Range | Description | Defendant's Objections |
|----|-------------|-------------|------------------------|
| 1 | | US Patent 9,162,004 | 106 |
| 2 | | US Patent 9,745,976 | 106 |
| 3 | PROLITEC00009210 - PROLITEC00009210 | Photo of Aera on Desk | 401/402, 403 |
| 4 | PROLITEC00008571; PROLITEC00008593 | Aera User Manual (excerpt) | |
| 5 | SCENTAIR_00016478 - SCENTAIR_00016517 | Andres Dep, Prolitec Ex. 10 (stamped), ScentAir product catalog - 2023 Q1/Q2 | |
| 6 | SCENTAIR_00004706 - SCENTAIR_00004708 | Andres Dep, Prolitec Ex. 11 (stamped), environmental scent service agreement | |
| 7 | SCENTAIR_00024029 - SCENTAIR_00024029 | Andres Dep, Prolitec Ex. 13, Native Spreadsheet (not stamped) SCENTAIR_00024029 internal price sheet | |
| 9 | SCENTAIR_00026184 - SCENTAIR_00026185 | Andres Dep, Prolitec Ex. 19 (stamped), Oct. 5, 2020 Email from L. Andres, New Marketing Flyers - Available Now For Sales | 403 |
| 10 | SCENTAIR_00026186 - SCENTAIR_00026187 | Andres Dep, Prolitec Ex. 20 (stamped), marketing flyer | 403, MIL |
| 11 | SCENTAIR_00026286 - SCENTAIR_00026287 | Andres Dep, Prolitec Ex. 21 (stamped), email: weekly update | 401/402, 403, MIL |
| 12 | SCENTAIR_00029269 - SCENTAIR_00029279 | Andres Dep, Prolitec Ex. 22 (stamped), June 25, 2020 Email from L. Andres to M. Howie, L. Grote, J. Darnley RE: Prolitec pics | 401/402, 403, MIL |
| 13 | SCENTAIR_00029663 - SCENTAIR_00029666 | Andres Dep, Prolitec Ex. 23 (stamped), May 11, 2020 Email from L. Andres to J. Darnley Re: Prolitec customer list? | 401/402, 403, MIL |
| 14 | SCENTAIR_00015510 - SCENTAIR_00015513 | Andres Dep, Prolitec Ex. 3 (stamped), Industrial Product Design Needs Overview | |

**PLAINTIFF PROLITEC'S TRIAL EXHIBIT LIST**

Prolitec, Inc. v. ScentAir Technologies LLC, C.A. No. 20-cv-984-WCB

| PX | Bates Range | Description | Defendant's Objections |
|----|-------------|-------------|------------------------|
| 15 | SCENTAIR_00070629 - SCENTAIR_00070811 | Andres Dep, Prolitec Ex. 8 (stamped), ScentAir Board of Directors Meeting 27 April 2020 | |
| 16 | SCENTAIR_00014628 - SCENTAIR_00014629 | Andres Dep, Prolitec Ex. 9 (stamped), product comparison overview | |
| 17 | PROLITEC00031852 - PROLITEC00031852 | April 2, 2020 Sward to Ansley - ScentAir announces new appliance | |
| 18 | PROLITEC00031856 - PROLITEC00031856 | April 2, 2020: Ansley internal chat to Prolitec execs, ScentAir announcement "introducing scentair breeze" | |
| 19 | PROLITEC00031855 - PROLITEC00031855 | April 2, 2020: Prolitec internal chat re introducing scentair breeze | |
| 20 | SCENTAIR_00001669 - SCENTAIR_00001669 | Breeze Bill of Material VD4200 | |
| 21 | SCENTAIR_00000005 - SCENTAIR_00000005 | Breeze Exploded View Lid and Air Intake | |
| 22 | SCENTAIR_00000005 | Browne Dep, Prolitec Ex. 42 (stamped) technical drawing, lid SCENTAIR_00000005 | |
| 23 | SCENTAIR_00000009 - SCENTAIR_00000031 | Browne Dep, Prolitec Ex. 56 (stamped) ScentAir Breeze User Manual | |
| 24 | SCENTAIR_00015510 - SCENTAIR_00015513 | Browne Dep. Prolitec Ex. 28 (stamped) Industrial Product Design Needs Overview | |
| 27 | PROLITEC00041796 - PROLITEC00041796 | Fragrance Oil, native spreadsheet PROLITEC00041796 SCENTAIR_00041805 (1).xlsx | |
| 28 | PROLITEC00041797 - PROLITEC00041797 | Fragrance Oil, native spreadsheet PROLITEC00041797 SCENTAIR_00038188 (1).xlsx | |

**PLAINTIFF PROLITEC'S TRIAL EXHIBIT LIST**                    *Prolitec, Inc. v. ScentAir Technologies LLC, C.A. No. 20-cv-984-WCB*

| PX | Bates Range | Description | Defendant's Objections |
|----|-------------|-------------|------------------------|
| 29 | PROLITEC00041799 - PROLITEC00041799 | Fragrance Oil, native spreadsheet PROLITEC00041799 SCENTAIR_00041872.xlsx | |
| 34 | PROLITEC00041780 - PROLITEC00041780 | Hultmark Test Video, PROLITEC00041780 1_18.mp4, Without funnel/collector (10s) | |
| 35 | PROLITEC00041781 - PROLITEC00041781 | Hultmark Test Video, PROLITEC00041781 1_21.mp4, Fully assembled (10s) | |
| 37 | PROLITEC00041783 - PROLITEC00041783 | Hultmark Test Video, PROLITEC00041783 1_14.mp4, Fully assembled (2.5s) | |
| 38 | PROLITEC00041784 - PROLITEC00041784 | Hultmark Test Video, PROLITEC00041784 1_17.mp4, Without funnel/collector (2.5s) | |
| 39 | SCENTAIR_00030318 - SCENTAIR_00030319 | Jan. 24, 2020 Email L. Andres to M. Howie and C. Byron, RE: ml/grams of oil in Breeze | |
| 44 | PROLITEC00018395 - PROLITEC00018465 | Prolitec Board of Directors Meeting: June 16, 2015 | 401/402, 403, 802 |
| 45 | PROLITEC00013978 - PROLITEC00013987 | Prolitec Engineering Requirements Document - Aura - Top Level - Rev3c | 401/402, 403, 802 |
| 46 | PROLITEC00013988 - PROLITEC00013997 | Prolitec Engineering Requirements Document - Aura - Top Level - Rev4a | 401/402, 403, 802 |
| 47 | SCENTAIR_00069045 - SCENTAIR_00069076 | ScentAir Breeze User Guide - V4.21 | |

