

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,                        §
                                      §
    *Plaintiff*,                      §
                                      §
    v.                                §        Civil Action No. 20-984-WCB
                                      §
SCENTAIR TECHNOLOGIES, LLC.,          §
                                      §
    *Defendant*.                      §
                                      §

## MEMORANDUM OPINION AND ORDER

The parties have filed a series of motions *in limine* and letter-brief motions regarding the admission of evidence at trial.  This order contains the court's rulings on those motions.

**1.  Plaintiff's Motion *in Limine* No. 1**

Following an *inter partes* review proceeding, the Patent Trial and Appeal Board canceled various claims of the two of the patents asserted in this case, U.S. Patent No. 9,162,004 ("the '004 patent") and U.S. Patent No. 9,745,976 ("the '976 patent").  Defendant ScentAir Technologies, LLC, has urged that the fact that the claims were canceled for invalidity should be allowed into evidence.  In its Motion in Limine No. 1, plaintiff Prolitec Inc. argues that ScentAir should be barred from introducing evidence that those claims have been canceled for invalidity.  Instead, Prolitec argues, the jury should simply be told that those claims are not asserted in this case.  Dkt. No. 258.

The motion is GRANTED IN PART and DENIED IN PART.  Prolitec is correct that it is unnecessary to inform the jury that the canceled claims were found invalid and canceled.  The canceled claims include claim 9 of the '004 patent and claim 9 of the '976 patent.  All of the claims asserted in this case depend from one or the other of those two independent claims.  Introducing

1

the fact of the invalidity of the two independent claims into evidence could mislead the jury into believing that because the dependent claims depend on the independent claims, the dependent claims are also presumptively invalid.

The invalidity of the unasserted claims is irrelevant to the issues in this case. And any effort to mitigate the risk of prejudice to Prolitec from disclosing that those claims have been held invalid would require excessive digression into the nature of *inter partes* review proceedings and the different standard of proof applied to invalidity inquires in *inter partes* review proceedings, as compared to district court proceedings. Accordingly, the jury will not be told that those claims have been held invalid. *See SPEX Techs. v. Apricorn, Inc.*, No. 16-7349, 2020 WL 1289546, at *1 (C.D. Cal. Jan. 21, 2020).

Based on similar reasoning, Prolitec argues that the two patents should be introduced into evidence without reference to the inter partes review certificates indicating that particular claims, including claim 9 of the '004 patent and claim 9 of the '976 patent have been canceled. ScentAir responds that introducing the patents by themselves could give the jury the mistaken impression that those two independent claims, although not being directly asserted, can nonetheless be treated as adding value to the claims that depend from them. I will therefore allow ScentAir to introduce evidence (in the form of the *inter partes* review certificates) that certain claims of the two patents have been canceled, but not to offer evidence or argument that the reason those claims have been canceled is that they have been held invalid. *See G.W. Lisk Co. v. Power Packer N.A., Inc.*, No. 4:17-cv-273, 2023 WL 3680079, at *1–2 (S.D. Iowa Apr. 13, 2023). As a consequence of this ruling, the exhibits containing the patents together with the *inter partes* certificates, DX-149 and

DX-150, will be admitted; the exhibits containing the patents without the *inter partes* review certificates, PX-1 and PX-2, will be excluded.[1]

In addition, to ensure that the jury does not attribute value to the features of the independent claims for purposes of assessing damages, I intend to instruct the jury that the inventions of the two claim 9s are in the public domain and that damages stemming from any infringement of the dependent claims must be confined to the value added by those claims, excluding the value associated with the independent claims. That is, Prolitec will be permitted to base its claim of damages only on the value contributed by the novel features set forth in the asserted dependent claims. *See* Dkt. No. 240 at 30.

### 2. Plaintiff's Motion *In Limine* No. 2

In its original complaint, Prolitec alleged that ScentAir's Direct and Stream products infringed claim 9 of each of the asserted patents. In its amended complaints, Prolitec removed that allegation. ScentAir wishes to offer Prolitec's original allegation as a judicial admission, or at least an evidentiary admission, that the Direct and Stream products contain all the limitations of claim 9 of each of the patents. ScentAir seeks to use that admission to bolster its invalidity case by showing that the Direct and Stream products contain all the limitations of claims 9 of the '004 and '976 patents.

In its Motion *in Limine* Number 2, Prolitec argues that because it superseded the original complaint, its allegations in that complaint cannot be treated as admissions. Dkt. No. 259. That motion is GRANTED.

