

**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Stephanie E. O'Byrne
Stephanie.OByrne@dlapiper.com
**T** 302.468.5645

January 16, 2024

**PUBLIC VERSION OF D.I. 283**
**FILED: FEBRUARY 7, 2024**

<u>Via CM/ECF</u>
The Honorable William C. Bryson
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re: *Prolitec Inc. v. ScentAir Technologies, LLC*, C.A. No. 20-984-WCB (D. Del.),
<u>Motion to Exclude New Damages Theories and Related Evidence</u>

Dear Judge Bryson:

ScentAir moves for an order precluding new, previously undisclosed damages theories and testimony and evidence in support thereof. As raised in the parties' Proposed Final Pretrial Order, Prolitec failed to timely disclose its damages theories, any calculation of damages, and that its witnesses have information relevant to those new theories. D.I. 266 at ¶¶ 73-74. Following its successful motion to preclude Prolitec's damages expert's apportionment opinions, ScentAir is left in a worse position of having to shadowbox against Prolitec's shifting damages theories and facts and evidence that have never been properly disclosed, including evidence Prolitec may elicit from fact witnesses despite failing to disclose them as having information relevant to the <u>*value*</u> of the alleged benefits of the asserted claims. Though it is clear what Prolitec <u>*cannot*</u> offer vis-à-vis damages at trial—either because its theories are precluded by the Court's December 13, 2023 *Daubert* ruling (D.I. 240) or because Prolitec disclaimed such theories in its opposition to ScentAir's motion *in limine* (D.I. 264)—ScentAir has no notice of what damages case Prolitec *will* offer at trial. This is the very definition of "trial by surprise."

**Prolitec Has Not Disclosed Any New Damages Theories or Evidence.**

In its original Initial Disclosures, Prolitec's entire damages disclosure merely stated that "Prolitec will rely on a damages expert to compute damages. . . . Prolitec will produce or otherwise make available for inspection and copying the documents and/or other evidentiary material, not privileged or protected from disclosure, in its possession, custody, or control, on which its computation of damages is based." Ex. A at 6. Its First Amended disclosures do not contain any damages-related information at all, and its Second Amended Initial Disclosures are identical to the original disclosures. Exs. B-C. None of Prolitec's initial disclosures included a computation of damages as required by Rule 26. Fed. R. Civ. P. 26(a)(1)(iii) (requiring disclosure of "a computation of each category of damages claimed by the disclosing party"). Nor did Prolitec's



The Honorable William C. Bryson
January 16, 2024
Page Two

initial disclosures identify any witness as having information relevant to the computation of damages or the economic value of the asserted claims. *See generally* Exs. A-C.

During fact discovery, ScentAir served interrogatories seeking the "full factual, legal and numeric basis" of Prolitec's damages claims. *See* Ex. D at 8. Prolitec's original response punted the issue entirely to expert discovery. *Id.* at 8-9. Its first supplemental response stated merely that Prolitec "is entitled to no less than a reasonable royalty for ScentAir's use of the Prolitec Asserted Patents plus interest and costs fixed by the court," that its expert would determine what constitutes a reasonable royalty, and that such "determination will also be assessed *in light of* the *Georgia Pacific* factors." *Id.* at 9 (emphasis added). In its second supplemental response, Prolitec incorporated by reference Dr. Vigil's expert report—most of which has now been excluded by the Court or disclaimed by Prolitec. *Id.* at 10. In sum, Prolitec disclosed that it would rely *entirely* on Dr. Vigil for its damages case, included a threadbare recitation of the *Georgia-Pacific* factors as support for (but not the basis of) its damages case. Prolitec's interrogatory responses notably did not disclose any alternate damages theories or evidence, nor did it otherwise disclose any facts within the knowledge of any of its lay witnesses as supporting its damages claim. *Id.* at 8-10.[1]

In his expert reports, Dr. Vigil disclosed that he spoke with only one lay witness, Prolitec's Matthew Ansley, and relied on those statements as support for his opinions. But those discussions primarily related to how Prolitec prices its Aera product and otherwise confirmed that Prolitec has never licensed any of its IP before. *See, e.g.*, D.I. 220-21 at ¶¶ 69, 83, 89.[2] Though Dr. Vigil makes oblique mention that his "analysis of the incremental contribution of the Asserted Patents to the

---

[1] As discussed below, Dr. Vigil's *Georgia-Pacific* analysis was limited to determining what portion of the apportioned Breeze profits—calculated using a since-excluded methodology—would compensate Prolitec for the alleged harm. The *Georgia-Pacific* factors analysis is little more than an afterthought in Dr. Vigil's analysis, which Prolitec used to justify awarding the "upper end" of the range of supposed apportioned profits. D.I. 220-21 at ¶ 6. Such cursory analysis intended to be applied to a now-excluded apportionment cannot be supplanted as the entire basis for Prolitec's damages case. As the Court excluded Dr. Vigil's apportionment figure (D.I. 240 at 8), the question remains what will Prolitec proffer to support an apportionment of the Breeze profits to the incremental value of the asserted claims alone.

[2] How Prolitec prices its products is irrelevant to the incremental value of the asserted claims to the Breeze. Mr. Ansley undisputedly lacks any information about how ScentAir prices the accused Breeze product. And he is otherwise unqualified to opine on pricing or economic value determinations vis-à-vis the asserted claims. *See Activision Blizzard, Inc.*, No. 1:16-cv-00453-RGA, 2018 WL 5045186, *1 (D. Del. Oct. 17, 2018) (excluding lay witness testimony under Fed. R. Evid. 701 on the basis that the witness lacked relevant expertise to opine on royalty rate).



The Honorable William C. Bryson
January 16, 2024
Page Three

Accused Product is based" in part on his "discussions with Prolitec personnel" (*id.* at ¶ 58), his report does not disclose any particular facts disclosed in those discussions upon which his analysis is based. In any case, Prolitec has disclaimed the theories in this portion of Dr. Vigil's report. D.I. 264 (MIL Opp.) at 2 (disclaiming paragraphs 58-72 in Dr. Vigil's opening report and paragraphs 27-32 and 39-51 of his reply report).

Furthermore, in his deposition, Dr. Vigil disclosed for the first time his "commercial viability" theory—again, based on conversations with Mr. Ansley—that the whole value of the Breeze is attributable to the asserted claims, but these opinions were also excluded by the Court as not having been disclosed in either of Dr. Vigil's reports. D.I. 240 at 37-38. These opinions, and the facts underlying them, including facts within the possession of Mr. Ansley, were not disclosed anywhere else during fact discovery either. Prolitec clearly indicated that this analysis was squarely within the province of its experts under Federal Rule of Evidence 702; it cannot circumvent the Court's *Daubert* ruling by proffering the same undisclosed theories through fact witnesses instead. There is no basis to permit Prolitec to revive this theory at trial. As discussed further below, the failure to disclose these theories, facts, and relevant witness knowledge during fact discovery is sufficient to reason to exclude them from the trial. Fed. R. Civ. P. 37(c)(1).

Notably, nowhere in his report does Dr. Vigil indicate that any of his analysis is based on discussions with Prolitec's Nathan Sward. In fact, his report states that he only had discussions with Mr. Ansley. D.I. 220-21 at ¶ 11; D.I. 223-7 at ¶ 10. Yet, Prolitec argued that it is Mr. Sward who it now intends to proffer at trial in support of Prolitec's new, undisclosed damages theories and calculations. D.I. 264 (MIL Opp.) at 2 n.1.[3]

In its order denying ScentAir's motion *in limine* to preclude evidence of general "scent diffusion" value, the Court ruled in Prolitec's favor based on Prolitec's representation that fact witnesses will testify that "the vertical sidewall recited in claim 15 of the '976 patent results in improved particle refinement (and thus improved scent diffusion) and that claim 17 of the '976 patent concerns the

---

[3] Prolitec's new reliance on Mr. Sward for underlying facts regarding the economic value of the asserted claims is improper. In his deposition, Mr. Sward claimed to have information in interrogatory responses related to technical issues but not financial ones. Ex. E at 12:18-20 (not responsible for "business-related" deposition topics), 38:25-39:6 ("limited visibility in the [financial] numbers"). Regardless, Mr. Sward is not qualified to testify about highly complex economic matters for which he has no training or experience. *See Acceleration Bay v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, 2018 WL 5045186, *1 (D. Del. Oct. 17, 2018) ("An opinion on a reasonable royalty is necessarily based on specialized knowledge. Thus, because he is not serving as an expert, Mr. Garland's opinion that the appropriate reasonable royalty is 15.5% must be excluded.").



The Honorable William C. Bryson
January 16, 2024
Page Four

configuration of the insert containing the tortuous passage, which results in benefits in the manufacture of a scent diffusion device." D.I 273 at 10. Though evidence about certain *technical* benefits may arguably be within the province of its technical fact witnesses, lay opinion testimony beyond that, which wades into the economic value of such alleged improvements, would be improper for several reasons—not least of which is the fact that no Prolitec witness was disclosed as having information relating to patent claim value. With respect to Prolitec's apparent new theory based on manufacturing cost savings, Prolitec has never before disclosed any such damages theory or calculation (including in Dr. Vigil's reports), or the evidence that would support a cost-savings royalty. Setting aside that Prolitec's fact witnesses would be unqualified and unable to present competent, non-speculative testimony relevant to a cost-savings analysis, Prolitec simply cannot disclose such new theories and evidence for the first time at trial—whether through Dr. Vigil or any fact witness.

Finally, Prolitec's exhibit list contains no financial documents or other documents that could form the basis of an *economic* assessment of damages (nor does it include any documents identified in Prolitec's interrogatory response (*see* Ex. D at 9-10)). Thus, whatever Prolitec plans to have its lay witnesses testify to surely will not be supported by any documentary proof; it will only be the witness's say-so, and worse, say-so that is untested by any discovery in this case.

### Exclusion of Undisclosed Damages Theories and Evidence Is Warranted and Proper.

"Rule 26(a)(1)(A)(iii) and Rule 26(e) are designed to provide an accused infringer notice of the amount of claimed damages and the evidentiary material on which the plaintiff bases that damages amount." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031-RGA, 2021 WL 5356293, at *3 (D. Del. Nov. 17, 2021) (citation omitted). When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Though cases examining damages issues confirm that an aggrieved patentee is entitled to a reasonable royalty, courts have consistently found that the failure to disclose damages theories and evidence, including in Rule 26 initial disclosures, is a fair basis for exclusion of both fact and expert witness testimony. *See MLC Intell. Prop., LLC, v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021) (affirming district court's exclusion of expert opinions where the plaintiff failed to disclose during fact discovery "what it believed was an appropriate royalty rate, that it believed the Hynix and Toshiba licenses reflect a 0.25% royalty rate, and the extrinsic evidence on which [the expert] relied in support of his belief"); *NexStep, Inc.*, 2021 WL 5356293, at *2-3 (excluding new damages theories that arose after the plaintiff's expert's arbitrary apportionment was



The Honorable William C. Bryson
January 16, 2024
Page Five

excluded, finding the prior "piecemeal disclosure . . . did not meet the disclosure requirements of Rule 26(a)" because the plaintiff "failed to 'to tie each step of its calculation to the specific documents or other evidentiary materials that support it'"); *Acceleration Bay*, 2018 WL 5045186, at *1 (excluding fact witness testimony concerning royalty rate); *see also AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013) ("That reasonable royalty damages must be awarded if infringement is found, however, does not mean that the rules of evidence do not apply to proposed testimony."); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (plaintiff bears the initial burden of proving a reasonable royalty using legally sufficient evidence).

ScentAir is aware of no authority permitting a patentee to offer a completely new, undisclosed damages case at trial based on previously undisclosed facts. To the extent that courts have found that a patentee can put in its damages case through fact witnesses after the damages expert has been excluded, those cases usually involve anchoring testimony about (disclosed) prior licenses with an established royalty rate from which a jury could calculate damages. *See, e.g.*, *Intellectual Ventures I LLC v. Xilinx, Inc.*, C.A. No. 10-1065-LPS, 2014 WL 1573542, *2 (D. Del. Apr. 21, 2014) (finding existence of agreements sufficient to defeat failure of proof of damages summary judgment motion). No such evidence exists here. What Prolitec apparently seeks to do instead is offer vague, speculative, and undisclosed fact witness testimony about the incremental value of the asserted claims vis-à-vis the overbroad category of scent diffusion. *See* D.I. 264 (MIL Opp.) at 2 n.1.

But Prolitec never disclosed that Mr. Sward or any of its fact witnesses have evidence relevant to show the economic value of the asserted claims, let alone the expertise to present it as such. The failure to disclose such witnesses and the damages theories premised upon their testimony violates Prolitec's disclosure obligations under Federal Rule of Civil Procedure 26 and alone is grounds for exclusion under Rule 37(c)(1). Prolitec never provided its new damages claim in its Rule 26 disclosures—and *still* has not done so. The Federal Circuit has held in a patent case that district courts may, under Rule 37, properly preclude plaintiffs from relying on any computation or evidence of their damages claims beyond that provided in their initial disclosures or interrogatory responses. *See MLC Intell. Prop., LLC*, 10 F.4th at 1370-71. Exclusion is further warranted for failure to provide full discovery responses—including the full factual basis—to support a damages claim at trial. *Id.* at 1370-73; *NexStep, Inc.*, 2021 WL 5356293, at *2 ("It is not as though NexStep provided alternative damages theories, and the exclusion of one leaves another one to be litigated. NexStep simply has cobbled together a new theory using some parts of the old theory and some



The Honorable William C. Bryson
January 16, 2024
Page Six

parts that were previously ignored by both sides."). On this basis alone, Prolitec should not be permitted to offer any new, undisclosed damages theory.[4]

Finally, though Prolitec may argue that its entire damages case may properly be based on a *Georgia-Pacific* factors analysis, the problem with such contention here is that ScentAir still has no notice of any calculation or ultimate damages number that Prolitec may submit to the jury. Dr. Vigil's *Georgia-Pacific* analysis merely undertakes to determine whether each factor has a "neutral"/"no" impact or an "upward" impact on an ultimate royalty amount. *See generally* D.I. 220-21 at ¶¶ 82-121. Dr. Vigil's excluded opinions on apportionment precede, and indeed, are the starting point for his *Georgia-Pacific* analysis. Prolitec has not disclosed any other theories for how a jury could apportion profits to the incremental contribution of the asserted claims, and ScentAir remains in the dark about what analysis, theories, facts, or testimony Prolitec will use to support its damages case. This Court has found under similar circumstances that exclusion is warranted. *NexStep, Inc.*, 2021 WL 5356293, at *2, 2 n.1 (excluding new royalty rate and *Georgia-Pacific* analysis, noting that, "without expert testimony, there is no basis for a starting point to which an expert can apply the *Georgia-Pacific* factors. Without a starting point, talking about adjustments makes no sense."). Indeed, allowing a *Georgia-Pacific* analysis to proceed on an unapportioned royalty base (i.e., ScentAir's incremental profits) would run counter to longstanding Supreme Court and Federal Circuit precedent. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("The Supreme Court long ago observed that a patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative.").

---

[4] In *NexStep*, this Court ultimately determined that no viable damages theory remained: "I exclude from the trial all testimony and/or evidence solely offered to prove damages. I do not think any viable damages theory has been properly and timely disclosed. Thus, the jury coming in Monday will not consider damages." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, C.A. No. 19-1031-RGA, D.I. 363 (D. Del. Sept. 17, 2021).



The Honorable William C. Bryson
January 16, 2024
Page Seven

***Prolitec Should at the Very Least Be Required to Make a Proffer of its Damages Theories and Evidence.***

ScentAir is severely prejudiced by Prolitec's failures to disclose its damages theories and evidence in its initial disclosures or interrogatory responses and its continued failure to supplement those disclosures after the Court struck its damages expert's apportionment theories. It is far too late now, less than a week before trial, to remedy those failures. ScentAir already has been deprived of the opportunity to take "targeted discovery around the factual basis of [any new] theory." *NexStep, Inc.*, 2021 WL 5356293, at *3 (finding that the *Pennypack* factors also supported exclusion of undisclosed damages theories and evidence under Rule 37). There is no time left to depose fact witnesses, develop documentary evidence that would debunk these new theories, or to allow its expert to consider, test, or rebut any such theories. For example, if Prolitec disclosed its new cost-savings royalty theory during fact discovery, ScentAir could have developed evidence to show that ScentAir did not save costs. ScentAir's preparation of its fact and expert witnesses for trial is also significantly hampered by the lack of disclosure. Thus, if the Court is not inclined to grant the relief under Federal Rule of Civil Procedure 37(c)(1)—specifically, to preclude new, undisclosed damages theories and evidence in support thereof—then ScentAir respectfully requests that the Court, at a minimum, order Prolitec to make a proffer of its new damages theories it intends to introduce and the specific, non-speculative facts and evidence in support thereof, notwithstanding its continued aversion to disclosing its damages theories and evidence. *See* D.I. 266 at ¶ 75; *see, e.g.*, *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, C.A. No. 19-1031-RGA, D.I. 309 (D. Del. Sept. 15, 2021) (ordering pre-trial proffer of evidence on equitable issues).

Respectfully,

*/s/ Stephanie E. O'Byrne*

Stephanie E. O'Byrne (No. 4446)

cc:     All counsel of record (by CM/ECF)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROLITEC INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 20-00984-RGA |
| | ) | |
| SCENTAIR TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF PROLITEC INC.'S INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's October 1, 2020 Scheduling Order (D.I. 17), Plaintiff Prolitec Inc. ("Prolitec") hereby submits the following initial disclosures. Prolitec makes these initial disclosures based upon information reasonably known to Prolitec as of the date hereof, and based on information obtained to date and reasonably available to Prolitec. Prolitec's investigation is ongoing and, accordingly, Prolitec reserves the right to modify, amend, or otherwise supplement these disclosures, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, as additional information becomes available or appreciated during the course of this lawsuit or in the event that one or more of these witnesses becomes unavailable and others must be substituted.

Prolitec's disclosures are made without waving: (1) the right to object on the grounds of competency, privilege, relevance and materiality, hearsay or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

## A. PERSONS HAVING KNOWLEDGE OF RELEVANT FACTS

Prolitec identifies the following individuals likely to have discoverable information that Prolitec may use to support its claims or defenses, unless solely for impeachment. Individuals marked with a "*" should only be contacted through counsel for Prolitec:

| **Names and Contact Information** | **Description of Knowledge** |
|---|---|
| Matthew Ansley*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Executive Vice President and COO at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in U.S. Patent No. 9,162,004, U.S. Patent No. 9,480,767, and U.S. Patent No. 9,745,976 (collectively, "the Prolitec Patents") and the development, testing, and properties of the claimed inventions. |
| Richard Weening*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Chairman and CEO at Prolitec believed to have knowledge regarding Prolitec products, patenting, and other relevant sales and market information. |
| Nathan Sward*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Director of Engineering at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in the Prolitec Patents and the development, testing, and properties of the claimed inventions. |

| | |
|---|---|
| Andrew Williams<br><br>May be contacted through:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Believed to have knowledge about the conception and reduction to practice of the inventions claimed in U.S. Patent No. 9,480,767 and the development, testing, and properties of the claimed inventions. |
| Roger Bensinger*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Executive Vice President of Global Business Development at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |
| Danielle Leigh*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Vice President at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |
| Brandon Norberg*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768 | National Account Director at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |

| | |
|---|---|
| derek.mccorquindale@finnegan.com | |
| Dean Wilson*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Director of National & Strategic Accounts at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |
| Max Crabb*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Design Engineer at Prolitec believed to have technical knowledge of the subject matter of the asserted patents |
| Emily Junger*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Design Engineer at Prolitec believed to have technical knowledge of the subject matter of the asserted patents |
| Kirsten Pelkey*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800 | Quality Engineer at Prolitec believed to have technical knowledge of the subject matter of the asserted patents |

| | |
|---|---|
| Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | |
| One or more persons at Seed Intellectual Property Law Group LLP<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104-7064<br>(206) 622-4900 | Believed to have knowledge about the prosecution of the Prolitec Patents. |
| Past and/or present employees and agents of ScentAir Technologies, LLC knowledgeable about the research, development, manufacture, sales and distribution of ScentAir's commercial products. | Believed to have knowledge about the research, development, manufacture, sales and distribution of ScentAir's commercial products. |

Prolitec reserves the right to identify and call as witnesses at trial additional persons who become known to Prolitec and are knowledgeable regarding discoverable information that Prolitec may use to support its claims or defenses, provided such persons are known by or made known to ScentAir Technologies, LLC ("ScentAir") in some manner during discovery, including, for example, ScentAir's employees, agents, or attorneys who are likely to have discoverable information that Prolitec may use to support its claims or defenses, and any individuals named in ScentAir's Initial Disclosures.

## B. DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), based on information reasonably available to Prolitec at this time, Prolitec describes below by category and location the following documents, electronically stored information, and tangible things that are within Prolitec's possession, custody, or control, or are publicly available, and which Prolitec may use to support its claims or defenses, unless solely for impeachment:

1. The Prolitec Patents.

2. The prosecution history of each of the Prolitec Patents.

3. Documents and/or electronically stored information evidencing the conception and reduction to practice of the inventions claimed in each of the Prolitec Patents.

4. Documents and/or electronically stored information reporting test results and properties of the inventions claimed in each of the Prolitec Patents.

5. Documents and/or electronically stored information relating to the title, assignment, transfer, licensing, and assertion of the Prolitec Patents.

6. Documents and/or electronically stored information and tangible things relating to the infringement of the Prolitec Patents.

7. Documents and/or electronically stored information relating to sales and marketing of Prolitec products and ScentAir products infringing the Prolitec Patents.

8. Documents and/or electronically stored information relating to damages to Prolitec and lost profits related to Prolitec products.

## C. COMPUTATION OF DAMAGES

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Prolitec will rely on a damages expert to compute damages. Prolitec states that at this time, ScentAir has not provided sufficient detail or clarity as to the scope of its infringement and tortious conduct, and the actual amount of damages cannot be calculated without further discovery. Accordingly, the computation of damages will be deferred until the time for expert disclosures. Prolitec will produce or otherwise make available for inspection and copying the documents and/or other evidentiary material, not privileged or protected from disclosure, in its possession, custody, or control, on which its computation of damages is based. Prolitec reserves its right to challenge any damages calculation ScentAir offers and offer an opposing calculation.

## D. INSURANCE AGREEMENTS

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), Prolitec is unaware of any pertinent insurance agreements at this time. However, Prolitec reserves the right to supplement this disclosure if any pertinent insurance agreements are identified or determined to be relevant after further investigation.

*Of Counsel:*

J. Derek McCorquindale
Jency J. Mathew
FINNEGAN HENDERSON FARABOW
    GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700
derek.mccorquindale@finnegan.com
jency.mathew@finnegan.com

Dated: October 13, 2020

McCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Michael P. Kelly (#2295)
Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6300
mkelly@mccarter.com
blemon@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff Prolitec Inc.*

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROLITEC INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 20-00984-RGA |
| | ) | |
| SCENTAIR TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**PLAINTIFF'S PATENT INFRINGEMENT INITIAL DISCLOSURES**

Plaintiff Prolitec Inc. ("Prolitec") provides these initial disclosures to Defendant ScentAir Technologies, LLC ("ScentAir"), in accordance with Sections 3 and 4(a) of the Court's Default Standard for Discovery, Including Discovery of Electronically Stored Information. These disclosures are based on information reasonably available to Prolitec as of this date. Prolitec reserves the right to supplement or modify these disclosures as additional information becomes available, as its investigation continues, or through discovery in this action.

Prolitec's disclosures are made without waving: (1) the right to object on the grounds of competency, privilege, relevance and materiality, hearsay or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

**I.      Custodians Likely to Have Discoverable Information**

Pursuant to Section 3(a) of the Delaware Default Standard for Discovery, Prolitec identifies the following individuals likely to have discoverable information that Prolitec may use to support

1

its claims or defenses, unless solely for impeachment. Individuals marked with a "*" should only

be contacted through counsel for Prolitec:

| <u>Names and Contact Information</u> | <u>Description of Knowledge</u> |
|---|---|
| Logan Andres<br><br>May be contacted through counsel for ScentAir:<br><br>Joshua B. Pond<br>Crowell Moring LLP<br>1001 Pennsylvania Avenue NW<br>Washington, DC 20004<br>(202) 624-2610<br>jpond@crowell.com | Vice President of Products & Marketing at ScentAir believed to have knowledge about the ScentAir Breeze and related technology. |
| Matthew Ansley*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Executive Vice President and COO at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in U.S. Patent No. 9,162,004, U.S. Patent No. 9,480,767, and U.S. Patent No. 9,745,976 (collectively, "the Prolitec Patents") and the development, testing, and properties of the claimed inventions. |
| Richard Weening*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Chairman and CEO at Prolitec believed to have knowledge regarding Prolitec products, patenting, and other relevant sales and market information. |
| Nathan Sward*<br><br>Please contact only through counsel: | Director of Engineering at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in the Prolitec Patents and the |

| | |
|---|---|
| J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | development, testing, and properties of the claimed inventions. |
| Andrew Williams*<br><br>May be contacted through:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Believed to have knowledge about the conception and reduction to practice of the inventions claimed in U.S. Patent No. 9,480,767 and the development, testing, and properties of the claimed inventions. |
| Roger Bensinger*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Executive Vice President of Global Business Development at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |
| Danielle Leigh*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Vice President at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |

| | |
|---|---|
| Emily Junger*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Design Engineer at Prolitec believed to have technical knowledge of the subject matter of the asserted patents. |
| Dean Wilson*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Director of National & Strategic Accounts at Prolitec believed to have knowledge of the Prolitec products, sales, and market conditions. |
| Max Crabb*<br><br>Please contact only through counsel:<br><br>J. Derek McCorquindale<br>Finnegan, Henderson, Farabow,<br>Garrett & Dunner, LLP<br>1875 Explorer Street, Suite 800<br>Reston, VA  20190-6023<br>(571) 203-2768<br>derek.mccorquindale@finnegan.com | Design Engineer at Prolitec believed to have technical knowledge of the subject matter of the asserted patents |
| Past and/or present employees and agents of ScentAir Technologies, LLC knowledgeable about the Accused Product at issue. | |

Prolitec reserves the right to identify and call as witnesses at trial additional persons who become known to Prolitec and are knowledgeable regarding discoverable information that Prolitec

may use to support its claims or defenses, provided such persons are known by or made known to ScentAir Technologies, LLC ("ScentAir") in some manner during discovery, including, for example, ScentAir's employees, agents, or attorneys who are likely to have discoverable information that Prolitec may use to support its claims or defenses, and any individuals named in ScentAir's Initial Disclosures.

## II.     Non-Custodial Data Sources Likely to Have Discoverable Information

Pursuant to Section 3(b) of the Delaware Default Standard for Discovery, the following is a list of the non-custodial data sources (e.g., systems or databases) most likely to contain non-duplicative discoverable information for preservation and production consideration:

1.     Prolitec Inc. Enterprise File System, 1235 W. Canal St. Milwaukee, WI 53233.

## III.     Notices Relating to Electronic Discovery

Pursuant to Section 3(c)(i) of the Delaware Default Standard for Discovery, Prolitec is unaware at this time of any issues relating to electronically stored information not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

Pursuant to Section 3(c)(ii) of the Delaware Default Standard for Discovery, Prolitec is unaware at this time of any issues relating to third-party discovery under Fed. R. Civ. P. 45.

Pursuant to Section 3(c)(iii) of the Delaware Default Standard for Discovery, Prolitec is unaware at this time of any issues relating to privacy protections or information that may be produced from outside of the United States and subject to foreign laws.

## IV.     Accused Product

Pursuant to Section 4(a) of the Delaware Default Standard for Discovery and based upon information reasonably available to Prolitec, the Accused Product in this case is ScentAir's ScentAir Breeze, as well as any reasonably similar products that ScentAir has or may introduce in

the future. As alleged in Prolitec's First Amended Complaint, the Accused Product infringes the Asserted Patents through ScentAir and/or its customers making, using, offering to sell, selling, and/or importing the Accused Product in the United States. Dkt. 19 ¶¶ 25-45.

## V.    Asserted Patents

Pursuant to Section 4(a) of the Delaware Default Standard for Discovery and based on information reasonably available to Prolitec at this time, the Asserted Patents include U.S. Patent Nos. 9,162,004 titled "Removable Cartridge for Liquid Diffusion Device and Cartridge Insert Thereof" ("the '004 patent"), 9,480,767 titled "Removable Cartridge and Cap Assembly for an Air Treatment Appliance" ("the '767 patent"), and 9,745,976 titled "Removable Cartridge for Liquid Diffusion Device and Cartridge Insert Thereof" ("the '976 patent").

## VI.    File Histories

Prolitec is concurrently producing certified copies of the file histories for the '004 patent (PROLITEC00000001-0213), the '767 patent (PROLITEC00000214-0400; PROLITEC00000609), and the '976 patent (PROLITEC00000401-0607; PROLITEC00000608).

Dated: November 4, 2020

*Of Counsel:*

J. Derek McCorquindale
Jency J. Mathew
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA  20190-6023
(571) 203-2700
derek.mccorquindale@finnegan.com
jency.mathew@finnegan.com

McCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Michael P. Kelly (#2295)
Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6300
mkelly@mccarter.com
blemon@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff Prolitec Inc*

6

Eric S. Magleby
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
901 New York Ave, NW
Washington, DC 20001-4413
(202) 408-4000
eric.magleby@finnegan.com

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROLITEC INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 20-984-RGA |
| | ) | |
| SCENTAIR TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF/COUNTERCLAIM DEFENDANT PROLITEC INC.'S SECOND AMENDED INITIAL DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's August 17, 2022 Amended Scheduling Order (D.I. 72), Plaintiff Prolitec Inc. ("Prolitec") hereby submits the following amended initial disclosures in connection with both Prolitec's claims and ScentAir's counterclaims in the above-captioned action.

Prolitec makes these amended initial disclosures based upon information reasonably known to Prolitec as of the date hereof, and based on information obtained to date and reasonably available to Prolitec. Prolitec's investigation is ongoing and, accordingly, Prolitec reserves the right to modify, amend, or otherwise supplement these disclosures, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, as additional information becomes available or appreciated during the course of this lawsuit or in the event that one or more of these witnesses becomes unavailable and others must be substituted.

Prolitec's disclosures are made without waving: (1) the right to object on the grounds of competency, privilege, relevance and materiality, hearsay or any other proper ground, to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any and all grounds, at any time, to any

other discovery request or proceeding involving or relating to the subject matter of these disclosures.

## A. PERSONS HAVING KNOWLEDGE OF RELEVANT FACTS

Prolitec identifies the following individuals likely to have discoverable information that Prolitec may use to support its claims or defenses, unless solely for impeachment. Individuals marked with a "*" should only be contacted through counsel for Prolitec:

| Names and Contact Information | Description of Knowledge |
|---|---|
| Matthew Ansley*<br><br>Please contact only through counsel:<br><br>Marc C. Levy<br>Syed M. Abedi<br>Jessica Gritton<br>Tayah Woodard<br>SEED IP LAW GROUP LLP<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104<br>Tel: (206) 622-4900<br>MarcL@seedip.com<br>SyedA@seedip.com<br>Jessica.Gritton@seedip.com<br>Tayah.Woodard@seedip.com | Executive Vice President and COO at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in U.S. Patent No. 9,162,004, U.S. Patent No. 9,480,767, and U.S. Patent No. 9,745,976 (collectively, "the Prolitec Patents") and the development, testing, and properties of the claimed inventions and Prolitec products. |
| Richard Weening*<br><br>Please contact only through counsel:<br><br>Marc C. Levy<br>Syed M. Abedi<br>Jessica Gritton<br>Tayah Woodard<br>SEED IP LAW GROUP LLP<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104<br>Tel: (206) 622-4900<br>MarcL@seedip.com<br>SyedA@seedip.com<br>Jessica.Gritton@seedip.com<br>Tayah.Woodard@seedip.com | Chairman and CEO at Prolitec believed to have knowledge regarding Prolitec products, technology, patenting, and other relevant sales and market information. |

| | |
|---|---|
| Nathan Sward*<br><br>Please contact only through counsel:<br><br>Marc C. Levy<br>Syed M. Abedi<br>Jessica Gritton<br>Tayah Woodard<br>SEED IP LAW GROUP LLP<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104<br>Tel: (206) 622-4900<br>MarcL@seedip.com<br>SyedA@seedip.com<br>Jessica.Gritton@seedip.com<br>Tayah.Woodard@seedip.com | Director of Engineering at Prolitec believed to have knowledge about the conception and reduction to practice of the inventions claimed in the Prolitec Patents and the development, testing, and properties of the claimed inventions and Prolitec products. |
| John Thurston Chandler<br>Charlotte, North Carolina | Believed to have knowledge about the conception and reduction to practice of the inventions claimed in the ScentAir Patents and the development, testing, and properties of the claimed inventions. |
| Chad Alan Morton<br>Fort Mill, South Carolina | Believed to have knowledge about the conception and reduction to practice of the inventions claimed in the ScentAir Patents and the development, testing, and properties of the claimed inventions. |

Prolitec reserves the right to identify and call as witnesses at trial additional persons who become known to Prolitec and are knowledgeable regarding discoverable information that Prolitec may use to support its claims or defenses, provided such persons are known by or made known to ScentAir Technologies, LLC ("ScentAir") in some manner during discovery, including, for example, ScentAir's employees, agents, or attorneys who are likely to have discoverable information that Prolitec may use to support its claims or defenses, and any individuals named in ScentAir's Initial Disclosures, as amended.

## B. DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), based on information reasonably available to Prolitec at this time, Prolitec describes below by category and location the following documents, electronically stored information, and tangible things that are within Prolitec's possession, custody, or control, or are publicly available, and which Prolitec may use to support its claims or defenses, unless solely for impeachment:

1. The Prolitec Patents.

2. The prosecution history of each of the Prolitec Patents.
3. Documents and/or electronically stored information evidencing the conception and reduction to practice of the inventions claimed in each of the Prolitec Patents.

4. Documents and/or electronically stored information reporting test results and properties of the inventions claimed in each of the Prolitec Patents.

5. Documents and/or electronically stored information relating to the title, assignment, transfer, licensing, and assertion of the Prolitec Patents.

6. Documents and/or electronically stored information and tangible things relating to the infringement of the Prolitec Patents.

7. Documents and/or electronically stored information relating to sales and marketing of Prolitec products and ScentAir products infringing the Prolitec Patents.

8. Documents and/or electronically stored information relating to damages to Prolitec and lost profits related to Prolitec products.

9. Documents and/or electronically stored information evidencing the accused Prolitec products.

10. Documents and/or electronically stored information and tangible things relating to noninfringement and invalidity of the ScentAir Patents.

11. Documents and/or electronically stored information and tangible things relating to Prolitec's defenses.

## C.  COMPUTATION OF DAMAGES

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Prolitec will rely on a damages expert to compute damages. Prolitec states that at this time, ScentAir has not provided sufficient detail or clarity as to the scope of its infringement and tortious conduct, and the actual amount of damages cannot be calculated without further discovery. Accordingly, the computation of damages will be deferred until the time for expert disclosures. Prolitec will produce or otherwise make available for inspection and copying the documents and/or other evidentiary material, not privileged or protected from disclosure, in its possession, custody, or control, on which its computation of damages is based. Prolitec reserves its right to challenge any damages calculation ScentAir offers and offer an opposing calculation.

## D.  INSURANCE AGREEMENTS

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), Prolitec is unaware of any pertinent insurance agreements at this time. However, Prolitec reserves the right to supplement this disclosure if any pertinent insurance agreements are identified or determined to be relevant after further investigation.

Dated:  March 31, 2023

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Jessica Gritton
Tayah Woodard
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Tayah.Woodard@seedip.com

MCCARTER & ENGLISH, LLP

*/s/ Alexandra M. Joyce*
Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6300
blemon@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff Prolitec Inc.*

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PROLITEC INC., | |
| Plaintiff, | C.A. No. 20-984-RGA |
| v. | |
| SCENTAIR TECHNOLOGIES, LLC, | |
| Defendant. | |

## PLAINTIFF PROLITEC'S THIRD SUPPLEMENTAL RESPONSE TO DEFENDANT SCENTAIR TECHNOLOGIES, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-10)

Pursuant to Fed. R. Civ. P. 26 and 34, and the Local Rules of the U.S. District Court for the District of Delaware, including Civil L.R. 26 and Civil L.R. 34, Plaintiff Prolitec Inc. ("Prolitec" or "Plaintiff") hereby provides its third supplemental response to Defendant ScentAir Technologies, LLC's ("ScentAir" or "Defendant") First Set of Interrogatories.

## GENERAL OBJECTIONS

The following General Objections and statement shall be applicable to, and shall be included in, Plaintiff's response to each interrogatory, whether or not mentioned expressly in any particular response. Plaintiff does not waive any of its General Objections by stating specific objections to any particular interrogatory. Plaintiff reserves the right to assert additional objections as it deems necessary and/or appropriate.

1.       Prolitec objects to each and every discovery request, instruction and definition, to the extent it seeks information that is subject to the attorney-client privilege or any other applicable privilege, constitutes attorney work-product, or is otherwise immune from discovery under the Federal Rules of Civil Procedure. Any inadvertent production by Prolitec of any document,

1

information, or thing protected from disclosure by the attorney-client privilege, work-product immunity, and/or other applicable privilege or immunity is unintentional, and shall not be construed as a waiver of any applicable objection or privilege.

2.      Prolitec objects to each interrogatory, instruction and definition, to the extent it calls for the disclosure of confidential information of any third party that is in the possession of Prolitec pursuant to confidentiality and non-disclosure restrictions imposed by contract or applicable law.

3.      Prolitec objects to each interrogatory, instruction and definition, to the extent it seeks information that is not within the possession, custody, or control of Prolitec.

4.      Prolitec objects to each interrogatory, instruction and definition, to the extent it seeks information beyond what is available to Prolitec at present from a reasonable search of its own files and from a reasonable inquiry of its present employees.

5.      Prolitec objects to each interrogatory, instruction and definition, to the extent it purports to impose obligations on Prolitec that exceed its obligations under the Federal Rules of Civil Procedure, the Local Rules of the District, any orders issued by the Court in this case, any agreements or stipulations between the parties, or any other applicable rule of law.

6.      Prolitec objects to each interrogatory, instruction and definition, to the extent it seeks the disclosure of information that is not relevant to any party's claim or defense, not proportional to the needs of the case, and/or not likely to lead to the discovery of admissible evidence.

7.      Prolitec objects to these interrogatories, instructions and definitions, to the extent they seek information that is unreasonably cumulative or duplicative, or that is obtainable from some other source more convenient, less expensive, or less burdensome or that Defendant has had

an opportunity to seek from another source, or where the burden or expense to Prolitec of the proposed discovery outweighs its likely benefit to Defendant, taking into account the needs of the case, the parties' resources, the importance of the issues at stake in the case, the importance of the proposed discovery in resolving the issues, and the availability of the information to Defendant from other sources.

8.     Prolitec objects to each interrogatory, including all applicable instructions and definitions, to the extent that it is vague, ambiguous, and does not identify with particularity the information sought.

9.     Prolitec objects to each interrogatory, including the instructions and definitions accompanying it, to the extent it requests Prolitec to identify "all" information, documents, and/or things relating to a particular subject, on the ground that such requests are overly broad or unduly burdensome.

10.     Prolitec objects to each interrogatory, instruction and definition, to the extent that it is unreasonably unlimited in time and/or scope.

11.     Prolitec objects to each interrogatory, instruction and definition, to the extent that it prematurely seeks expert discovery.

12.     Prolitec objects to each interrogatory, instruction and definition, to the extent that it calls for any legal conclusions.

13.     Prolitec objects to each interrogatory, including the instructions and definitions accompanying it, as compound to the extent it contains multiple subparts or attempts to improperly combine multiple parts into one request.

14.     Prolitec objects to each interrogatory to the extent that it prematurely seeks the production of documents or information that constitute electronically stored information ("ESI")

prior to an agreement by the parties on terms and procedures governing the production of ESI. Prolitec will produce such documents or information only in accordance with and under the terms of an ESI Order that is stipulated to by the parties and entered by the Court.

15.     In responding to these interrogatories, Prolitec does not concede that any of the information or documents sought or provided is relevant, material, admissible in evidence, reasonably calculated to lead to the discovery of admissible evidence, or proportional to the needs of the case.

16.     Prolitec's responses to these interrogatories in no way constitute acquiescence or agreement to any definition proposed by Defendant.

17.     To the extent Prolitec responds to any interrogatory by stating that responsive documents will be produced, such statement does not constitute a representation that such documents exist but only that a reasonable search for such documents has been or will be made and that any relevant, responsive, non-privileged documents that Prolitec locates will be produced.

18.     Prolitec's responses to these interrogatories are all made subject to and without waiver of these General Objections. To the extent that Prolitec cites or repeats a particular General Objection in a specific response to a particular interrogatory, Prolitec does so because it believes that the General Objection is particularly relevant to the request but not to the exclusion of any other General Objections.

19.     The specific responses set forth below are for the purposes of discovery only, and Prolitec neither waives nor intends to waive, but rather expressly reserves, any and all objections to the relevance, competence, materiality, privilege, admissibility, or use at any hearing of any information, documents, or things produced, identified, or referred to herein, or to the introduction of any evidence at any hearing relating to the subjects covered by such responses.

4

20.     Discovery and investigation in this case are on-going.  Prolitec reserves the right to supplement or amend its responses to these discovery requests, if and when more information becomes available.

21.     Prolitec objects to each interrogatory, instruction, and definition, to the extent that it conflicts or is inconsistent with, or purports to impose obligations on Prolitec that exceed its obligations under, the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, any orders issued by the Court in this case, any agreements or stipulations between the parties, or any other applicable rule of law.

## INTERROGATORIES

### INTERROGATORY NO. 1:

For each claim of the Prolitec Asserted Patents that Prolitec believes is infringed by ScentAir, set forth the full factual basis and explanation for that claim's conception, first constructive reduction to practice, first actual reduction to practice, and any diligence in reducing the alleged invention to practice.

### RESPONSE:

Prolitec objects to this Interrogatory as seeking information irrelevant to this litigation. Given that the applications for Prolitec's Asserted Patents were filed after March 16, 2013, their priority dates can be no earlier than the date they were filed. *See* 35 U.S.C. § 100(i)(1). Thus, any information relating to the reduction to practice—constructive or actual—of the Prolitec Asserted Patents is irrelevant. Subject to and without waiving the foregoing objection, Prolitec states as follows:

With respect to the '004 Patent, the infringed claims were actually reduced to practice in the form of a functional prototype at least as early as December 10, 2013. Those involved include Nathan Sward, Matthew Ansley, and former employee Andy Williams. With respect to the '976 Patent, the infringed claims were actually reduced to practice in the form of a functional prototype at least as early as December 10, 2013. Those involved include Nathan Sward, Matthew Ansley, and former employee Andy Williams. With respect to the '767 Patent, the infringed claim was actually reduced to practice in the form of a functional prototype at least as early as August 2015. Those involved include Nathan Sward, Matthew Ansley, and former employee Andy Williams.

ME1 45328123v.1

**INTERROGATORY NO. 2:**

For each claim of the Prolitec Asserted Patents that Prolitec believes is infringed by ScentAir, describe in detail any disclosures of the subject matter thereof prior to the filing date of the Prolitec Asserted Patents, including but not limited to the dates and nature of such disclosures and the persons involved with such disclosures, and identify all documents relating thereto.

**RESPONSE:**

Prolitec objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objection, Prolitec states it made no disclosures of the subject matter of the Prolitec Asserted Patents before their filing dates.

**INTERROGATORY NO. 3:**

For each ScentAir Accused Product, describe in detail the circumstances under which Prolitec first became aware of that product, and the investigation undertaken by or on behalf of Prolitec to support its allegation of infringement of each claim of the Prolitec Asserted Patents, including without limitation, an identification of every person or entity that supervised, assisted, participated in, or provided information concerning the investigation, a description of every physical inspection of each ScentAir Accused Product and an identification of the date(s) of and individual(s) involved in each such inspection, a description of all analyses of and tests performed on each ScentAir Accused Product and an identification of the date(s) of and individual(s) involved in each such analysis and test, an identification of all documents and things reviewed or relied upon in connection with the investigation, and a description of the results and/or conclusions of the investigation.

**RESPONSE:**

Prolitec objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objection, Prolitec states that it became aware of the ScentAir Accused Instrumentality on or about April 2, 2020. On that date, Executive Vice President Roger Bensinger mentioned ScentAir's launch of the Accused Instrumentality during a call with other members of Prolitec's management team. In April 2020, Nathan Sward and Matthew Ansley also viewed a YouTube video posted by ScentAir entitled "ScentAir Breeze How-To: Replacing Your Fragrance Cartridge" (available at https://www.youtube.com/watch?v= 6x3W9W9KYEw) in which the Accused Instrumentality is taken apart. Prolitec obtained and inspected the Accused Instrumentality in August 2020. Based on that inspection, former employee Max Crabb created a competitive analysis dated September 1, 2020, which has previously been produced as PROLITEC00008094–8096.

**INTERROGATORY NO. 4:**

Set forth the full factual, legal and numeric basis for Prolitec's contention that it is entitled to damages, including the theory of damages (i.e., reasonable royalty, lost profits, willfulness, etc.) that Prolitec intends to advance and/or rely upon for each asserted claim of the Prolitec Asserted Patents, the methodology Prolitec intends to advance or will rely on to calculate damages under that theory, and the amount of damages Prolitec claims it is entitled to recover for each claim of the Prolitec Asserted Patents.

**RESPONSE:**

Prolitec objects to this Interrogatory to the extent it prematurely seeks information to be proffered through expert discovery or testimony, which Prolitec has no duty to produce prior to the opening of the expert discovery period and applicable deadlines set forth in the Court's Scheduling Order. Subject to and without waiving the foregoing objection, Prolitec states that its

answer to this interrogatory requires the evaluation of its damages expert, Mr. Robert Vigil, who has been disclosed to ScentAir. Prolitec will supplement this interrogatory response after Mr. Vigil completes his work and provides his report of his opinions and the facts and other grounds supporting them.

**SUPPLEMENTAL RESPONSE:**

Subject to and without waiving the foregoing objection, and in addition to the above response, Prolitec states that under the Patent Act it is entitled to no less than a reasonable royalty for ScentAir's use of the Prolitec Asserted Patents plus interest and costs fixed by the court. Thus, Prolitec is entitled to no less than a reasonable royalty for ScentAir's use of the Prolitec patented inventions. The determination of what constitutes a reasonable royalty in this case will be assessed by Prolitec's damages expert using one or more accepted frameworks, including but not limited to the income approach, market approach, or cost approach. The reasonable royalty determination will also be assessed in light of the *Georgia Pacific* factors, including but not limited to, Prolitec's long history and policy of not licensing its patented technology to its competitors; the highly competitive relationship between Prolitec and ScentAir; ScentAir's collection of revenue from infringing Breeze systems; the value of the patented invention to Prolitec in generating sales of non-patented items; the utility and advantages of Prolitec's patented technology over the prior art; the benefits of Prolitec's products practicing the Prolitec Asserted Patents; and the popularity and commercial success of Prolitec's products practicing the Prolitec Asserted Patents.

Pursuant to Federal Rule of Civil Procedure 33(d), information requested by this Interrogatory may be found in certain documents that the parties have produced in this case, including but not limited to:

- SCENTAIR_00014691
- PROLITEC00001519–1520
- PROLITEC00014720
- PROLITEC00001522

- PROLITEC00001523
- PROLITEC00001524
- PROLITEC00008295–08300
- PROLITEC00033150–33196
- PROLITEC00033778–33832
- PROLITEC00040873–40934
- PROLITEC00008313–08315
- PROLITEC00008290–08294
- PROLITEC00008505–08533

Prolitec will supplement its response to this interrogatory after Prolitec's damages expert completes his analysis and report regarding Prolitec's entitlement to damages in this case.

**SECOND SUPPLEMENTAL RESPONSE:**

Subject to and without waiving the foregoing objection, Prolitec incorporates by reference the Expert Report of Robert L. Vigil, Ph.D (June 13, 2023) including all exhibits and documents referenced therein that was served on ScentAir on June 1, 2023.

**INTERROGATORY NO. 5:**

Identify all sources and amounts of any profits, royalties or receivables Prolitec received from the development, sale, use, and license of the Prolitec Asserted Patents.

**RESPONSE:**

Prolitec states that, other than profits and receivables from the sale of Prolitec products practicing the Prolitec Asserted Patents, it has received no such profits, royalties, or receivables.

**SUPPLEMENTAL RESPONSE:**

In addition to the above response, with respect to Prolitec products using the Prolitec Asserted Patents, Prolitec responds to this interrogatory in accordance with Rule 33(d) by

referring to the documents previously produced as PROLITEC00014720, PROLITEC00001522, PROLITEC00001523, and PROLITEC00001524.

**SECOND SUPPLEMENTAL RESPONSE:**

Subject to and without waiving the foregoing objection, Prolitec incorporates by reference the Expert Report of Robert L. Vigil, Ph.D (June 13, 2023) including all exhibits and documents referenced therein that was served on ScentAir on June 1, 2023.

**INTERROGATORY NO. 6:**

If Prolitec contends that ScentAir had actual notice of any alleged infringement of the Prolitec Asserted Patents before the filing of this case, set forth the full factual basis for such a contention.

**RESPONSE:**

At this time, Prolitec does not contend that ScentAir had actual notice of its infringement of the Prolitec Asserted Patents before the initial filing date of this case. However, Prolitec reiterates its right to supplement these Responses in the event that further discovery provides additional information. *See* General Objections ¶¶ 14, 20.

**INTERROGATORY NO. 7:**

Set forth the full factual basis and explanation for Prolitec's contention that the Prolitec Asserted Patents are not invalid under 35 U.S.C. §§ 102, 103, and 112.

**RESPONSE:**

Prolitec objects to this Interrogatory to the extent it prematurely seeks information to be proffered through expert discovery or testimony, which Prolitec has no duty to produce prior to

the opening of the expert discovery period and applicable deadlines set forth in the Court's Scheduling Order.

Prolitec further objects to this Interrogatory to the extent it impermissibly shifts the burden of proof of invalidity from ScentAir onto Prolitec. *See* 35 U.S.C. § 282.  Prolitec interprets this interrogatory as requiring Prolitec to identify the full factual basis and explanation why ScentAir has failed to prove by clear and convincing evidence that the claims-in-suit are invalid, including why ScentAir fails to prove by clear and convincing evidence how or why a person of ordinary skill in the art would have combined the asserted prior art references to arrive at the claims-in-suit at the time of the claimed inventions.

With this limit and interpretation, to date, and for the reasons set forth in Prolitec's March 19, 2023, letter regarding ScentAir's Amended Final Invalidity Contentions, ScentAir has not set forth a cognizable argument that Prolitec's Asserted Patents are invalid. By way of example, with respect to prior art and anticipation or obviousness, ScentAir has not met its burden to show that the products it contends render the claims-in-suit invalid include each and every claim element, including by its failure to produce or make available products, such as the ScentDirect or ScentStream products, it claims were available prior to the Asserted Patents' priority dates.

By way of further example, ScentAir has not adequately identified the "insert" in Prolitec's AirQ products that it contends practices the relevant claims in the Prolitec Asserted Patents; "a cap assembly including a cap, a venturi insert, and a base attached together without welds or separate fasteners to define an air inlet chamber on one side of the venturi insert …; and nor has it adequately identified the elements of the Air Aroma and Lampe Berger/Maison Berger/Air Berger products that it contends practice the relevant claims in the Prolitec Asserted Patents.

By way of further example, ScentAir has not adequately shown that the claims-in-suit of the '767 Patent are anticipated or rendered obvious in view of the asserted prior art references. Each of the references, including Benalikhoudja '090, Feuillard, and Poncelet, fails to disclose or teach each and every claim element, as acknowledged by ScentAir itself in its "Amended Final

Invalidity Charts" (dated: 03/10/2023). Further, ScentAir has not met its burden by adequately showing that these deficiencies are cured by the combination of the references asserted by ScentAir to render the claims-in-suit obvious. And, finally, ScentAir is estopped from asserting prior art in support of any ground of invalidity of the claims of the '004 and '976 Patents that ScentAir raised or reasonably could have raised during the parties' inter partes review proceedings. *See generally ScentAir Techs., LLC v. Prolitec Inc.*, IPR2021-00012; *ScentAir Techs., LLC v. Prolitec Inc.*, IPR2021-00014.

With respect to indefiniteness and inadequate disclosure, ScentAir's blanket statement in its Amended Final Invalidity Contentions that certain claims "have no meaning to those of skill in the art, are not adequately defined in the patent specification, lack proper antecedent basis, and/or are otherwise indefinite" fails to place Prolitec on notice of the deficiencies in its patent claims. It also falls far below the standard of proof necessary to rebut the Prolitec Asserted Patents' presumption of validity. *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (requiring that indefiniteness be proven by clear and convincing evidence). The same is true of ScentAir's conclusory statement that certain "claim terms lack written description support and/or an enabling disclosure." Thus, ScentAir has not met its burden at this stage, and Prolitec is not obligated to present arguments or evidence to bolster the presumption of validity to which its Asserted Patents are entitled.

**INTERROGATORY NO. 8:**

If Prolitec contends that any product(s) other than the ScentAir Accused Products practices any of the claims of the Prolitec Asserted Patents, for each such claim and each such product, set forth the full factual basis for such a contention.

**RESPONSE:**

Prolitec states that its Aera and Aera Mini products practice at least claims 17 and 23 of the '004 Patent and claims 15, 16, 17, and 22 of the '976 Patent. Prolitec further states that its

ScentAir produced documents related to the system after the close of fact discovery and only after specific demands from Prolitec. At this time, Prolitec is unable to determine whether additional relevant information and documents are being withheld by ScentAir.

Dated:  June 22, 2023

MCCARTER & ENGLISH, LLP

OF COUNSEL:

*/s/ Alexandra M. Joyce* _____
Brian R. Lemon (#4730)

Marc C. Levy
Syed M. Abedi
Jessica Gritton
Tayah Woodard
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Tayah.Woodard@seedip.com

Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel: (302) 984-6300
blemon@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff Prolitec Inc.*

# EXHIBIT E

Page 1

1              IN THE UNITED STATES DISTRICT COURT
2                 FOR THE DISTRICT OF DELAWARE
     ---------------------------------------------------
3

     PROLITEC INC.,
4
                          Plaintiff/Counterclaim-
5                         Defendant,
6        -vs-                          Case No. 20-984-RGA
7     SCENTAIR TECHNOLOGIES, LLC,
8                         Defendant/Counterclaim-
                          Plaintiff.
9
     ---------------------------------------------------
10
11                      ATTORNEYS' EYES ONLY
12
13              Video Examination of NATHAN SWARD,
14      taken at the instance of the Defendant, under and
15      pursuant to the Delaware Rules of Civil Procedure,
16      before Dawn M. Lahti, a Certified Realtime Reporter,
17      Registered Professional Reporter and Notary Public
18
19      in and for the State of Wisconsin, at Andrus
20
21      Intellectual Property Law, 790 North Water Street,
22
23      Milwaukee, Wisconsin, on May 4, 2023, commencing at
24
25      9:44 a.m. and concluding at 4:31 p.m.

```
                                                    Page 2

 1                    A P P E A R A N C E S

 2

         SEED IP LAW GROUP LLP, by

 3       MR. MARC C. LEVY

         701 Fifth Avenue, Suite 5400

 4       Seattle, Washington 98104

         appeared on behalf of the Plaintiff.

 5

 6       CROWELL & MORING LLP, by

         MR. JOSHUA B. POND

 7       MR. RYAN FITZGERALD

         1001 Pennsylvania Avenue NW

 8       Washington, DC 20004

         appeared on behalf of the Defendant.

 9

10

11                             *  *  *  *  *

12                    A L S O   P R E S E N T

13       Mr. Steven Troncone, videographer

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
 1                        *  *  *  *  *
 2                        I  N  D  E  X
 3      Examination:                              Page
 4      BY MR. POND                                  4
 5
 6
 7
 8
 9
10
11
12      Exhibits Identified:                     Page
13
        Exhibit 1   Notice of Deposition           15
14      Exhibit 2   Amended Notice of Deposition   17
        Exhibit 3   LinkedIn Page                  19
15      Exhibit 4   '004 Patent                    59
        Exhibit 5   '976 Patent                    59
16      Exhibit 6   Plaintiff Prolitec's Supplemental  66
                    Response to Defendant ScentAir
17                  Technologies First Set of
                    Interrogatories Nos. 1-10
18      Exhibit 7   '767 Patent                    69
        Exhibit 8   Project Aura, Delta Concept    80
19                  Review
        Exhibit 9   Lab Notebook                   92
20      Exhibit 10  Prolitec Images               106
        Exhibit 11  ScentAir Breeze Info          110
21
22
23      Disposition of Original Exhibits:
24      Attached to Original Transcript.
25
```

```
                                                     Page 4
 1                        TRANSCRIPT OF PROCEEDINGS
 2                        VIDEO OPERATOR:  We are now on the
 3            video record.  Today is May 4, 2023.  The time
 4            is approximately 9:44 a.m. Central time.
 5                        We are here in the matter of
 6            Prolitec, Incorporated versus ScentAir
 7            Technologies, LLC.  We are here to take the
 8            30(b)(6) deposition of Nathan Sward.
 9                        Will counsel please identify
10            themselves for the record.
11                        MR. POND:  Joshua Pond of the firm
12            Crowell & Moring on behalf of
13            defendant/counterclaimant ScentAir, and with me
14            today is my colleague, Ryan Fitzgerald.
15                        MR. LEVY:  Marc Levy with Seed IP Law
16            Group for the Plaintiff, Prolitec.
17                        NATHAN SWARD, called as a witness
18            herein, having been first duly sworn on oath,
19            was examined and testified as follows:
20                               EXAMINATION
21       BY MR. POND:
22       Q    Good morning, Mr. Sward.
23       A    Good morning.
24       Q    Could you state your full name and residential
25            address for the record.
```

```
                                                    Page 5

 1    A    Nathan Sward, ████████████████████████
 2         ████████████████.
 3    Q    And could you tell us your current title and
 4         employer for the record?
 5    A    Director of engineering, Prolitec, Inc.
 6    Q    Have you ever been deposed before, Mr. Sward?
 7    A    I have not.
 8    Q    Okay.  So I'm sure your counsel may well have
 9         gotten you ready, but I'll just emphasize a few
10         basic rules if that's okay.
11                   So if you don't understand any
12         of my questions, please let me know, otherwise
13         I'll assume you understand the question
14         particularly with any hypothetical questions.
15                   Does that make sense?
16    A    Yes.
17    Q    We've got to verbalize our questions and
18         answers for a clean record, and we'll refrain
19         from nodding or head shaking instead of
20         verbalizing, if that makes sense.
21    A    It does.
22    Q    If while answering a question, Mr. Sward, you
23         think of a document that may help you answer,
24         tell us, and we'll try to get the document for
25         you, okay?
```

```
                                                    Page 12

1      A     No, not generally.  I think once or twice I've

2            been asked to prepare some slides on product

3            roadmap, but that's the extent of it.

4      Q     All right.  So turning back to preparation for

5            this deposition and broadening to participation

6            in preparing for the case, again, not asking

7            for privileged information, but Mr. Ansley, did

8            you help prepare any interrogatory responses?

9      A     Nathan Sward.

10     Q     I'm sorry, Mr. Sward.  I'm getting ahead of

11           myself.

12     A     Did I help prepare?  Is this under privilege?

13                  MR. LEVY:  You can state whether or

14           not you did help prepare interrogatory

15           responses yes or no.

16                  THE WITNESS:  Okay.  Yes.

17     BY MR. POND:

18     Q     Do you recall which ones, what the topic was?

19     A     The topic of -- it was technology ones.  Not

20           the business-related ones.

21     Q     Did you help gather documents for the

22           litigation, Mr. Sward?

23     A     I cooperated with the sharing, of course, all

24           my emails and the -- all the content of our

25           network drive that was requested.
```

```
                                                      Page 38
 1      BY MR. POND:
 2      Q    And how long did the development process take
 3           from the start in 2012 through first offer for
 4           sale?
 5      A    Well, the first offer for sale of Aera was in
 6           2016, so there was about four years of work
 7           involved.
 8      Q    And we've seen mention of a Project Aura.  Is
 9           that what led to the Aera?
10      A    Project Aura was somewhere between a code name
11           for Aera and an early draft brand name.
12      Q    And Aura did result in Aera ultimately?
13                     MR. LEVY:  Object to the form.
14                     THE WITNESS:  Yes.
15      BY MR. POND:
16      Q    So you netted the first offer for sale in 2016.
17           Was that online?
18      A    Yes.  That was direct to consumer through our
19           website.  I'm pretty sure.  I had limited
20           involvement with that side of the business.
21                     MR. LEVY:  And I'll just note again
22           that that is -- that is a topic reserved for a
23           different witness for 30(b)(6).
24      BY MR. POND:
25      Q    And in your impression as engineering lead, how
```

```
                                                          Page 39

 1              was the Aera received in the market?

 2        A     Slowly.  So, again, I had limited visibility in

 3              the numbers, but the -- I don't think we --

 4              well, yeah, we -- it was slow.  The first year

 5              we didn't sell definitely not as many as we had

 6              hoped, but it increased each year.

 7        Q     And what kinds of things did you -- what kind

 8              of feedback did you get as head of engineering

 9              on the product from consumers?

10        A     I helped analyze the quality data, so I knew

11              returns.  So most of my knowledge was things

12              that had gone wrong --

13        Q     Um-hum.

14        A     -- such as my work, so issues with the pump or

15              the gluing process or aesthetic defects.  Most

16              of the reviews that I read on the website

17              were -- if there was not a defect, the reviews

18              were pretty positive.

19        Q     And what do you mean by "gluing"?

20        A     The top cover of the housing.  It's metal glued

21              on the plastic.

22        Q     And is that for the device overall or the

23              cartridge?

24        A     Device.

25        Q     What -- okay.  So we've been talking about the
```

Page 139

1    STATE OF WISCONSIN    )
                           ) SS:
2    COUNTY OF MILWAUKEE   )

3

4              I, Dawn M. Lahti, RPR, CRR and Notary
5         Public in and for the State of Wisconsin, do
6         hereby certify that the preceding deposition
7         was recorded by me and reduced to writing under
8         my personal direction.
9              I further certify that I am not a
10        relative or employee or attorney or counsel of
11        any of the parties, or a relative or employee
12        of such attorney or counsel, or financially
13        interested directly or indirectly in this
14        action.
15             In witness whereof, I have hereunder
16        set my hand and affixed my seal of office on
17        this 11th day of May, 2023.

18

19            *Dawn M. Lahti*

20

21

                   _____
22                 DAWN M. LAHTI, RPR/CRR
23                 Notary Public
                   In and for the State of Wisconsin
24

     My commission expires April 16, 2024

25

Page 140

1    Marc Levy, Esq.

2    marcl@seedip.com

3                         May 15th, 2023

4    RE:    Prolitec Inc. v. Scentair Technologies LLC

5         5/4/2023, Nathan Sward (#5889618)

6         The above-referenced transcript is available for

7    review.

8         Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12        The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   cs-midatlantic@veritext.com.

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                    Yours,

23                    Veritext Legal Solutions

24

25

## <u>CERTIFICATE OF SERVICE</u>

I, Stephanie O'Byrne, hereby certify that on this 16th day of January, a copy of the attached

sealed letter entitled **SCENTAIR'S MOTION TO EXCLUDE NEW DAMAGES THEORIES**

**AND RELATED EVIDENCE** was served upon the following counsel of record via electronic

mail:

Brian R. Lemon
Alexandra M. Joyce
**MCCARTER & ENGLISH, LLP**
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
blemon@mccarter.com
ajoyce@mccarter.com

Marc C. Levy
Syed Abedi
Tayah Woodard
Jessica S. Gritton
Emily M. Ross
**SEED IP LAW GROUP LLP**
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Telephone: (206) 622-4900
marcl@seedip.com
syedA@seedip.com
tayah.woodard@seedip.com
Jessica.gritton@seedip.com
Emily.Ross@seedip.com

*/s/ Stephanie E. O'Byrne*
Stephanie E. O'Byrne (DE Bar No. 4446)