# IN THE UNITED STATES DISTRICT COURT FOR THE
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC., | |
| Plaintiff, Counter-Defendant | C.A. No. 20-984-WCB |
| v. | |
| SCENTAIR TECHNOLOGIES, LLC, | |
| Defendant, Counter-Plaintiff | |

## SCENTAIR TECHNOLOGIES, LLC'S ANSWERING BRIEF IN OPPOSITION TO PROLITEC INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Of Counsel:
Vincent J. Galluzzo
K&L GATES LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Phone: (704) 331-7400
vincent.galluzzo@klgates.com

May 22, 2024

Steven L. Caponi (No. 3484)
Megan E. O'Connor (No. 6569)
K&L GATES LLP
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
megan.oconnor@klgates.com

*Attorneys for Counterclaim-Plaintiff*
*ScentAir Technologies, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.   SUMMARY OF ARGUMENT ................................................................................2

III.  STATEMENT OF FACTS ....................................................................................3

    A.  Background of the Technology.................................................................3

    B.  The Technological Improvements of the '388 Patent...........................................4

IV.   LEGAL STANDARD .........................................................................................5

V.    ARGUMENT ...................................................................................................6

    A.  The '388 Patent Recites Patent-Eligible Subject Matter Under *Alice*. ..........................................................................................6

        1.  The '388 Patent Claims Are Patentable Under Alice Step 1. ....................7

        2.  The '388 Patent Claims Are Patentable Under Alice Step 2. .................13

        3.  Prolitec's Cases Are Not on Point. ......................................14

    B.  Additional Reasons for Denial.................................................................15

        1.  ScentAir's Well-Pled Allegations and the Disclosures of the '388 Patent Satisfy the Rule 12(c) Plausibility Standard........................15

        2.  Prolitec's Motion Implicates Factual Disputes and Artificially Prevents Consideration of Relevant Testimony and Evidence.........................17

        3.  Prolitec's Request for Supplemental Claim Construction Undercuts Its Motion for Judgment on the Pleadings...........................19

        4.  No Individual Claim Is Representative...................................20

VI.   CONCLUSION ................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)...................................................................6, 17

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).................................................................................4

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016)..............................................................12, 13

*Antero Res. Corp. v. C & R Downhole Drilling, Inc.*,
   2019 WL 13193860 (N.D. Tex. Sept. 13, 2019)....................................18, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................6

*AstraZeneca AB v. Dr. Reddy's Labs., Inc.*,
   209 F. Supp. 3d 744 (D. Del. 2016).........................................................6

*Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*,
   2023 WL 8101973 (N.D. Cal. Nov. 21, 2023) ..........................................12

*Axcess Int'l, Inc. v. Genetec (USA) Inc.*,
   375 F. Supp. 3d 533 (D. Del. 2019)....................................................10, 11

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).................................................................13

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018).................................................6, 13, 17, 20

*CardioNet, LLC v. InfoBionic Inc.*,
   955 F.3d 1358 (Fed. Cir. 2020).................................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)..................................................................14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018).................................................................12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014).................................................................11

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
   830 F. App'x 634 (Fed. Cir. 2020) ...................................................11

*Electric Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..............................................14, 15

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..............................................8, 12

*Grajales v. P. R. Ports Auth.*,
   682 F.3d 40 (1st Cir. 2012) ...................................................18

*Inmar Brand Soln's, Inc. v. Quotient Tech. Inc.*,
   2024 WL 1675036 (D. Del. Apr. 18, 2024)..............................7, 12, 14

*Inquisient Inc. v. ServiceNow, Inc.*,
   2023 WL 2072400 (D. Del. Feb. 17, 2023) ...............................12

*Int'l Bus. Mach. v. Zillow*,
   50 F.4th 1371 (Fed. Cir. 2022) ...........................................10

*Intellectual Ventures I LLC v. Ricoh Americas Corp.*,
   170 F. Supp. 3d 673 (D. Del. 2016)......................................16, 17

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   607 F. Supp. 3d 464 (D. Del. 2022)......................................10

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
   173 F. Supp. 3d 717 (N.D. Ill. 2016) ...................................15

*KOM Software Inc. v. NetApp, Inc.*,
   2023 WL 6460025 (D. Del. Oct. 4, 2023) ...............................15

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
   2016 WL 5661981 (D. Del. Sept. 29, 2016)..............................8, 16

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)..........................................11

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*,
   2015 WL 1744343 (D. Del. Apr. 15, 2015)...............................2

*NICE Ltd. v. CallMiner, Inc.*,
   2020 WL 1502290 (D. Del. Mar. 30, 2020) .............................8, 10, 13

*Nielsen Co. (US) v. HyphaMetrics, Inc.*,
   2022 WL 3211915 (D. Del. Aug. 9, 2022) ...............................14

*Perze v. Oak Grove Cinemas, Inc.*,
   2014 WL 1796674 (D. Or. May 5, 2014) .............................................................18

*Railware, Inc. v. Nat'l R.R. Passenger Corp.*,
   2023 WL 5432860 (S.D.N.Y. Aug. 23, 2023) ..................................................8, 12

*Revell v. Port Auth.*,
   598 F.3d 128 (3d Cir. 2010)...................................................................................5

*Sonos, Inc. v. D&M Holdings Inc.*,
   2017 WL 971700 (D. Del. Mar. 13, 2017) ..........................................................6, 7

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)..............................................................................8

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)................................................................................7

*TMI Soln's LLC v. Bath & Body Works Direct, Inc.*,
   2018 WL 4660370 (D. Del. Sept. 28, 2018) .........................................................17

*Trackthings LLC v. Netgear, Inc.*,
   2023 WL 4926184 (D. Del. Aug. 2, 2023) ...............................................16, 17, 20

*Vineyard Investigations v. E. & J. Gallo Winery*,
   2021 WL 22497 (E.D. Cal. Jan. 4, 2021) .............................................................20

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017)............................................................................10

**Statutes**

35 U.S.C. § 282(a) ...........................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(d) ........................................................................................................19

Prolitec's Motion should be denied, primarily because it oversimplifies the '388 Patent's claims, specification, and the state of the art. The '388 Patent claims concrete, non-conventional, *technical* improvements to scent delivery and distributed-device control, not mere use of a computer or network. Prolitec's Motion should also be denied because it asks the Court to resolve factual disputes related to patent eligibility *against* ScentAir, contrary to Rule 12(c) standards. And Prolitec's Motion would have the parties and Court artificially ignore the panoply of facts and expert testimony developed during the past three-and-a-half years that bear directly on those factual disputes. At base, the '388 Patent improves the control and functionality of scent delivery devices and allowed ScentAir to become a market leader. The '388 Patent should be upheld.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

The Patent Office issued U.S. Patent No. 10,838,388 ("the '388 Patent") to ScentAir on November 17, 2020. '388 Patent, Cover. One month later, ScentAir asserted the '388 Patent. D.I. 33. Prolitec did not file a Rule 12 motion related to patentability. Ten months went by, and, in September 2021, both sides of this case were stayed pending ScentAir's IPRs challenging Prolitec's patents. D.I. 56. The Court lifted that stay in April 2022. D.I. 65. Prolitec still did not file a Rule 12 motion related to patentability. Another seven months passed until Prolitec finally filed its first Rule 12(c) Motion (D.I. 105), which ScentAir opposed (D.I. 125).

In the months that followed, the parties exchanged discovery that bears on the patentability of the '388 Patent claims (especially *Alice* Step 2), both inventors of the '388 Patent were deposed and gave testimony that supports the patentability of the '388 Patent claims, and technical experts for both Prolitec and ScentAir opined on the *Alice* questions and underlying factual matters related to patent-eligibility. All fact discovery was complete and expert discovery was nearly so. Two weeks before reply expert reports were due, ScentAir's case was stayed for the Patent Office to

complete its *ex parte* reexamination of the '388 Patent. D.I. 212, 330. The '388 Patent exited that process unscathed. *See* D.I. 327 at 1.

Prolitec desired a second bite at the Rule 12(c) apple, so it sought to "rebrief the Section 101 issue." *Id.* at 3. ScentAir urged resolution of patentability at summary judgment, *id.* at 2, when the extensive evidentiary record and related Patent Office proceedings could be considered. The Court granted Prolitec its leave (D.I. 330), and Prolitec filed a wholly new Rule 12(c) Motion (D.I. 331, "Mot."), to which ScentAir now opposes in substance and form.

## II.    SUMMARY OF ARGUMENT

Prolitec fails to meet its Rule 12(c) burden to establish that the '388 Patent is unpatentable under Section 101, and its Motion should be denied, for three reasons:

1.    Prolitec oversimplifies the claims of the '388 Patent, evoking the Court's caution that if "one looks at almost any patent from far enough away, it could arguably claim an abstract idea." *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, 2015 WL 1744343, at \*5 (D. Del. Apr. 15, 2015); *see also CardioNet, LLC v. InfoBionic Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (cautioning against "oversimplifying" the claims).

2.    The '388 Patent claims are rooted in the control of physical, networked scent-delivery devices, improving their ability to operate on time and to receive real-time information about distributed, usually hidden devices in a centralized fashion. The '388 Patent is not merely about collecting and/or manipulating data; it also recites several specific, detailed, technical improvements by nonconventional limitations (all of which Prolitec ignores in its Motion). Where, as here, the claims recite interaction with a physical device and use an unconventional process to improve a particular technology *in addition to* an analytical step, precedent is clear that such claims are patentable under *Alice* and obviate Prolitec's preemption and "pen-and-paper" arguments.

3.      Prolitec's Motion is procedurally inapt. It is one for judgment *on the pleadings*, but not once does Prolitec address or analyze *the pleadings*. ScentAir has pled factual allegations that support patentability of the '388 Patent or, at the very least, create disputes of fact that cannot be resolved by Rule 12(c). And the '388 Patent specification (which must be taken as true on Rule 12(c)) provides extensive support for those factual allegations. Relatedly, Prolitec's Motion makes this case less efficient and orderly. It implicates factual issues which have answers in the evidence and testimony of record, which are (artificially) just out of reach. It would be unjust for Prolitec to prevail on a dispositive issue, when testimony and evidence that further establish patentability exists but cannot be considered. Further, Prolitec will soon ask the Court for a narrow construction of "generating command data" that may very well bear on the *Alice* analysis. Claim construction is a threshold issue, not a backup to a patentability defense.

## III.     STATEMENT OF FACTS

### A.      Background of the Technology

Scent plays an important role in a person's perception of an environment and can even influence their behavior. '388 Patent at 1:28-34. Scent delivery devices are used to disperse a fragrant liquid (like scented oil) into an environment, usually an enclosed residential or commercial space, from homes and apartments (having a few devices) to hotels, casinos, and sporting arenas (having dozens or more). *Id.* at 1:28-34, 2:55-62.

Scent delivery devices are often installed in hidden or inaccessible, but strategic, locations to maximize scent dispersion and minimize tampering or damage, such as in HVAC systems, within ceilings, or on rooftops. *See id.* at 7:3-7. Larger commercial locations, like hotels, utilize dozens of scent delivery devices to scent various rooms with different scents or on different schedules, making operating the devices individually or by manual input to each device's interface (such as by pressing its buttons) not practical or possible. *See id.* at 2:55-62, 4:63-5:2, 7:3-7.

Yet delivering a pleasurable scenting experience requires precise, dynamic control of devices even when they are inaccessible because a variety of factors can impact a person's perception of scent. For example, scent type, room size, number of occupants, number and location of scent devices, weather, malodors, and HVAC settings all can impact how strong an occupant perceives a delivered scent. *Id.* at 4:30-40. Without precise programmed control of the scent delivery devices, undesirable scenting outcomes (e.g., under- or over-scenting, odor fatigue, or deploying incompatible scents) are likely. *Id.* at 2:65-3:4, 6:4-13. Many scenting applications also require constant revision, including variation of the amount of scent delivered, when it is delivered, and even what scent is delivered. *Id.* at 1:32-34, 2:60-62. Prior-art systems were unable to provide flexibility or precision of control across a large array of usually inaccessible scent delivery devices and required complex, expensive devices having significant processing power and onboard memory to handle anything beyond manual adjustment by a user. *See id.* at 17:13-27.

**B.    The Technological Improvements of the '388 Patent**

The '388 Patent addresses the above problems by its methods and systems and detailed rules to control networked scent delivery devices, improving the functionality of devices, reducing required computing power on the distributed devices, and providing dynamic, real-time, and coordinated control of the devices. *Id.* at 2:65-7:4, 6:4-17, 6:45-56, 16:59-17:2, 21:11-33, 21:57-22:9, 22:59-23:18. Thus, the USPTO found the claims of the '388 Patent were patentable and overcame the prior art, and the Patent Office allowed those claims in 2020, six years after the issuance of *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

The '388 Patent provides at least two technical innovations over the prior art by its use of particular data structures, the "out table" and the "in table," in a centrally based control scheme for a distributed array of scent delivery devices. First, the '388 Patent improves the dynamic, real-time remote control of scent delivery devices and obtains real-time operation status information

remotely in ways not before possible in the art. The '388 Patent's "out table" provides instructions used to control a device (including those that are inaccessible) from the central controller to the device in real time. '388 Patent at 16:15-38, 16:59-17:2; *see also* D.I. 108-1, Ex. 20 ('223 Patent), at 15:37-16:4, Fig. 11 (incorporated by reference by '388 Patent at 1:8-17). The "out table" is complemented by an "in table," which receives "real-time status updates of each machine out in the field." '388 Patent at 16:30-38. These real-time updates allow remote verification "that the machines are functioning properly," allowing users to access up-to-date status data about each of the networked devices (including those that are inaccessible) to troubleshoot, for example, any connection errors, power outages, over-heating or underpressurization of the device, or when the device is failing to deliver any scent. *Id.* at 16:35-38, 18:62-19:3, cl. 2-4 (describing types of status data). None of this information was available in prior art control systems or scent delivery devices.

Second, the '388 Patent's use of the "out table" and "in table" makes the scent delivery devices more technologically efficient (and cheaper to manufacture) by allowing for reduced computer processing and memory needs on-board a scent delivery device without the loss of functionality or user control. *Id.* at 16:15-23 ("In this implementation, the scent delivery units may require minimal intelligence and functionality."); *id.* at 16:59-17:2 (similar). That is because both the "out table" and the "in table" are used to store a varied and potentially large amount of information (whether it be instructions or status updates) related to a varied and potentially large number of networked scent delivery devices.

## IV.    LEGAL STANDARD

A Rule 12(c) motion is reviewed under the same standards as a Rule 12(b)(6) motion. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party." *AstraZeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 754 (D. Del. 2016). In an *Alice* analysis, "there can be subsidiary fact questions" on patent eligibility. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). For example, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Such questions can preclude judgment on the pleadings. *Aatrix*, 882 F.3d at 1128.

## V.    ARGUMENT

### A.    The '388 Patent Recites Patent-Eligible Subject Matter Under *Alice*.

No decision from this Court is more instructive here than *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 971700 (D. Del. Mar. 13, 2017), where the Court found that claims strikingly similar to those in the '388 Patent were patent-eligible under *Alice*. The Court should follow the same reasoning and come to the same conclusion here.

Much like the '388 Patent, which is directed to scent control and grouping of networked scent delivery devices in a multi-room system, *Sonos* involved patents directed to volume control and pairing of networked multimedia players in a multi-zone system. *Id*. The Court found that the *Sonos* claims went well beyond the abstract idea of collecting, organizing, and storing data because they included meaningful, tangible limitations tied to specific devices that changed the way they operated. *Id*. at *5-6. The Court also concluded that even if the methods could be performed manually (which it doubted[1]), automating a method of control in such a manner was a substantial

---

[1] The Court's analysis in *Sonos* on this point applies here, too. *See id.* at *6.

improvement to the functionality of the device itself and therefore was not abstract. *Id.* at *6, 8. Likewise here, the claims of the '388 Patent recite limitations that fundamentally alter the way the scent delivery devices are controlled together, as discussed in the Background section above (and related to *Alice* Step 1 below), rendering the claims sufficiently concrete. *See also id.* at *5-6.

Like the patents in *Sonos*, the '388 Patent does not merely automate manual control of scent delivery devices but instead overcomes specific problems in the control of networked devices that mark the substantial improvement itself. *Cf. id.* at *8. For example, the centralized "out table" and "in table" data structures enable real-time instructions to and verification information from the scenting devices, which improves the functionality of the system and cannot be performed manually. *Cf. id.* at *6 (the *Sonos* patents allow "devices to be grouped and regrouped in real time"). Even if a user *could* manually access all (usually inaccessible) devices, a user could only gather out-of-date status information by the end of each round and could not control a dynamic scenting environment *in real time*. Moreover, the real-time instructions and verification information with the "out table" and "in table" is the substantial improvement itself, because each scent delivery device requires less on-board processing power and, thus, like in *Sonos*, "effect[s] tangible changes in the [devices'] configurations." *Id.* at *8.

1.     **The '388 Patent Claims Are Patentable Under Alice Step 1.**

a.     **The '388 Patent Is Directed to Specific Improvements to Control Software in the Field of Networked Scent Delivery.**

The first step of the *Alice* test is to determine what the claims are "directed to." The Federal Circuit has warned against "oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply . . . abstract ideas.'" *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217); *see also Inmar Brand Soln's, Inc. v. Quotient Tech. Inc.*, 2024 WL 1675036, at *1 (D. Del. Apr. 18, 2024). Also, the claims

should be read "in light of the specification," which must be taken to be true. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016) ("[T]he Court must take the specification's statements about the purported invention to be true."). This latter principle is overlooked by Prolitec, who consistently debates the specification and whether its disclosures are true or applicable. *E.g.*, Mot. at 11. Those debates should be ignored. *See also NICE Ltd. v. CallMiner, Inc.*, 2020 WL 1502290, at *3 (D. Del. Mar. 30, 2020) (claims need only "capture" improvements described in specification)

The claims of the '388 Patent are directed to specific, technical improvements to the *control and functionality* of scent delivery devices. *See* Section III.B., *supra*. Rather than address these improvements, Prolitec oversimplifies the claims of the '388 Patent as being directed only to "monitoring and controlling networked scent delivery devices" (Mot. at 2) and largely ignores the specification. Prolitec thus "misses the forest for the trees." *Railware, Inc. v. Nat'l R.R. Passenger Corp.*, 2023 WL 5432860, at *8 (S.D.N.Y. Aug. 23, 2023).

The claims of the '388 Patent use particular data structures to generate and transmit real-time instructions to networked scent devices and receive real-time status updates from those devices. Such data structures provide a technical benefit not previously available by dramatically reducing the amount of processing power and memory required on board each networked scent delivery device. *See* '388 Patent at 16:15-38, 16:59-17:2. For example, claim 1 is directed to the use of "real-time status update[s]" to monitor and control networked scent delivery devices. In operation, a networked device may become disconnected or otherwise disabled. Based on the real-time status updates, the system may deactivate the disconnected device and activate other devices to compensate for this loss in the system. *See* '388 Patent at 16:24-38.

The structure and function of the central controller, which "stores an in table in which verification information relating to each networked scent delivery device is stored and an out table in which instructions for each networked scent delivery device are stored," enables the devices to function as intended: to provide a dynamic scent experience for occupants and a reliable and efficient controlled delivery method for users. The specification also teaches that by utilizing a specific data structure (the out table) to store instructions from which to generate command data to control the operation of each networked scent delivery device in real-time, scent devices can be designed with less computing power, since the complex processing necessary for their proper operation is centralized in the out table. '388 Patent at 16:15-38, 16:59-17:2. Thus, the '388 Patent both improves the computer system *and* the functioning of physical devices, which can now be built with less powerful, less costly processors, and less on-board memory.

The '388 Patent's claims also provide significant run time performance enhancements for a central controller. As one example, the '388 Patent's use of an "out table" as storage for intermediate representation of "instructions" before generation of commands to individual scent delivery devices decouples the process of generating device commands from the representation of the schedule, and avoids the code complexity, and execution burdens, such as inter-process or inter-thread semaphores, that would occur without the decoupling. Similar benefits come from the '388 Patent's use of an "in table" to store incoming status data from networked scent delivery devices because it decouples the asynchronous process or threads that are receiving the incoming status data from other processes involved in controlling the networked scent delivery devices. Like with the "out table," the choice of the "in table" avoids code complexity and execution burdens, such as inter-process or inter-thread semaphores, that would occur without decoupling. The '388 Patent thus also significantly reduces the burden on the central controller during updates of the

instructions or generation of commands because tables can operate faster and generate less disk traffic such as memory paging. As a further benefit, the cost of the processor and memory used in the central controller can be reduced, as can be the power consumption of that central controller. These are technological benefits that are not gained simply by using a computer or network to do something conventional better or faster.

This division of functions provided by the '388 Patent claims mirrors that found to be patentable by the Federal Circuit in *Visual Memory* and by this Court in *IOENGINE*. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-62 (Fed. Cir. 2017); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 483-84, 487 (D. Del. 2022). The '388 Patent claims, as supported by the specification, capture these technical and tangible improvements that render the claims not abstract. *NICE*, 2020 WL 1502290, at *3. And these claims are patent-eligible because they "focus on specific asserted improvements in computer capabilities," *not* a process where "computers are invoked merely as a tool." *Int'l Bus. Mach. v. Zillow*, 50 F.4th 1371, 1377 (Fed. Cir. 2022).

### b. The '388 Patent Is Not Directed to a Mental Process and Cannot Be Replicated by a Human with Pen and Paper.

Prolitec isolates a portion of claim 1 and argues that a human could perform the steps with a pen and paper by monitoring the device. Mot. at 16. But Prolitec's assertion that the benefit of real-time status updates in the '388 Patent could be achieved by "a status light on or an audible tone emitted from the device" (Mot. at 16) misses the point entirely, because a status light on or an audible tone from a device in an inaccessible space would still require a user access that inaccessible device within close proximity. In any case, "[m]ethods with real-world impact, implemented on physical devices, are not rendered abstract merely by the ability of a human to achieve a similar result . . . via different means." *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F.

Supp. 3d 533, 537 (D. Del. 2019).

Far from Prolitec's assertion that the ScentAir patent merely moves manual control of scenting technology onto a network using conventional techniques (Mot. at 16), the claimed coordination of networked devices in adjacent spaces (*e.g.*, lobby vs. conference room) with varied scent schemes evoking different experiences, which are highly variable depending on the event (*e.g.*, conference vs. wedding vs. smoky casino floor) and the dynamic factors affecting the strength of the scent (*e.g.*, humidity, temperature, occupancy, HVAC settings), would be near impossible to accomplish without the inventions in the ScentAir patent and *still* has not been solved in the brick-and-mortar world. The fact that these problems persisted until ScentAir's invention confirms that ScentAir did not merely put a human solution on a computer—there was no existing human solution to put on a computer. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (rejecting human activity analogy where "Defendants provided no evidence that the process previously used by [humans] is the same as the process required by the claims."). And, even if a human-driven solution *could* exist, claims that capture a "distinct process to automate a task previously performed by humans" are still patentable. *Id.*; *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 643 (Fed. Cir. 2020) ("automation of a task previously performed by humans [] does not mean the claimed system is necessarily directed to an abstract idea"); *Axcess Int'l*, 375 F. Supp. 3d at 537 ("Methods with real-world impact, implemented on physical devices, are not rendered abstract merely by the ability of a human to achieve a similar result . . . via different means."); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (finding that claims reciting "a specific way to automate" an *alleged* manual process are still patent eligible).

Even ignoring the critical role played by physical scent devices in ScentAir's claims, the

'388 Patent recites *specific* methods and processes to improve controls software and data structures. The Federal Circuit has confirmed such technological advances embodied in software are not abstract. *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) (holding software claims patent-eligible where they "entail[ed] an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)"); *see also Enfish*, 822 F.3d at 1337-39 (reasoning, "that the improvement is not defined by reference to 'physical' components does not doom the claims," and concluding claims are not abstract if directed to improvement in existing technology); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018) (same). So has this Court. *See*, *e.g.*, *Inquisient Inc. v. ServiceNow, Inc.*, 2023 WL 2072400, at *5 (D. Del. Feb. 17, 2023) (finding "the focus of the claims seems to be on a data repository that includes particular data structures that have relationships among one another," which weighed in favor of patent eligibility). Other cases confirm that claims like the '388 Patent directed to controlling and monitoring devices can be patent eligible. *See Inmar Brand Soln's*, 2024 WL 1675036, at *6-8 (holding claims directed to remote point-of-sale coupon-clearing technology as patent-eligible); *Automated Pet Care Prod., LLC v. PurLife Brands, Inc.*, 2023 WL 8101973, at *3 (N.D. Cal. Nov. 21, 2023) (holding claims directed to monitoring and controlling an automated litter device as patent-eligible); *Railware*, 2023 WL 5432860, at *8 (holding claims directed to improving known centralized railroad track segment control as patent eligible).

### c.    The '388 Patent Does Not Preempt Any Field.

Prolitec's "concern" of preemption (Mot. at 19-20) is baseless, highlighted by Prolitec's failure to identify any particular field that the patents purportedly preempt, let alone explain how it would be preempted. Instead, the '388 Patent recites particular methods to improve the control of networked scent delivery devices, leaving many others open for use. There are many other ways

to control the operation of, and receive status updates from, networked scent delivery devices that do not use an out table or an in table, or the other limitations of the '388 Patent. One of those still-open ways is illustrated by Hamada, the reference that kicked off the *ex parte* reexamination of the '388 Patent, which illustrates a method of remote scent delivery not preempted by the '388 Patent, as proven by Hamada's failure to anticipate or render obvious the '388 Patent claims.

## 2.    The '388 Patent Claims Are Patentable Under Alice Step 2.

The '388 Patent claims recite specific inventive concepts which "involve[] more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367. The '388 Patent describes the substantial difficulties in prior-art modes of scent delivery (both in network- and non-network-connected devices) with programming, control, and fine-tuning the timing of numerous scent delivery devices to avoid over- or under-scenting and incompatible scenting. *See*, *e.g.*, '388 Patent at 16:15-38, 16:59-17:2.

To overcome these issues, the '388 Patent claims specific, unconventional combinations of elements that capture the improvements described in detail in its specification. *See NICE*, 2020 WL 1502290, at *3 (claims need only "capture" improvements described in specification). These claim limitations confine any alleged abstract idea to practical applications and provide real-world advances over the prior art. *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (claim inventive that made prior art "*dynamic and efficient*").

Prolitec's remaining arguments likewise are incorrect. *First*, in asserting that the claims merely recite use of generic hardware to implement an abstract idea (Mot. at 17-19), Prolitec again ignores the true substance of the claims that provide substantial technical improvements such as, for example, the use of an in table and out table to enable real-time control and verification information that provides improved distributed architecture and reduces the amount of processing and computing power necessary on-board each device. *Amdocs*, 841 F.3d at 1300-02 (concluding

that the distributed architecture provided an inventive concept to some limitations considered individually or as an ordered combination). *Second*, Prolitec repeats the argument that the claims disclose "generic data structures" but again wholly ignores the claims' limitations and thus fails to consider the specific structures required by those limitations discussed at length above. *Third*, Prolitec argues that the ScentAir patent adds token post-solution components, side-stepping altogether the integral role that scent delivery devices play throughout the claims' limitations.

### 3. Prolitec's Cases Are Not on Point.

Prolitec relies extensively on *ChargePoint*, but the claims there recited "nothing more than the abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations," and merely facilitated business interactions. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768-70 (Fed. Cir. 2019). By contrast, the ScentAir patents claim far more than "communication over a network," improve the functioning of a device, and are not focused on facilitating business interactions. Additionally, unlike the facts here, the specification in *ChargePoint* did "not suggest that the inventors' discovery was the particular arrangement of components claimed," nor did the inventors claim that "combination of … components as their invention." *Id.* at 772. Here, the architecture claimed by the '388 Patent makes the claims' focus non-abstract. *See Inmar Brand Sol'ns*, 2024 WL 1675036, at *8. In any case, factual disputes on those matters preclude judgment on the pleadings. *Cf. Nielsen Co. (US) v. HyphaMetrics, Inc.*, 2022 WL 3211915, at *5 (D. Del. Aug. 9, 2022).

Like the claims in *ChargePoint*, the claims in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) did not go beyond their abstract idea of "requiring the collection, analysis, and display of available information in a particular field." *Id.* at 1351. The court explained that the claims "clearly focused" on the combination of abstract processes of gathering information without "any particular assertedly inventive technology for performing those functions." *Id.* at

1354. By contrast, the '388 Patent provides improved solutions to networked scent delivery units. Also, an important point missed by Prolitec is that *Electric Power* was decided at *summary judgment*, not on the pleadings, which gives it far less weight here. *Id.* at 1352.

The claims of the '388 Patent are more akin to those of the '243 patent in *KOM Software Inc. v. NetApp, Inc.*, 2023 WL 6460025, at *4 (D. Del. Oct. 4, 2023), where this Court partially denied the defendant's motion on the pleadings. There, the Court found the '864 patent unpatentable because "the claims cover essentially any method of restricting access to a storage device based on particular operations that are not permitted to be performed on the device," but the claims of the '243 claims patent were *eligible* because they "relate[d] to a specific improvement in computer technology." *Id.* at *8-9. The claims of the '388 Patent are far from "cover[ing] essentially any method of" generating and transmitting command date but instead recite technical improvements to the *control and functionality* of networked scent delivery devices.

Finally, Prolitec heavily relies on the patent ineligible claims of *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717 (N.D. Ill. 2016), which concerned monitoring and controlling property. The court explained that the "general concept of keeping watch over property is timeless" as evidenced by the "Romans monitor[ing] and secur[ing] their empire through numerous watchtowers." *Id.* at 727. But, when properly considering the claims of the '388 Patent in context of the specification, the holding of *Joao* is distinguishable. Namely, the claims of the '388 Patent are directed to technical improvements to the *control and functionality* of networked scent delivery devices—not the idea of monitoring and controlling property.

### B. Additional Reasons for Denial.

#### 1. ScentAir's Well-Pled Allegations and the Disclosures of the '388 Patent Satisfy the Rule 12(c) Plausibility Standard.

Rule 12(c) requires an evaluation of the sufficiency and plausibility of ScentAir's

Counterclaim pleading, without a high bar: "[i]f a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied." *Intellectual Ventures I LLC v. Ricoh Americas Corp.*, 170 F. Supp. 3d 673, 675 (D. Del. 2016) (citation omitted). ScentAir has pled a plausibility of relief, along with factual allegations (accepted as true) that support that plausibility. For example, ScentAir has pled *factual* allegations that the '388 Patent claims:

- Do not take a well-known or established business method or process and apply it to a general-purpose computer (D.I. 33 at ¶ 76);

- Have no corollary to a well-known business process (*id.*);

- Recite specific systems and methods that address a technical problem in the field related to the delivery of scents (*id.* at ¶¶ 76-77; *see also* '388 Patent at 2:60-3:4, 25:38-28:38);

- Provide a technical solution to that problem including by delivering scents in a controlled manner (D.I. 33 at ¶ 76; *see also* '388 Patent at 2:55-57, 3:5-14);

- Do not preempt the field (D.I. 33 at ¶ 77);

- Do not preclude the use of other scent delivery systems (*id.*); and

- Have improved previously known systems and methods and related technology (*id.*).

ScentAir has further alleged that the claims of the '388 patent are not directed to a method of organizing human behavior and are not directed to a fundamental economic practice long prevalent in commerce (D.I. 33 at ¶ 76).

Moreover, the '388 Patent specification provides extensive support for ScentAir's factual allegations as discussed in Section V.A. above. While Prolitec disputes the disclosures of the '388 Patent specification, "the Court must take the specification's statements about the purported invention to be true," *MAZ Encryption*, 2016 WL 5661981, at *5, and the Court must read the specification and draw all inferences therefrom in the light most favorable to ScentAir, *Trackthings LLC v. Netgear, Inc.*, 2023 WL 4926184, at *11 (D. Del. Aug. 2, 2023), *R&R adopted*, 2023 WL

5993186, at *3 (D. Del. Sept. 15, 2023).

When ScentAir's factual allegations and the disclosures of the '388 Patent are accepted as true, and when related inferences are drawn in ScentAir's favor, those allegations and disclosures preclude dismissal on the pleadings. *See Trackthings*, 2023 WL 4926184, at *11 (recommending denial of Rule 12(c) motion based on disclosures in the specification when "read in the light most favorable to [plaintiff]"); *TMI Soln's LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *8 (D. Del. Sept. 28, 2018) (denying motion to dismiss under Section 101 where "[t]he complaint adequately and plausibly alleges that the claims capture a non-routine, unconventional, and not well-understood activity, and may improve the functioning of computers").

Even still, should the Court grant Prolitec's motion, ScentAir respectfully requests leave to amend its counterclaims to add allegations related to these facts (including those referenced in the next section). *See Aatrix*, 882 F.3d at 1126-28 (finding abuse of discretion to deny leave to amend where the proposed amended complaint alleges improvement in a computer's function).

### 2. Prolitec's Motion Implicates Factual Disputes and Artificially Prevents Consideration of Relevant Testimony and Evidence.

The Section 101 inquiry under *Alice*, particularly with regard to Step 2, "may well involve issues of fact relating to the state of the art in the technological environment involved" and is therefore "more appropriately addressed after discovery in the context of a motion for summary judgment." *Intellectual Ventures I*, 170 F. Supp. 3d at 681; *see also Aatrix*, 882 F.3d at 1125; *Berkheimer*, 881 F.3d at 1368. Prolitec's Motion raises those same factual disputes, including (1) the absence of effective prior art scent delivery technologies; (2) the critical improvements of the claimed inventions to the operation of scent delivery devices; and (3) how the patents' technical improvements to control of networked scent delivery devices represents a specific and concrete departure from conventional systems (*see* Section V.A.2.). At a minimum, ruling against ScentAir

now would be premature in light of the material factual disputes raised by Prolitec's arguments.

But the timing of Prolitec's Motion[2] creates an even greater issue than the Court might normally face on a Rule 12 motion on patentability: fact discovery is complete, expert discovery is near complete, and significant testimony and evidence adduced in this case bears directly on the factual issues underlying Section 101. Prolitec's Motion thus raises an "obvious anomaly" where the Court must make an "artificial evaluation" of the plausibility of ScentAir's Counterclaim on the basis of the Counterclaim alone. *Grajales v. P. R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012).[3] Forcing the parties to argue as if nothing has happened in discovery and the Court to "ignor[e] the entire panoply of facts developed during discovery makes little sense." *Id.*; *Antero Res. Corp. v. C & R Downhole Drilling, Inc.*, 2019 WL 13193860, at *2 (N.D. Tex. Sept. 13, 2019) (denying Rule 12(c) Motion because ignoring comprehensive discovery "would make little practical sense").

Thus, a court should "hesitate to entertain a Rule 12(c) motion" that is brought after "the parties have invested substantial resources in discovery." *Grajales*, 682 F.3d at 46.[4] Numerous courts applying that hesitation have indeed denied motions for judgment on the pleadings filed late in a case as inappropriate. *See Perze v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674, at *3-4 (D. Or. May 5, 2014) (collecting cases from various district courts and going on to deny defendants'

---

[2] Prolitec may argue that its instant Motion should be given the benefit of the filing date of its earlier Motion (D.I. 105), but Prolitec is the party that requested "rebriefing" and has used that opportunity to expand beyond the arguments it originally made, making this a new Motion entirely.

[3] It is true that Rule 12(c) permits a motion so long as it does not "delay trial," and it is true that "district courts enjoy broad discretion in managing their dockets," but it is also true that "one of the main goals of the plausibility standard is the avoidance of unnecessary discovery." *Id.* A post-discovery motion for judgment on the pleadings obviously "defeat[s] this core purpose." *Id.*

[4] While the *Grajales* court went on to resolve the merits of the plausibility claim in favor of the plaintiff, *id.* at 46, 50, the court only did so because "this case can readily be resolved on the merits of the plausibility claim." *Id.* at 46.

motion on procedural grounds, without reaching the merits).

ScentAir suggests that hesitation here, and for the Court to exercise its discretion to deny Prolitec's Motion, which it is certain to re-raise at summary judgment, but where, at that time, the parties and the Court have the benefit of discovery. *See Antero*, 2019 WL 13193860, at *2. If the Court entertains the merits of the instant Motion now, the Court will not have the benefit of:

- The testimony the inventors on the '388 Patent, Chad Morton and John Thurston Chandler, regarding the state of the art in scent device control prior to the '388 Patent, the technical and practical improvements provided by the '388 Patent, and the impossibility of recreating the methods of or achieving the benefits of the '388 Patent by manual labor or mental exercises by a human;

- The testimony of ScentAir's technical expert, Robert Dezmelyk, who opined about the reasons why the claims of the '388 Patent are not unpatentable under Section 101, including how they specify a particular data structure used for specific purposes and provide technological benefits not gained simply by using a computer or network, but which depend directly on the unique system architecture of claimed by the '388 Patent; and

- The testimony of Prolitec's technical expert, Dr. Cory Plock, who opined—contrary to the position Prolitec now takes in its Motion—that the "out table" recited in the '388 Patent is not just an arbitrary data structure.

This and other testimony and evidence bears directly on the factual questions raised by the *Alice* inquiry, especially in relation to Step 2, preemption, and other related matters. Yet ScentAir cannot rely on this testimony and evidence to defeat the instant Motion (and the Court cannot address the testimony and evidence without conversion, notice, and party opportunity to present evidence, Fed. R. Civ. P. 12(d)), even though it counsels in favor of the '388 Patent's claims being patentable under Section 101. That same testimony and evidence also underscores that denial of Prolitec's motion on procedural grounds is especially appropriate here if the Court is inclined to grant the motion, since the outcome on the Section 101 analysis would be different at summary judgment.

### 3. Prolitec's Request for Supplemental Claim Construction Undercuts Its Motion for Judgment on the Pleadings.

Another reason to deny Prolitec's Motion is because of claim construction. While ScentAir

disagrees any further construction is needed, or that there was any prosecution disclaimer during *ex parte* reexamination, the important fact is that Prolitec seeks a construction of the term "generating command data" that would "restrict[] the claim scope [to] the operation of the central controller." D.I. 327 at 4. Yet this requested claim construction is at odds with Prolitec's patentability arguments, or at least indicate that a ruling on patentability is not yet ripe. *See* Mot. at 3-4, 8-9, 11, 13-14, 16 (arguing that the '388 Patent claims are not specific enough to overcome *Alice*, including because of the claim requirement "generating command data").

### 4. No Individual Claim Is Representative.

Prolitec's request that the Court decide that all 20 claims are unpatentable on a Rule 12 motion is deficient for an additional reason: Prolitec fails to argue, much less establish, that claim 1 is representative of all the other claims in the '388 Patent, many of which cover materially different inventions. As described above, at least claims 2-4 of the '388 Patent provide additional, meaningful limitations that change the character of the claims such that claim 1 cannot be representative of them all. Each of these technological improvements is presumed valid "independently of the validity of other claims." 35 U.S.C. § 282(a); *Berkheimer*, 881 F.3d at 1365 ("A claim is not representative simply because it is an independent claim."). Under these facts, deferring consideration of Section 101 until later in the case is the prudent option. *See Trackthings*, 2023 WL 4926184, at *11 & n.19 (deferring the decision to determine whether the claims were substantially similar and linked to the same abstract idea); *Vineyard Investigations v. E. & J. Gallo Winery*, 2021 WL 22497, at *13 (E.D. Cal. Jan. 4, 2021) ("Erroneously determining that a claim is representative has constitutional consequences.").

## VI. CONCLUSION

ScentAir respectfully requests that the Court deny Prolitec's Motion in its entirety.

Dated:  May 22, 2024

|  | **K&L GATES LLP** |
|---|---|
| OF COUNSEL: | */s/ Steven L. Caponi* |
|  | Steven L. Caponi (No. 3484) |
| Vincent J. Galluzzo | Megan E. O'Connor (No. 6569) |
| K&L GATES LLP | K&L GATES LLP |
| 300 South Tryon Street, Suite 1000 | 600 N. King Street, Suite 901 |
| Charlotte, NC 28202 | Wilmington, DE 19801 |
| Phone: (704) 331-7400 | Phone: (302) 416-7000 |
| vincent.galluzzo@klgates.com | steven.caponi@klgates.com |
|  | megan.oconnor@klgates.com |

*Attorneys for Counterclaim-Plaintiff*
*ScentAir Technologies, LLC*