# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC., <br><br> Plaintiff, Counter-Defendant <br><br> v. <br><br> SCENTAIR TECHNOLOGIES, LLC, <br><br> Defendant, Counter-Plaintiff | C.A. No. 20-984-WCB |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS (RULE 12(c))**

Dated: May 28, 2024

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Jessica S. Gritton
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

MCCARTER & ENGLISH, LLP
Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel: (302) 984-6300
blemon@mccarter.com
ajoyce@mccarter.com

*Attorneys for Prolitec Inc.*

ME1 48612097v.1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..........................................................................................................1
II. ARGUMENT .................................................................................................................1
    A. Ineligibility of the '388 Patent Is Ripe for Decision on This Rule 12(c) Motion.................................................................................................................1
    B. ScentAir's Incorrect Characterization of the Claims and the Specification Highlights the '388 Patent's Ineligibility Under Section 101......................................................................................................................3
    C. *Sonos* and *KOM* Are Instructive Because They Highlight the Crucial Technical Limitations Missing from the '388 Patent's Claims ...........................6
        1. *Sonos* Is Distinguishable Because the *Sonos* Claims, Unlike the '388 Patent's Claims, Recited Technical Improvements....................7
        2. The '388 Patent's Claims Are Analogous to the Patent-Ineligible Claims of *KOM* .......................................................................8
    D. ScentAir Has Not Shown That Claim 1 Is Not Representative ...........................9
III. CONCLUSION.............................................................................................................10

## TABLE OF CITATIONS

**CASES**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
   94 F.4th 1371 (Fed. Cir. 2024)......................................................................................2

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ..............................................................................9, 10

*Bridge & Post, Inc. v. Verizon Comm'ns, Inc.*,
   778 Fed. Appx. 882 (Fed. Cir. 2019)..........................................................................2

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
   381 F. Supp. 3d 293 (D. Del. 2019)...........................................................................10

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...................................................................................6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) .....................................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................10

*Election Sys. & Software, LLC v. Smartmatic USA Corp.*,
   2023 WL 3013176 (D. Del. Apr. 25, 2023).................................................................1

*Gaelco S.A. v. Arachnid 360, LLC*,
   293 F. Supp. 3d 783 (N.D. Ill. 2017) ..........................................................................8

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ....................................................................................2

*KOM Software Inc. v. NetApp, Inc.*,
   2023 WL 6460025 (D. Del. Oct. 4, 2023)........................................................2, 7, 8, 9

*PDX N., Inc. v. Comm'r N.J. Dept. of Labor & Workforce Dev.*,
   978 F.3d 871 (3d Cir. 2020) ........................................................................................1

*Sonos, Inc. v. D&M Holdings Inc.*,
   2017 WL 971700 (D. Del. Mar. 13, 2017)..................................................................7

*Thompson v. TCT Mobile, Inc.*,
   2020 WL 1531333 (D. Del. Mar. 31, 2020) ...............................................................5

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ...........................................................................1, 2, 3

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) ............................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(c) ........................................................................................................... 1

Fed. R. Civ. P. 12(d) ........................................................................................................... 3

**I.   INTRODUCTION**

The claims of the '388 Patent recite broad language and generic components and lack specific limitations that capture any alleged technical improvements. In its effort to save its patent, ScentAir asks the Court to improperly accept its unsupported, conclusory allegations as true and to deny this motion based on alleged factual disputes that ScentAir fails to identify or explain how they would impact the Court's analysis. On the merits, ScentAir's arguments in support of patent eligibility for the '388 Patent fail because they rely on incorrect characterizations of the claims and the specification.

**II.   ARGUMENT**

**A.   Ineligibility of the '388 Patent Is Ripe for Decision on This Rule 12(c) Motion**

Prolitec's Rule 12(c) motion is appropriate because it meets the only two criteria put forth by Rule 12(c): 1) the pleadings are closed, and 2) it will not delay trial, which has not yet been set. Fed. R. Civ. P. 12(c).[1] As required, Prolitec's motion accepts the well-pleaded factual allegations in ScentAir's counterclaim as true and views them in the light most favorable to ScentAir. For purposes of this motion, those factual allegations are primarily found in the claims and the specification of the '388 Patent.

"[N]ot every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023). Merely stating that factual disputes exist is insufficient to defeat a Rule 12 motion. *Id.* "Instead, the patentee must propose a specific claim construction or identify specific facts that

---

[1] The Third Circuit has explicitly rejected the argument that Rule 12(c) motions should not be considered as being "filed too late" when discovery has already been completed. *PDX N., Inc. v. Comm'r N.J. Dept. of Labor & Workforce Dev.*, 978 F.3d 871, 880 (3d Cir. 2020); *see also Election Sys. & Software, LLC v. Smartmatic USA Corp.*, 2023 WL 3013176 (D. Del. Apr. 25, 2023) (granting 12(c) motion one month prior to trial).

1

need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Id.* at 1360-61.

ScentAir's pleadings do not contain disputed factual allegations that would impact the outcome of this motion, nor does ScentAir attempt to explain how any alleged factual disputes would do so. What ScentAir calls the "*factual* allegations" in its pleading are actually legal conclusions, namely conclusory statements of different flavors that the claims are not directed to abstract ideas. D.I. 332 ("Answering Br.") at 16 (emphasis in original); *see* D.I. 179, ¶¶ 32-33. Legal conclusions need not be accepted as true, "even if couched as factual allegations." *Bridge & Post, Inc. v. Verizon Comm'ns, Inc.*, 778 Fed. Appx. 882, 894 (Fed. Cir. 2019). ScentAir's pleading does not raise any material factual issues because it does not "specifically allege what in the claims . . . 'constitutes the inventive concept or concepts underlying the invention.'" *KOM Software Inc. v. NetApp, Inc.*, 2023 WL 6460025, at *10 (D. Del. Oct. 4, 2023). For example, ScentAir argues that the claimed "out table" and the claimed "in table" provide "technical innovations," but its argument is not supported by the claims, the specification, or even its pleadings. Answering Br. at 4-5, 17; *see infra* Section II.B. "Conclusory allegations, or those 'wholly divorced' from the claims or the specification, cannot defeat a motion to dismiss." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 94 F.4th 1371, 1380 (Fed. Cir. 2024) (internal quotations omitted); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("the district court need not accept a patent owner's conclusory allegations of inventiveness.").

ScentAir also argues that "[i]t would be unjust for Prolitec to prevail on a dispositive issue, when testimony and evidence that further establish patentability exists but cannot be considered." Answering Br. at 3, 17-19. But denying this motion based on this concern would be improper. If ScentAir believed such evidence would support patentability, ScentAir should have presented it

and invoked Rule 12(d) such that the motion would be considered under a summary judgment standard. *See* Fed. R. Civ. P. 12(d). Instead, ScentAir merely alludes to alleged factual disputes without providing citations or otherwise introducing it into the record. *See* Answering Br. at 19. Accordingly, this motion is appropriately considered under the Rule 12(c) standard, and ScentAir's allusions to factual evidence do not provide grounds for denying the motion.[2]

### B. ScentAir's Incorrect Characterization of the Claims and the Specification Highlights the '388 Patent's Ineligibility Under Section 101

In its effort to avoid the conclusion that the claims of the '388 Patent are ineligible, ScentAir points to supposed technical features that are not elements of the claims, or even recited in the specification. For example, the claims of the '388 Patent do not recite any sort of "real-time" control or "coordination" of devices, especially across multiple rooms or spaces. Neither does the specification of the '388 Patent recite anything about devices being inaccessible or any technical benefits from using a real-time status update, an in table, or an out table. ScentAir's attempts to stretch the '388 Patent's disclosure highlight how few technical details are supported or present in the broad claims of the '388 Patent, making them invalid under Section 101. *See* D.I. 331 ("Mot.") at 11-15.

ScentAir repeatedly characterizes the '388 Patent as relating to "real-time" instructions or control. Answering Br. at 4, 7, 8, 9, 13. But this is absent from the claims. The claims specify that one or more scent delivery devices are controlled through "command data," which is generated based on instructions contained in the out table. '388 Pat., claim 1. The claims do not recite that the command data is generated or sent in real-time, or provide any other guidance regarding the

---

[2] ScentAir further argues that Prolitec's request for supplemental claim construction indicates that "a ruling on patentability is not yet ripe." Answering Br. at 20. But ScentAir fails to explain how any construction of "generating command data" would impact analysis under Section 101. *See id.*; *Trinity*, 72 F.4th at 1360-61.

timing of the central controller's control of the one or more scent delivery devices. *See id.*; Mot. at 12. While the specification discloses multiple embodiments, one of which involves sending command data in real-time, the claims are not narrowed to this embodiment. *See* Mot. at 13.

ScentAir further refers to "coordinated control," "coordination," and "grouping" of networked devices, including across "adjacent spaces" and "in a multi-room system." Answering Br. at 4, 6-7, 11. The claims, however, require only "one or more scent delivery devices" and do not recite that more than a single scent delivery device is required, which precludes them from requiring any sort of "coordination" since that would be impossible to perform with just one scent delivery device. *See* Mot. at 12. Nor do the claims recite any of the steps the specification discloses regarding *how* any coordination (e.g., resolving schedule conflicts) or grouping (e.g., based on relatedness) would be performed. *Compare* '388 Pat., claim 1, *with id.*, Fig. 7. Similarly, the claims do not recite anything regarding the placement of the claimed one or more scent devices, such as in multiple rooms or adjacent spaces, as ScentAir refers. Answering Br. at 6, 11.

Although the specification may recite technical benefits related to real-time control of scent delivery devices and coordination through managing schedule conflicts of related scent delivery devices, they are not present in the claims. "[T]he mismatch between the specification statements that [patentee] points to and the breadth of claim 1 underscores that the focus of the claimed advance is the abstract idea and not the particular configuration discussed in the specification that allegedly departs from the prior art." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021).

ScentAir also frequently refers to how scent delivery devices are usually "inaccessible" or "hidden," even though such a characterization has no support in the specification.[3] Answering Br.

---

[3] It is far from a given that scent delivery devices are hidden or inaccessible. The accused scent delivery device in this case, Prolitec's Aera diffuser, is meant to be displayed in plain view, such

at 2, 3, 4, 5, 7, 10. The only portion of the specification that ScentAir cites to in support of this assertion reads: "In yet another non-limiting example, scent delivery units are installed in different locations but otherwise emit scent to a same location (e.g., via the HVAC system) may be defined or identified as being related." '388 Pat. at 7:3-7; Answering Br. at 3 (citing '388 Pat. at 7:3-7). This disclosure says nothing about the inaccessibility or hiddenness of scent delivery devices. In fact, the specification implies that the scent delivery devices are accessible because they can be repaired and have their scent cartridges replaced, activities that require access. *See* '388 Pat. at 10:38-40 ("A user may not want a unit to be enabled, for example, during repair of the unit and/or during scent cartridge replacement."). And to the extent that the specification can be stretched to imply that scent delivery devices are inaccessible because they are installed in an HVAC system,[4] it only does so in a single, ***explicitly non-limiting*** embodiment. *Id.* at 7:3-7. ScentAir's conclusory assertions about the inaccessibility and hiddenness of scent delivery devices "are untethered from the claims or the specification." *Thompson v. TCT Mobile, Inc.*, 2020 WL 1531333, at *9 (D. Del. Mar. 31, 2020) (giving no weight to "untethered" statements in its Section 101 analysis) (stipulated dismissal with prejudice prior to adoption).

ScentAir's attempted explanation for the technical improvements of the claimed "real-time status update," "in table," and "out table" similarly have no basis in the claims or specification. *See* Answering Br. at 8-10. ScentAir states: "Based on the real-time status updates, the system may deactivate the disconnected device and activate other devices to compensate for the loss in the

---

as on a shelf or table. *See, e.g.*, D.I. 179, Ex. 1 (showing the Aera device both prominently displayed and accessible in both the product listing and images from reviewers and community members).

[4] Interpreting "HVAC system" to require inaccessibility is a large logical jump because HVAC systems routinely require maintenance and repair.

ME1 48612097v.1

system." Answering Br. at 8 (citing 16:24-38). But the cited portion of the specification discusses receiving and storing verification signals from scent delivery devices and making that information accessible to a user, *not* taking any steps to "compensate for the loss in the system."[5] *See* '388 Pat. at 16:24-38.

ScentAir further asserts that use of an in table and an out table "provide[s] significant run time performance enhancements for a central controller" by, for example, "avoid[ing] code complexity, and execution burdens, such as inter-process or inter-thread semaphores" that it alleges would otherwise occur. Answering Br. at 9. Not only is the entire paragraph fully without a single citation, but none of these alleged technical benefits (nor ScentAir's technical jargon) appear in the specification.[6] *Compare id.* at 9-10, *with* '388 Pat. at, *e.g.*, 16:5-58 (discussing the out table), 18:62-19:3 (discussing the in table); *see also* Mot. 3-4, 9-10, 13-14 (discussing the specification's disclosure of the in table and the out table). Rather, the specification describes the tables simply as generic data structures that hold status and scheduling data. '388 Pat. at 16:5-8; 18:62-19:3. As such, these tables do not make the claims non-abstract. *See* Mot. at 9-10; *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("[T]he recitation of a database structure slightly more detailed than a generic database does not save the asserted claims at [*Alice*] step one.").

### C. *Sonos* and *KOM* Are Instructive Because They Highlight the Crucial Technical Limitations Missing from the '388 Patent's Claims

Prolitec agrees with ScentAir that *Sonos* and *KOM* are instructive, but only because they highlight the level of detail a claim requires to adequately capture a technical improvement, a level

---

[5] ScentAir's statement is also nonsensical because the system presumably would not be able to deactivate a device that is disconnected from that same system.

[6] Nor do they appear in ScentAir's counterclaim. *See, e.g.*, D.I. 179 at ¶¶ 32-33.

ME1 48612097v.1

detail lacking in the '388 Patent's claims. *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 971700 (D. Del. Mar. 13, 2017); *KOM*, 2023 WL 6460025.

### 1. *Sonos* Is Distinguishable Because the *Sonos* Claims, Unlike the '388 Patent's Claims, Recited Technical Improvements

ScentAir analogizes to *Sonos* by stating that the '388 Patent "is directed to scent control and grouping of networked scent delivery devices in a multi-room system." Answering Br. at 6. Though the specification may disclose such a concept, the claims themselves do not recite the limitations necessary to capture it. *See supra* Section II.B; Mot. at 11-13; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("the specification cannot be used to import details from the specification if those details are not claimed. Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims"). The *Sonos* claims, by contrast, recite concrete, technical limitations that specify ***how*** they provide a technical improvement. *See Sonos*, 2017 WL 971700 at *3-4, *7-8. For example, representative claim 1 of one of the patents at issue in *Sonos* requires "a plurality of players," at least two of which (the "zone group head" and "one or more players" selected from a list of players "eligible to be grouped with the zone group head") are formed in a "zone group." *Id.* at *4. All players in the zone group are synchronized, and the volume of the entire zone group is adjusted synchronously. *Id.* The court found the "forming a zone group" limitation in particular to "involve[] controlling actual devices and effecting a fundamental alteration in how the plurality of zone players are networked together." *Id.* at *5. Similarly, the court found that the grouping step precluded the claims from being manually performed by a human because "a user would need to re-wire the audio system each time a new group is formed." *Id.* at *6. Ultimately, because of this, the court found that "the claims are directed to an improvement to the existing technology for grouping and controlling audio speakers." *Id.*

ScentAir's claims, on the other hand, do not recite such specific technical details, especially related to "grouping of networked scent delivery devices in a multi-room system," as ScentAir alleges. Answering Br. at 6-7. **Crucially, the '388 Patent's claims do not require more than a single scent delivery device**. *See* '388 Pat., claim 1 (only reciting "one or more scent delivery devices"). Nor do they include any sort of grouping step. *Id.* Nor do they recite anything about the placement of the claimed one or more scent delivery devices, let alone in a "multi-room system." *Id.*; *see also supra* Section II.B. Furthermore, the broad '388 Patent's claims are not grounded in any specific device, as evidenced by the specification's generalized description of scent delivery devices. *See, e.g.*, '388 Pat. at 19:37-67. Simply put, the '388 Patent's claims do not have analogous technical limitations to the *Sonos* claims, and therefore are patent-ineligible. *See, e.g.*, *Gaelco S.A. v. Arachnid 360, LLC*, 293 F. Supp. 3d 783, 792 (N.D. Ill. 2017) (granting a 12(b)(6) motion under Section 101 and distinguishing from *Sonos* because "the asserted claims describe no specific technological improvement, and the asserted claims are not grounded in any specific device.").

### 2. The '388 Patent's Claims Are Analogous to the Patent-Ineligible Claims of *KOM*

*KOM* is particularly instructive because there this Court found some claims patent-eligible and others patent-ineligible, shedding light on the distinction between sufficient and insufficient technical detail in the claims. *Compare KOM*, 2023 WL 6460025 at *7-8 (finding the '243 claims directed to a specific improvement in computer technology and thus not an abstract idea), *with id.*, at *9-10 (finding the '864 claims "directed to the abstract idea of restricting access to a storage device"). The *KOM* patents both related to "implementing a 'trap layer' between the application layer and the file system layer of the computer system," which provided a technological advancement in computer storage devices, including by preventing invalid requests from being

8

passed to the device drivers. *Id.* at *1. However, the key difference between the two patents that ultimately resulted in this Court finding the '243 patent eligible and the '864 patent ineligible under Section 101 was that the '243 claims expressly recited the use of a trap layer as described in the specification, while the '864 claims did not and instead recited broadly generic steps. *Id.* at *8-9.

The difference between the claims of these two related[7] patents in *KOM* is similar to the difference between the previously asserted '162 Patent and currently asserted '388 Patent. The specifications of both the '162 Patent and '388 Patent (the "ScentAir Patents") share the same alleged technical improvement of managing scheduling conflicts between related devices. Mot. at 2; *see, e.g.*, '162 Pat., Abstract; '388 Pat., Abstract. However, as in *KOM*, only one of the two ScentAir Patents—the '162 Patent—includes claims that capture the alleged technical improvement. *See, e.g.*, Mot. at 2 n.1. The other—the '388 Patent—recites broad limitations that are not limited to and thus do not capture the alleged technical improvement. *See* Mot. at 8-11. Accordingly, the '388 Patent is analogous to the ineligible '864 patent in *KOM*.

### D.   ScentAir Has Not Shown That Claim 1 Is Not Representative

"Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Claim 1 is representative of all of the asserted claims of the '388 Patent because all three claim sets are essentially identical, and the minor features recited by the dependent claims do not relate to a different abstract idea or provide unconventional or inventive aspects. *See* Mot. at 3-4; *id.*, Ex. A (comparing claims); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d

---

[7] The '243 patent claims priority to the '864 patent, and the two patents share all of their figures and a significant portion of their specifications. *See* U.S. Pat. Nos. 6,654,864; 9,361,243.

9

1343, 1348 (Fed. Cir. 2014) (finding representativeness where "all the claims are 'substantially similar and linked to the same abstract idea.'"). Accordingly, all of the claims of the '388 Patent are invalid under Section 101 based on the same rationale.

ScentAir fails to "present any meaningful argument for the distinctive significance of any claim limitations not found in" representative claim 1. *Berkheimer*, 881 F.3d at 1365. ScentAir asserts that "at least claims 2-4 of the '388 Patent provide additional, meaningful limitations that change the character of the claims such that claim 1 cannot be representative of them all," but fails to explain why. Answering Br. at 20. In fact, ScentAir's arguments focus exclusively on limitations from representative claim 1, such as "real-time status update," "out table," and "in table." *See, e.g.*, *id.* at 6-9. The dependent claims do not relate to the "out table" and "in table," and to the extent they are related to the "real-time status data," they merely provide conventional elements. *See, e.g.*, '388 Pat., claim 4 ("wherein the operation status indicates whether the networked scent delivery device is currently connected to the communication network.").[8] "[B]y not pointing to any distinguishing feature of the other claims that would affect the issue of patent eligibility, [patentee] has waived any argument that any of the other unspecified claims are directed to patent-eligible subject matter based on the additional limitations beyond those recited in the illustrative claims." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 322 (D. Del. 2019), aff'd, 813 F. App'x 584, 587-88 (Fed. Cir. 2020).

### III. CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court grant Plaintiff's Rule 12(c) motion for judgment on the pleadings.

---

[8] ScentAir implies that indication of connection status provides a technical improvement, but that is wholly divorced from both the claims and the specification. *See supra* Section II.B.

10

| | |
|---|---|
| Dated: May 28, 2024 | MCCARTER & ENGLISH, LLP |
| OF COUNSEL: | |
| | /s/ Alexandra M. Joyce |
| Marc C. Levy | Brian R. Lemon (#4730) |
| Syed M. Abedi | Alexandra M. Joyce (#6423) |
| Jessica S. Gritton | Renaissance Centre |
| Emily M. Ross | 405 N. King Street, 8th Floor |
| SEED IP LAW GROUP LLP | Wilmington, DE 19801 |
| 701 Fifth Avenue, Suite 5400 | Tel: (302) 984-6300 |
| Seattle, WA 98104 | blemon@mccarter.com |
| Tel: (206) 622-4900 | ajoyce@mccarter.com |
| MarcL@seedip.com | |
| SyedA@seedip.com | *Attorneys for Plaintiff* |
| Jessica.Gritton@seedip.com | *Prolitec Inc.* |
| Emily.Ross@seedip.com | |