**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PROLITEC INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 20-984-WCB |
| | § | |
| SCENTAIR TECHNOLOGIES, LLC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

In this patent infringement action, plaintiff and counter-defendant Prolitec Inc. has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. No. 104. Prolitec argues that the patent claims asserted by defendant and counter-claimant ScentAir Technologies, LLC., are invalid under 35 U.S.C. § 101 for being directed to patent-ineligible subject matter. For the reasons set forth below, the motion is DENIED.

**I. Background**

In its answer to the complaint, Dkt. No. 33, ScentAir asserted various patent infringement counterclaims arising from U.S. Patent Nos. 9,446,162; 9,460,404; 9,927,789; and 10,838,388. Prolitec moved for judgment on the pleadings on November 28, 2022, in which it argued that all the asserted claims of all four asserted patents are invalid under section 101. Part of Prolitec's motion was mooted on June 29, 2023, when ScentAir amended its counterclaims to drop its infringement claims based on three of the four patents. The only remaining counterclaims in this case are addressed to U.S. Patent No. 10, 10,838,388 ("the '388 patent").

1

On August 8, 2023, shortly before the end of expert discovery, the court stayed ScentAir's counterclaim pending resolution of reexamination proceedings before the Patent Office.  On May 8, 2024, after the conclusion of those reexamination proceedings, I asked the parties to re-brief the section 101 issue to focus specifically on the '388 patent.

The '388 patent is directed to a scent delivery system in which one or more scent delivery devices on a network are managed by a central controller.  As the specification explains, generating a desired scent profile requires controlling the output of individual scenting units.  '388 patent, col. 2, ll. 55–60.  Generating a scent profile also requires monitoring the real-time performance of devices in the system.  Rigorous control is critical to, for example, preventing "overscenting within particular areas" or "concurrent emission of conflicting or incompatible scents."  *Id.* at col. 2, line 65, through col. 3, line 4.

The '388 patent discloses a computer-implemented method for controlling the delivery of scents.  Specifically, the patent discloses storing verification signals from individual scent units, which confirm that each device is functioning properly.  The signals are stored on a central controller in an "in table."  *Id.* at col. 16, ll. 30–38.  The patent further discloses generating "command data" consisting of real-time instructions for the scent delivery units and storing that data in an "out table."  *Id.* at col. 15, line 46, through col. 16, line 14.  The scenting schedules of each scent delivery unit are aggregated into a "master schedule," which is also stored in the central controller.  *See id.* at col. 4, ll. 51–53.

Claim 1 is generally representative of '388 claims for purposes of the present motion.  That claim recites:

1. A computer-implemented method for delivering scents, comprising:

establishing a communication network including a central controller and one or more networked scent delivery devices, wherein the central controller is configured to control an

2

operation of each of the one or more networked scent delivery devices, wherein controlling the operation is based on one or more master schedules, and wherein the central controller stores an in table in which verification information relating to each networked scent delivery device is stored and an out table in which instructions for each networked scent delivery device are stored;

generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out table of the central controller; transmitting the command data to the networked scent delivery device using the communication network;

receiving a signal from the networked scent delivery device using the communication network, wherein the signal includes status data representing a status of the networked scent delivery device; and

storing the status associated with the networked scent delivery device in the in table of the central controller, wherein the status stored in the in table of the central controller identifies a functionality of the networked scent delivery device, thereby providing a real-time status update for each networked scent delivery device.

ScentAir has pleaded in its answer that the claims describe "systems and methods that address a technical problem, such as desired scent profiles varying by location, time, and day . . . with a technical solution:  a scent delivery system that includes one or more scent delivery units that are configured to release a fragrance or a scent in a controlled manner."  Dkt. No. 33 at ¶ 76.  The answer further alleges that "the claims are directed to specific systems and methods for delivering scent."  *Id.* at ¶ 77.  In its brief opposing Prolitec's motion, ScentAir clarified that the particular inventive elements that are claimed are the data structures used to generate and store instructions and to receive real-time status updates from the scenting devices.  Dkt. No. 332 at 9–10.  According to ScentAir, those data structures, the "in table" and the "out table," enable more efficient delivery of a dynamic scent experience.  *Id.* at 10.

## II.  Legal Standards

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial."  The same standard

that applies under Rule 12(b)(6) applies to a motion brought under Rule 12(c):  the court "must accept the truth of all factual allegations in the complaint[1] and must draw all reasonable inferences in favor of the non-movant."  *Revell v. Port Auth. of New York & New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  Although the court generally may not consider matters extraneous to the pleadings, the court may consider an undisputedly authentic document that is "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  A Rule 12(c) motion will not be granted, however, "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221 (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.1988)).

Patent eligibility under 35 U.S.C. § 101 is a question of law based on underlying questions of fact.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023).  "Section 101 disputes may be resolved on a Rule 12(b)(6) or Rule 12(c) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law."  *Sanderling*, 65 F.4th at 703 (quoting *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020)).  Put differently, patent claims may be held ineligible on a Rule 12(c) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (citing cases).

---

[1] Because ScentAir is the defendant and counter-plaintiff in this case, the "complaint" for purposes of this motion is ScentAir's answer and counterclaims.

### III.  Subject Matter Eligibility

Section 101 of the Patent Act defines patent-eligible subject matter.  It states:  "Whoever invents or discovers any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  Ineligible subject matter, for which a patent cannot be obtained, includes "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  Prolitec alleges that the claims of the '388 patent are directed to a patent-ineligible abstract idea.

### 1.  Principles

The Supreme Court's decision in *Alice* established a two-step test for determining whether patent claims are directed to an unpatentable abstract idea.  The first step involves determining whether the claim at issue is directed to an "abstract idea" in the first place, as opposed to a concrete invention.  If the claims are directed to an abstract idea, the second step asks whether the claim contains an "inventive concept" that removes the claimed subject matter from the realm of abstraction, thereby rendering the claim patentable.  *See generally Alice*, 573 U.S. at 217–18; *see also Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72–73 (2012).

Neither the Supreme Court nor the Federal Circuit has set forth a comprehensive definition of an "abstract idea."  *See Alice*, 573 U.S. at 221 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category in this case."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("We need not define the outer limits of 'abstract idea . . . .'").  Instead, various principles have emerged from the caselaw regarding what is or is not abstract.  *See generally KOM Software Inc. v. NetApp, Inc.*, No. CV 18-160, 2023 WL 6460025, at *3–5 (D.

Del. Oct. 4, 2023); *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. CV 22-1273, 2023 WL 1927393, at *3–5 (D. Del. Feb. 10, 2023).

The most critical of those principles for purposes of this case is that a claim that is purely functional or aspirational in nature is unpatentably abstract. *See Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981) (A patent may issue "for the means or method of producing a certain result or effect, and not for the result or effect produced." (citation omitted)); *Le Roy v. Tatham*, 55 U.S. 156, 175 (1853) ("A patent is not good for an effect, or the result of a certain process" because such patents "would prohibit all other persons from making the same thing by any means whatsoever."). Cases applying that principle focus on whether the claim contains sufficient detail to be directed to a patent-eligible process, machine, manufacture, or composition of matter, rather than a patent-ineligible result. *See SAP America*, 898 F.3d at 1167 (considering whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (explaining that courts should "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery"); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) (explaining that a claim that "calls for the desired result of associating a customer's order with said customer, and does not attempt to claim any method for achieving that result," is abstract, and thus ineligible for patenting). Prolitec argues that the claims of the '388 patent fall within the line of cases finding such claims invalid.

### 1. Analysis

Prolitec argues that claim 1 of the '388 is directed to the abstract idea of monitoring and controlling scent delivery devices on a network. Prolitec's argument is essentially that, although

the claim describes a detailed method for monitoring and controlling devices, the steps of the method are described in terms of their result, and the claim "does not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (finding claims directed to an abstract idea). "To the extent that the claims recite technical limitations," Prolitec argues, those limitations describe "generic, routine components defined by their function rather than any concrete structure." Dkt. No. 331 at 8. Prolitec's argument is unpersuasive because it is premised on factual issues that must be resolved in ScentAir's in the Rule 12 posture of this motion. *See Revell*, 598 F.3d at 134; *Rosenau*, 539 F.3d at 221.

Claim 1 recites a method for delivering scents comprising "establishing a communication network," "generating command data," "transmitting the command data," "receiving a signal from the networked scent delivery device," and "storing" the device's status within a central controller. Those steps are generic to controlling scent devices on a network. More specifically, however, the claims require that the communication network control the devices based on "one or more master schedules," and that the central controller of the network store verification data relating to each device in an "in table" and store instructions for each device in an "out table." ScentAir argues that the "in table" and "out table" are more than generic data structures, but instead constitute tangible improvements to a technological process, thereby rendering the claims not abstract. *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–62 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

Whether the "in table" and "out table" are more than generic data structures is a fact question that, on a Rule 12(c) motion, must be resolved in favor of ScentAir. Although Prolitec argues that the specification describes those tables as generic data structures, the portions of the patent that Prolitec cites do not expressly state that the structures are generic. *See* '388 patent at

col. 16, ll. 5–8; col. 18, line 62, though col. 19, line 3.  That finding requires the court to consider extraneous information and draw an inference in favor of Prolitec, which it cannot do in this posture.  Put differently, Prolitec's motion is premised on the factual notion that the claims call for "a generic network" to be used "in a normal way," Dkt. No. 331 at 14 (citing *ChargePoint v. SemaConnect, Inc.*, 920 F.3d 759, 766–70 (Fed. Cir. 2019)), but that finding is disputed by ScentAir.  ScentAir has pleaded that the claims describe "systems and methods that address a technical problem," and that the claims themselves "are directed to specific systems and methods for delivering scent," *id.* at ¶¶ 76–77, statements that it has clarified to refer to the "in table" and the "out table," Dkt. No. 332 at 9–10.  That deficiency is fatal to Prolitec's position at this juncture.

Prolitec further argues that the claims are directed to a mental process that can be performed by a human with pen and paper, but that argument is unpersuasive for the same reason:  it assumes that the "in table" and "out table" are nothing more than generic lists a person could keep manually.  For the same reasons detailed above, this court must resolve that question in ScentAir's favor and infer that the named tables recite specific technological improvements beyond implementing what could be a pen-and-paper process onto a computer.

* * * * *

For the foregoing reasons, Prolitec's motion is DENIED.  Prolitec may re-raise its motion at a later stage in the case, at which point the court will reconsider the effect of the "in table" and "out table" limitations on the patentability of the claims under the appropriate factual standard.

8

IT IS SO ORDERED.

SIGNED this 24th day of June, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE