## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC,<br><br>          Plaintiff/Counter-Defendant,<br><br>v.<br><br>SCENTAIR TECHNOLOGIES, LLC,<br><br>          Defendant/Counter-Plaintiff. | C.A. No. 20-984-WCB |

### **PROLITEC'S REPLY IN SUPPORT OF SUPPLEMENTAL CLAIM CONSTRUCTION**

Dated: June 24, 2024

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Brian McQuillen
Jessica S. Gritton
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Brian.McQuillen@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

AKERMAN LLP

Brian R. Lemon (#4730)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
Tel: (302) 596-9200
Brian.Lemon@akerman.com

MCCARTER & ENGLISH, LLP
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel: (302) 984-6300
ajoyce@mccarter.com

*Attorneys for Plaintiff/Counter-Defendant*
*Prolitec Inc.*

## **TABLE OF CONTENTS**

                                                                                                    **Page**

I.     ARGUMENT ...............................................................................................................1

        A.     ScentAir Emphasized that Only the Claimed Central Controller Generates Command Data ......................................................................................1

        B.     Command Data Must Include Activating the Scent Delivery Device ..................5

II.    CONCLUSION ..........................................................................................................5

## TABLE OF CITATIONS

**CASES**

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
    713 F.3d 1090 (Fed. Cir. 2017) ....................................................................................5

*LG Philips LCD Co. v. Tatung Co.*,
    2007 WL 5787789 (D. Del. June 15, 2007)..................................................................1

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ....................................................................................1

*Props. Ltd. LLC v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017) ....................................................................................4

*Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC*,
    824 F.3d 999 (Fed. Cir. 2016) ..................................................................................4, 5

*Trs. of Boston Univ. v. Everlight Elecs. Co.*,
    896 F.3d 1357 (Fed. Cir. 2018) ....................................................................................5

*Visto Corp. v. Rsch. in Motion Ltd.*,
    623 F. Supp. 2d 756 (E.D. Tex. 2008).........................................................................1

ScentAir admits that to infringe the independent claims of the '388 Patent, an accused system must generate command data at the central controller. *See* D.I. 345 ("Resp. Br.") at 4-5, 15. Thus, there is no dispute that the '388 Patent requires that the central controller generate the command data and, at a minimum, the Court should issue a claim construction ruling finding as such. In the reexamination proceeding, however, ScentAir clearly and unmistakably went further: insisting that *only* the central controller generates the command data and that the command data must include data to activate the delivery of scents. As such, the Court should issue Prolitec's proposed claim construction.

I.    ARGUMENT

   A.   **ScentAir Emphasized that Only the Claimed Central Controller Generates Command Data**

To distinguish the claimed invention of the '388 Patent from the Hamada prior art reference, ScentAir made a clear and unambiguous disclaimer that requires the claimed command data in the '388 Patent to *only* be generated at the claimed central controller.[1] D.I. 342 ("Mot."). Rather than address ScentAir's statements that Prolitec submitted in support of its prosecution disclaimer argument, ScentAir changes the subject by focusing on other arguments made during the reexamination proceeding about supposed mistakes the USPTO made in its characterization of Figures 3 and 7 of Hamada. Resp. Br. at 4-5, 7-8, 10, 12-13. When ScentAir's statements from the

---

[1] ScentAir stresses that independent claims of the '388 patent are open-ended because they include the transition phrases "comprising" and "including" and are, therefore, entitled to a very broad interpretation. Resp. Br. at 6. This misses the mark because ScentAir narrowed the scope of these initially broad claims by disclaiming claim scope in the reexamination proceeding. *See Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Visto Corp. v. Rsch. in Motion Ltd.*, 623 F. Supp. 2d 756, 768-69 (E.D. Tex. 2008) (construing "sending the differences" and "storing the differences" as "sending only the differences" and "storing only the differences" in light of prosecution disclaimer); *LG Philips LCD Co. v. Tatung Co.*, 2007 WL 5787789, at *6-11 (D. Del. June 15, 2007) (construing "rear mountable" as excluding any front or side mounting fastening elements in light of prosecution disclaimer).

1

reexamination are analyzed in the *context* of the actual disclosure and teachings of Hamada, the unmistakable conclusion is that only the central controller generates command data.

Hamada describes a system for providing a scent service in which the user of a mobile device first registers to use a particular scent device in a store by sending a request to a scent service management device. Mot., Ex. C, ¶ 52. In response, the scent service management device issues a service ID corresponding to the request and registers the service by storing identification information for the store, scent device, user scent, service ID, content/instruction information, and scheduled visit time in the "scent service registration table" of the scent service management device. *Id.*, ¶ 53 and Fig. 4. The service ID is then sent to the mobile device, and the information in the scent service registration table (shown in Figure 4), including the scent content/instruction information, is sent to the scent generating device and stored there (shown in Fig. 7). *Id.*, ¶¶ 37, 46, 54-55 and Figs. 4, 7. When the user visits the retail store and uses the mobile device to request activation of the scent device, the scent device retrieves the content/instruction information previously sent by the scent service management device to confirm the request was previously registered by the user to use a particular scent device at a particular time. *Id.*, ¶¶ 57-58. The scent generating device then generates a scent corresponding to the scent content/instruction information. *Id.*

In response to the October 6, 2023 Office Action, ScentAir repeatedly acknowledged that the scent content/instruction information shown in tables of Figures 4 and 7 of Hamada includes instructions necessary for controlling the operation of the scent delivery device. Mot., Ex. G, at 15-17. Thus, as acknowledged by ScentAir, Hamada requires that **both** the mobile device and the scent service management device (characterized by the USPTO as the claimed central controller)

generate and send instructions necessary for controlling the operation of the scent delivery device.[2]

ScentAir then distinguished the claimed invention from Hamada based on its assertion that in the claimed invention *only* the central controller generates and sends the claimed command data to the scent device. *Id.* at 18-21. By making this critical assertion, ScentAir was able to contrast Hamada where the mobile device also generates and sends instructions to control the scent device. *See generally id.* at 18-24.[3] ScentAir argued that the USPTO rejection relied upon "Hamada's disclosure that a mobile device sends command data directly to the scent generation device, based on an unreasonably broad interpretation of claim 1 that does not require the central controller to control the scent generation device by generating and sending command data." *Id.* at 18. Referring to claim 1, ScentAir further argued:

> ***Because the [claimed] communication network recites only the central controller and the scent delivery devices***, and ***the generating the command data is used to control*** *the operation* of ***the scent delivery devices***, which is what the central controller is configured to do, ***this interdependent arrangement of recited elements indicates*** that the recited steps including ***the generating the command data*** and transmitting the command data ***occur in the central controller***.

*Id.* at 19 (bold italic emphasis added; regular italic emphasis in original).

Next, ScentAir pointed out that the specification of the '388 Patent "repeatedly states that the central controller generates and sends the command data" and cites twenty different references

---

[2] ScentAir characterized Hamada as requiring both the mobile device and the scent service management device to generate and send instructions to the scent delivery device in the context of asserting Hamada lacks the claimed "out table." Mot., Ex. G at 15-17. That's because the USPTO mistakenly referred to Figure 3 as meeting the claimed "out table" instead of Figure 4 which clearly is described and shown in Hamada as a table with stored instructions in the scent service management device and reads on the claimed out table of the central controller. *Id.* at 15-16.

[3] According to ScentAir, "command data" can be "a schedule that does not necessarily contain on or off commands but conveys to the scent delivery device information for it to 'perform as scheduled.'" Resp. Br. at 14 (describing embodiment (3)). From this it follows that Hamada's schedule and scent delivery device information of Figure 4, including the service ID, would satisfy the meaning of "command data" in the claims of the '388 Patent.

3

in the specification where *only* the central controller generates and/or sends command data to the scent delivery unit(s). *Id.* at 20. ScentAir concludes by stating: "***Indeed, the specification provides no embodiments where anything other than the central controller generates and sends the command data***." *Id.* at 21 (emphasis added).

The clear and unmistakable meaning of ScentAir's arguments is that *only* the central controller generates and sends command data in the claimed invention. If any other device generates command data, it would not find support in the specification, whether it is generating command data by itself or along with the central controller. ScentAir cannot escape this, irrespective of whether it needed to make this statement to distinguish over the prior art. *Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017) (holding that scope of surrender is not limited to what is necessary to avoid prior art references). But as explained above, ScentAir made these statements in the context of Hamada which describes a system in which instructions and commands are generated and transmitted from *both* a mobile device (the "mobile terminal 3" in Hamada) and a central controller ("the scent service management device 1" in Hamada). As a result, ScentAir had to distinguish Hamada by arguing that the claims required that the command data is generated and transmitted exclusively by the central controller.

ScentAir's argument that Prolitec's proposed construction improperly excludes a hypothetical embodiment where command data is generated by other devices along with the central controller is misplaced. Resp. Br. at 11. While the specification need not describe every conceivable embodiment, the claim must still meet the requirements of 35 U.S.C. § 112. ScentAir's broad construction should be rejected because it would cause the '388 Patent to fail Section 112, and is inconsistent with the principle that claims should be construed to preserve their validity. *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1004 (Fed. Cir. 2016). In

4

*Ruckus*, the court refused to construe the claim to include wireless communications because the specification makes no mention of wireless communications, and "construing the claims to encompass that subject matter would likely render the claims invalid for written description." *Id.* Similarly here, the specification does not disclose command data being generated by "anything other than the central controller," as ScentAir readily admits. Mot., Ex. G at 21. Thus, there is no written disclosure in support of such an embodiment.[4]

### B. Command Data Must Include Activating the Scent Delivery Device

Throughout the specification and reexamination of the '388 Patent, ScentAir makes clear that claimed command data must include the ability to activate the scent device. *See* Mot. at 12-14. In ScentAir's response papers, ScentAir acknowledges that the arguments made during reexamination simply "reflect the plain reality that 'command data' must in one way or another lead to the [scent delivery] device being operated (i.e. turned on or off)." Resp. Br. at 13. This admission is consistent with Prolitec's proposed construction requiring the claimed command data to include the ability to activate the claimed scent delivery device.[5]

## II. CONCLUSION

For the reasons discussed above, Prolitec respectfully requests that the Court grant Prolitec's proposed supplemental claim constructions.

---

[4] ScentAir's hypothetical embodiment, Resp. Br. at 11, also raises enablement issues given that the specification does not provide any information concerning this hypothetical complex system. A POSITA may only fill gaps, but "gap-filling is merely supplemental; it cannot substitute for a basic enabling disclosure." *Trs. of Boston Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1364 (Fed. Cir. 2018).

[5] ScentAir's argument that the proposed construction is ambiguous is disingenuous because claim 6 recites similar language, which ScentAir acknowledges. Resp. Br. at 14. ScentAir, however, narrowed the scope of the independent claims to require activation. Mot. at 12-13. Moreover, prosecution disclaimer is sufficient to overcome presumption of claim differentiation. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1097 (Fed. Cir. 2017).

Dated: June 24, 2024

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Brian McQuillen
Jessica S. Gritton
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Brian.McQuillen@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

AKERMAN LLP

/s/ *Brian R. Lemon*
Brian R. Lemon (#4730)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
Tel: (302) 596-9200
Brian.Lemon@akerman.com

MCCARTER & ENGLISH, LLP
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel: (302) 984-6300
ajoyce@mccarter.com

*Attorneys for Plaintiff/Counter-Defendant Prolitec Inc.*

6