**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PROLITEC INC., <br><br>        Plaintiff/Counterclaim-<br>       Defendant, <br><br>   v. <br><br> SCENTAIR TECHNOLOGIES, LLC, <br><br>        Defendant/Counterclaim-<br>       Plaintiff | C.A. No. 20-984-WCB <br><br> **PUBLIC VERSION FILED**<br>**September 16, 2024** |

**LETTER TO THE HONORABLE WILLIAM C. BRYSON**
**FROM STEVEN L. CAPONI, ESQ. REGARDING SCENTAIR'S**
**MOTION TO STRIKE PORTIONS OF DR. CORY PLOCK'S REPLY REPORT**

Dated:  September 9, 2024

**K&L GATES LLP**

Steven L. Caponi, Esq. (No. 3484)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE  19801
Phone:  (302) 416-7000
steven.caponi@klgates.com
megan.hunt@klgates.com

Of Counsel:

Vincent J. Galluzzo
K&L GATES LLP
300 South Tryon Street, Suite 1000
Charlotte, NC  28202
Phone:  (704) 331-7400
vincent.galluzzo@klgates.com

Jared R. Lund
K&L GATES LLP
70 West Madison Street, Suite 3300
Chicago, IL  60602
Phone:  (312) 372-1121
jared.lund@klgates.com

Dear Judge Bryson:

Pursuant to the Court's discovery dispute proceedings (D.I. 17, 49) and the Court's September 6, 2024 e-mail authorizing filing, Plaintiff ScentAir Technologies, LLC ("ScentAir") moves to strike paragraphs 119 and 122-131 of the Reply Report of Defendant Prolitec Inc.'s ("Prolitec") technical expert, Dr. Cory Plock (the "Reply Report").

Dr. Plock's Reply Report nearly *quadruples* the number of Prolitec's obviousness grounds by presenting new combinations of prior art and new theories of how a POSITA would modify that art that neither Prolitec nor Dr. Plock had timely disclosed earlier.  In his Opening Report, Dr. Plock built all of his obviousness opinions on the theory that a single database table in the prior art met both the "in table" and "out table" recited by the '388 Patent claims.  So, when ScentAir's technical expert, Mr. Dezmelyk, took the unsurprising position in rebuttal that the plain language of the claims require the "in table" and "out table" to be separate tables, Dr. Plock and Prolitec sought to backfill gaps in their invalidity case and change the landscape of the invalidity dispute too.

While the relatively forgiving *Pennypack* factors control here, "they are not a sieve."  *Intell. Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 478565, at *4 (D. Del. Jan. 31, 2017).  Reply expert reports are not the time to advance new invalidity theories but are "solely to contradict or rebut evidence on the same subject matter" submitted in the opening expert report and an opposing expert's rebuttal.  *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000, 1002 (D. Del. 2013) (quoting FED. R. CIV. P. 26(a)(2)(D)(ii)).  ScentAir has already once experienced the significant prejudice of Prolitec's late change of case theories, and it does not desire a repeat of that past prejudice.[1] ScentAir respectfully urges the Court to draw a line here.  Dr. Plock's new opinions are improper for a Reply Report, violate the Court's Scheduling Order, and would significantly prejudice ScentAir if not stricken.

## I.     Brief Factual Background

### A.     Dr. Plock's Opening Expert Report

Dr. Plock's Opening Report disclosed four bases for invalidity for the '388 Patent, two of which are relevant here:  the on-sale bar under Section 102 and obviousness under Section 103. For the on-sale bar, Dr. Plock opined that ScentAir's project with ████████ rendered the '388 Patent claims invalid, and Dr. Plock relied on a collection of ScentAir-internal design documents he called the "Requirements Specification Documents" to support his opinions.  *See generally* Ex. 1 ("Plock Op. Rpt.") at 33-34, 42-48.  Those documents had been discovered and produced relatively late in the fact-discovery window, and Prolitec did not amend its invalidity contentions to include ████████ project as a ground of invalidity under any legal theory. Nevertheless, Dr. Plock still had sufficient time to use them in his Opening Report to support his on-sale bar opinions.  But Dr. Plock did not use ████████ project or the "Requirements

---

[1] As a brief recap, Prolitec sought leave to introduce two new theories of infringement under DOE less than a month before trial.  D.I. 246.  Over ScentAir's strenuous objection (*e.g.*, D.I. 251), the Court granted the supplementation, permitted ScentAir an additional deposition and expert report, and the parties went to trial only on those new theories.  *See* D.I. 252.  Yet Prolitec's new DOE theories were contrary to precedent, and the jury returned a clear verdict of non-infringement.

Specification Documents" to support any prior-art invalidity opinions, such as obviousness under Section 103. Instead, Dr. Plock identified eight obviousness grounds relying on seven different prior art references to allegedly render obvious the '388 patent claims. *See, e.g., id.* at 100 ("The Asserted Claims of the '388 Patent Are Obvious in View of Hamada, Yamada, WebCtrl, York, Messager, Van Roemburg, and/or Grossman.").

Dr. Plock's Opening Report also took the position for all of its obviousness grounds that the recited "in table" and "out table" requirements of the '388 Patent claims were met by a single table disclosed in each of the prior art references. *See* Plock Op. Rpt. ¶¶ 143-45, 295, 300, 302.

### B.   Mr. Dezmelyk's Rebuttal Expert Report

ScentAir's technical expert, Mr. Dezmelyk, submitted a Rebuttal Report responding to Dr. Plock's opinions on invalidity. Therein, Mr. Dezmelyk took the unremarkable position that the plain language of the '388 Patent claims should be followed and thus none of Dr. Plock's seven prior art references used for obviousness had both an "in table" and an "out table" as required by the '388 Patent claims because each disclosed the use of only a single table. *E.g.*, Ex. 2 ("Dezmelyk Rpt.") ¶ 97, 108.

### C.   Dr. Plock's Reply Expert Report

Whereas Dr. Plock's Opening Report contained eight obviousness grounds on the '388 Patent, Dr. Plock's Reply Report contains *thirty eight.*[2] Dr. Plock more than quadrupled the number of his obviousness grounds by adding ████████████████████████" (previously called the "Requirements Specification Documents") as a prior-art reference to be used in combination with the seven references used in his Opening Report. *Compare, e.g.*, Ex. Plock Op. Rpt. ¶ 287 *with* Plock Reply Rpt. ¶ 127.

Dr. Plock's Reply Report also adds new theories for how the "in table" and "out table" elements of the '388 Patent claims are met. Instead of embracing the one-table designs of the prior art, Dr. Plock newly proposes that "it would be obvious to a POSITA … to use separate tables for controlling and monitoring a device;" *or* that "it would be obvious to a POSITA to split a single table by database partitioning." Plock Reply Rpt. ¶ 119; *see also id.* ¶¶ 120-25.

## II.   The Court Should Strike Dr. Plock's New Reply Opinions

The five *Pennypack* factors favor striking Dr. Plock's new opinions. But even if not every factor is met, the Court should still strike Dr. Plock's new opinions. That is because "in sophisticated, complex litigation involving parties represented by competent counsel," like here, this Court has been "more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

### A.   Factor 1:  Dr. Plock's New Opinions Surprised and Prejudice ScentAir

"It is undoubtedly surprising and prejudicial when a party springs a new theory in the middle of expert discovery without any prior hint that it might do so." *Natera, Inc. v. CareDx,*

---

[2] Dr. Plock's "one or more of" construction of his new obvious grounds made for thirty new combinations in total, plus the eight original ones. *See* Ex. 3 ("Plock Reply Rpt.") ¶¶ 127-28.

*Inc.*, No. 20-038-CFC-CJB, Dkt. 392 (D. Del. Oct. 6, 2023).  That is exactly what happened here.  Without any hint it would do so, Prolitec and Dr. Plock sprung new theories of obviousness on ScentAir only when ScentAir had no opportunity to respond.

Prolitec's rebuttal during the parties' meet-and-confer was twofold:  first, that there is no surprise because the factual subject matter of ███████████████████ was disclosed in Dr. Plock's Opening Report in relation to the alleged on-sale bar; and second, that Dr. Plock's new obviousness grounds are responsive to Mr. Dezmelyk's opinions.  But both of these arguments fail to hold water.  Dr. Plock's Opening Report and Mr. Dezmelyk's Rebuttal opined on █ ███████████████████ only in relation to the alleged on-sale bar, never in relation to obviousness—a different legal basis of invalidity.  Whether or not the *factual* subject matter is disclosed in Dr. Plock's opening report is irrelevant to Dr. Plock's failure to disclose the *legal* basis of invalidity for which he now uses that subject matter.  Just as the Court excluded a new DOE theory in *TQ Delta* even though the factual subject matter was in the expert's opening report, the Court should exclude Dr. Plock's new theories here, regardless of what factual subject matter he relied on earlier.  *TQ Delta, LLC v. Adtran, Inc.*, 2020 WL 4529865, at *2 (D. Del. July 31, 2020).

Dr. Plock's new opinions also prejudice ScentAir in several ways.  First, ScentAir did not have the opportunity to search for objective evidence of nonobviousness that would mirror (and thus rebut) these new obviousness theories, and, more broadly, Mr. Dezmelyk has no opportunity to respond to Dr. Plock's new opinions.  Leveling the playing field now would require reopening fact discovery, re-deposing fact witnesses, and re-issuing expert reports, all at the great cost of time and legal fees that ScentAir cannot justly endure.  Second, Prolitec put ScentAir through a similar game of whack-a-mole once in this case already, so "hav[ing] to go to the time and expense of having its expert file yet another supplemental report" would unfairly prejudice ScentAir.  *Oasis Tooling, Inc. v. GlobalFoundries U.S., Inc.*, No. 1:22-CV-00312-CJB, Dkt. 492 (D. Del. June 6, 2024).  Third, each party has invested significant time and resources in developing case strategies around the "in table" and "out table" requirements of the '388 Patent claims.  These tables were the focus of the previous disputes under Section 101, which are likely to resurface through dispositive motions.  *See, e.g.*, D.I. 347 at 7.  Permitting Dr. Plock's new opinions, which are in some ways the antithesis of his prior opinions, would upset the months (and years) of work that the parties have put into this case and force ScentAir in particular to retool its case significantly at this very late stage.  The fact that a dispute over the scope of the "in table" and "out table" that obviously exists is no good reason to permit improper Reply opinions, and the Court can resolve any such remaining disputes—without any new expert opinions—at summary judgment.

B.  Factors 2 and 3:  The Prejudice to ScentAir Can Only Be Cured by More Prejudice, Which Would Also Disrupt the Case Schedule

ScentAir's lead counsel has a trial in Texas and several hearings in various cases in the coming two months that would require more than a modest extension of the expert discovery schedule to fit in a new report and depositions to follow.  Beside any monetary prejudice to ScentAir, this extended delay of the close of expert discovery would necessarily start a chain reaction, delaying the October 22 deadline for dispositive motions and the pretrial schedule.  Such an extended delay, perhaps extending even to the trial date, would also inherently prejudice ScentAir.  *See Copy Protection LLC v. Netflix, Inc.*, 2015 WL 3799363, at *1 (D. Del. June 17,

2015).   Nevertheless, should the Court not grant ScentAir's motion and instead provide for additional expert reports, ScentAir respectfully seeks its attorney fees and expert costs associated with such additional effort to lessen the prejudice to it.

      C.    <u>Factor 4:  Prolitec Fails to Justify Its New Theories</u>

Prolitec cannot dispute that it failed to comply with the scheduling order, which weighs in favor of exclusion.  *See Intell. Ventures I*, 2017 WL 478565, at *4.  Prolitec also never included ███████████████ project as the basis of an invalidity theory in its invalidity contentions.  To be sure, ███████████████████████████████ were discovered and produced late in the fact-discovery period, but Prolitec and Dr. Plock were undoubtedly aware of and able to analyze ██ ████████████████████████ in relation to the alleged on-sale bar for his Opening Report. There was nothing stopping Dr. Plock from using those documents to support an obviousness theory too.

Moreover, the '388 Patent claims and specification have not changed throughout this entire case; they have always required both an "in table" and an "out table" and described and depicted those as separate tables.  Yet Dr. Plock intentionally chose to identify a single table as the both the "in table" and "out table" in his cited references.  *E.g.*, Reply Report, ¶ 118 ("Rather, as explained in my Opening Report, the scent service registration table (Figure 4) stored in the scent service management device in Hamada reads on both the claimed 'in table' and 'out table.'").  Logically, Dezmelyk responded to this position, arguing that the cited references use a single table and thus "do[] not have an in table and an out table."  *E.g.*, Dezmelyk Rebuttal Report, ¶ 97.  A properly responsive opinion would be one that sticks with Dr. Plock's "one table" theory and explains why Mr. Dezmelyk was wrong.  But, instead, Dr. Plock moves the goal post, arguing not that his "one table" theory is right but that it would have been obvious to a POSITA to turn one table into two.

The lack of good faith here is evidenced by the timing of it all:  Dr. Plock sprung new theories of obviousness on ScentAir only when ScentAir had no further opportunity to respond. Under similar facts, the Court could not "countenance a world where, for no good reason at all, parties simply wait until middle of expert discovery to disclose new theories."  *Natera*, No. 20-038-CFC-CJB, Dkt. 392.  Prolitec has the burden of proof—a high burden of clear and convincing evidence—on invalidity and thus should have been proactive in deciding on invalidity strategy and theories it would present at trial.  Litigation is not a game of ambush, but because it is such a powerful tool, parties often try, and the Court should not permit it.  Should the Court bless such tactics here, they will surely continue in this and other cases henceforth.

      D.    <u>Factor 5:  The Importance of Plock's New Opinions Is Neutral</u>

Dr. Plock's omission in his opening report suggest that his new opinions were relatively unimportant.  *See Intell. Ventures*, 2017 WL 478565, at *4 (omitting an opinion from an opening report suggests that such opinion was relatively unimportant).  That relative unimportance is confirmed by the practical realities of the instant motion.  Should the Court strike Dr. Plock's new opinions, Dr. Plock will still be left with theories of invalidity under the on-sale bar, anticipation by the Hamada reference, and obviousness over the eight grounds presented in Dr. Plock's Opening Report as limited to the prior art's express disclosures of a single table.

4

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi (No. 3484)

cc:      All counsel of record (Via Electronic Mail)

# Exhibit 1

***REDACTED IN ITS ENTIRETY***

# Exhibit 2

## *REDACTED IN ITS ENTIRETY*

# Exhibit 3

**_REDACTED IN ITS ENTIRETY_**