**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| PROLITEC INC., <br><br> Plaintiff, <br><br> v. <br><br> SCENTAIR TECHNOLOGIES, LLC., <br><br> Defendant. | C.A. No. 20-984-WCB <br><br> **PUBLIC VERSION FILED** <br> **September 19, 2024** |

**LETTER TO THE HONORABLE WILLIAM C. BRYSON
FROM BRIAN R. LEMON, ESQ. IN RESPONSE TO SCENTAIR'S
LETTER TO THE COURT REGARDING SCENTAIR'S MOTION
TO STRIKE PORTIONS OF DR. CORY PLOCK'S REPLY REPORT**

Dated: September 12, 2024

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Jessica Gritton
Brian P. McQuillen
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Brian.McQuillen@seedip.com
Emily.Ross@seedip.com

Brian R. Lemon (#4730)
AKERMAN LLP
222 Delaware Avenue, Suite 1710
Wilmington, Delaware  19801
Tel.:  (302) 596-9200
Brian.lemon@akerman.com

*Counsel for Plaintiff Prolitec Inc.*

78010640;1

Dear Judge Bryson:

  ScentAir's letter motion (D.I. 354, "Motion") to strike paragraphs 119 and 122-131 of the Reply Report of Prolitec's technical expert, Dr. Cory Plock should be denied. ScentAir's letter ignores its own discovery deficiencies that make any prejudice it suffers a problem of its own making. Further, ScentAir grossly overstates both the scope of the challenged opinions and effort necessary to cure any perceived prejudice.

  I. **Factual Background**

   A. <u>ScentAir's Failure to Timely Disclose a Prior Sale to ▮▮▮</u>

  The subject matter claimed in U.S. Patent No. 10,838,388 (the '388 patent) at issue in this case was developed and sold by ScentAir for use in ▮▮▮ more than one year prior the filing of the application to which the '388 patent claims priority. *See, e.g.*, Prolitec Inc.'s Answer to ScentAir Technologies, LLC's Third Amended Counterclaims for Patent Infringement (D.I. 193) at ¶¶ 7-18. Despite the clear relevance of this information, ScentAir did not voluntarily disclose the sale of a networked scent delivery system to ▮▮▮ Indeed, ScentAir's discovery responses to this day omit any mention of ▮▮▮. *See, e.g.*, ScentAir's response to Prolitec's Interrogatory No. 9. (Attached as Ex. A). Prolitec only became aware of ▮▮▮ through the deposition of third-party witnesses in the last few days of fact discovery. ScentAir did not produce documents evidencing the sale to ▮▮▮ until June 9, 2023—only at the insistence of Prolitec's counsel and just five days before the deadline for serving opening expert reports and nearly a month after the close of fact discovery. Prolitec disclosed its positions regarding ▮▮▮ system under a very tight timeline and as promptly as possible.

  Given this late disclosure, Prolitec was not able to seek discovery, such as through contention interrogatories, as to ScentAir's invalidity positions regarding the prior sale to ▮▮▮. ScentAir did not challenge that many, if not most, of the claim elements are present in ▮▮▮, but it presented for the first time in the rebuttal report of its expert, Mr. Dezmelyk, its contention that the scent delivery devices in ▮▮▮ were not "networked" because they were allegedly connected indirectly to the network through relay boards. *See* Motion at Ex. 2, ¶ 46. Prolitec responded to ScentAir's new argument by presenting opinion from its expert, Dr. Plock, that, even if Mr. Dezmelyk's arguments were credited, the asserted claims were obvious in view of the combination of the system sold to ▮▮▮ and *references previously cited* in Dr. Plock's opening report. *See* Motion, Ex. 3 at ¶¶ 126-131.

   B. <u>ScentAir's Deficient Interrogatory Responses</u>

  Prolitec provided its invalidity contentions as scheduled during fact discovery and, in turn, sought ScentAir's positions as to why the asserted claims of the '388 patent are not invalid. In response, ScentAir provided a table with only boilerplate statements that was repeated for every limitation of the asserted claims. *See* ScentAir's First Supplemental Response to Prolitec's Interrogatory No. 7. (Attached as Ex. B). ScentAir did not supplement its interrogatory responses

following the service of Prolitec's Final Invalidity Contentions, which explained that the asserted claims were obvious in view of the cited references in combination with the knowledge of one skilled in the art at the time of the alleged invention.

ScentAir presented for the first time in the rebuttal expert report of Mr. Dezmelyk that the cited obviousness references allegedly do not disclose an in table that is separate from an out table and therefore allegedly teach away from the asserted claims. *See, e.g.*, Motion, Ex. 2 at ¶ 94. Dr. Plock's Reply Report properly responded to these arguments raised for the first time by explaining that partitioning data tables and the motivations for doing so were well known in the art as of the priority date of the '388 patent. See Motion, Ex. 3 at ¶¶ 119, 122-125.

## II. ScentAir's Letter Motion Should Be Denied

"[E]vidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered." *Bridgestone Sports Co. v. Acushnet Co.*, No. CIVA 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007). In the Third Circuit, requests to excluded expert testimony are evaluating using the *Pennypack* factors: (1) the prejudice or surprise to a party against whom the evidence is offered; (2) the ability of the injured party to cure the prejudice; (3) the likelihood of disruption to the trial schedule; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) the importance of the evidence to the party offering it. *Id. citing Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir.1977).

Because the challenged testimony was not the result of inappropriate litigation conduct and presents no prejudice to ScentAir that cannot be cured, ScentAir's motion should be denied.

### A. Factor 1: The Challenged Testimony Is Not Unduly Surprising or Prejudicial

ScentAir cannot reasonably claim surprise or prejudice when Prolitec responds to new rebuttal theories that ScentAir sprung "in the middle of expert discovery without any prior hint that it might do so." *Natera, Inc. v. CareDx, Inc.*, No. 20-038-CFC-CJB, Dkt. 392 (D. Del. Oct. 6, 2023). It is not surprising that Prolitec would respond to opinions and theories that were not disclosed during fact discovery. And granting ScentAir's motion would simply reward it for its own failures to disclose relevant information.

As explained above, ScentAir did not produce documents evidencing the sale of a networked system to ▇▇▇▇▇▇ until just five days before the deadline for serving opening expert reports. In that time and at considerable cost, Prolitec provided expert opinions that the *nearly 80 asserted claims* from *four* patents then asserted were invalid in view of the prior sale to ▇▇▇▇▇▇ and obvious in view of prior art publications. Shortly after the report was served and prior to ScentAir's rebuttal report, ScentAir, apparently conceding a lack of infringement evidence, dropped three of the asserted patents. *See* D.I. 177.

In its rebuttal expert report, ScentAir asserted the novel theory that the scent devices in ▇ ▇▇▇▇▇▇ were not networked despite its own documents readily describing them as such. *See, e.g.*, D.I. at ¶¶ 8-17. Given ScentAir's deficient interrogatory responses and late

2

disclosures, Prolitec had no basis to predict that such an argument would be raised and sought to address this argument in the reply report of its expert. Accordingly, Dr. Plock provided an opinion that to the extent that elements were not disclosed in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, they were obvious in view of publications already of record. Indeed, Dr. Plock cites primarily to his opening report in providing his opinion. *See, e.g.,* Motion, Ex. 3 at ¶¶ 130-131.

Similarly, the challenged obviousness opinions in paragraphs 119 and 121-125 respond to ScentAir's novel rebuttal argument that the cited references fail to disclose separate in and out tables. *See, e.g., id.* at ¶ 119. The challenged opinions assert that the means and motive for separating or partitioning tables was within the knowledge of those of skill in the art as evidenced by cited introductory texts. That the knowledge of those of skill in the art may be combined with the cited references was previously disclosed in Prolitec's Final Invalidity Contentions.

Even if the challenged opinions were not entirely predictable in view of the rebuttal opinions of ScentAir's expert, any prejudice is readily curable as explained below. There is no basis for ScentAir's unsupported claim that approximately five pages of an expert report addressing references long known to the parties would necessitate reopening fact discovery, new fact depositions, and re-issued expert reports. The relevant information is provided in third party publications or has at all times been in ScentAir's custody and control. There is simply no basis for ScentAir to claim it needs additional fact discovery.

Further, the parties' prior supplemental reports addressing entirely different patents and issues are irrelevant and relate to an already concluded proceeding. There has been no indication that Prolitec's conduct in that proceeding was in any way improper.

Finally, the challenged opinions are in no way inconsistent with the parties' previous briefing under Section 101 and ScentAir has given no explanation as to why or how it would need to abandon or "re-tool" any of its positions to date in view of Dr. Plock's Reply Report.

B. Factors 2 and 3: Any Prejudice to ScentAir is Readily Curable Without Disrupting the Case Schedule

Any prejudice to ScentAir is readily curable by allowing it to provide responsive opinions in a brief supplemental report. Prolitec has already offered such a proposal to ScentAir. In addition, so as to not upset the deposition schedule, Prolitec had also offered to allow responsive expert opinions to be provided through deposition. ScentAir has rejected these offers and instead pursued this motion, which has necessitated the cancellation of previously scheduled depositions.

ScentAir's letter brief overstates the extent of the challenged opinions which only span approximately five double spaced pages. For example, ScentAir states that the challenged opinions "more than quadrupled" the number of obviousness grounds to reach a total of 38 grounds. But, in fact, Dr. Plock simply opined that the claims are obvious when ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is viewed with combinations of references that have already been thoroughly analyzed by the parties. ScentAir attempts to overinflate the number of grounds by tallying all possible combinations of references that were identified as alternative disclosures of similar or overlapping subject matter.

Further, ScentAir's concerns about scheduling appear to be premised entirely on the schedule of one member of its trial team in unrelated matters. Prolitec is certainly willing to cooperate with reasonable scheduling requests from opposing counsel, as evidenced by its efforts to avoid motion practice here and maintain the previously agreed deposition schedule. But Prolitec's case cannot fairly turn on the schedule of one attorney, particularly when ScentAir is represented by a team of lawyers at a large and highly respected firm.

C.  Factor 4: Prolitec Acted in Good Faith

As explained above, Prolitec could not have provided the challenged opinions previously because they are responsive to rebuttal arguments that were not disclosed during fact discovery as they should have been. ScentAir is aware of this fact as these explanations were provided through email correspondence and in the meet and confer prior to ScentAir's filing its motion. Nevertheless, ScentAir complains that Prolitec did not include ▬▬▬▬▬▬▬▬▬▬ in its invalidity contentions without mentioning that ScentAir did not produce documentation showing the prior sale to ▬▬▬▬▬▬ until months later. Indeed, as late as May 1, 2023, just two weeks prior to the close of fact discovery, ScentAir stated that actual reduction to practice of the of the '388 patent began "at least as early as February 2016" without mentioning that ▬▬▬▬▬▬ ▬▬▬ had been installed years earlier. *See* Ex. A at p. 8.

ScentAir has not provided an explanation for its failure to disclose the prior sale of ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬ just as it has not provided an explanation for its failure to disclose its position that the cited prior art fails to disclose separate in and out tables in response to Prolitec's contention interrogatory.

ScentAir claims a lack of good faith by asserting that Prolitec delayed the presentation of the challenged opinions to deprive ScentAir of an opportunity to respond. This is untrue as Prolitec has already agreed to allow ScentAir an opportunity to supplement its expert report to respond to the challenged testimony.  Instead, with this motion, it is ScentAir that seeks to deprive Prolitec of an opportunity to respond to its own positions that were withheld until the middle of expert discovery.

D.  Factor 5: The Challenged Testimony is Important

Finally, ScentAir's assertion that the challenged testimony is unimportant undercuts its claims that allowing it would require additional extensive discovery. While ScentAir is correct that other bases for finding the '388 patent invalid remain, the challenged testimony is necessary for a full and fair evaluation of the parties' obviousness assertions.

For these reasons, the court should deny ScentAir's motion to strike. Should the Court find it warranted, Prolitec does not oppose ScentAir providing a brief supplemental expert report to respond to the challenged testimony.

4

Respectfully submitted,

/s/ *Brian R. Lemon*

Brian R. Lemon (#4730)

cc:  All counsel of record (via email)

# EXHIBIT A

*REDACTED IN ITS ENTIRETY*

# EXHIBIT B

*REDACTED IN ITS ENTIRETY*