**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PROLITEC INC.,<br><br>      Plaintiff/Counterclaim-Defendant,<br><br>  v.<br><br>SCENTAIR TECHNOLOGIES, LLC,<br><br>      Defendant/Counterclaim-Plaintiff | C.A. No. 20-984-WCB<br><br>**PUBLIC VERSION FILED**<br>**September 24, 2024** |

**LETTER TO THE HONORABLE WILLIAM C. BRYSON
FROM STEVEN L. CAPONI, ESQ. REGARDING SCENTAIR'S
REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF DR. CORY
PLOCK'S REPLY REPORT**

Dated: September 17, 2024

**K&L GATES LLP**

Steven L. Caponi, Esq. (No. 3484)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
megan.hunt@klgates.com

Of Counsel:

Vincent J. Galluzzo
K&L GATES LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Phone: (704) 331-7400
vincent.galluzzo@klgates.com

Jared R. Lund
K&L GATES LLP
70 West Madison Street, Suite 3300
Chicago, IL 60602
Phone: (312) 372-1121
jared.lund@klgates.com

1

Dear Judge Bryson:

Prolitec's response letter (D.I. 358) does not dispute that Dr. Plock's opinions are new but argues two justifications for their belated disclosure: late discovery of ███████████ and Prolitec's surprise about Mr. Dezmelyk's invalidity rebuttal opinions. Neither holds up under scrutiny. In short, Dr. Plock's new opinions are an improper attempt to add new theories to back fill Prolitec's weak invalidity positions. Dr. Plock's new opinions should be stricken.

**Late Discovery of ███████████ Cannot Justify Prolitec's Rework of its Obviousness Case**

Despite the parties' late discovery of ███████████ Prolitec and Dr. Plock still were able to provide twenty-seven pages of analysis of ███████████ in Dr. Plock's Opening Report regarding the on-sale bar. Prolitec does not adequately explain how it was able to do that but was somehow unable to provide the additional six paragraphs[1] of Dr. Plock's Reply Report to use those same documents as part of his obviousness theories. Because the timing of the production of ███████████ clearly did not prejudice Prolitec's ability to analyze those documents for invalidity purposes, the timing cannot now justify Prolitec's fourfold expansion of its invalidity case in reply.

There also was no bad faith in ScentAir's production of the documents. Any alleged delay in providing ███████████ was the result of normal business activities, reflecting a project that occurred over ten years ago, intervening business reorganizations at ScentAir, and departing employees. In short, ███████████ was discovered during the depositions of the inventors on the '388 Patent, both of whom left ScentAir years before this lawsuit was filed (along with every other ScentAir employee who had worked on or had direct knowledge of ███████████ and ███████████ occurred years before that. ScentAir's counsel learned of ███████████ at the same time Prolitec did, and ScentAir produced the documents as quickly as it could thereafter.

Prolitec is also wrong to identify ScentAir's contention interrogatory response relating to its invalidity rebuttal positions as "boilerplate statements." *See* D.I. 358 at 1. For one, ScentAir committed during a meet-and-confer to provide an equal amount of detail in its interrogatory response as Prolitec had provided in its broad and noncommittal invalidity contentions in effect at the time. To the extent there is any vagueness in ScentAir's interrogatory response, it is due solely to the complementary vagueness in Prolitec's invalidity contentions. Regardless, ScentAir's responses still identify specific prior art as missing specific limitations, which was not "repeated for every limitation," as Prolitec wrongly argues. *See, e.g.,* D.I. 358, Exhibit B at 105 (listing Messager, Hamada, Samain 2, Yamada, and WebCTRL as failing to teach 1[b][i] while only listing Hamada, Contadini, and WebCTRL as failing to teach 1[b][ii]). To the extent Prolitec desired more detail at that time, it could have—but did not—request additional detail, or it could have—but did not—provide more detail in its own invalidity contentions. Having done neither, Prolitec cannot blame ScentAir, especially where Prolitec has the burden of proof. For that same reason, Prolitec cannot be heard to complain about ScentAir not having supplemented its interrogatory

---

[1] ScentAir does not discuss the sufficiency of Dr. Plock's analysis of ███████████ as an obviousness ground and reserves that discussion for dispositive motions practice, if necessary.

responses when Prolitec similarly has not supplemented its invalidity contentions. To the extent the Court wants the parties to supplement their complementary discovery positions, ScentAir is happy to do so in response to Prolitec's supplementation. Regardless, however, ScentAir is in the process of reviewing its interrogatory responses and will supplement any, to the extent necessary, subject to its ongoing obligations under Rule 26(e).

**Dr. Plock's New Opinions Are Not Responsive to Mr. Dezmelyk's Rebuttal Report, Which Did Not Raise any "Novel Rebuttal Arguments" but Only Foreseeable Ones**

Prolitec fails to adequately show how Dr. Plock's new opinions are responsive to Mr. Dezmelyk's Rebuttal Report. During the meet-and-confer that precipitated ScentAir's letter brief, Prolitec provided two justifications for Dr. Plock's new combinations: (1) the subject matter of ▮▮▮▮▮ was disclosed in Dr. Plock's Opening Report, and (2) Dr. Plock's new obviousness grounds are responsive to Mr. Dezmelyk's opinions related to the "in table" and "out table." Prolitec's letter brief makes up a third reason: that the combinations are responsive to Mr. Dezmelyk's position—related to on-sale bar—that ▮▮▮▮▮ did not disclose a "networked" device. *See* D.I. 358 at 1. But that third reason fails just the same as the other two (discussed in ScentAir's opening letter brief) because the "networked" dispute is constrained to the *on-sale bar* and thus cannot justify the addition of new *obviousness* theories. In particular, Mr. Dezmelyk never argued that any prior art reference used in Dr. Plock's original obviousness theories lacked a "networked" scent delivery device. *See* D.I. 354, Ex. 2 ¶¶ 58–128. And Dr. Plock is not now using his new obviousness theories to provide a "networked" scent delivery device into a gap left by the prior art references. Instead, Dr. Plock's new combination relates to whether the prior art discloses separate in and out tables. *See* D.I. 354, Ex. 3 ¶ 126.

Prolitec also fails to justify Dr. Plock's new obviousness theories in paragraph 119 and 121–135 as responsive to the "novel rebuttal argument" that the prior art fails to disclose separate in and out tables. D.I. 358 at 3 (citing D.I. 356, Ex. 3 ¶ 119). For this to be true, Prolitec would have to admit that it did not anticipate a plain reading of the claim language: "the central controller stores an in table … and an out table." '388 Patent, cl. 1. Such position is not credible and, in any event, cannot justify Dr. Plock's new theories.

Finally, while Prolitec complains about ScentAir overinflating the number of Dr. Plock's new obviousness theories (D.I. 348 at 3–4), Prolitec does not tell the Court how many combinations beyond its original eight it now has. That is because Prolitec wants the benefit of all possible combinations, highlighting the prejudice of Prolitec's "ambush by reply" tactics. *See, e.g.,* D.I. 354, Ex. 3 ¶ 127.

In sum, Prolitec and Dr. Plock could have argued obviousness based on ▮▮▮▮▮ in Dr. Plock's Opening Report. Prolitec and Dr. Plock also could have argued—per the plain and ordinary reading of the claim language—that "in table" and "out table" are different tables. Prolitec and Dr. Plock did neither. Both should be held to that strategic decision, and ScentAir should not have to face the prejudice of defending an entirely new invalidity case that is four times the size it was before. The Court should strike Dr. Plock's new opinions in full.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi (No. 3484)

cc:     All counsel of record (Via Electronic Mail)

3