# EXHIBIT H

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,161 | 02/13/2023 | 10838388 | 760180.824 | 7086 |

23911          7590          03/23/2023
CROWELL & MORING LLP
INTELLECTUAL PROPERTY GROUP
P.O. BOX 14300
WASHINGTON, DC 20044-4300

| EXAMINER |
|---|
| HUGHES, DEANDRA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/23/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CROWELL & MORING LLP
Intellectual Property Group
P.O. Box 14300
Washington DC 20044-4300

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,161* .

PATENT UNDER REEXAMINATION *10838388* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting Request For Ex Parte Reexamination* | Control No. 90/019,161 | Patent Under Reexamination 10838388 | |
|---|---|---|---|
| | Examiner DEANDRA M HUGHES | Art Unit 3992 | AIA (FITF) Status Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>10 February 2023</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☑    PTO-892,        b)☐    PTO/SB/08,    c)☐   Other: _____

1. ☑    The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /DEANDRA M HUGHES/ Reexamination Specialist, Art Unit 399 | | |
|---|---|---|

cc:Requester ( if third party requester )

U.S. Patent and Trademark Office
PTOL-471G(Rev. 01-13)          **Office Action in *Ex Parte* Reexamination**          Part of Paper No. 20230306

Page 185 of 493

Application/Control Number: 90/019,161                                            Page 2
Art Unit: 3992

## ORDER GRANTING REQUEST FOR *EX PARTE* REEXAMINATION

### *Acknowledgements*

1.      This is an order granting *Ex Parte* Reexamination of <u>claims 1-20</u> of U.S. Patent

No. 10,838,388, ("'388 Patent") issued Nov. 17, 2020 and filed on Sept. 10, 2018 as

U.S. Application No. 16/126,075 ("075 Application"), titled "SCENT SCHEDULE BASED

ON RELATEDNESS OF SCENT DELIVERY DEVICES IN A SCENT DELIVERY

SYSTEM."

2.      The '388 Patent issued with claims 1-20 ("Patented Claims"), which are grouped

as follows:

- Claims 1-7;
- Claims 8-14; and
- Claims 15-20.

3.      The '388 Patent is a continuation of U.S. Patent No. 9,446,162 ("'162 Patent")

issued Sep. 20, 2016 and filed on Jul. 10, 2013 as U.S. Application No. 13/939,159

("'159 Application"), which is a continuation of U.S. Patent No. 10,073,430 ("'430

Patent") issued Sep. 11, 2018 and filed on Aug. 22, 201 as U.S. Application No.

13/939,159 ("'159 Application").

4.      U.S. Application No. 17/097,024 ("'024 Application") filed Nov. 13, 2020 is a

continuation of the '388 Patent.

5.      Examiners find the following litigation involving the '388 Patent.

- *Prolitec Inc. v. Scentair Technologies*, LLC, Civil Action No. 20-984-RGA-MP
  (United States District Court for the District of Delaware)

6.      Examiners do not find any previous and/or co-pending *Ex parte* reexaminations

or supplemental examinations for the '388 Patent.

Application/Control Number: 90/019,161                                                    Page 3
Art Unit: 3992

### *Evidence Considered*

7.    The following is the evidence considered in this order:

   (1)    JP 2009-217641 ("Hamada");

   (2)    Computer Organization and Programming in Reference Data for Engineers (9th Ed.), 2002 by John Wakerly ("Wakerly");

   (3)    Computer Networking: A Top-Down Approach, James F. Kurose, Keith W. Ross (6th Ed.) February 24, 2012 ("Kurose");

   (4)    U.S. Patent Publication No. 2008/0081635 ("Jonsson");

   (5)    USP 6,799,266 ("Stotzer")

   (6)    U.S. Patent Publication No. 2013/0131883 ("Yamada");


### *Proposed Substantial New Questions of Patentability ("SNQs")*

8.    The following SNQs are alleged to present an SNQ as to <u>patent claims 1-20</u>:

   (A)    <u>Claims 1-20</u> are alleged to be anticipated by Hamada, as evidenced by Wakerly and Kurose (see Request, pgs. 15-37);

   (B)    <u>Claims 1-20</u> are alleged to be unpatentable over the combination of the Hamada, Jonsson, and Stotzer (see Request, pgs. 38-66);

   (C)    <u>Claims 1-3, 5-10, 12-17, and 19-20</u> are alleged to be unpatentable over the combination of the Hamada and Yamada (see Request, pgs. 67-95); and

   (D)    <u>Claims 4, 11, and 18</u> are alleged to be unpatentable over the combination of the Hamada, Yamada, and Jonsson (see Request, pgs. 96-68).


### Basis of the Substantial New Question of Patentability

9.    Under MPEP §2242, for a substantial new question ("SNQ") of patentability to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable

Application/Control Number: 90/019,161                                              Page 4
Art Unit: 3992

examiner would consider the teaching to be important in deciding whether or not the

claim is patentable; and (B) the same question of patentability as to the claim has not

been decided by the Office in an earlier concluded examination or review of the patent,

raised to or by the Office in a pending reexamination or supplemental examination of

the patent, or decided in a final holding of invalidity (after all appeals) by a federal court

in a decision on the merits involving the claim.


### *Relevant Prosecution History*

10.    The '075 Application became the '388 Patent, which is the patent requested for

reexamination.

        Claims 1-20 of the '075 Application were rejected over non-statutory

obviousness-type double patenting ("ODP") as being patentably indistinct from claims 1-

20 of USP 10,073,430 ("'430 Patent"), which was filed as US App. No. 15/243,509

("'509 Application") (see NF Action mailed Jan. 3, 2020). A terminal disclaimer was filed

on June 29, 2020, which overcame the ODP rejection over the '430 Patent.

        Claims 1-20 of the '075 Application were rejected under 35 U.S.C.

102(a)(1)/(a)(2) as being anticipated by U.S. Patent Publication No. 2011/0089260A1 to

Van Roemburg (hereafter "Van Roemburg").

        Claim 1 was put into condition for allowance with the following claim

amendments.

        1. (Currently Amended) A computer-implemented
        method for delivering scents, comprising:

                establishing a communication network including a
        central controller and one or more networked scent

delivery devices, wherein the central controller is configured to control an operation of each of the one or more networked scent delivery devices, [[and]] wherein controlling the operation is based on one or more master schedules, and wherein the central controller stores an in table in which verification information relating to each networked scent delivery device is stored and an out table in which instructions for each networked scent delivery device are stored;

generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out table of the central controller one or more master scenting schedules;

transmitting the command data to the networked scent delivery device using the communication network,

receiving a signal from the networked scent delivery device using the communication network, wherein the signal includes status data representing a status of the networked scent deliver device; and

storing the status associated with the networked scent delivery device in the in table of the central controller, wherein the status stored in the in table of the central controller identifies a functionality of the networked scent delivery device, thereby providing a real-time status update for each networked scent delivery device.

Claim 8 was put into condition for allowance with the following claim amendments.

8. (Currently Amended) A system for delivering scents, comprising:

Application/Control Number: 90/019,161                                Page 6
Art Unit: 3992

one or more data processors; and

a non-transitory computer-readable storage medium containing instructions which, when executed on the one or more data processors, cause the one or more data processors to perform operations including:

establishing a communication network including a central controller and one or more networked scent delivery devices, wherein the central controller is configured to control an operation of each of the one or more networked scent delivery devices, [[and]] wherein controlling the operation is based on one or more master schedules, and wherein the central controller stores an in table in which verification information relating to each networked scent delivery device is stored and an out table in which instructions for each networked scent delivery device are stored:

generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out table of the central controller one or more master scenting schedules:

transmitting the command data to the networked scent delivery device using the communication network,

receiving a signal from the networked scent delivery device using the communication network, wherein the signal includes status data representing a status of the networked scent delivery device; and

storing the status associated with the networked scent delivery device in the in table of the central controller, wherein the status stored in the in table of the central controller identifies a functionality of the networked scent delivery device, thereby providing a real-

Application/Control Number: 90/019,161                                      Page 7
Art Unit: 3992

time status update for each networked scent delivery device.

Claim 15 was put into condition for allowance with the following claim amendments.

15.    (Currently Amended) A computer-program product tangibly embodied in a non- transitory machine-readable storage medium, including instructions configured to cause a data processing apparatus to perform operations including:

establishing a communication network including a central controller and one or more networked scent delivery devices, wherein the central controller is configured to control an operation of each of the one or more networked scent deliver)' devices, [[and]] wherein controlling the operation is based on one or more master schedules, and wherein the central controller stores an in table in which verification information relating to each networked scent delivery device is stored and an out table in which instructions for each networked scent delivery device are stored:

generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out table of the central controller one or more master scenting schedules.

transmitting the command data to the networked scent delivery device using the communication network,

receiving a signal from the networked scent delivery device using the communication network, wherein the signal includes status data representing a status of the networked scent delivery device; and

storing the status associated with the networked scent delivery device <u>in the in table of the central controller</u>, wherein the status <u>stored in the in table of the central controller</u> identifies a functionality of the networked scent delivery device<u>, thereby providing a real-time status update for each networked scent delivery device</u>.

**--The teaching that forms the basis of the SNQ.--**

11.    Based on the prosecution history of the '388 Patent, Examiners consider the following teaching by the (prior art) patents and printed publications to be a teaching that a reasonable examiner would consider important in deciding whether <u>claims 1-20</u> of the '388 patent are patentable:

> *a central controller that stores an in table in which verification information relating to each networked scent delivery service is stored and an out table in which instructions for each network scent delivery device are stored to provide a real time status update for each networked scent delivery device.*

In addition, this teaching of the (prior art) patents and printed publications would be considered "new" if the same question of patentability as to the claims has not been decided by the Office in the '509 Application.[1]  In other words, a "new" teaching would not be cumulative to the teaching of Van Roemburg because Van Roemburg was considered in the prosecution of the '509 Application.

---

[1] Examiners do not find a pending reexamination or supplemental examination of the '388 Patent or a final holding of invalidity (after all appeals) by a federal court in a decision on the merits involving the '388 Patent.

Application/Control Number: 90/019,161                                          Page 9
Art Unit: 3992

## ORDER FOR EX PARTE REEXAMINATION

12.     Examiners find Hamada paragraph [0061] and Hamada figure 4, which are reproduced below, form the basis of the "*in table in which verification information relating to each network scent delivery device is stored…to provide a real time status update for each network scent delivery device.*"[2]

Specifically, Examiners agree that Hamada figure 4, which is reproduced below, forms the basis of the "*in table*" because the terminal ID, the retail store ID, service ID, scent content information, scheduled time of arrival, and the "provided" flag are likely to read on the claimed "*verification information.*" In addition, the "provided" flag is likely to read on the claimed "*real time status update for each scent delivery device.*"

> [0061]
>
> In the example described above, scent content information is transmitted in advance from the scent service management device 1 to the scent generating device 2, and is held in the scent generating device 2. However, the scent generating device 2 may send a terminal ID and a service ID to the scent service management device 1 each time a scent content reproduction request is received from a mobile terminal 3 to the scent generating device 2 in a retail store without performing any such advance setting. The scent service management device 1 may then determine whether or not the service can be provided, and if the service can be provided, send the scent instruction information corresponding to the request to the scent generating device 2.

> [Fig. 4]
>
> Example of Scent Service Registration Table
>
> | Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
> |---|---|---|---|---|---|
> | 123 | 01 | ABC | Scent B | MM/DD | |
> | 234 | 02 | | | | Provided |
> | … | 03 | | | | |
> | … | … | … | … | … | |

---

[2] These citations are directed to the English translation of Hamada.

Application/Control Number: 90/019,161                                Page 10
Art Unit: 3992

    Examiners find Hamada paragraph [0046] and Hamada figure 7, which are reproduced below, form the basis of the "*out table in which instructions for each network scent delivery device are stored*" because the scent instruction information of the scent service setting information table is likely to read on the "*instructions for each network scent delivery device.*"

[0046]

The data storage unit 29 stores various types of data for the processing and stores a scent service setting information table. Fig. 7 is an example of this scent service setting information table. As shown in Fig. 7, the scent service setting information table stores terminal IDs, service IDs, and scent content information (scent instruction information) that have been associated with each other. The scent generation control unit 22 in the scent generating device 2 can be realized by causing a computer with a CPU, a storage device, and communication device, etc. to execute a program for executing the processing in the present embodiment. This program can be stored in a storage medium such as a portable memory device, and the scent generating device 2 can be configured by installing the program from the storage medium in a computer. Alternatively, the program may be downloaded from a server over a communication network.

[Fig. 7]

Example of Scent Service Setting Information Table

| Terminal ID | Service ID | Scent Content Information |
|---|---|---|
| 123 | ABC | Scent B |
| … | … | … |
| … | … | … |

13.    A review of the post grant history for the underlying patent indicates that there have been no other Office post grant challenges made to the patent (Reexamination Proceedings or *Inter Partes* Review, Post Grant Review, Covered Business Method trials). Accordingly, a discretionary denial of reexamination pursuant to 35 USC 325(d) is not applicable.

14.    Because Examiners consider the new teachings of Hamada to be important in deciding whether the '388 Patent claims are patentable and there is no basis to reject

Application/Control Number: 90/019,161                                      Page 11
Art Unit: 3992

the request under 35 USC §325(d), *Ex Parte* Reexamination of <u>claims 1-20</u> is

ORDERED.


### *Conclusion*

15.     The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. **10,838,388** throughout the course of this

reexamination proceeding.  The third party requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

        Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).

Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR

1.550(c).

16.     All correspondence relating to this *ex parte* reexamination proceeding should be

directed as follows:

        By U.S. Postal Service Mail to:
                Mail Stop *Ex Parte* Reexam
                ATTN:  Central Reexamination Unit
                Commissioner for Patents
                P.O. Box 1450
                Alexandria, VA  22313-1450

Application/Control Number: 90/019,161                                                           Page 12
Art Unit: 3992

      By FAX to:
            (571) 273-9900
            Central Reexamination Unit

Signed:

/DEANDRA M HUGHES/
Reexamination Specialist, Art Unit 3992

Conferees:

/MATTHEW E HENEGHAN/
Primary Examiner, Art Unit 3992
/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,161 | 02/13/2023 | 10838388 | 760180.824 | 7086 |

23911          7590          07/14/2023
CROWELL & MORING LLP
INTELLECTUAL PROPERTY GROUP
P.O. BOX 14300
WASHINGTON, DC 20044-4300

| EXAMINER |
|---|
| HUGHES, DEANDRA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/14/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CROWELL & MORING LLP
Intellectual Property Group
P.O. Box 14300
Washington DC 20044-4300

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,161* .

PATENT UNDER REEXAMINATION *10838388* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | **Control No.**<br>90/019,161 | **Patent Under Reexamination**<br>10838388 |
|---|---|---|
| | **Examiner**<br>DEANDRA M HUGHES | **Art Unit**<br>3992 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☑ Responsive to the communication(s) filed on <u>04 May 2023</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

  1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
  2. ☑ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

  1a. ☑ Claims <u>1-20</u> are subject to reexamination.

  1b. ☐ Claims _____ are not subject to reexamination.

  2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

  3. ☐ Claims _____ are patentable and/or confirmed.

  4. ☑ Claims <u>1-20</u> are rejected.

  5. ☐ Claims _____ are objected to.

  6. ☐ The drawings, filed on _____ are acceptable.

  7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

  8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some* c) ☐None    of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____.

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

  9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

  10. ☐ Other: _____

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-13)                     **Office Action in Ex Parte Reexamination**        Part of Paper No.    20230626

Application/Control Number: 90/019,161                                        Page 2
Art Unit: 3992

## *EX PARTE* REEXAMINATION NON-FINAL REJECTION

### *Acknowledgements*

1.      This is a non-final rejection in *Ex Parte* Reexamination of <u>claims 1-20</u> of U.S. Patent No. 10,838,388, ("'388 Patent") issued Nov. 17, 2020 and filed on Sept. 10, 2018 as U.S. Application No. 16/126,075 ("075 Application"), titled "SCENT SCHEDULE BASED ON RELATEDNESS OF SCENT DELIVERY DEVICES IN A SCENT DELIVERY SYSTEM."

2.      The '388 Patent issued with <u>claims 1-20</u> ("Patented Claims"), which are grouped as follows:

   - <u>Claims 1-7</u>;
   - <u>Claims 8-14</u>; and
   - <u>Claims 15-20</u>.

3.      The '388 Patent is a continuation of U.S. Patent No. 9,446,162 ("'162 Patent") issued Sep. 20, 2016 and filed on Jul. 10, 2013 as U.S. Application No. 13/939,159 ("'159 Application"), which is a continuation of U.S. Patent No. 10,073,430 ("'430 Patent") issued Sep. 11, 2018 and filed on Aug. 22, 201 as U.S. Application No. 13/939,159 ("'159 Application").

4.      U.S. Application No. 17/097,024 ("'024 Application") filed Nov. 13, 2020 is a continuation of the '388 Patent.

5.      Examiners find the following litigation involving the '388 Patent.

   - *Prolitec Inc. v. Scentair Technologies*, LLC, Civil Action No. 20-984-RGA-MP (United States District Court for the District of Delaware)

6.      Examiners do not find any previous and/or co-pending *Ex parte* reexaminations or supplemental examinations for the '388 Patent.

Application/Control Number: 90/019,161                                       Page 3
Art Unit: 3992

### *Claim Rejections - 35 USC § 102*

7.    <u>Claims 1-3, 5-10, 12-17, and 19-20</u> are rejected under 35 U.S.C. 102(a)(1) as being anticipated by JP 2009-217641 published September 24, 2009 ("Hamada"). All citations are directed to the English translation of Hamada.

As to <u>claim 1</u>, Hamada discloses "*a computer-implemented method for delivering scents*," in for example, a retail store or a commercial facility. (see Figure 1).

Hamada discloses "*establishing a communication network including a central controller and one or more networked scent delivery devices*" because scent service management device (fig.1, #1), which reads on the claimed "*central controller,*" establishes a communication network (#4) with the scent generating devices (#2), which reads on the claimed "*scent delivery devices.*"



Application/Control Number: 90/019,161                                    Page 4
Art Unit: 3992

Hamada discloses "*the central controller is configured to control an operation of each of the one or more networked scent delivery devices*" because the scent service management device (fig.1, #1), which reads on the "*central controller,*" is disclosed as sending scent instruction information to the scent generating devices (#2) (see ¶[0022]).



Hamada discloses "*controlling the operation is based on one or more master schedules*" because Hamada teaches the scent generating device (#2) reads the scent instruction information and generates the corresponding scent instruction for a predetermined length of time, which reads on the claimed "*master schedule*" (see ¶[0023]).

Application/Control Number: 90/019,161                                        Page 5
Art Unit: 3992

Hamada discloses *"the central controller stores an in-table in which verification information[1] relating to each networked scent delivery device is stored"* because Examiners consider Hamada's table in figure 4 to read on the claimed *"in-table,"* which stores the SERVICE ID and the 'PROVIDED' FLAG, which reads on the claimed *"verification information."* Figure 2 shows scent service management device (i.e., the claimed *"central controller"*) comprises service registration unit (#13), which Examiners find stores the service registration table (figure 4).

| [Fig. 4]   Example of Scent Service Registration Table | | | | | |
|---|---|---|---|---|---|
| Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
| 123 | 01 | ABC | Scent B | MM/DD | |
| 234 | 02 | ... | ... | ... | Provided |
| ... | 03 | ... | ... | ... | |
| ... | ... | ... | ... | ... | |

Hamada discloses *"the central controller stores…an out-table in which instructions for each networked scent delivery device are stored"* at ¶[0046] and figure 7 because the data storage unit, which is part of scent service management device (i.e., the claimed *"central controller"*) stores scent content information (i.e., scent instruction information), which reads on the claimed *"instructions for each network scent delivery device."*

---

[1]Examiners consider the broadest reasonable interpretation ("BRI") of "*verification information*" to include but not be limited to the verification of proper data communication. See col.16:29-38, which provides the antecedent basis in the specification for the claim term "*verification information.*"

Application/Control Number: 90/019,161                                     Page 6
Art Unit: 3992

| [Fig. 7] | | |
|---|---|---|
| Example of Scent Service Setting Information Table | | |
| Terminal ID | Service ID | Scent Content Information |
| 123 | ABC | Scent B |
| ... | ... | ... |
| ... | ... | ... |

Hamada discloses "*generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out-table of the central controller; transmitting the command data to the networked scent delivery device using the communication network*" because the service setting unit (fig. 2, #14) sends the scent content information (i.e., scent instruction information) of scent service setting information table, to the scent generating device (#14) at the retail store (see ¶[0028]).

In other words, the service setting unit (#14) generates the claimed "*command data*," the service setting information table (fig. 7) reads on the claimed "*out-table*," the scent content information (i.e., scent instruction information) reads on the claimed "*instructions stored in the out-table*," and the data storage unit, which is part of scent service management device (i.e., the claimed "*central controller*"), stores the table of figure 7 (i.e., the claimed "*out-table*").

Hamada discloses "*receiving a signal from the networked scent delivery device using the communication network*" because Hamada teaches that the completion notification unit (#28) in the scent generation device sends a service completion notification including the TERMINAL ID and the SERVICE ID to the scent management

Application/Control Number: 90/019,161                                    Page 7
Art Unit: 3992

device (#1) (see ¶[0059]). In other words, the service completion notification reads on the claimed "*signal.*"

Hamada discloses *"the signal includes status data representing a status of the networked scent delivery device"* because the service completion notification includes data comprising the TERMINAL ID, the SERVICE ID, and a notification to the scent management device (#1) that service has been provided to the retail store associated with these IDs (see ¶[0059]). In other words, the service completion notification reads on the claimed "*signal*" and the "*status data*" are the TERMINAL ID, the SERVICE ID, and the notification that scent service has been provided.

Hamada discloses " *storing the status [data] [2] associated with the networked scent delivery device in the in-table of the central controller"* because the log recording unit (#15) in the scent service management device (#1) receives the scent service completion notification and sets the "PROVIDED" FLAG corresponding to the TERMINAL ID and the SERVICE ID in the scent provision notification scent service registration table of figure 4 (see ¶[0060]). Here, Examiners consider "*the status [data] associated with the network delivery device*" to comprise the "PROVIDED" FLAG, the corresponding TERMINAL ID, and the corresponding SERVICE ID because the scent service completion notification includes the TERMINAL ID, the SERVICE ID, and a notification that scent service has been provided to the associated retail store (see ¶¶[0059]-[0060])

---

[2] Examiners note that there is a lack of antecedent basis for the claim term "*the status.*" Specifically, the claim phrase "*the signal includes status data representing a status…*" does not affirmatively claim "*a status*" but rather, "*status data representing a status.*" Thus, "*a status*" has not been claimed. Because consideration of 35 U.S.C. 112 is limited to amendatory (e.g., new language) matter in reexaminations ordered under 35 U.S.C. 304, the claim limitation "*the status*" is not rejected under §112(b) as indefinite for lacking an antecedent basis. See MPEP §2258(II).  As such, Examiners construe the indefinite limitation "*the status*" as "*the status data*" to resolve the indefiniteness issue.

Application/Control Number: 90/019,161                                    Page 8
Art Unit: 3992

[Fig. 4]

Example of Scent Service Registration Table

| Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
|---|---|---|---|---|---|
| 123 | 01 | ABC | Scent B | MM/DD | |
| 234 | 02 | | | | Provided |
| … | 03 | … | … | … | |
| … | … | … | … | … | … |

Hamada discloses "*the status [data]*[3] *stored in the-in table of the central controller identifies a functionality of the networked scent delivery device, thereby providing a real-time status update for each networked scent delivery device.*" As discussed above, the "*status [data] associated with the network delivery device*" comprises the "PROVIDED" FLAG, the corresponding TERMINAL ID, and the corresponding SERVICE ID (see ¶¶[0059]-[0060]). The scent content reproduction request sent from the mobile terminal (#3) at the retail store requesting the scent service includes the TERMINAL ID and the SERVICE ID of the retail store (see ¶[0057]). The provision determining unit (#26) uses the TERMINAL ID and the SERVICE ID received from mobile terminal (#3) to search the scent service setting information table (fig. 4) to determine whether the TERMINAL ID and the SERVICE ID are present in the scent service setting information table (see id.). If they are present, then service can be provided to the associated retail store (see id.). If not, then scent service is not provided (see id.). As such, the TERMINAL ID and the SERVICE ID, which comprise the status data stored in the scent service setting information table (i.e., the claimed "*in-table*") "*identifies a functionality of the networked scent delivery device*"

---

[3] Examiners construe the indefinite limitation "*the status*" as "*the status data*" to resolve the indefiniteness issue. See footnote 2.

because these received ID's determine whether scent service is available to the associated retail store. The other status data (i.e., the "PROVIDED" FLAG) provides a real-time status update for the networked scent delivery device because it updates the status of whether scent service was provided at the time of completion of the scent service (see ¶¶[0060]-[0061]).

As to claim 2, Hamada discloses "*the status data corresponding to the networked scent delivery device indicates an operation status of the networked scent delivery device*" because the "PROVIDED" FLAG indicates that the scent service operation has been completed (see ¶¶[0060]-[0061]).

As to claim 3, Hamada discloses "*the operation status indicates whether or not the networked scent delivery device is operating to deliver the scent*" because the "PROVIDED" FLAG indicates the scent service operation has been completed and as such, the presence of the flag indicates the networked scent delivery device is not operating to deliver the scent because the scent service has been completed.

As to claim 5, Hamada discloses "*when the command data is received at the networked scent delivery device over the communication network, the networked scent delivery device is controlled in accordance with the command data*" because the service setting unit (fig. 2, #14) sends the scent content information (i.e., scent instruction information) of scent service setting information table, to the scent generating device (#14) at the retail store where the scent service is provided a predetermined time (see ¶[0028]).

As to claim 6, Hamada discloses "*controlling the networked scent delivery device includes activating the networked scent delivery device to deliver a scent in accordance*

Application/Control Number: 90/019,161                                    Page 10
Art Unit: 3992

*with the command data*" because the service setting unit (fig. 2, #14) sends the scent content information (i.e., scent instruction information) of scent service setting information table, to the scent generating device (#14) at the retail store where the scent service is provided a predetermined time (see ¶[0028]).

As to claim 7, Hamada discloses "*controlling the networked scent delivery device includes deactivating the networked scent delivery device, such that delivery of a scent is deactivated in accordance with the command data*" because Hamada teaches after receiving the scent instruction information, the scent generating unit (#21) generates the scent corresponding to the scent instruction information for a predetermined amount of time (see ¶[0058]). In other words, once the predetermined amount of time has lapsed, the scent service is deactivated.

As to claim 8, the only difference between this claim and claim 1 is that the instant claim adds the following claim limitations and all the limitations that follow are identical to the claim 1:

> "*A system for delivering scents, comprising:*
>
> -    *one or more data processors; and*
>
> -    *a non-transitory computer-readable storage medium containing instructions which, when executed on the one or more data processors, cause the one or more data processors to perform operations including….*"

Thus, Examiners find claim 8 is anticipated by Hamada for the same reasons set forth with respect to claim 1. Specifically, Examiners each of Hamada's scent generators (#21) have a data processor and the scent management device (#1) has at least one data processor (see figures 2 and 6).

Application/Control Number: 90/019,161                                                Page 11
Art Unit: 3992

As to claim 9, this claim is rejected for the same reasons as claim 2.

As to claim 10, this claim is rejected for the same reasons as claim 3.

As to claim 12, this claim is rejected for the same reasons as claim 5.

As to claim 13, this claim is rejected for the same reasons as claim 6.

As to claim 14, this claim is rejected for the same reasons as claim 7.

As to claim 15, the only difference between this claim and claim 1 is that the instant claim adds the following claim limitations and all the limitations that follow are identical to the claim 1:

> *"A computer-program product tangibly embodied in a non-transitory machine-readable storage medium, including instructions configured to cause a data processing apparatus to perform operations including:…"*

Thus, Examiners find claim 15 is anticipated by Hamada for the same reasons set forth with respect to claim 1. Specifically, Examiners each of Hamada's scent generators (#21) have a data processor and the scent management device (#1) has at least one data processor (see figures 2 and 6).

As to claim 16, this claim is rejected for the same reasons as claim 2.

As to claim 17, this claim is rejected for the same reasons as claim 3.

As to claim 19, this claim is rejected for the same reasons as claim 5.

As to claim 20, this claim is rejected for the same reasons as claim 6.

Application/Control Number: 90/019,161                                                    Page 12
Art Unit: 3992

### *Claim Rejections - 35 USC § 103*

8.     <u>Claims 4, 11, and 18</u> are rejected under 35 U.S.C. 103 as being unpatentable

over Hamada in view of US 2008/0081635 to Jonsson published April 3, 2008

("Jonsson").

Hamada does not specifically disclose "*the operation status indicates whether*

*the networked scent delivery device is currently connected to the communication*

*network*." It is well known that in networking communications, such as those that use the

Internet or wireless mobile technology, as described in Hamada, various standards and

protocols provide that acknowledgment and negative acknowledgment messages are

sent to the transmitting device. These messages ensure reliability and error-control.

Jonsson describes use of such ACK/NACK messages and that they are stored in

memory (see ¶¶[0038]-[0039]).  A person of ordinary skill in the art would thus look to

Jonsson for such a teaching to, at least in part, optimize traffic in the overall network, as

taught by Jonsson (see ¶[0008]).


### *Conclusion*

9.     The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. **10,838,388** throughout the course of this

reexamination proceeding.  The third-party requester is also reminded of the ability to

similarly apprise the Office of any such activity or proceeding throughout the course of

this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

Application/Control Number: 90/019,161                                      Page 13
Art Unit: 3992

not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that

reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).

Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR

1.550(c).

10.      All correspondence relating to this *ex parte* reexamination proceeding should be

directed as follows:

        By U.S. Postal Service Mail to:
                Mail Stop *Ex Parte* Reexam
                ATTN: Central Reexamination Unit
                Commissioner for Patents
                P.O. Box 1450
                Alexandria, VA 22313-1450

        By FAX to:
                (571) 273-9900
                Central Reexamination Unit

Signed:

/DEANDRA M HUGHES/
Reexamination Specialist, Art Unit 3992


Conferees:


/MATTHEW E HENEGHAN/
Primary Examiner, Art Unit 3992
/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/019,161 | 02/13/2023 | 10838388 | 760180.824 | 7086 |

23911        7590        10/06/2023
CROWELL & MORING LLP
INTELLECTUAL PROPERTY GROUP
P.O. BOX 14300
WASHINGTON, DC 20044-4300

| EXAMINER |
|---|
| HUGHES, DEANDRA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/06/2023 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

CROWELL & MORING LLP
Intellectual Property Group
P.O. Box 14300
Washington DC 20044-4300

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/019,161* .

PATENT UNDER REEXAMINATION  *10838388* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| | Control No. 90/019,161 | Patent Under Reexamination 10838388 |
|---|---|---|
| *Office Action in Ex Parte Reexamination* | Examiner DEANDRA M HUGHES | Art Unit 3992 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☑ Responsive to the communication(s) filed on <u>14 September 2023</u>.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

  1. ☐ Notice of References Cited by Examiner, PTO-892.     3. ☐ Interview Summary, PTO-474.

  2. ☑ Information Disclosure Statement, PTO/SB/08.     4. ☐ _____.

Part II    SUMMARY OF ACTION

  1a. ☑ Claims <u>1-20</u> are subject to reexamination.

  1b. ☐ Claims _____ are not subject to reexamination.

  2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

  3. ☐ Claims _____ are patentable and/or confirmed.

  4. ☑ Claims <u>1-20</u> are rejected.

  5. ☐ Claims _____ are objected to.

  6. ☐ The drawings, filed on _____ are acceptable.

  7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

  8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some* c) ☐ None    of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____.

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

    * See the attached detailed Office action for a list of the certified copies not received.

  9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

  10. ☐ Other: _____.

cc: Requester (if third party requester)

U.S. Patent and Trademark Office

PTOL-466 (Rev. 08-13)            **Office Action in Ex Parte Reexamination**        Part of Paper No.    20230921

Application/Control Number: 90/019,161                                    Page 2
Art Unit: 3992

## *EX PARTE* REEXAMINATION
## SECOND NON-FINAL REJECTION

### *Acknowledgements*

1.      This second non-final rejection is in response to the remarks filed September 14, 2023 in *Ex Parte* Reexamination of <u>claims 1-20</u> of U.S. Patent No. 10,838,388, ("'388 Patent") issued Nov. 17, 2020 and filed on Sept. 10, 2018 as U.S. Application No. 16/126,075 ("075 Application"), titled "SCENT SCHEDULE BASED ON RELATEDNESS OF SCENT DELIVERY DEVICES IN A SCENT DELIVERY SYSTEM."

2.      This is a second non-final rejection because the rejection over Hamada has been modified to address PO's remarks traversing the rejection. Specifically, the thrust of the rejection has been modified so that Hamada's figure 3, rather than Hamada's figure 7, reads on the claimed "*out-table*."

3.      The '388 Patent issued with <u>claims 1-20</u> ("Patented Claims"), which are grouped as follows:

   – <u>Claims 1-7</u>;
   – <u>Claims 8-14</u>; and
   – <u>Claims 15-20</u>.

4.      The '388 Patent is a continuation of U.S. Patent No. 9,446,162 ("'162 Patent") issued Sep. 20, 2016 and filed on Jul. 10, 2013 as U.S. Application No. 13/939,159 ("'159 Application"), which is a continuation of U.S. Patent No. 10,073,430 ("'430 Patent") issued Sep. 11, 2018 and filed on Aug. 22, 201 as U.S. Application No. 13/939,159 ("'159 Application").

5.      U.S. Application No. 17/097,024 ("'024 Application") filed Nov. 13, 2020 is a continuation of the '388 Patent.

Application/Control Number: 90/019,161                                    Page 3
Art Unit: 3992

6.     Examiners find the following litigation involving the '388 Patent.

   –   *Prolitec Inc. v. Scentair Technologies*, LLC, Civil Action No. 20-984-RGA-MP
       (United States District Court for the District of Delaware)

7.     Examiners do not find any previous and/or co-pending *Ex parte* reexaminations
or supplemental examinations for the '388 Patent.


### Evidence Cited

8.     JP 2009-217641 published September 24, 2009 to Shunichi Hamada
("Hamada").

9.     Declaration of Robert Dezmelyk Under CFR §1.132 executed September 14,
2023 ("Dezmelyk Declaration").

10.    Merriam-Webster's Collegiate Dictionary 11th Ed., p. 1110 (2012) ("Dictionary
Definition of 'Schedule'").


### Response to Remarks filed September 14, 2023

11.    As to <u>claims 1, 8, and 15</u>, Patent Owner ("PO") argues Hamada does not
       disclose "*central controller…controlling the operation [of each of the one or more
       networked scent delivery devices] is based on one or more master schedules*"
       (Remarks 17-24).

       1.      PO argues a POSITA would not understand Hamada's 'predetermined
length of time' to be the '388 Patent's "*master schedule*" (Remarks 17-21). Specifically,
PO argues a POSITA applying the broadest reasonable interpretation ("BRI") standard
would understand that a "*master schedule*" requires at least a starting time and a
sequence of operations (e.g., a list of different start times in chronological order), as is
consistent with the plain and ordinary meaning on a master schedule (see Remarks 18-

Application/Control Number: 90/019,161                                          Page 4
Art Unit: 3992

19). More specifically, PO relies on the opinion evidence of the Dezmelyk Declaration and the Dictionary Definition of "*schedule*" to support PO's BRI of "*master schedule*."

Examiners disagree that the evidence supports a BRI of "*master schedule*" that requires at least a starting time and a sequence of operations (e.g., a list of different start times in chronological order) because the cited evidence does not support the narrower scope of 'a list of different start times in chronological order.' Nothing in the evidence requires a list of *different* start times and nothing in the evidence requires the times to be in chronological order.

Nevertheless, the modified explanation of the rejection finds that Hamada discloses the Dictionary Definition of "*schedule*" (i.e., a procedural plan that indicates the time and sequence of each operation) because Hamada teaches the scent generation device (hereafter "generation device") reads the scent instruction information and generates the corresponding scent instruction for a predetermined length of time based on a scheduled time of provision provided by the user, which is stored in the scent service registration table of figure 4 (hereafter "registration table").

In other words, Hamada discloses the scent generation begins at the scheduled time of provision (i.e., the start of the operation) and ends once the predetermined length of time has elapsed (i.e., the end of the operation, which is procedural plan (i.e., a plan for generating a scent) that indicates the time (i.e., the scheduled time of provision) and sequence of each operation (i.e., beginning and end of the scent generation). Because Hamada's disclosed 'scheduled time of provision of the scent' and 'predetermined length of time for the scent generation' reads on the claimed "*master schedule*," PO's argument is not persuasive.

Application/Control Number: 90/019,161                                                Page 5
Art Unit: 3992

2.        PO argues Hamada does not disclose controlling operation based on "*master schedules*" (Remarks 21-24). Here, the issue is whether the generation device is controlled as a function of the master schedule. Specifically, PO argues that in contrast to what is claimed, Hamada discloses that its generation device controls its own operation and does so not based on what is received from a central controller but based on what it receives from a user's mobile terminal when the user is nearby (see Remarks 21).

Examiners disagree because Hamada's generation device is not controlled solely by what it receives from a user's mobile terminal when the user is nearby but rather the generation device receives instruction from the registration table, such as scheduled time of provision, and then generates the scent based on what is received from a user's mobile terminal when the user is nearby. As such, Hamada's scent service management device (hereafter "management device") controls the generation device based on a master schedule because control of the generation device comprises at least the scheduled time of provision, which is provided via the registration table stored in the data storage of the management device.

12.      As to <u>claims 1, 8, and 15</u>, PO argues Hamada does not disclose "*the central controller stores…an out table in which instructions for each networked scent delivery device are stored*" (Remarks 24-27).

Specifically, Applicant argues figure 7 of Hamada (i.e., the scent service setting information table; hereafter "the setting information table") is stored in data storage unit (#29), which is part of the generation device and not the management device, which Examiners allege reads on the claimed "*central controller.*"

Examiners agree. As such, the thrust of the rejection has been modified so that the rejection asserts that figure 3 of Hamada (i.e., the scent service information table; hereafter "information table"), which is disclosed as being stored in data storage unit (#16) of the management device, reads on the claimed "*out-table*" (see ¶[0031]).

13.    As to <u>claims 1, 8, and 15</u>, PO argues Hamada does not disclose "*generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out table of the central controller.*" (Remarks 27-31). Specifically, PO asserts figure 7 of Hamada does not generate "*command data that is configured to control the operation of a networked device…based on instructions stored in the out table*" (see Remarks 28).

This argument is moot because the thrust of the rejection has been modified so that figure 3 (i.e., the information table) and not figure 7 (i.e., the setting information table) reads on the claimed "*out-table*." In addition, the rejection has been modified so that the scent reproduction request received from the mobile terminal (#3), the scent content information in the information table (figure 3), and the predetermined length of time for emitting the scent comprise the claimed "*command data*."

14.    As to <u>claims 1, 8, and 15</u>, PO argues Hamada does not disclose "*storing the status [data] associated with the networked scent delivery device in the in-table of the central controller, wherein the status stored in the in-table of the central controller identifies a functionality of the networked scent delivery device*" (Remarks 31-34).

1.    PO argues Hamada's Terminal ID and Service ID are not a real time status update of the scent delivery service (Remarks 32). Specifically, PO asserts the

Terminal ID and the Service ID are not "status data" as required by the claims, because they are not included in "a signal from the networked scent delivery device," as required by the claims.

This argument is not persuasive because Hamada teaches that the completion notification unit (#28) in the generation device sends a service completion notification including the TERMINAL ID and the SERVICE ID to the management device (#1) (see ¶[0059]). In other words, the service completion notification reads on the claimed "*signal*" and the notification that the service has been completed reads on the claimed "*status data*." Moreover, "*associated*" is a broad term, absent an explicit definition in the '388 Patent, which is missing here.

2.      PO argues the PROVIDED flag is not a real time status update of the scent delivery service (Remarks 33-34). Specifically, PO asserts that the claims require that the status data provide "*a real-time status update for each networked delivery device*" and as such, the BRI of "*status data*" must require, at a minimum, that such "*status data*" indicates the current (or near-current) status of the networked scent delivery device (see Remarks 33).

This argument is not persuasive because Hamada discloses that a service provision completion notification including the terminal ID and the service ID is sent to the management device after a certain period of time corresponding to the scent service provision time has passed (see ¶[0059]). In other words, the status update (i.e., the notification that the scent service has been completed for the device corresponding to the terminal ID and the service ID) is in real-time because it is sent when the service has been completed (i.e., once the period of time corresponding to the scent service

provision time has passed), which Examiners find indicates the current (or near-current) status of the generation device (#2).

15.    PO argues Hamada does not disclose "*the operation status indicates whether or not the networked scent delivery device is operating to deliver a scent*" of <u>claims 3, 10, and 17</u> (Remarks 34-35). Specifically, PO asserts that the claim language is in the present tense, meaning that the BRI of this limitation must indicate whether the scent is presently operating to deliver a scent at the time the operation status is scent from the scent delivery device (Remarks 34). Moreover, PO asserts Hamada's "PROVIDED" flag says nothing about what the scent generating device is currently doing, the operation of which could be completely unrelated to the scenting service for the particular user (Remarks 35).

       This argument is not persuasive because the "PROVIDED" FLAG indicates the scent service operation has been completed because "PROVIDED" is in the past tense and as such, the presence of the flag indicates the networked scent delivery device is not operating to deliver the scent because the use of the past tense of "provide" (i.e., "PROVIDED") indicates the scent service has been completed. Moreover, irrespective of what the scent generating device is doing after the scent service has been provided, the claim limitation requires the operation status to indicate whether the "*scent delivery device is operating to deliver a scent*," and not merely whether the scent delivery device is simply operating. As such, the claim limitation is met when the status of the service relating to scent delivery is completed.

16.    PO argues Hamada in view of Jonsson does not make obvious "*the operation status indicates whether the networked scent delivery device is currently connected to*

Application/Control Number: 90/019,161                                      Page 9
Art Unit: 3992

*the communication network*" as recited in <u>claims 4, 11, and 18</u> (Remarks 35-38).

Specifically, PO asserts Jonsson's ACK/NACK (acknowledgement or not

acknowledgement) messages disclosed in Jonsson do not indicate whether the mobile

terminal is currently connected to the communication network (see Remarks 36 and

Dezmelyk Declaration ¶¶33-41). PO cites the Dezmelyk Declaration at ¶¶33-41 as

evidence to support this argument. More specifically, the Dezmelyk Declaration at ¶35

asserts that Jonsson's NACK message does not indicate that the mobile terminal is not

currently connected to the communication network but is expected during normal link

operation, and the system is adjusted so that NACK messages are received for

approximately 10% of transmitted data blocks (citing Jonsson at ¶¶[0006],[0026]).

This argument is not persuasive because Jonsson teaches one known algorithm

for adjusting the channel quality indicator (CQI) is based on ACK/NACK

(acknowledgement and not acknowledgement) messages received from the mobile

terminal (see ¶[0009]). Jonsson teaches that in this algorithm, if a NACK message is

received, it indicates that a transmission of data was not received correctly in the mobile

terminal (see id.). Moreover, Examiners do not find support in Jonsson for the Dezmelyk

Declaration's opinion evidence at ¶35 that Jonsson's NACK message does not indicate

that the mobile terminal is not currently connected to the communication network. As

such, Examiners maintain that an indication that a transmission of data was not

received correctly in the mobile terminal includes losing connection to the

communication network.

Application/Control Number: 90/019,161                                          Page 10
Art Unit: 3992

### *Claim Rejections - 35 USC § 102*

17.    <u>Claims 1-3, 5-10, 12-17, and 19-20</u> are rejected under 35 U.S.C. 102(a)(1) as

being anticipated by JP 2009-217641 published September 24, 2009 ("Hamada"). All

citations are directed to the English translation of Hamada.

As to <u>claim 1</u>, Hamada discloses "*a computer-implemented method for delivering*

*scents,*" in for example, a retail store or a commercial facility (see Figure 1).

Hamada discloses "*establishing a communication network including a central*

*controller and one or more networked scent delivery devices*" because scent service

management device (fig.1, #1), which reads on the claimed "*central controller,*"

establishes a communication network (#4) with the scent generating devices (#2), which

reads on the claimed "*scent delivery devices.*"



Hamada discloses "*the central controller is configured to control an operation of each of the one or more networked scent delivery devices"* because the scent service management device (fig.1, #1), which reads on the "*central controller,*" is disclosed as sending scent instruction information to the scent generating devices (#2) (see ¶[0022]).



Hamada discloses *"controlling the operation is based on one or more master schedules"* because Hamada teaches the scent generating device (#2) reads the scent instruction information and generates the corresponding scent instruction for a predetermined length of time based on a scheduled time of provision provided by the user, which is stored in the scent service registration table of figure 4 (see ¶¶[0021], [0023], [0037]). Thus, the operation of the scent generation device is controlled based on a "*master schedule,*" i.e., the predetermined length of time and the scheduled time of

Application/Control Number: 90/019,161                                          Page 12
Art Unit: 3992

provision, because operation of the scent generation device begins at the scheduled time of provision and continues for predetermined length of time.

Hamada discloses *"the central controller stores an in-table in which verification information relating to each networked scent delivery device is stored"* because Examiners find Hamada's table in figure 4 reads on the claimed *"in-table,"* which stores the SERVICE ID and the 'PROVIDED' FLAG, which reads on the claimed "*verification information*"[1]. Figure 2 shows scent service management device (i.e., the claimed "*central controller*") comprises service registration unit (#13), which is stored in data storage unit (#16) of the service management device (see ¶[0027]).

[Fig. 4]

Example of Scent Service Registration Table

| Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
|---|---|---|---|---|---|
| 123 | 01 | ABC | Scent B | MM/DD | |
| 234 | 02 | ... | ... | ... | Provided |
| ... | 03 | ... | ... | ... | ... |

Hamada discloses *"the central controller stores…an out-table in which instructions for each networked scent delivery device are stored"* because Examiners find figure 3, which is reproduced below, reads on the claimed "*out-table.*" Hamada discloses figure 3, which is an example of a scent service information table, is stored in data storage unit (#16) of scent service management device, which Examiners find

---

[1] "*Verification information*" is a broad term, absent an explicit definition in the '388 Patent Specification, which is missing here. Examiners find the broadest reasonable interpretation ("BRI") of "*verification information*" to include <u>but not be limited to</u> the verification of proper data communication. See col.16:29-38, which provides the antecedent basis in the specification for the claim term "*verification information.*"

Application/Control Number: 90/019,161                                Page 13
Art Unit: 3992

reads on the claimed "*central controller*" (see Examiner Annotated figure 2 above).

Thus, Hamada discloses "*the central controller stores…an out-table….*"

    Further, Hamada discloses this scent service information table shown in figure 2 stores "*instructions for each networked scent delivery device*" because it stores scent content information (i.e., scent instruction information)[2], which reads on the claimed "*instructions for each network scent delivery device*" (see ¶[0027]).

[Fig. 3]

Example of Scent Service Information Table

| Retail store ID | Service Name | Scent Content Information | Period Provided |
|---|---|---|---|
| 01 | Service A | Scent A | MM/DD to MM/DD |
| | Service B | Scent B | … |
| | Service C | Scent C | … |
| 02 | | | |
| | | | |
| … | | | |

    Hamada discloses "*generating command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices, wherein the command data is generated based on the instructions stored in the out-table of the central controller*" because the user of mobile terminal (#3), sends a scent content reproduction request to the generation device (#2), which reads the scent instruction information (i.e., the scent content information) stored in the information table (figure 3) and generates the scent in response to the received scent content reproduction request (see ¶[0023]).

---

[2] At ¶[0046], Hamada specifically discloses that 'scent content information' is 'scent instruction information' because it specifically states "scent content information (scent instruction information)."

In other words, the claimed "*command data that is configured to control the operation of a networked scent delivery device of the one or more networked scent delivery devices*" is generated from the scent reproduction request from the user at the mobile device (#3) and the scent content information (scent instruction information) stored in the information table of figure 3, which Examiners find reads on the claimed "*out table.*" As such, "*the command data is generated based on the instructions stored in the out-table of the central controller*" because the generation device is controlled via the scent reproduction request from the mobile device (#3) and the scent content information, which is stored in the information table (i.e., the claimed "*out-table*") of the central controller.

In addition, the claimed "*command data*" (i.e., the scent reproduction request + the scent content information + predetermined length of time for emitting the scent) is transmitted "*using the communication network*" because Hamada's communication network includes a wireless network, such as a mobile phone network, and mobile terminal (#3) is described as being connected to this wireless network (see ¶[0019]). Thus, Hamada discloses "*transmitting the command data to the networked scent delivery device using the communication network.*"

Hamada discloses "*receiving a signal from the networked scent delivery device using the communication network*" because Hamada teaches that the completion notification unit (#28) in the generation device sends a service completion notification including the TERMINAL ID and the SERVICE ID to the management device (#1) (see ¶[0059]). In other words, the service completion notification reads on the claimed "*signal.*"

Hamada discloses *"the signal includes status data representing a status of the networked scent delivery device"* because the service completion notification includes data comprising the TERMINAL ID, the SERVICE ID, and a notification to the scent management device (#1) that service has been provided to the retail store associated with these IDs (see ¶[0059]). In other words, the service completion notification reads on the claimed "*signal*" and the "*status data*" are the TERMINAL ID, the SERVICE ID, and the notification that scent service has been provided.

Hamada discloses " *storing the status [data] [3] associated with the networked scent delivery device in the in-table of the central controller"* because the log recording unit (#15) in the scent service management device (#1) receives the scent service completion notification and sets the "PROVIDED" FLAG corresponding to the TERMINAL ID and the SERVICE ID in the scent provision notification scent service registration table of figure 4 (see ¶[0060]). Note "*associated with*" is a broad term, absent an explicit definition in the '388 Patent, which is missing here.

In other words, Examiners find "*the status [data] associated with the network delivery device*" to comprise the "PROVIDED" FLAG, the corresponding TERMINAL ID, and the corresponding SERVICE ID because the scent service completion notification includes the TERMINAL ID, the SERVICE ID, and a notification that scent service has been provided to the associated retail store (see ¶¶[0059]-[0060])

---

[3] Examiners note that there is a lack of antecedent basis for the claim term "*the status*." Specifically, the claim phrase "*the signal includes status data representing a status…*" does not affirmatively claim "*a status*" but rather, "*status data representing a status.*" Thus, "*a status*" has not been claimed. Because consideration of 35 U.S.C. 112 is limited to amendatory (e.g., new language) matter in reexaminations ordered under 35 U.S.C. 304, the claim limitation "*the status*" is not rejected under §112(b) as indefinite for lacking an antecedent basis. See MPEP §2258(II).  As such, Examiners construe the indefinite limitation "*the status*" as "*the status data*" to resolve the indefiniteness issue.

[Fig. 4]

Example of Scent Service Registration Table

| Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
|---|---|---|---|---|---|
| 123 | 01 | ABC | Scent B | MM/DD | |
| 234 | 02 | ... | ... | ... | Provided |
| ... | 03 | ... | ... | ... | |
| ... | ... | ... | ... | ... | ... |

Hamada discloses "*the status [data]*[4] *stored in the-in table of the central controller identifies a functionality of the networked scent delivery device, thereby providing a real-time status update for each networked scent delivery device.*" As discussed above, the "*status [data] associated with the network delivery device*" comprises the "PROVIDED" FLAG, the corresponding TERMINAL ID, and the corresponding SERVICE ID (see ¶¶[0059]-[0060]). The scent content reproduction request sent from the mobile terminal (#3) at the retail store requesting the scent service includes the TERMINAL ID and the SERVICE ID of the retail store (see ¶[0057]). The provision determining unit (#26) uses the TERMINAL ID and the SERVICE ID received from mobile terminal (#3) to search the scent service setting information table (fig. 4) to determine whether the TERMINAL ID and the SERVICE ID are present in the scent service setting information table (see id.). If they are present, then service can be provided to the associated retail store (see id.). If not, then scent service is not provided (see id.). As such, the TERMINAL ID and the SERVICE ID, which comprise the status data stored in the scent service setting information table (i.e., the claimed "*in-table*") "*identifies a functionality of the networked scent delivery device*"

---

[4] Examiners construe the indefinite limitation "*the status*" as "*the status data*" to resolve the indefiniteness issue. See footnote 2.

because these received ID's determine whether scent service is available to the associated retail store. The other status data (i.e., the "PROVIDED" FLAG) provides a real-time status update for the networked scent delivery device because it updates the status of whether scent service was provided at the time of completion of the scent service, which Examiners find is in "*real-time*" (see ¶¶[0060]-[0061]).

As to <u>claim 2</u>, Hamada discloses "*the status data corresponding to the networked scent delivery device indicates an operation status of the networked scent delivery device*" because the "PROVIDED" FLAG indicates that the scent service operation has been completed and Examiners find that an indication that operation has been completed reads on the claimed "*operation status*" (see ¶¶[0060]-[0061]).

As to <u>claim 3</u>, Hamada discloses "*the operation status indicates whether or not the networked scent delivery device is operating to deliver the scent*" because the "PROVIDED" FLAG indicates that the scent service operation has been completed and as such, the presence of the flag indicates the networked scent delivery device is not operating to deliver the scent because the scent service has been completed (see ¶¶[0060]-[0061]).

As to <u>claim 5</u>, Hamada discloses "*when the command data is received at the networked scent delivery device over the communication network, the networked scent delivery device is controlled in accordance with the command data*" because when the generation device receives the scent reproduction request from the mobile terminal (#3) via the communication network (#4), it generates the scent corresponding to the scent content information. Thus, the generation device is controlled in accordance with the "*command data*" (i.e., the scent reproduction request + the scent content information +

Application/Control Number: 90/019,161                                      Page 18
Art Unit: 3992

predetermined length of time for emitting the scent) because it generates the scent

when it receives the scent generation request and the scent content information for the

predetermined length of time.

As to <u>claim 6</u>, Hamada discloses "*controlling the networked scent delivery device*

*includes activating the networked scent delivery device to deliver a scent in accordance*

*with the command data*" because, as discussed in the rejection of <u>claim 5</u>, when the

generation device receives the scent reproduction request from the mobile terminal (#3)

via the communication network (#4), it generates the scent corresponding to the scent

content information (see ¶[0023]).

As to <u>claim 7</u>, Hamada discloses "*controlling the networked scent delivery device*

*includes deactivating the networked scent delivery device, such that delivery of a scent*

*is deactivated in accordance with the command data*" because Hamada teaches that

after receiving the scent instruction information, the scent generating unit (#21)

generates the scent corresponding to the scent instruction information for a

predetermined amount of time (see ¶[0058]). In other words, once the predetermined

amount of time has lapsed, the scent service is deactivated.

As to <u>claim 8</u>, the only difference between this claim and <u>claim 1</u> is that the

instant claim adds the following claim limitations and all the limitations that follow are

identical to the <u>claim 1</u>:

> "*A system for delivering scents, comprising:*
>
> -        *one or more data processors; and*
>
> -        *a non-transitory computer-readable storage medium containing*
>         *instructions which, when executed on the one or more data processors,*
>         *cause the one or more data processors to perform operations*
>         *including….*"

Application/Control Number: 90/019,161                                    Page 19
Art Unit: 3992

Thus, Examiners find <u>claim 8</u> is anticipated by Hamada for the same reasons set forth with respect to <u>claim 1</u>. Specifically, Examiners each of Hamada's scent generators (#21) have a data processor and the scent management device (#1) has at least one data processor (see figures 2 and 6).

As to <u>claim 9</u>, this claim is rejected for the same reasons as <u>claim 2</u>.

As to <u>claim 10</u>, this claim is rejected for the same reasons as <u>claim 3</u>.

As to <u>claim 12</u>, this claim is rejected for the same reasons as <u>claim 5</u>.

As to <u>claim 13</u>, this claim is rejected for the same reasons as <u>claim 6</u>.

As to <u>claim 14</u>, this claim is rejected for the same reasons as <u>claim 7</u>.

As to <u>claim 15</u>, the only difference between this claim and <u>claim 1</u> is that the instant claim adds the following claim limitations and all the limitations that follow are identical to the <u>claim 1</u>:

> *"A computer-program product tangibly embodied in a non-transitory machine-readable storage medium, including instructions configured to cause a data processing apparatus to perform operations including:…"*

Thus, Examiners find <u>claim 15</u> is anticipated by Hamada for the same reasons set forth with respect to <u>claim 1</u>. Specifically, Examiners each of Hamada's scent generators (#21) have a data processor and the scent management device (#1) has at least one data processor (see figures 2 and 6).

As to <u>claim 16</u>, this claim is rejected for the same reasons as <u>claim 2</u>.

As to <u>claim 17</u>, this claim is rejected for the same reasons as <u>claim 3</u>.

As to <u>claim 19</u>, this claim is rejected for the same reasons as <u>claim 5</u>.

As to <u>claim 20</u>, this claim is rejected for the same reasons as <u>claim 6</u>.

Application/Control Number: 90/019,161                                    Page 20
Art Unit: 3992

### *Claim Rejections - 35 USC § 103*

18.   <u>Claims 4, 11, and 18</u> are rejected under 35 U.S.C. 103 as being unpatentable over Hamada in view of US 2008/0081635 to Jonsson published April 3, 2008 ("Jonsson").

Hamada does not specifically disclose "*the operation status indicates whether the networked scent delivery device is currently connected to the communication network*." It is well known that in networking communications, such as those that use the Internet or wireless mobile technology, as described in Hamada, various standards and protocols provide that acknowledgment and negative acknowledgment messages are sent to the transmitting device. These messages ensure reliability and error-control. Jonsson describes use of such ACK/NACK messages and that they are stored in memory (see ¶¶[0038]-[0039]). A person of ordinary skill in the art would thus look to Jonsson for such a teaching to, at least in part, optimize traffic in the overall network, as taught by Jonsson (see ¶[0008]).

### *Conclusion*

19.   The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. **10,838,388** throughout the course of this reexamination proceeding. The third-party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/019,161                                    Page 21
Art Unit: 3992

Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).

Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR

1.550(c).

20.    All correspondence relating to this *ex parte* reexamination proceeding should be

directed as follows:

        By U.S. Postal Service Mail to:
                Mail Stop *Ex Parte* Reexam
                ATTN:  Central Reexamination Unit
                Commissioner for Patents
                P.O. Box 1450
                Alexandria, VA  22313-1450

        By FAX to:
                (571) 273-9900
                Central Reexamination Unit

Signed:

/DEANDRA M HUGHES/
Reexamination Specialist, Art Unit 3992

Conferees:


/MATTHEW E HENEGHAN/
Primary Examiner, Art Unit 3992
/MICHAEL FUELLING/
Supervisory Patent Examiner, Art Unit 3992