Exhibit 5D

| DX | BEG. BATES | END BATES | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|---|---|
| 1 | | | Prolitec's Complaint (D.I. 001) | 402, 403 (MIL #2) |
| 2 | | | Prolitec's Infringement Chart for U.S. Patent No. 9,162,004 (D.I. 1-6) | 402, 403 (MIL #2) |
| 3 | | | Prolitec's Infringement Chart for U.S. Patent No. 9,745,976 (D.I. 1-8) | 402, 403 (MIL #2) |
| 4 | SCENTAIR_00028264 | SCENTAIR_00028293 | ScentAir Breeze User's Manual, Rev. 04.21 | |
| 7 | SCENTAIR_00014631 | SCENTAIR_00014632 | ScentAir Breeze Marketing Brochure | |
| 8 | SCENTAIR_00014557 | SCENTAIR_00014558 | ScentAir Breeze Spec Sheet | |
| 12 | | | Logan Andres Resume | |
| 13 | SCENTAIR_00015510 | SCENTAIR_00015513 | ScentAir Industrial Product Design Needs Overview | |
| 14 | PROLITEC00014721 | PROLITEC00014739 | U.S. Patent Pub. No. 2022/0160924 | 402, 403 |
| 15 | SCENTAIR_00022823 | SCENTAIR_00022824 | Email chain from L. Andres to M. Browne re SVC4200 collector images and design points | |
| 16 | SCENTAIR_00014483 | SCENTAIR_00014487 | Product Development Agreement for the Vertical Oil Scent Unit between Core Designs and ScentAir (signed on 2/8/2019) | |
| 17 | SCENTAIR_00014628 | SCENTAIR_00014629 | Product Comparison Overview | |
| 18 | SCENTAIR_00016478 | SCENTAIR_00016517 | ScentAir Product Catalog - 2023 Q1/Q2 | |
| 19 | SCENTAIR_00004706 | SCENTAIR_00004708 | ScentAir Environmental Scent Service Agreement between ScentAir and 10 Federal-Residences at Forestdale | |
| 20 | | | LinkedIn Profile for Matthew Ansley | |
| 22 | PROLITEC00014898 | | Q.2 from Consumer Survey on Mini Smart Demand | |
| 23 | | | LinkedIn Profile for Matthew Browne | |
| 24 | SCENTAIR_00015186 | SCENTAIR_00015187 | ScentAir Breeze CAD Cross-section | |
| 26 | | | Screenshot of CAD model (Browne Dep. Ex. 34) | |
| 27 | | | Screenshot of CAD model (Browne Dep. Ex. 36) | |
| 29 | SCENTAIR_00001659 | | ScentAir Drawing No. 30800098, Air Supply Nozzle, SVC4200, Rev. A1 | |
| 30 | SCENTAIR_00001660 | | ScentAir Drawing No. 30800094, Top, Collector, SVC4200, Rev. A1 | |
| 31 | SCENTAIR_00001665 | | ScentAir Drawing No. 30800100, Funnel, Grey, SVD4200, Rev. A | |
| 32 | SCENTAIR_00001666 | | ScentAir Drawing No. 30800100, Lid, SVD4200, White, Rev. A | |
| 33 | SCENTAIR_00015452 | | Core Design Document | |
| 34 | SCENTAIR_00000009 | SCENTAIR_00000031 | Original Manual for ScentAir Breeze, Rev. 3.13.20 | |
| 35 | | | Diagram of one-way street (Hultmark Dep. Ex. 46) | |
| 36 | | | Diagram of one-way street with 3 lanes (Hultmark Dep. Ex. 48) | |
| 37 | | | Morse CV - Exhibit A to the Opening Expert Report of Dr. Timothy Morse re Invalidity of the Prolitec Asserted Patents | |

| DX | BEG. BATES | END BATES | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|---|---|
| 40 | | | Physical sample of ScentAir ScentStream | |
| 41 | | | Physical sample of ScentAir ScentDirect | |
| 42 | | | Physical sample of Air Berger ScentBox (A20 version) | 402, 403 |
| 43 | | | Physical sample of Air Berger ScentBox (A14 version) | 402, 403 |
| 44 | | | Physical sample of ScentAir Breeze Device in packaging with all box contents | |
| 45 | | | Physical sample of ScentAir Breeze Cartridge in packaging with all box contents | |
| 46 | | | Physical sample of ScentAir Breeze User Manuals | |
| 47 | | | Enlargement of Figure 7 of U.S. Patent No. 9,162,004 (Hultmark Dep. Ex. 53) | |
| 48 | | | CV of Kevin McElroy - Appendix A to the Responsive Expert Report of Kevin McElroy re Damages Relating to Prolitec Claims (McElroy Dep. | |
| 49 | | | Prolitec's Supplemental Response to ScentAir's Technologies First Set of Interrogatories Nos. 1-10 | |
| 50 | | | Prolitec's Second Supplemental Responses to ScentAir's First Set of Interrogatories Nos. 1-10 | |
| 51 | | | Prolitec's Third Supplemental Responses to ScentAir's First Set of Interrogatories (Nos. 1-10) | |
| 52 | PROLITEC00014303 | PROLITEC00014341 | Prolitec Project Aura Delta Concept Review (ACR) | |
| 53 | PROLITEC00008094 | PROLITEC00008096 | Prolitec Engineering Document for ScentAir Breeze, Rev. 1 | |
| 54 | PROLITEC00001521 | | Prolitec Org Chart | |
| 55 | PROLITEC00038861 | PROLITEC00038862 | Email chain from R. Weening to R. Bensinger re ScentAir Breeze | |
| 56 | PROLITEC00040273 | PROLITEC00040274 | SWOT Analysis - Sandra Barvaux | |
| 57 | PROLITEC00041504 | PROLITEC00041505 | Email from R. Weening to S. McArthur copying K. Marlin, Odysseusdealteam@dadco.com re Your feedback | |
| 58 | PROLITEC00041506 | PROLITEC00041565 | Prolitec Presentation - Provider of Best-In-Class Commercial Consumer Air Care - 03/2023 | |
| 59 | SCENTAIR_00035788 | SCENTAIR_00035791 | ScentAir Flyer Spec, Press Release - "ScentAir Breeze Next Generation Fragrance Consistency, Powerful Cloud-Connected Technology" | |
| 60 | SCENTAIR_00000007 | SCENTAIR_00000008 | ScentAir Breeze Brochure | |
| 61 | SCENTAIR_00014478 | | ScentAir Drawing of Top Collector SVC4200, Drawing No. 30800094, Rev. A1 | |
| 62 | SCENTAIR_00014481 | | ScentAir Drawing of Collector Complete, Without Fragrance, Drawing No. VC4200-Blank, Rev. C | |
| 63 | SCENTAIR_00014505 | SCENTAIR_00014521 | ScentAir SVD4200 Assembly Work Instructions | |
| 64 | SCENTAIR_00014634 | SCENTAIR_00014641 | ScentAir Breeze Overview Presentation | |

| DX | BEG. BATES | END BATES | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|---|---|
| 65 | SCENTAIR_00015221 | SCENTAIR_00015228 | Core Design Concept Development for ScentAir re C1Vertical Oil Unit | |
| 66 | SCENTAIR_00015230 | SCENTAIR_00015236 | Core Design Concept Refinements for ScentAir re R1Vertical Oil Unit | |
| 67 | SCENTAIR_00015986 | | Detailed Info View of Breeze Cartridge | |
| 68 | PROLITEC00011028 | | Prolitec Native Excel Spreadsheet - Feature Comparison Electric Diffusers and Key Features Key Competitors | |
| 69 | PROLITEC00035285 | PROLITEC00035341 | Prolitec Presenation - "Disrupting a $12 Billion Segment of the $16 Billion global Air Care Market with Technology Leadership and | |
| 72 | SCENTAIR_00001867 | SCENTAIR_00001883 | ScentStream Asssembly Instructions re SXC004-E-5L | |
| 73 | SCENTAIR_00001884 | SCENTAIR_00001889 | ScentStream SXD5020 Scent Delivery System Installation and Operation Instructions | |
| 74 | SCENTAIR_00001913 | SCENTAIR_00001916 | ScentAir Website 2012 | |
| 75 | SCENTAIR_00001917 | | ScentStream Technical Specs | |
| 76 | SCENTAIR_00001918 | SCENTAIR_00001928 | ScentDirect SDD-4004 Scent Delivery System Installation and Operation Instructions | |
| 77 | SCENTAIR_00001929 | | ScentDirect Technical Specs | |
| 78 | SCENTAIR_00015129 | | Image of Air/Q | |
| 79 | SCENTAIR_00015130 | | Marketing image of ScentBox | 402, 403 |
| 80 | SCENTAIR_00015131 | | Marketing image of individual ScentBox | 402, 403 |
| 81 | SCENTAIR_00015132 | | Zoomed in image of ScentBox | 402, 403 |
| 82 | SCENTAIR_00015134 | | Image of ScentBox A20 components | 402, 403 |
| 83 | SCENTAIR_00015135 | | Image of ScentBox A20 components | 402, 403 |
| 84 | SCENTAIR_00015136 | | Image of ScentBox A20 components | 402, 403 |
| 85 | SCENTAIR_00015137 | | Image of ScentBox A20 components | 402, 403 |
| 86 | SCENTAIR_00015140 | | Image of ScentBox A20 components | 402, 403 |
| 87 | SCENTAIR_00015142 | | Image of ScentBox A20 components | 402, 403 |
| 88 | SCENTAIR_00015144 | | Image of ScentBox A20 components | 402, 403 |
| 89 | SCENTAIR_00015146 | | Image of ScentBox A20 components | 402, 403 |
| 90 | SCENTAIR_00015150 | | Image of ScentBox A20 components | 402, 403 |
| 91 | SCENTAIR_00015154 | | Image of ScentBox A20 components | 402, 403 |
| 92 | SCENTAIR_00015518 | SCENTAIR_00015519 | Air Berger Leaflet - 2012 Prices | 402, 403 |
| 93 | SCENTAIR_00015520 | | ScentBox Pricing | 402, 403 |
| 94 | SCENTAIR_00015521 | SCENTAIR_00015550 | Master Acquisition Agreement of Air Berger | 402, 403 |
| 95 | SCENTAIR_00015557 | | ScenBox Invoice to Hong Kong Customer | 402, 403 |

| DX | BEG. BATES | END BATES | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|---|---|
| 96 | SCENTAIR_00015565 | SCENTAIR_00015574 | ScentBox Production Procedure | 402, 403 |
| 97 | SCENTAIR_00015590 | SCENTAIR_00015596 | KlipAir Purchase Agreement | 402, 403 |
| 98 | SCENTAIR_00015598 | SCENTAIR_00015603 | ScentBox Product Guidelines | 402, 403 |
| 99 | SCENTAIR_00015606 | | ScentBox Specifications | 402, 403 |
| 100 | SCENTAIR_00015630 | SCENTAIR_00015631 | ScentDirect Collector Assembly | |
| 101 | SCENTAIR_00015633 | | ScentDirect Collector Body | |
| 102 | SCENTAIR_00015634 | | ScentDirect Funnel Top | |
| 103 | SCENTAIR_00015635 | | ScentDirect Funnel Bottom | |
| 104 | SCENTAIR_00015637 | | ScentDirect Collector Top | |
| 105 | SCENTAIR_00015639 | | ScentDirect Nozzle | |
| 106 | SCENTAIR_00015641 | | ScentDirect Air Supply Nozzle | |
| 107 | SCENTAIR_00015646 | | ScentDirect Cartridge | |
| 108 | SCENTAIR_00015776 | SCENTAIR_00015788 | ScentDirect Installation and Operation Instructions | |
| 109 | SCENTAIR_00015791 | | ScentStream Collector Bottom | |
| 110 | SCENTAIR_00015792 | | ScentStream Nozzle | |
| 111 | SCENTAIR_00015793 | | ScentStream Funnel Top | |
| 112 | SCENTAIR_00015794 | | ScentStream Funnel Bottom | |
| 113 | SCENTAIR_00015795 | | ScentStream Collector Top | |
| 114 | SCENTAIR_00015797 | | ScentStream Funnel Assembly | |
| 115 | SCENTAIR_00015798 | | ScentStream Top Assembly | |
| 116 | SCENTAIR_00015800 | | ScentStream Collector Assembly | |
| 117 | SCENTAIR_00015916 | | ScentDirect Collector Top | |
| 118 | SCENTAIR_00015917 | | ScentDirect Nozzle | |
| 119 | SCENTAIR_00016057 | SCENTAIR_00016060 | Overview of cartridge design | |
| 120 | SCENTAIR_00019556 | SCENTAIR_00019557 | ScentBox Invoice 029335 | 402, 403 |
| 121 | SCENTAIR_00019558 | SCENTAIR_00019559 | ScentBox Invoice 029337 | 402, 403 |
| 122 | SCENTAIR_00019560 | | ScentBox Invoice 029357 | 402, 403 |
| 123 | SCENTAIR_00019561 | | ScentBox Invoice 032907 | 402, 403 |
| 124 | SCENTAIR_00019562 | | ScentBox Invoice 033040 | 402, 403 |
| 125 | SCENTAIR_00019563 | SCENTAIR_00019564 | ScentBox Invoice 033110 | 402, 403 |
| 126 | SCENTAIR_00019565 | | ScentBox Invoice 033752 | 402, 403 |

| DX | BEG. BATES | END BATES | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|---|---|
| 127 | SCENTAIR_00020342 | SCENTAIR_00020345 | Email chain re: Breeze shipping mishap | |
| 128 | SCENTAIR_00021189 | SCENTAIR_00021216 | Breeze User Manual Rev 1.0 | |
| 129 | SCENTAIR_00021231 | SCENTAIR_00021238 | Email chain re: Breeze freight and testing issue | |
| 130 | SCENTAIR_00021393 | | Breeze Collector Top Rev A1 | |
| 131 | SCENTAIR_00021445 | | Breeze Collector Top Rev C | |
| 132 | SCENTAIR_00021804 | SCENTAIR_00021815 | Email chain re: issues of ScentAir Breeze | |
| 133 | SCENTAIR_00021816 | SCENTAIR_00021817 | Breeze Field Installed Report | |
| 134 | SCENTAIR_00022359 | SCENTAIR_00022360 | Email chain re: Breeze product challenges | |
| 135 | SCENTAIR_00022549 | SCENTAIR_00022552 | Email chain re: leaking Breeze cartridges | |
| 136 | SCENTAIR_00022553 | | Attachment of leaking Breeze cartridge | |
| 137 | SCENTAIR_00022554 | | Attachment of leaking Breeze cartridge | |
| 138 | SCENTAIR_00022555 | | Attachment of Breeze cartridge box | |
| 139 | SCENTAIR_00022627 | SCENTAIR_00022628 | Email re: launch of Breeze | |
| 140 | SCENTAIR_00022807 | | Breeze leakage photo April 20, 2020 | |
| 141 | SCENTAIR_00028436 | SCENTAIR_00028443 | Email chain re: Breeze cartridges | |
| 142 | SCENTAIR_00033386 | SCENTAIR_00033390 | Email chain re: leaking Breeze cartridges | |
| 143 | SCENTAIR_00034167 | SCENTAIR_00034169 | Email chain re: leaking Breeze cartridges | |
| 144 | SCENTAIR_00034392 | SCENTAIR_00034393 | Email chain re: customer complaints due to leaking Breeze cartridges | |
| 145 | SCENTAIR_00037486 | | ScentAir Capabilities Deck | |
| 146 | SCENTAIR_00038553 | SCENTAIR_00038556 | ScentAir Breeze Questionnaire | |
| 147 | SCENTAIR_00077751 | SCENTAIR_00077755 | What is Scent Marketing Research | |
| 148 | | | U.S. Patent No. 11,730,846 | 402, 403 |
| 149 | | | U.S. Patent No. 9,162,004 (including Inter Partes Review Certificate) | 402, 403 (MIL #1) |
| 150 | | | U.S. Patent No. 9,745,976 (including Inter Partes Review Certificate) | 402, 403 (MIL #1) |

# Exhibit 6P

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROLITEC INC.,

              Plaintiff,

v.

SCENTAIR TECHNOLOGIES, LLC,

              Defendant.

C.A. No. 20-984-WCB

**EXHIBIT 6P**

**PLAINTIFF'S TRIAL WITNESS LIST**

Prolitec identifies the following fact and expert witnesses whom it will or may call in person at trial, excluding such rebuttal witnesses (who are not presently identifiable) as may be necessary.

This list does not constitute (a) a commitment that Prolitec will call any particular witness at trial, (b) a representation that any of the witnesses listed are available or will appear for trial, or (c) an agreement or acknowledgement that an instruction of any kind would be warranted if any witness listed below is not called at trial.

If any listed witness should prove to be unavailable at time of trial, Prolitec reserves the right to use such witness's deposition testimony as designated (see Exhibit 7P). Prolitec also reserves the right to (a) call any witnesses listed or called by ScentAir, (b) substitute witnesses, to the extent that the employment of any listed witness changes or the witness otherwise becomes unavailable for trial, (c) call additional witnesses to provide foundational testimony should ScentAir contest the authenticity or admissibility of any exhibit offered into evidence at trial; (d) call additional witnesses by deposition consistent with the designations provided as part of this pretrial order; and (e) amend its witness list in light of further rulings by the Court or any other changed circumstances.

## I.     FACT WITNESSES:

| Name | Will/May Testify | Live/Deposition |
|------|------------------|-----------------|
| Matthew Ansley | Will | Live |
| Nathan Sward | Will | Live |
| Logan Andres | Will | Live |
| Matthew Browne | May | Live |
| Richard Weening | May | Live/Depo |

## II.    EXPERT WITNESSES:

| Name | Will/May Testify | Live/Deposition |
|---|---|---|
| Marcus Hultmark | Will | Live |
| Robert Vigil | Will | Live |

# Exhibit 6D

## IN THE UNITED STATES DISTRICT COURT FOR THE
## FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,

              Plaintiff, Counter-Defendant

v.

SCENTAIR TECHNOLOGIES, LLC,

              Defendant, Counter-Plaintiff

C.A. No. 20-984-WCB

## EXHIBIT 6D

## SCENTAIR'S TRIAL WITNESS LIST

Defendant ScentAir Technologies, LLC ("ScentAir") identifies the following potential fact and expert witnesses whom it will or may call in person at trial. ScentAir may call individuals listed on Prolitec's trial witness list, as well as individuals necessary for rebuttal. ScentAir intends to cross-examine any witnesses Prolitec presents and reserves the right to adjust the order and manner in which it presents witnesses based on Prolitec's case.

This list does not constitute (a) a commitment that ScentAir will call any particular witness at trial, (b) a representation that any of the witnesses listed are available or will appear for trial, or (c) an agreement or acknowledgement that an instruction of any kind would be warranted if any witness listed below is not called at trial.

If any listed witness should prove to be unavailable at time of trial, ScentAir reserves the right to use such witness's deposition testimony as designated. ScentAir also reserves the right to (a) call any witnesses listed or called by Prolitec; (b) substitute witnesses, to the extent that the employment of any listed witness changes or the witness otherwise becomes unavailable for trial; (c) call additional witnesses to provide foundational testimony should Prolitec contest the authenticity or admissibility of any exhibit offered into evidence at trial; (d) call additional witnesses by deposition consistent with the designations provided as part of this pretrial order; and (e) amend its witness list in light of further rulings by the Court or any other changed circumstances.

## I.    FACT WITNESSES

| Name | Will/May Testify | Live/Deposition |
|------|------------------|-----------------|
| Logan Andres | Will | Live |
| Matthew Browne | Will | Live |
| Matthew Ansley | Will | Depo |

| | | |
|---|---|---|
| Nathan Sward | Will | Depo |
| Robert Graham | May | Live |
| Richard Weening | May | Live/Depo |

## II.    EXPERT WITNESSES

| Name | Will/May Testify | Live/Deposition |
|---|---|---|
| Timothy Morse | Will | Live |
| Kevin McElroy | May | Live |
| Marcus Hultmark | May | Depo |

# Exhibit 7P

**Prolitec Deposition Designations**                    Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00006:14 - 00007:01 | | | | | |
| 00008:12 - 00008:17 | | | | | |
| 00016:06 - 00017:16 | | 17:7-18:9 | | | |
| 00025:04 - 00025:05 | | | | | |
| 00025:18 - 00027:09 | | 27:10-27:11 | | | |
| 00027:15 - 00028:06 | | | | | |
| 00028:09 - 00028:24 | | 28:25-29:13, 29:15-30:1, 37:24-38:13, 38:19-38:22 | | 30:8-30:12 | |
| 00029:25 - 00030:07 | | 28:25-29:13, 29:15-30:1, 37:24-38:13, 38:19-38:22 | | 30:8-30:12 | |
| 00030:13 - 00031:07 | | | | | |
| 00031:10 - 00033:03 | | | | | |
| 00034:05 - 00036:01 | | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00036:11 - 00036:20 | | 37:24-38:13, 38:19-38:22 | | 36:21-36:23, 37:2-37:5, 38:23-38:25, 39:3-39:6, 39:11-40:16 | |
| 00041:03 - 00043:04 | | | | | |
| 00043:07 - 00043:13 | | | | | |
| 00043:20 - 00043:25 | | | | | |
| 00044:08 - 00044:18 | | 37:24-38:13, 38:19-38:22, 48:20-50:22, 56:4-57:5, 112:8-112:13, 113:12-15, 201:10-202:1 | | 57:6-57:19 | |
| 00044:21 - 00045:08 | | 37:24-38:13, 38:19-38:22, 48:20-50:22, 56:4-57:5, 112:8-112:13, 113:12-15, 201:10-202:1 | | 57:6-57:19 | |
| 00062:04 - 00062:21 | | 64:3-6, 69:22-69:24, 70:2-71:13 | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00062:24 - 00063:06 | | 64:3-6, 69:22-69:24, 70:2-71:13 | | | |
| 00069:01 - 00069:18 | | 69:22-24, 70:2-71:13 | | | |
| 00071:22 - 00073:05 | | | | | |
| 00073:07 - 00073:13 | | | | | |
| 00073:15 - 00073:21 | | | | | |
| 00074:06 - 00074:18 | | | | | |
| 00075:01 - 00075:22 | | | | | |
| 00076:06 - 00076:23 | | | | | |
| 00077:01 - 00077:01 | | | | | |
| 00077:03 - 00077:06 | | 77:7-77:13, 159:18-159:25, 160:6-160:23, 232:11-233:2, 239:7-239:24, 240:1-240:12 | | 160:1-160:5 | |
| 00096:15 - 00099:06 | | | | | |
| 00099:09 - 00101:02 | | 101:3-102:6, 102:13-103:3, 103:20-103:23 | | | |
| 00103:24 - 00104:03 | | | | | |
| 00105:08 - 00106:10 | | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| Prolitec Initial Designation | ScentAir's Objections to Prolitec's Designations | ScentAir Counter-Designations | Prolitec Objections to ScentAir's Counter-Designations | Prolitec's Counter-Counter Designations | ScentAir's Objections to Counter-Counter Designations |
| 00106:14 - 00107:13 | | | | | |
| 00107:16 - 00107:18 | | | | | |
| 00108:17 - 00109:11 | | 109:14-109:15 | | | |
| 00109:17 - 00110:02 | | | | | |
| 00113:16 - 00113:18 | | | | | |
| 00113:21 - 00114:09 | | | | | |
| 00114:11 - 00116:16 | | 116:21-116:22, 116:24-117:2 | | 117:4-117:7, 117:10-117:17 | |
| 00117:23 - 00120:22 | | | | | |
| 00120:25 - 00121:08 | | | | | |
| 00121:11 - 00122:02 | | | | | |
| 00122:04 - 00122:12 | | | | | |
| 00123:05 - 00124:02 | | 233:4-233:13 | | | |
| 00134:02 - 00134:07 | | | | | |
| 00134:12 - 00134:15 | | | | | |
| 00135:01 - 00136:20 | | | | | |
| 00160:06 - 00161:03 | | | | | |
| 00189:16 - 00191:01 | | 233:18-234:10 | | 234:11-234:17 | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00204:10 - 00205:24 | | 237:4-238:4 | | | |
| 00208:02 - 00208:18 | | | | | |
| 00208:20 - 00209:03 | | | | | |
| 00209:05 - 00211:16 | | | | | |
| 00211:20 - 00212:13 | 403, MIL | | | | |
| 00212:16 - 00212:20 | 403, MIL | | | | |
| 00212:22 - 00213:10 | 403, MIL | | | | |
| 00213:12 - 00213:25 | 403, MIL | | | | |
| 00214:06 - 00214:11 | 403, MIL | | | | |
| 00214:14 - 00214:14 | 403, MIL | | | | |
| 00214:20 - 00215:21 | 401/402, 403, 602 (as to 215:20-24), MIL | | | | |
| 00215:24 - 00215:24 | 401/402, 403, 602, MIL | | | | |
| 00216:05 - 00216:11 | 401/402, 403, 602 (as to 216:9-15), MIL | | | | |
| 00216:14 - 00217:03 | 401/402, 403, 602 (as to 216:9-15), MIL | | | | |
| 00217:06 - 00217:24 | 401/402, 403, MIL | | | | |
| 00218:01 - 00218:11 | 401/402, 403, MIL | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Andres, Logan  Vol. 1  - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00218:13 - 00219:02 | 401/402, 403, MIL | | | | |
| 00219:04 - 00219:10 | 401/402, 403, MIL | | | | |
| 00219:12 - 00220:06 | 401/402, 403, MIL | | | | |
| 00220:08 - 00220:24 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00221:02 - 00221:09 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00221:11 - 00221:13 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00221:15 - 00221:22 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00221:25 - 00222:08 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00222:11 - 00222:12 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00222:14 - 00222:22 | 401/402, 403, MIL | 238:5-238:17 | | | |
| 00222:25 - 00223:05 | 401/402, 403, 602 (as to 223:4-8), MIL | 238:5-238:17 | | | |
| 00223:08 - 00223:13 | 401/402, 403, 602, MIL | 238:5-238:17 | | | |
| 00238:05 - 00239:01 | 401/402, 403, MIL | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Browne, Matthew  Vol. 1  - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00007:17 - 00007:24 | | | | | |
| 00019:24 - 00022:17 | | | | | |
| 00023:14 - 00024:02 | | 24:16-25:15, 35:20-36:2, 36:25-37:4, 37:18-38:5, 38:19-39:3, 39:7-39:19, 39:22-40:17, 40:22-41:1 | | | |
| 00043:01 - 00043:11 | | 43:12-43:13, 43:15-43:22 | | | |
| 00044:18 - 00045:19 | | 48:4-48:7, 48:9-49:1 | | | |
| 00046:21 - 00047:05 | | | | | |
| 00051:23 - 00052:15 | | 49:17-50:4, 52:21-52:23, 51:25-52:2, 55:16-55:20, 56:5-56:10, 56:10-57:5, 61:19-61:22, 61:24-62:1, 62:9-62:10, 62:15-62:16, 63:2-63:4, 63:6-63:19, 68:15-69:6 | | 49:2-49:13, 49:15, 52:25-53:7, 53:9-53:15, 55:21-56:1, 56:3, 57:6-57:7, 57:9-57:18, 58:20-58:21, 58:25-59:3, 64:5-64:13, 64:15-65:7, 65:9-65:17, 65:19-65:20 | |
| 00078:04 - 00078:13 | | | | | |
| 00078:17 - 00078:17 | | | | | |
| 00079:04 - 00079:05 | | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Browne, Matthew  Vol. 1  - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00079:08 - 00080:25 | | | | | |
| 00110:19 - 00114:19 | | | | | |
| 00115:03 - 00116:10 | | | | | |
| 00116:12 - 00116:24 | | | | | |
| 00117:01 - 00117:05 | | | | | |
| 00119:23 - 00120:21 | | 120:22-123:7, 123:12-123:19, 128:14-128:19 | | 123:20-123:21, 128:20-129:3, 129:5-129:18 | |
| 00125:13 - 00125:15 | | 151:11-151:21, 152:13-154:5 | | 154:6-154:9, 154:11-154:13, 154:15-154:20, 154:22-155:1 | |
| 00125:18 - 00126:08 | | 151:11-151:21, 152:13-154:5 | | 154:6-154:9, 154:11-154:13, 154:15-154:20, 154:22-155:1 | |
| 00126:12 - 00126:15 | | | | | |

**Prolitec Deposition Designations**

Prolitec , Inc. v. ScentAir Technologies LLC , C.A. No. 20-cv-984-WCB

| Browne, Matthew  Vol. 1  - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **Prolitec Initial Designation** | **ScentAir's Objections to Prolitec's Designations** | **ScentAir Counter-Designations** | **Prolitec Objections to ScentAir's Counter-Designations** | **Prolitec's Counter-Counter Designations** | **ScentAir's Objections to Counter-Counter Designations** |
| 00167:07 - 00168:11 | | 169:7-169:13, 169:16-170:24, 171:1-171:9, 175:4-175:8, 176:19, 176:21-177:21, 177:23-178:14, 178:16-178:18, 181:4-181:8 | | | |
| 00184:10 - 00184:19 | | 168:13-169:1, 169:7-170:24, 171:1-171:16, 171:18-172:17, 172:21-173:12, 173:15-173:20, 173:23-175:11, 175:13-176:2, 176:4-176:19, 176:21-177:21, 177:23-178:14, 178:16-178:18, 180:18-180:25, 181:4-181:14, 181:16-181:23, 181:25-182:14, 182:16-182:23, 182:25-183:3, 183:5-183:14, 183:25-184:3 | | | |
| 00193:03 - 00193:24 | | | | | |
| 00216:06 - 00217:03 | | | | | |

# Exhibit 7D

**ScentAir's Deposition Designations**

| Ansley, Matthew - 05/05/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 4:23-4:24 | | | | | |
| 5:4-5:9 | | | | | |
| 5:18-5:22 | | | | | |
| 21:18-22:3 | | | | | |
| 24:14-24:17 | | | | | |
| 24:19-26:24 | | | | | |
| 31:14-32:4 | | 32:5-32:6 | | | |
| 32:7-32:21 | | | | | |
| 36:7-38:21 | | | | | |
| 39:11-39:24 | | | | | |
| 40:2-41:13 | | | | | |
| 43:25-44:13 | | 44:14-45:4 | | | |
| 45:5-45:16 | | | | | |
| 46:3-47:11 | | 47:12-48:13 | | | |
| 48:14-49:9 | | | | | |
| 60:2-60:4 | | | | | |
| 60:6-61:7 | | | | | |

**ScentAir's Deposition Designations**

| Ansley, Matthew - 05/05/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 65:16-66:6 | | | | | |
| 72:25-72:25 | | | | | |
| 73:4-73:11 | | | | | |
| 73:19-74:14 | | | | | |
| 74:24-75:20 | | | | | |
| 77:13-79:12 | | | | | |
| 83:16-85:9 | | | | | |
| 87:16-88:6 | | | | | |
| 99:16-99:17 | | | | | |
| 99:19-100:22 | | | | | |

**ScentAir's Deposition Designations**

| Sward, Nathan - 05/04/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 4:22-5:5 | | | | | |
| 18:24-19:19 | | 19:20-19:23 | | | |
| 20:5-20:12 | | | | | |
| 21:1-21:24 | | 21:25-22:4 | | | |
| 22:5-23:7 | | | | | |
| 23:24-24:17 | | | | | |
| 27:8-27:12 | | | | | |
| 27:15-27:18 | | | | | |
| 29:22-30:21 | | | | | |
| 31:3-31:18 | | | | | |
| 32:13-18 | | | | | |
| 37:15-37:17 | | | | | |
| 37:19-37:25 | | | | | |
| 38:2-38:12 | | | | | |
| 38:14-38:14 | | 38:15-38:20 | | | |
| 38:25-39:6 | | | | | |
| 41:14-42:3 | | | | | |
| 42:4-42:9 | | | | | |
| 42:13-42:16 | | 42:17-43:12 | | | |

**ScentAir's Deposition Designations**

| Sward, Nathan - 05/04/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 43:13-44:4 | | | | | |
| 54:8-55:18 | | | | | |
| 56:6-56:7 | | | | | |
| 59:4-60:14 | | | | | |
| 60:18-61:7 | | | | | |
| 61:21-62:3 | | | | | |
| 62:5-62:11 | | 62:13-62:16, 62:18-62:22, 62:25, 63:2-63:10, 63:12-63:15 | | | |
| 63:17-63:23 | | | | | |
| 63:25-65:15 | | | | | |
| 65:17-65:20 | | | | | |
| 78:8-78:19 | | | | | |
| 79:15-79:21 | | 79:11-79:14 | | | |
| 79:23-80:14 | | | | | |
| 80:18-80:25 | | | | | |
| 82:10-82:12 | | | | | |
| 82:18-83:19 | | | | | |

**ScentAir's Deposition Designations**

| Sward, Nathan - 05/04/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 86:2-88:22 | | | | | |
| 106:11-107:7 | | | | | |
| 108:7-109:13 | | 109:21-110:06 | | | |
| 109:15-109:20 | | 109:21-110:6 | | | |
| 110:7-111:21 | | | | | |
| 112:12-113:6 | | 113:9-113:23 | | | |
| 113:24-114:16 | | | | | |
| 114:21-115:19 | | | | | |
| 116:21-117:10 | | | | | |
| 119:25-121:1 | | 121:2-121:7 | | | |
| 123:10-123:10 | | | | | |
| 123:12-123:13 | | | | | |
| 123:17-126:19 | | 126:20-126:21, 126:23-127:2 | | 127:4-127:5 | |
| 127:6-127:10 | | | | | |
| 129:6-129:8 | | | | | |
| 129:10-129:16 | | | | | |
| 130:18-131:6 | | | | | |

**ScentAir's Deposition Designations**

| Sward, Nathan - 05/04/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 131:8-131:21 | | | | | |
| 131:24-131:25 | | | | | |
| 134:6-134:13 | | | | | |
| 134:18-135:3 | | | | | |
| 136:5-136:6 | | | | | |
| 136:9-136:10 | | | | | |
| 136:17-136:18 | | | | | |
| 136:20-137:13 | | | | | |
| 137:16-137:19 | | | | | |

**ScentAir's Deposition Designations**

| Weening, Richard - 05/09/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 7:3-7:11 | | | | | |
| 19:25-20:6 | | | | | |
| 21:2-21:5 | | | | | |
| 26:2-26:7 | | 26:8-26:16 | | 27:5-7 | |
| 34:7-34:15 | | 34:16-34:22 | | | |
| 34:23-35:6 | | | | | |
| 37:14-38:7 | | | | | |
| 42:10-42:18 | | | | | |
| 43:10-43:10 | | 43:15-43:23 | | | |
| 43:13-43:13 | | | | | |
| 45:3-45:14 | | | | | |
| 45:19-45:23 | | 45:24-46:03 | | | |
| 46:4-46:9 | | | | | |
| 77:24-78:25 | | | | | |
| 79:1-79:19 | | 79:20-79:25 | | | |
| 80:1-80:7 | | | | | |
| 89:6-90:8 | | | | | |
| 91:4-91:11 | | 91:12-92:7 | | | |

**ScentAir's Deposition Designations**

| Weening, Richard - 05/09/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 92:8-92:18 | | | | | |
| 114:8-115:24 | | | | | |

**ScentAir's Deposition Designations**

| Hultmark, Marcus - 08/18/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 6:17-6:18 | | | | | |
| 7:2-7:12 | | | | | |
| 11:11-11:11 | | 11:18-11:20 | | | |
| 11:14-11:16 | | | | | |
| 11:21-11:22 | | | | | |
| 11:25-12:1 | | 12:3-12:9 | | | |
| 12:11-12:12 | | | | | |
| 12:21-12:24 | | | | | |
| 13:2-14:22 | | | | | |
| 16:4-16:7 | | | | | |
| 16:11-16:14 | | | | | |
| 59:2-59:6 | | | | | |
| 88:25-92:17 | | | | | |
| 97:3-99:4 | | | | | |
| 101:17-103:17 | | | | | |
| 103:23-104:2 | | | | | |
| 105:15-106:16 | | 106:22-108:5 | | | |
| 108:11-110:24 | | 111:5-114:18 | | | |
| 133:21-133:24 | | | | | |

**ScentAir's Deposition Designations**

| Hultmark, Marcus - 08/18/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 134:3-136:10 | | | | | |
| 141:1-142:14 | | | | | |
| 157:9-157:17 | | | | | |
| 158:3-158:10 | | | | | |
| 159:9-159:25 | | | | | |
| 178:6-179:12 | | 176:22-178:5; 179:13-180:6 | | | |
| 180:7-180:20 | | 180:21-181:11 | | | |
| 181:12-181:15 | | | | | |
| 182:4-182:9 | | | | | |
| 185:20-186:7 | | 185:14-19 | | | |
| 191:14-191:17 | | | | | |
| 240:17-241:13 | | | | | |
| 241:24-242:11 | | | | | |
| 242:21-243:11 | | | | | |
| 243:16-243:19 | | | | | |
| 243:24-244:1 | | | | | |
| 244:9-245:2 | | 245:3-245:8 | | | |
| 245:9-245:13 | | 245:14-245:21 | | | |

**ScentAir's Deposition Designations**

| Hultmark, Marcus - 08/18/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 245:22-246:9 | | | | | |
| 246:11-247:15 | | 246:10 | | | |
| 248:7-248:9 | | | | | |
| 248:12-248:14 | | | | | |
| 248:16-248:20 | | 248:21-249:7 | | | |
| 261:3-261:5 | | | | | |
| 261:10-261:13 | | | | | |
| 262:20-264:1 | | | | | |
| 282:2-282:6 | | 281:16-281:24 | | | |
| 288:14-289:2 | | | | | |
| 289:16-290:10 | | 289:3-289:15, 290:11-290:13 | | | |
| 293:23-294:18 | | 294:19-294:24 | | | |
| 304:24-305:21 | | | | | |
| 306:22-307:2 | | | | | |
| 307:10-307:16 | | | | | |
| 310:22-310:25 | | | | | |
| 312:16-312:21 | | | | | |

**ScentAir's Deposition Designations**

| Hultmark, Marcus - 10/28/2022 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 5:10-5:17 | | 5:18-6:2 | | | |
| 58:11-58:25 | | 59:2-59:19 | | | |
| 59:20-60:20 | | | | | |
| 65:10-65:14 | | | | | |
| 93:17-93:20 | | | | | |
| 96:11-96:18 | | 96:19-97:5 | | | |

**ScentAir's Deposition Designations**

| Hultmark, Marcus - 11/18/2022 | | | | | |
|---|---|---|---|---|---|
| ScentAir's Initial Designation | Prolitec's Objections to ScentAir's Designations | Prolitec's Counter-Designations | ScentAir's Objections to Prolitec's Counter-Designations | ScentAir's Counter-Counter Designations | Prolitec's Objections to Counter-Counter Designations |
| 194:13-194:14 | | | | | |
| 239:22-239:25 | | | | | |
| 240:3-240:6 | | | | | |

**ScentAir's Deposition Designations**

| Andres, Logan - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 6:14-7:1 | | | | | |
| 16:6-17:16 | | | | | |
| 25:4-25:5 | | | | | |
| 25:18-26:11 | | 26:12-26:20 | | | |
| 26:21-27:11 | | | | | |
| 27:15-28:2 | | | | | |
| 28:17-28:21 | | 28:22-28:24 | | | |
| 28:25-29:13 | | | | | |
| 29:15-30:1 | | 30:2-30:12 | | | |
| 30:13-31:2 | | 31:13-33:3 | | | |
| 34:5-34:10 | | | | | |
| 34:23-35:14 | | | | | |
| 36:11-36:20 | | 36:21-36:23 | | | |
| 36:24-37:1 | | 37:2-37:5 | | | |
| 37:24-38:13 | | | | | |

**ScentAir's Deposition Designations**

| Andres, Logan - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 38:19-38:22 | | 38:23-38:25, 39:3-39:6, 39:11-40:16 | | | |
| 41:3-42:18 | | 42:19-43:4, 43:7-43:13 | | | |
| 48:20-50:22 | | | | | |
| 62:4-62:13 | | 62:14-62:18 | | | |
| 62:19-62:21 | | | | | |
| 62:24-63:6 | | 63:8-63:10, 63:13-64:2 | | | |
| 64:3-64:6 | | | | | |
| 69:1-69:14 | | 69:15-69:21 | | | |
| 69:22-69:24 | | | | | |
| 70:2-71:13 | | | | | |
| 75:1-75:22 | | | | | |
| 82:22-83:6 | | 83:7-84:20 | | | |

**ScentAir's Deposition Designations**

| Andres, Logan - 05/10/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 88:5-88:21 | | | | | |
| 88:23-89:8 | | | | | |
| 112:8-112:13 | | | | | |
| 113:12-113:15 | | | | | |
| 116:21-116:22 | | | | | |
| 116:24-117:2 | | | | | |
| 117:4-117:7 | | | | | |
| 117:10-117:17 | | 117:18-120:18 | | | |
| 120:19-120:22 | | | | | |
| 120:25-121:4 | | | | | |
| 123:9-123:17 | | 123:18-124:2 | | | |
| 201:10-202:1 | 402, 403 | | | | |
| 204:10-204:24 | | 204:25-205:5 | | 237:4-238:4 | |
| 205:6-205:24 | | | | | |
| 233:3-233:13 | | | | | |

**ScentAir's Deposition Designations**

| Browne, Matthew - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 7:18-7:24 | | | | | |
| 20:2-21:10 | | | | | |
| 24:16-25:15 | | | | | |
| 35:20-36:2 | | | | | |
| 36:25-37:4 | | | | | |
| 37:18-38:5 | | | | | |
| 38:19-39:3 | | | | | |
| 39:7-39:19 | | | | | |
| 39:22-40:17 | | | | | |
| 40:22-41:1 | | | | | |
| 43:2-43:22 | | | | | |
| 44:18-45:19 | | | | | |
| 46:25-47:10 | | | | | |
| 48:4-48:12 | | | | | |
| 48:9-49:1 | | 49:2-49:13, 49:15 | | | |
| 49:17-50:4 | | | | | |
| 51:23-52:15 | | | | | |
| 52:21-53:2 | | 53:4-53:7, 53:9 | | | |

**ScentAir's Deposition Designations**

| Browne, Matthew - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| ScentAir's Initial Designation | Prolitec's Objections to ScentAir's Designations | Prolitec's Counter-Designations | ScentAir's Objections to Prolitec's Counter-Designations | ScentAir's Counter-Counter Designations | Prolitec's Objections to Counter-Counter Designations |
| 53:11-53:15 | | | | | |
| 55:16-55:20 | | 55:21-56:1, 56:3 | 602 | | |
| 56:5-57:5 | | 57:6-57:7, 57:9-57:18 | | | |
| 59:5-59:7 | 402, 403 | 58:20-58:21, 58:25-59:3 | | 59:9-59:11 | |
| 59:9-59:11 | 402, 403 | | | | |
| 60:21-61:2 | 402, 403 | | | | |
| 61:4-61:4 | 402, 403 | | | | |
| 61:19-61:22 | | | | | |
| 61:24-62:10 | | | | | |
| 62:15-62:16 | | | | | |
| 63:2-63:4 | | | | | |
| 63:6-63:19 | | | | | |
| 64:17-65:7 | | | | | |
| 65:9-65:17 | | | | | |
| 65:19-65:20 | | | | | |
| 68:15-69:6 | | | | | |
| 72:15-73:3 | | | | | |
| 73:5-73:12 | | | | | |

**ScentAir's Deposition Designations**

| Browne, Matthew - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 78:7-78:13 | | | | | |
| 79:4-79:10 | | | | | |
| 79:12-80:25 | | | | | |
| 112:1-112:7 | | | | | |
| 113:21-114:9 | | | | | |
| 119:20-120:21 | | | | | |
| 120:22-123:7 | | | | | |
| 121:4-123:4 | | | | | |
| 123:12-123:19 | | 123:20-123:21 | | | |
| 128:14-128:19 | | 128:20-129:3, 129:5-129:19 | | | |
| 129:20-130:25 | 402, 403 | | | | |
| 134:8-134:9 | 402, 403 | 134:2-134:3, 134:6-134:7 | | 134:15-134:17, 134:19-134:25 | 402, 403 |
| 134:11-134:13 | | | | | |
| 135:1-135:9 | | | | | |
| 135:11-135:13 | | | | | |
| 149:5-149:8 | | | | | |
| 149:19-149:21 | | | | | |

**ScentAir's Deposition Designations**

| Browne, Matthew - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 149:23-150:1 | | | | | |
| 151:11-151:21 | | | | | |
| 152:13-154:5 | | 154:6-154:9, 154:11-154:13, 154:15-154:20, 154:22-155:1 | | | |
| 167:7-167:22 | | | | | |
| 168:1-168:24 | | | | | |
| 169:7-169:13 | | | | | |
| 169:16-170:24 | | | | | |
| 171:1-171:9 | | | | | |
| 171:13-171:24 | | | | | |
| 175:4-175:8 | | | | | |
| 176:19-176:19 | | | | | |
| 176:21-177:21 | | | | | |
| 177:23-178:14 | | | | | |
| 178:16-178:18 | | | | | |
| 179:18-179:19 | | | | | |
| 179:21-179:24 | | | | | |

**ScentAir's Deposition Designations**

| Browne, Matthew - 05/11/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 181:4-181:8 | | | | | |
| 214:4-214:23 | | | | | |
| 215:22-215:24 | | | | | |
| 216:1-216:2 | | | | | |

**ScentAir's Deposition Designations**

| Graham, Robert - 06/10/2023 | | | | | |
|---|---|---|---|---|---|
| **ScentAir's Initial Designation** | **Prolitec's Objections to ScentAir's Designations** | **Prolitec's Counter-Designations** | **ScentAir's Objections to Prolitec's Counter-Designations** | **ScentAir's Counter-Counter Designations** | **Prolitec's Objections to Counter-Counter Designations** |
| 7:6-7:20 | | 7:21-7:22 | | | |
| 7:23-8:13 | | | | | |
| 9:10-9:15 | | | | | |
| 9:22-10:1 | | 10:16-11:4 | | | |
| 11:5-11:17 | | 12:20-13:7, 13:11-14:10 | | | |
| 14:11-15:17 | | 15:19-17:3 | | | |
| 17:4-17:13 | | 17:14-19:4, 19:19-20:1, 20:22-21:6, 21:11 | | | |
| 22:22-23:20 | | 23:21-24:13, 24:16-25:14 | | | |
| 25:15-26:3 | | | | | |
| 28:22-29:22 | | 29:23-30:2 | | | |
| 35:10-36:23 | | | | | |
| 37:15-39:1 | | | | | |
| 39:2-39:11 | | | | | |

# Exhibit 8P

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PROLITEC INC.,

            Plaintiff,

v.

SCENTAIR TECHNOLOGIES, LLC,

            Defendant.

C.A. No. 20-984-WCB

**EXHIBIT 8P**

**PLAINTIFF'S STATEMENT OF INTENDED PROOFS AND RELIEF SOUGHT**

Plaintiff Prolitec submits the following brief statement pursuant to Local Rule 16.3(c)(8), of what Prolitec intends to prove in support of its claims at trial, including the details of the damages claimed or of other relief sought. Prolitec also reserves the right to provide additional proof to rebut any proof offered by Defendant ScentAir before or during trial, in response to rulings by the Court, or for any other good cause. By including an issue herein, Plaintiff does not assume the burden of proof or production with respect to that issue. Plaintiff incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

## I.    ISSUES ON WHICH PLAINTIFF BEARS BURDEN OF PROOF

### A.    Direct Infringement

1.    Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has directly infringed, literally and/or under the doctrine of equivalents, claims 17 and 23 of the '004 patent (the "'004 Patent Asserted Claims") by making, using, offering to sell, selling, and/or importing the Accused ScentAir Breeze product within the United States.

2.    Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has directly infringed, literally and/or under the doctrine of equivalents, claims 15, 16, 17, and 22 of the '976 patent (the "'976 Patent Asserted Claims") (together with the '004 Patent Asserted Claims, the "Asserted Claims") by making, using, offering to sell, selling, and/or importing the Accused ScentAir Breeze product within the United States.

### B.    Induced Infringement

3.    Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has induced infringement of the '004 Patent Asserted Claims by actively inducing others to use the Accused ScentAir Breeze product within the United States.

4.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has induced infringement of the '976 Patent Asserted Claims by actively inducing others to use the Accused ScentAir Breeze product within the United States.

### C.      Contributory Infringement

5.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has contributorily infringed the '004 Patent Asserted Claims by supplying one or more components of the Accused ScentAir Breeze product within the United States.

6.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has contributorily infringed the '976 Patent Asserted Claims by supplying one or more components of the Accused ScentAir Breeze product within the United States.

### D.      Infringement Under § 271(f)

7.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has infringed the '004 Patent Asserted Claims under § 271(f)(1) by supplying or causing to be supplied all or a substantial portion of the components of the Accused Breeze System from the United States to a foreign country.

8.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has infringed the '976 Patent Asserted Claims under § 271(f)(1) by supplying or causing to be supplied all or a substantial portion of the components of the Accused Breeze System from the United States to a foreign country.

9.      Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has infringed the '004 Patent Asserted Claims under § 271(f)(2) by supplying or causing to be supplied one or more components of the Accused Breeze System from the United States to a foreign country.

10.     Prolitec intends to prove, by a preponderance of the evidence, that ScentAir has infringed the '976 Patent Asserted Claims under § 271(f)(2) by supplying or causing to be supplied one or more components of the Accused Breeze System from the United States to a foreign country.

## II.    ISSUES OF LAW ON WHICH DEFENDANT BEARS BURDEN OF PROOF

11.     Prolitec intends to prove, to the extent necessary, introduce evidence to rebut each of ScentAir's affirmative defenses.

### A.    Invalidity of the Asserted Claims

12.     ScentAir contends that the Asserted Claims are invalid as anticipated by various purported prior art references. ScentAir bears the burden of proof on anticipation by clear and convincing evidence. Prolitec will introduce evidence, to the extent necessary, to rebut ScentAir's assertions.

13.     ScentAir contends that the Asserted Claims are patent ineligible under 35 U.S.C. § 112. ScentAir bears the burden of proof on this issue by clear and convincing evidence. Prolitec will introduce evidence, to the extent necessary, to rebut ScentAir's assertions.

## III.    DAMAGES AND RELIEF

14.     Prolitec intends to prove that it is entitled to a judgment that ScentAir directly infringed each Asserted Claim.

15.     Prolitec intends to prove that it is entitled to a judgment that ScentAir induced infringement of each Asserted Claim.

16.     Prolitec intends to prove that it is entitled to a judgment that ScentAir contributorily infringed each Asserted Claim.

17.     Prolitec intends to prove that it is entitled to a judgment that ScentAir infringed each Asserted Claim under § 271(f)(1).

18.     Prolitec intends to prove that it is entitled to a judgment that ScentAir infringed each Asserted Claim under § 271(f)(2).

19.     Prolitec intends to prove that it is entitled to a permanent injunction enjoining ScentAir, their officers, agents, servants, employees and attorneys, and other persons in active concert or participation with ScentAir, and their parents, subsidiaries, divisions, successors and assigns, from further infringement of the Asserted Claims.

20.     Prolitec intends to prove that it is entitled to damages resulting from ScentAir's infringement of the Asserted Claims in the form of a reasonable royalty. The minimum reasonable royalty for ScentAir's infringement as of April 1, 2020, is between $2.3 million and $2.8 million, not including pre- and post-judgment interest.

21.     Prolitec intends to prove that it is entitled to a judgment awarding pre-judgment and post-judgment interest.

22.     Prolitec intends to prove that it is entitled to a judgment awarding reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.

# Exhibit 8D

IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,

        Plaintiff, Counter-Defendant

v.

SCENTAIR TECHNOLOGIES, LLC,

        Defendant, Counter-Plaintiff

C.A. No. 20-984-WCB

**EXHIBIT 8D**

**<u>SCENTAIR'S BRIEF STATEMENT OF INTENDED PROOFS</u>**

Pursuant to Local Rule 16(c)(9), Defendant ScentAir Technologies, LLC ("ScentAir") submits the following brief statement of what ScentAir intends to prove as defenses. ScentAir also reserves the right to provide additional proof to rebut any proof offered by Plaintiff Prolitec Inc. ("Prolitec") before or during trial, in response to rulings by the Court, or for any other good cause. By including an issue herein, ScentAir does not assume the burden of proof or production with respect to that issue. ScentAir incorporates by reference its expert reports of any proof presented by expert testimony, as well as its Statements of Issues of Fact and Law That Remain to Be Litigated (Exhs. 2D, 3D).

## I.    ISSUES ON WHICH SCENTAIR BEARS THE BURDEN OF PROOF

### A.    Invalidity Under § 102

1.    ScentAir will prove, by clear and convincing evidence, that claims 17 and 23 of the '004 Patent are invalid under 35 U.S.C. § 102.

2.    ScentAir will prove, by clear and convincing evidence, that claims 15-17 and 22 of the '976 Patent are invalid under 35 U.S.C. § 102.

### B.    Requested Relief

3.    ScentAir will prove, by a preponderance of the evidence, that this is an exceptional case warranting ScentAir an award of its attorneys' fees and costs under 35 U.S.C. § 285, and if so, in what amount.

## II.    ISSUES ON WHICH PROLITEC BEARS THE BURDEN OF PROOF

### A.    Direct Infringement

4.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has directly infringed, under the doctrine of equivalents, claims 17 and 23 of the '004 Patent.

5.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has directly infringed, under the doctrine of equivalents, claims 15-17 and 22 of the '976 Patent.

**B.      Indirect Infringement**

6.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has actively induced infringement of claims 17 and 23 of the '004 Patent.

7.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has actively induced infringement of claims 15-17 and 22 of the '976 Patent.

8.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has contributorily infringed claims 17 and 23 of the '004 Patent.

9.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has contributorily infringed of claims 15-17 and 22 of the '976 Patent.

10.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has infringed claims 17 and 23 of the '004 Patent by supplying or causing to be supplied all or a substantial portion of the components of a patented invention.

11.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has infringed claims 15-17 and 22 of the '976 Patent by supplying or causing to be supplied all or a substantial portion of the components of a patented invention.

12.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has infringed claims 17 and 23 of the '004 Patent by supplying or causing to be supplied any component of a patented invention to a foreign country.

13.      ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir has infringed claims 15-17 and 22 of the '976 Patent by supplying or causing to be supplied any component of a patented invention to a foreign country.

## C.    DAMAGES AND RELIEF

14.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir directly infringed under the doctrine of equivalents any of the asserted claims.

15.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir induced infringement of any of the asserted claims.

16.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir contributorily infringed any of the asserted claims.

17.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir infringed any of the asserted claims under § 271(f)(1).

18.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim that ScentAir infringed any of the asserted claims under § 271(f)(2).

19.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claim to a permanent injunction against ScentAir.

20.    ScentAir will introduce evidence to rebut, to the extent necessary, Prolitec's claimed reasonable royalty damages.

21.    ScentAir will introduce evidence to rebut, to the extent necessary, that Prolitec is entitled to a judgment of pre-judgment and post-judgment interest.

22.    ScentAir will introduce evidence to rebut, to the extent necessary, that Prolitec is entitled to reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.