---

[1] It is not necessary (and will not be permitted) for either party to elicit evidence regarding the details of either *inter partes* review proceedings in general or the *inter partes* review proceedings in this case.

Statements made in a superseded complaint are not binding judicial admissions.  As the Third Circuit stated in *West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013), "judicial admissions may be withdrawn by amendment."  *See also Schomburg v. Dow Jones & Co.*, 504 F. App'x 100, 104 (3d Cir. 2012); *InterGen N.V. v. Grina*, 344 F.3d 134, 144–45 (1st Cir. 2003) ("An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission.") (cleaned up).  ScentAir is therefore wrong in contending that Prolitec's statements in its superseded complaint is a judicial admission.

 That is not to say, however, that is statements made in pleadings—even superseded pleadings—have no effect.  Such a statement can serve as an evidentiary admission, even if it is withdrawn in a subsequent pleading.  *See West Run Student Housing,* "712 F.3d at 172–73 ("A superseded pleading may be offered as evidence rebutting a subsequent contrary assertion."); *see also Giannone v. U.S. Steel Corp,* 238 F.2d 544, 547 (3d Cir. 1956); *InterGen*, 344 F.3d at 144–45; *188 LLC,* 300 F.3d at 736; *Huey*, 82 F.3d at 333; *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.3d 705, 707 (2d Cir. 1989); *Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971).

The problem here is that there is an exception to that principle for legal conclusions.  As the Third Circuit noted in *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 316 (3d Cir. 2003), "legal conclusions may not be used as evidentiary admissions."  *See also Giannone*, 238 F.2d at

548; *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 299 n.5 (5th Cir. 2019); *Marrone v. GEICO Ins. Co.*, No. 20-cv-4405, 2021 WL 2681388, at *3 (E.D. Pa. June 29, 2021). The statement in Prolitec's initial complaint that ScentAir claims to be an admission is an allegation in the Infringement Claim Charts that are attached to Prolitec's initial complaint. The statement reads: "Defendant and Defendant's customers have directly infringed, and continue to infringe, at least claim 9 of the ['004 and '976 patents]" and that they have done so by "making using, selling and/or offering for sale in the United States, and/or importing into the United States without authority, the Accused Instrumentalities, such as the ScentAir Breeze, ScentAir Stream, ScentAir Direct, ScentAir Wave and other instrumentalities." Dkt. No. 1-1 at 95.

That statement is a conclusion of law. It therefore cannot be treated as an evidentiary admission. For that reason, ScentAir is not entitled to make evidentiary use of the withdrawn allegations in Prolitec's superseded complaint. The motion to exclude that portion of the superseded complaint is therefore GRANTED and DX-1, DX-2 and DX-3 are excluded.

### 3. Plaintiff's Motion *in Limine* No. 3

In its Motion *in Limine* No. 3, Prolitec asks the court to bar ScentAir from raising a particular challenge to Prolitec's doctrine of equivalents case. Prolitec anticipates that ScentAir will argue that Prolitec's position that the cartridge-lid combination is equivalent to the claimed "cartridge" would vitiate the court's construction of the term "cartridge." Prolitec's position is that in its opinion on ScentAir's summary judgment motion, the court addressed and rejected ScentAir's argument that Prolitec's doctrine of equivalents argument would vitiate the "cartridge" limitation as construed by the court. Dkt. No. 260. The motion is DENIED.

What the court decided in its summary judgment order was that factual issues remained as to Prolitec's claim of infringement under the doctrine of equivalents. In particular, the court held

that ScentAir had not made a showing that infringement under the doctrine of equivalents was foreclosed on the ground that such a theory would necessarily vitiate one of t he claim limitations.

Vitiation is a doctrine with a troubled history, and there is no need to introduce the difficulties attendant to that doctrine into this case. A familiar characterization of the rule against vitiation is that the patentee's theory of equivalency cannot be so broad as to eliminate a particular claim limitation entirely. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39 n.8 (1997). But that characterization is not easy to apply. By its nature, the doctrine of equivalents comes into play when a particular limitation is not met. The problem is in determining how much of a departure from the strict terms of the limitation is still within the doctrine of equivalents, and when the departure is so great that it can be said that the limitation has been "vitiated." *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 2005).

The most appropriate way to look at the vitiation doctrine, as the Federal Circuit has explained, is that it is

> not an exception not the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.' The proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or 'whether the substitute element matches the function, way, and result of the claimed element.' If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents.

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (citations omitted). In other words, if an asserted equivalent does not satisfy the ordinary "function-way-result" test or the "insubstantial difference" test for equivalence, application of the doctrine of equivalents would "vitiate" the claim limitation to which the asserted equivalent is directed.

In this case, the inquiry for the jury is simply whether the Breeze device contains features that are equivalent to the claimed features of the "cartridge" recited in claim 9 of the '004 patent and claim 9 of the '976 patent, as construed by the court. Prolitec is free to attempt to make that showing by demonstrating, for example, that the Breeze device contains components that perform the same function as the claimed cartridge, in the same way, and with the same result. Put another way, Prolitec is free to attempt to show that the differences between the asserted claims and the Breeze device are insubstantial. *See Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347–48 (Fed. Cir. 2013). And in so doing, the finder of fact is free to consider other evidence such as known interchangeability, copying, and designing around. *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996).

Just as Prolitec is free to offer evidence of equivalence, ScentAir is free to attempt to demonstrate that the required factual showing of equivalence has not been made. The evidence that is open to each side is evidence that is relevant to the question of equivalence. The court will not exclude some evidence on the ground that it could be viewed as directed to "vitiation." At the conclusion of the plaintiff's case or at the close of the evidence, the court may be called upon to evaluate whether the evidence is sufficient to justify, or compel, a finding of equivalence. But at this point, the court is not prepared to impose an amorphous limitation on the evidence the parties will be permitted to introduce on the ground that certain evidence is directed to vitiation and must be barred.

**4. ScentAir's Motion *in Limine* to Exclude Evidence or Argument About ScentAir's Competitive Intelligence Activities**

Prolitec proposes to offer into evidence documents showing ScentAir's commercial activities vis-à-vis Prolitec, including that ScentAir (1) ordered a Prolitec device to "tear down" or

inspect the device and proposed "[b]uilding a competitive plan to go on the offense" against Prolitec  (PX-11); (2) photographed a Prolitec device deployed in the field and compared the features of the ScentAir Breeze with the features of the Prolitec AirQ-100 (PX-12); and (3) ███

████████████████████████████████████ (PX-13).  ScentAir notes that Prolitec is not contending that ScentAir copied Prolitec's products.  For that reason, ScentAir argues, the evidence in those three exhibits is irrelevant.  In addition, because the jury might regard the evidence as casting ScentAir in a negative light, ScentAir argues that the evidence is potentially prejudicial and should be excluded under Federal Rule of Evidence 403.  Dkt. No. 263.  ScentAir's request that the evidence in dispute should be excluded is GRANTED IN PART and DENIED IN PART.

Prolitec responds that one of the considerations bearing on the issue of damages, and in particular on the hypothetical negotiation to determine a reasonable royalty, is whether the parties are competitors.  Evidence of an intensely competitive relationship, Prolitec argues, would drive up the reasonable royalty rate, because licensing a direct competitor would risk losing sales and market presence to the licensee.  *See Tyco Healthcare Grp. v. Ethicon Endo-Surgery, Inc.*, 936 F. Supp. 2d 30, 82 (D. Conn. 2013).

Prolitec is correct that evidence of competition between the parties is relevant to damages and that the evidence at issue in this case demonstrates that ScentAir is an aggressive competitor of Prolitec.  ScentAir points out that the product it sought to "break down" did not compete with ScentAir's accused Breeze product.  Prolitec correctly points out, however, that the focus of the inquiry is on whether the evidence in question shows a competitive relationship between the parties generally, not necessarily on whether the particular product addressed by the evidence is the

8

subject of the parties' competition.  The evidence in the three exhibits in dispute is therefore at least minimally relevant.

The critical question, however, is whether the probative value of that evidence outweighs its potentially unfair prejudicial effect.  I agree that the evidence in PX-13 of what could be viewed ████████████████████████ is potentially inflammatory and that its prejudicial effect substantially exceeds its probative value.  That exhibit will therefore be excluded under Federal Rule of Evidence 403.  The other two exhibits, PX-11, and PX-12, however, do not carry the same risk of prejudice, as the conduct discussed in those exhibits does not carry the same negative connotations as the conduct discussed in exhibit PX-13.  Those exhibits therefore will not be excluded.

The same reasoning applies to PX-9 and PX-10, which the court declined to rule on previously.  ScentAir's objections to those exhibits are overruled.  This reasoning also applies to various deposition designations.  The following designations related to PX-9–12, so ScentAir's objections to those designations are overruled: 211:20–212:13, 212:16–212:20, 213:12–213:25, 214:06–214:11, 214:14–214:14, 214:20–215:21, 215:24–215:24, 216:05–216:11, 216:14–217:03.  The following designations relate to PX-13, so ScentAir's objections to those designations are sustained: Andres deposition at 217:06–217:24, 218:01–218:11, 218:13–21902, 21904–219:10, 219:12–220:06, 220:08–220:24, 221:02–221:09, 221:11–221:13, 221:15–221:22, 221:25–222:08, 222:11–222:12, 222:14–222:22, 222:25–223:05, 223:08–223:13 and 238:05–239:01.

**5.  ScentAir's Motion *In Limine* to Preclude Evidence or Argument Attributing Patented-Claim Value to Scent Diffusion**

ScentAir contends that Prolitec's expert and fact witnesses should be barred from testifying about the benefits and value of "scent diffusion" generally and should be limited to testifying about

the benefits attributable to the inventions set forth in the asserted dependent claims.  According to

ScentAir, the testimony of Prolitec's expert Dr. Vigil will be improperly based in significant part

on value attributable to the invalidated claims, and not confined to the incremental value

contributed by the asserted dependent claims.  Dkt. No. 254.

Prolitec responds that "[s]ome of the asserted claims have value related to scent diffusion

that is incremental relative to the prior art and independent claims."  Dkt. No. 264 at 199.  That is,

Prolitec argues that the asserted claims have features that add to the effectiveness of the claimed

scent diffusion mechanism, and that it would be improper to preclude Prolitec from introducing

all evidence relating to scent diffusion value generally.  Prolitec adds that it does not intend to

introduce in its case in chief Dr. Vigil's opinions on the value of scent diffusion and other

categories of benefits as contained in paragraphs 58-72 of his opening report or paragraphs 27-32

or 39-51 of his reply report.[2]  *Id.* at 200.  Instead, Prolitec argues, its damages argument will be

limited to the incremental value and benefits associated with the asserted claims, not those

associated with the non-asserted independent claims.  *Id.* at 199.  Prolitec notes, for example, that

the vertical sidewall recited in claim 15 of the '976 patent results in improved particle refinement

(and thus improved scent diffusion) and that claim 17 of the '976 patent concerns the configuration

of the insert containing the tortuous passage, which results in benefits in the manufacture of a scent

diffusion device.  *Id.* at 199–200.  ScentAir's broad request to bar any evidence of relating to the

value of scent diffusion is therefore DENIED.

---

[2] Prolitec argues that if ScentAir were to open the door to Dr. Vigil's testimony on those issues through cross-examination or through ScentAir's damages expert, Dr. Vigil should not be precluded from testifying.  Dkt. No. 264 at 200.  While the scope of what Prolitec would regard as door-opening evidence is somewhat vague, that issue will have to be addressed, if needed, in the particular context in which it arises at trial.

### 6. **Prolitec's Request to Exclude a Prior Art Product Sample**

In letters filed on January 8, 2024, Dkt. Nos. 261 & 265, the parties disputed whether ScentAir should be permitted to introduce a physical sample of a 2014 Air Berger ScentBox, which was not produced to Prolitec during discovery. ScentAir represents that it had photographs of the 2014 ScentBox by September 21, 2023, which was the date on which ScentAir's Logan Andres prepared a declaration that included a photograph of the 2014 version of the ScentBox, which he identified as a 2014 version by reference to the designation A14 at the beginning of the device's serial number. Dkt. No. 224-10 at 3. Mr. Andres' declaration was served on Prolitec on September 25, 2023, along with ScentAir's response to Prolitec's motion for partial summary judgment. Dkt. No. 224. In that declaration, Mr. Andres stated that based on the photograph of the 2014 version of the ScentBox and other evidence, he concluded that there were no changes in the ScentBox between the 2014 version and the 2020 version that he had inspected and that had been produced to Prolitec. Dkt. No. 224-10 at 4. In the declaration, Mr. Andres stated that he had instructed that the 2014 sample, which was then in France, be sent to him and that upon receipt of the sample he would physically compare it to the 2020 sample he had previously obtained. *Id.*

We have not been told when Mr. Andres received the 2014 ScentBox sample from France. What we do know is that ScentAir did not promptly produce the ScentBox or inform Prolitec that the 2014 ScentBox sample was available for inspection. Rather, the first reference to the 2014 ScentBox to which Prolitec was privy came on December 15, 2023, when ScentAir served its trial exhibit list on Prolitec. The exhibit list included both DX-42, the 2020 version of the ScentBox (which was identified in the exhibit list by the designation A20) and DX-43, the 2014 version of the ScentBox (which was identified in the exhibit list by the designation A14). In its objections to ScentAir's exhibits, Prolitec objected to DX-42 and 43 only on grounds of relevance under Federal

Rules of Evidence 402 and 403.  DX-42 and 43 are critical to ScentAir's anticipation argument, so Prolitec's relevance objections are overruled.  Prolitec did not object to DX-43 based on its non-production by ScentAir.  Nor did Prolitec raise any additional grounds of objection to the exhibit at the meet and confer held by the parties on December 27, 2023.

At a subsequent meet and confer held on January 4, 2024, ScentAir represents that Prolitec for the first time raised the objection that DX-43 had not been timely disclosed to Prolitec.  At the informal hearing on exhibits and deposition declarations held that day, Prolitec again raised the issue of belated production.  At that point, because the parties had not previously advised me that there was an issue as to the untimely production of that exhibit, I directed that the parties promptly brief the question.

This is an issue that should have been resolved months ago, and certainly should not be lingering in the case a few days before trial.  Each party blames the other for the situation.  ScentAir contends that Prolitec was on notice as of September 25, 2023, that a sample of the 2014 ScentBox had been located in France; that Prolitec was on notice as of December 15, that ScentAir had a physical sample of the 2014 ScentBox and intended to introduce it into evidence; that Prolitec objected to the exhibit at that time only on Rule 402 and 403 grounds; and that on January 4, 2024, ScentAir offered to make the 2014 ScentBox available for Prolitec's inspection, an offer that Prolitec has not accepted.

For its part, Prolitec points out that it was never told that the sample of the 2014 ScentBox had been received by ScentAir from France.  Indeed, the record does not reflect when Mr. Andres received the sample that has been offered as DX-43.  Prolitec further contends that it was not clear as of December 15, when the exhibit lists were exchanged, that DX-43 was the 2014 ScentBox.

Because ScentAir's offer to allow the inspection of the 2014 ScentBox was not made until January 4, 2024, Prolitec argues that DX-43 should be excluded from evidence at trial.

Exclusion of critical evidence is "an extreme sanction." *Abbott Labs v. Lupin Ltd.*, No. 09-152, 2011 WL 1897322, at *3, 5 (D. Del. May 19, 2011).  In situations such as this, courts in the Third Circuit look to the so-called *Pennypack* factors to determine whether belatedly produced evidence should be excluded.   The *Pennypack* factors that a court should consider can be summarized as follows: (1) the degree of prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption of the trial schedule; (4) any bad faith or willfulness by the party that failed to comply with the disclosure rules; and (5) the importance of the evidence to the party offering it.  *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2ds 894, 904–05 (3d Cir. 1977).

The physical sample of the 2014 ScentBox is a potentially important piece of evidence. Without that evidence, ScentAir's invalidity case based on the ScentBox turns on the ScentBox 2020 and evidence that the 2020 ScentBox is identical to the earlier versions of the ScentBox, including the 2014 ScentBox.  Prolitec has indicated that it will challenge ScentAir's evidence that the ScentBox was not altered between 2014 and 2020; Prolitec's position is that ScentAir's invalidity case falls short, based on ScentAir's failure to introduce invalidating prior art itself and relying instead only on ScentAir's assertion that the ScentBox design was not altered between 2014 and 2020.

There is no doubt that ScentAir should  have produced the 2014 ScentBox or made it available for inspection as soon as ScentAir received the 2014 ScentBox from France.  And there is at least some prejudice to Prolitec from the belated disclosure of the 2014 ScentBox, based on the limited time remaining before trial for Prolitec to examine the physical exhibit.  On the other

hand, Prolitec is not entirely blameless in this affair.  It could have ascertained from the Andres declaration and the December 15, 2023, exhibit list that DX-43 was the physical sample of the 2024 ScentBox.  To be sure, drawing that inference would have required Prolitec to recall that the Andres declaration of September 21, 2023, identified the 2014 ScentBox by its serial number beginning with A14 and to note that DX-43 was identified as the ScentBox A14.  At minimum, it would have been prudent for Prolitec to inquire about what DX-43 actually was rather than simply objecting to that exhibit on relevance grounds, seemingly without focusing on knowing what it was they were objecting to.

Importantly, I believe that even though time is short for curing the prejudice, it is sufficient under the circumstances.[3]  The two ScentBoxes are not complex machines.  It should not be difficult for a person of skill in the art, or Prolitec's experts, to determine fairly quickly whether the 2014 ScentBox and the 2020 ScentBox are identical.  Given the shortness of time before trial and ScentAir's failure to produce the 2014 ScentBox in a timely fashion, Prolitec will be allowed to examine the exhibit if it so chooses and will not have to prepare an expert report or be subject to a deposition regarding the results of its examination.  Moreover, ScentAir will be required to provide access to the 2014 ScentBox in a manner convenient to Prolitec or its expert.

In sum, although ScentAir could have (and should have) produced the exhibit or made it available to Prolitec for inspection promptly upon receiving the exhibit, and although the late availability of the exhibit is at minimum inconvenient for Prolitec, it is my judgment that the failure to make the exhibit available for inspection before January 5, 2024, did not severely prejudice

---

[3] Prolitec contends that it has only 10 days between now and trial to examine the 2014 ScentBox.  However, given that ScentAir offered to make the ScentBox available to Prolitec for inspection as of January 5, 2024, the time allotted to Prolitec to conduct its examination should be counted from that date.

Prolitec.  Fundamentally, I conclude that it would be inappropriate to exclude the evidence altogether, particularly if, as appears likely, Prolitec chooses to challenge ScentAir's invalidity evidence on the ground that it is relying on a 2020 version of the ScentBox and has failed to show that the 2020 version of the ScentBox is the same as the 2014 version.  Taking into account all the circumstances of this case, the outcome sought by Prolitec—to exclude from evidence an exhibit that would give a potentially dispositive answer to that issue, and to keep that evidence from the jury—does not commend itself to the court.

Prolitec's motion is DENIED.

### 7. Prolitec's Request to Exclude the Breeze Patent

In letters filed on January 8, 2024, and January 10, 2024, the parties joined issue on whether ScentAir should be permitted to introduce ScentAir's U.S. Patent No. 11,730,846, which covers a portion of ScentAir's accused Breeze device ("the Breeze patent").  ScentAir proposes to offer that patent into evidence as DX-148.  Prolitec responds that the Breeze patent is irrelevant to the issues in this case and that admitting the Breeze patent into evidence would be confusing to the jury.  Dkt. No. 262.  ScentAir argues that the Breeze patent is relevant to rebutting Prolitec's doctrine of equivalents argument and to the reasonable royalty analysis.  Dkt. No. 272.

ScentAir's reasonable royalty argument is that the Breeze patent suggests that ScentAir has made improvements to the Breeze's fragrance cartridge and collector that should be taken into account when calculating a reasonable royalty.  This argument is unpersuasive because ScentAir's damages expert, Mr. McElroy, did not refer to the Breeze patent or any other alleged improvements made by ScentAir in evaluating damages.  There is thus no foundation for ScentAir's argument that the Breeze patent demonstrates that ScentAir has made such improvements.  Accordingly,

unless Prolitec affirmatively argues that ScentAir has not made any such improvements, the Breeze patent will not be admitted based on its purported relevance to the damages issue.

As for the doctrine of equivalents, a defendant's patent that protects an accused product is generally not relevant to the issue of infringement of another party's patent, because "the existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991); *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) ("[W]here defendant has appropriated the material features of the patent in suit, infringement will be found even when those features have been supplemented and modified to such an extent that the defendant maybe entitled to a patent for the improvement.").

Prolitec concedes that there is an exception to that general rule for instances in which infringement depends on the doctrine of equivalents. Specifically, Prolitec acknowledges that if a particular product is accused of infringement and that product is separately patented, the patent on that product may be relevant to a determination of whether the product is outside the reach of the doctrine of equivalents. The Federal Circuit has noted that the fact that an accused product is protected by a separate patent bears on an assertion of equivalence with respect to that product:

> We have not directly decided whether a device—novel and separately patentable because of the incorporation of an equivalent feature—may be captured by the doctrine of equivalents, although we have held that when a device that incorporates the purported equivalent is in fact the subject of a separate patent, a finding of equivalency, while perhaps not necessarily legally foreclosed, is at least considerably more difficult to make out. But there is a strong argument that an equivalent cannot be both non-obvious and insubstantial.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379–80 (Fed. Cir. 2007); *see also Zygo Corp. v Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of

the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial."). The theory of relevance with respect to the issue of equivalence is that the Patent and Trademark Office's grant of a patent covering the accused product tends to show that the differences between the accused product and the prior art, such as the asserted patents, is substantial. In sum, "[t]he fact of separate patentability is relevant [to the doctrine of equivalents analysis] and is entitled to due weight." *Nat'l Presto Indus., Inc. v. W. End Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996); *see also Glaxo Wellcome, Inc. v. Andrx Pharms., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003).

In order for the "doctrine of equivalents exception" to apply, as the cited cases explain, the defendant's patent must claim the same structure that the plaintiff asserts to be infringing under the doctrine of equivalents. In this case, Prolitec has made two doctrine of equivalents arguments. First, Prolitec argues that the Breeze cartridge-lid combination is equivalent to a removable cartridge. Second, Prolitec argues that the Breeze refill, which forms a tortuous passage when connected to the lid, is equivalent to a cartridge containing a tortuous passage. The Breeze patent depicts both the Breeze refill and the accused passage in its specification; however, it claims neither the geometry of the Breeze passage, nor the removability of the Breeze refill. Because the claims of the Breeze patent do not address the specific limitations at issue, the fact that the Breeze patent was issued is not evidence suggesting that those features are separately patentable. As such, the Breeze patent is of minimal relevance to the doctrine of equivalents issue in this case.

The minimal relevance of the Breeze patent does not justify the substantial risk of unfair prejudice to Prolitec from allowing the Breeze patent into evidence. Courts have long recognized that the introduction of evidence of an accused infringer's own patent carries with it substantial risks, a consideration that has frequently led courts to exclude such evidence. As the Supreme

Court said a century and a half ago, such evidence may "mislead the jury by withdrawing their attention from the real subject-matter in controversy." *Blanchard v. Putnam*, 75 U.S. 420, 425 (1869).  In particular, such evidence is "likely to create side issues" requiring the "introduction of counter-evidence." *Glaros v. HL.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986).  *See also Zimmer v. Stryker*, No. 16-679, 2019 WL 9244877, at *1 (D. Del. Mar. 15, 2019) (allowing introduction of the defendant's patent "would invoke many of the Rule 403 concerns, including having a mini-trial on the meaning and validity of the [defendant's] patent"); *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-1330, 2017 WL 5633204, at *1 (D. Del. Nov. 21, 2017) (Allowing the introduction of a defendant's own patents "could mislead the jury into believing that [the defendant's] patents give it the right to practice technology that is covered by those patents.").

With that said, I recognize that the scope of the dispute over the doctrine of equivalents arose late in the case and that there is still some uncertainty about the position the parties will take at trial on that issue.  It is possible that developments at trial on the issue of equivalence may render the Breeze patent more relevant.  If that occurs, ScentAir will be permitted to seek reconsideration of this order excluding the Breeze patent.  For the present, however, the Breeze patent will be excluded.

The same reasoning applies to the Breeze patent application, DX-14.  It also applies to the Browne deposition designations at 59:5–59:7, 59:9–59:11, 60:21–61:2, 61:4–61:4, 61:19–61:22, 129:20–130:25, 134:8–139:9, and 134:15–134:25, which discuss the Breeze patent and Breeze patent application.  Prolitec's objections to the exhibit and above designations are therefore sustained.

* * * * *

18

I previously declined to rule on one of the deposition designations with the understanding that it would be subject to a MIL; however, none of the MILs address it.  Prolitec objects to ScentAir's designation of the Andres deposition at 201:10–202:1, which pertains to third party scent diffusion devices.  These devices are relevant to the reasonable royalty analysis, so I will overrule Prolitec's objection to relevance on that issue.

Several of the parties' papers relating to the motions addressed in this order were filed under seal.  Although I am unaware of anything in the order that would justify sealing the order, in an abundance of caution I have temporarily filed this order under seal.  By Tuesday, December 16, 2024, the parties are directed to advise the court by email whether they wish any portions of the order to remain under seal and, if so, which portions.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED

SIGNED this 12th day of January, 2024

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE