## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PROLITEC INC.,

      Plaintiff/Counterclaim-Defendant,

v.

SCENTAIR TECHNOLOGIES, LLC,

      Defendant/Counterclaim-Plaintiff.

Civil Action No. 20-984-WCB

███████████████

**Public Version of D.I. 387**

---

### COUNTERCLAIM-DEFENDANT PROLITEC'S RESPONSE BRIEF
### IN OPPOSITION TO SCENTAIR'S MOTION FOR SUMMARY JUDGMENT
### AND TO EXCLUDE EXPERT TESTIMONY

Dated: November 19, 2024

OF COUNSEL:

Marc C. Levy
Syed M. Abedi
Jessica S. Gritton
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

AKERMAN LLP
Brian Lemon (#4730)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
Tel.: (302) 596-9200
Brian.Lemon@akerman.com

*Attorneys for Plaintiff/Counterclaim-Defendant Prolitec Inc.*

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENTS ...................................................................1

II. STATEMENT OF FACTS ........................................................................2

    A.  The Asserted '388 Patent ................................................................2

    B.  Dr. Plock's Anticipation and Obviousness Opinions ...........................3

    C.  ScentAir's Sale of the Patented Invention to the Barclays Center.......................3

    D.  The Inventors' Inequitable Conduct ................................................4

III. LEGAL STANDARDS ............................................................................5

    A.  Summary Judgment ........................................................................5

    B.  Motion to Exclude ..........................................................................5

IV. ARGUMENT .........................................................................................6

    A.  Prolitec's Anticipation and Obviousness Defenses Properly Interpret the Claims and Are Supported by Evidence ................................6

        1.  Different Terms of the Asserted Claims Refer to Distinct Components ........................................................................6

        2.  Summary Judgment Should Be Denied Even Under ScentAir's Proposed Construction ...........................................8

    B.  Prolitec, Not ScentAir, Is Entitled to Summary Judgment on Its On-Sale Bar Defense .........................................................................9

        1.  The Undisputed Facts Show an Offer for Sale of the Patented Invention Prior to the Critical Date ...........................9

        2.  The Undisputed Facts Show that the Barclays Center System Has Command Data ......................................................15

    C.  Dr. Plock's Obviousness and Anticipation Opinions Should Not Be Excluded .......................................................................................19

        1.  Dr. Plock's Obviousness Opinions Are Admissible .............................20

        2.  Dr. Plock's Opinions on Inherency Are Proper .....................................29

        3.  ScentAir's Arguments, at Best, Go to the Weight of Dr. Plock's Testimony, Not Its Admissibility..................................32

    D.  Factual Issues Make Summary Judgment of No Inequitable Conduct Inappropriate ................................................................................33

V.  CONCLUSION......................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott Lab'ys v. Geneva Pharm., Inc.*,
   182 F.3d 1315 (Fed. Cir. 1999).........................................................................13

*Acceleration Bay, LLC v. Amazon Web Servs., Inc.*,
   No. CV 22-904-RGA, 2024 WL 4164876 (D. Del. Sept. 12, 2024) ....................25

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
   694 F.3d 1312 (Fed. Cir. 2012)......................................................................26, 27

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*,
   101 F. Supp. 2d 1257 (N.D. Cal. 1999) .............................................................27

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
   839 F.3d 1034 (Fed. Cir. 2016)...........................................................................32

*ATD Corp. v. Lydall, Inc.*,
   159 F.3d 534 (Fed. Cir. 1998).............................................................................27

*August Tech. Corp. v. Camtek Ltd.*,
   655 F.3d 1278 (Fed. Cir. 2011)........................................................1, 10, 11, 13

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
   616 F.3d 1249 (Fed. Cir. 2010)............................................................................8

*Carrier Corp. v. Goodman Global, Inc.*,
   64 F. Supp. 3d 602 (D. Del. 2014)........................................................................5

*Cont'l Can Co. USA v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991)...........................................................................30

*Corning Inc. v. Wilson Wolf Mfg. Corp.*,
   No. CV 20-700 (DWF/TNL), 2024 WL 3694218 (D. Minn. Aug. 7, 2024) .......26

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).........................................................................................5, 6

*Days Corp. v. Lippert Components, Inc.,*
   Nos. 3:17CV208-PPS/MGG, 3:17CV327-PPS/MGG,
   2022 WL 1237433 (N.D. Ind. Apr. 27, 2022) ...................................................23

*Delta T LLC v. Macroair Techs., Inc.*,
  No. EDCV 20-728-GW-JPRx,
  2022 U.S. Dist. LEXIS 210989 (C.D. Cal. Nov. 18, 2022) ................................................. 27

*EIS, Inc. v. IntiHealth Ger GmbH*,
  No. CV 19-1227-GBW, 2023 WL 6799332 (D. Del. Aug. 23, 2023) ................................. 34

*Elekta Ltd. v. ZAP Surgical Sys., Inc.*,
  81 F.4th 1368 (Fed. Cir. 2023) ........................................................................................ 26

*Exelixis, Inc. v. MSN Lab'ys Private Ltd.*,
  No. 19-2017-RGA-SRF, 2022 WL 6697634 (D. Del. April 20, 2022) .... 6, 20, 21, 23, 24, 32

*Ferag AG v. Quipp, Inc.*,
  45 F.3d 1562 (Fed. Cir. 1995) ..................................................................................... 10, 13

*Fleming v. Cirrus Design Corp.*,
  28 F.4th 1214 (Fed. Cir. 2022) ........................................................................................ 29

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ......................................................................................................... 32

*Gillette Co. v. S.C. Johnson & Son, Inc.*,
  919 F.2d 720 (Fed. Cir. 1990) ......................................................................................... 27

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  343 F. Supp. 2d 272 (D. Del. 2004) ................................................................................. 12

*In re Gurley*,
  27 F.3d 551 (Fed. Cir. 1994) ........................................................................................... 29

*In re Kahn*,
  441 F.3d 977 (Fed. Cir. 2006) ......................................................................................... 22

*Indect USA Corp. v. Park Assist, LLC*,
  No. 18-cv-02409-BEN-DEB, 2021 WL 4428923 (S.D. Cal. Sept. 24, 2021) ..................... 23

*Innogenetics N.V. v. Abbott Lab'ys*,
  512 F.3d 1363 (Fed. Cir. 2008) ....................................................................................... 25

*Integra Lifesciences Corp. v. HyperBranch Med. Tech., Inc.*,
  No. CV 15-819-LPS-CJB, 2018 WL 1785033 (D. Del. Apr. 4, 2018) ............................... 32

*Intel Corp. v. PACT XPP Schweiz AG*,
  61 F.4th 1373 (Fed. Cir. 2023) ........................................................................................ 29

*Intel Corp. v. Qualcomm Inc.*,
  21 F.4th 784 (Fed. Cir. 2021) ..................................................................................... 22, 23

*Intellectual Ventures I LLC v. Canon Inc.*,
   36 F. Supp. 3d 449 (D. Del. 2014) ........................................................................... 24

*Intellectual Ventures I, LLC v. Canon Inc.*,
   104 F. Supp. 3d 629 (D. Del. 2015) ......................................................................... 24

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004) ............................................................................... 26

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (U.S. 2007) ............................................................................. 21, 27, 29

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
   606 F.3d 1353 (Fed. Cir. 2010) ............................................................................... 33

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1049 (Fed. Cir. 2009) ................................................................................. 8

*LoggerHead Tools, LLC v. Sears Holdings Corp.*,
   No. 12-cv-9033, 2016 WL 5112062 (N.D. Ill. 2016) ............................................... 24

*Nox Med. EHF v. Natus Neurology Inc.*,
   No. CV 15-709-RGA, 2018 WL 845635 (D. Del. Feb. 13, 2018) ............................ 23

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
   73 F.3d 1085 (Fed. Cir. 1995) ................................................................................. 29

*Pfaff v. Wells Elecs., Inc.*,
   525 U.S. 55 (1998) ......................................................................................... 10, 11, 12

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d Cir. 2008) ....................................................................................... 6

*Princeton Biochemicals v. Beckman Coulter, Inc.*,
   411 F.3d 1332 (Fed. Cir. 2005) ............................................................................... 27

*Purdue Pharma L.P. v. Depomed, Inc.*,
   643 F. App'x 960 (Fed. Cir. 2016) .......................................................................... 27

*Robotic Vision Sys. v. View Eng'g, Inc.*,
   249 F.3d 1307, 1313 (Fed. Cir. 2001) ..................................................................... 10

*Santarus, Inc. v. Par Pharm., Inc.*,
   694 F.3d 1344 (Fed. Cir. 2012) ............................................................................... 32

*Schumer v. Lab'y Compu. Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002) ............................................................................... 26

*Shire Dev., LLC v. Watson Pharm., Inc.*,
    787 F.3d 1359 (Fed. Cir. 2015)...................................................................................8

*Space Sys./Loral, Inc. v. Lockheed Martin Corp.*,
    271 F.3d 1076 (Fed. Cir. 2001)...................................................................................12

*Sparton Corp. v. U.S.*,
    399 F.3d 1321 (Fed. Cir. 2005).............................................................................10, 13

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*,
    No. CV 17-1734-RGA, 2021 WL 982728 (D. Del. Mar. 16, 2021)...................................34

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
    802 F.3d 1283 (Fed. Cir. 2015).....................................................................................6

*Sun Pharm. Indus. Ltd. v. Saptalis Pharm., LLC*,
    No. CV 18-648-WCB, 2019 WL 2549267, (D. Del. June 19, 2019) ....................................8

*Sysmex Corp. v. Beckman Coulter, Inc.*,
    No. CV 19-1642-JFB-CJB, 2022 WL 1503987 (D. Del. May 6, 2022).............................33

*Sysmex Corp. v. Beckman Coulter, Inc.*,
    No. CV 19-1642-JFB-CJB, 2022 WL 1744573 (D. Del. May 31, 2022)...........................33

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)...................................................................................33

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)...................................................................................33

*Toro Co. v. Deere & Co.*,
    355 F.3d 1313 (Fed. Cir. 2004)...................................................................................30

*TQ Delta v. Cisco Sys., Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019)...................................................................................27

*WesternGeco LLC v. ION Geophysical Corp.*,
    889 F.3d 1308 (Fed. Cir. 2018)...................................................................................28

*ZUP, LLC v. Nash Mfg., Inc.*,
    896 F.3d 1365 (Fed. Cir. 2018)...................................................................................21

**RULES**

Fed. R. Civ. P. 56(a) ....................................................................................................5

Fed. R. Evid. 702 .....................................................................................................5, 6

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | ██████████████████████████████████, produced as ScentAir_00082406-82424 **(UNDER SEAL)** |
| 2 | Excerpts of Deposition Transcript of Chad Morton, taken May 12, 2023 **(UNDER SEAL)** |
| 3 | Information Disclosure Statement, filed July 10, 2013 in U.S. Patent App. No. 13/939,159 (U.S. Patent No. 9,446,162) |
| 4 | Information Disclosure Statement, filed December 1, 2014 in U.S. Patent App. No. 13/939,159 (U.S. Patent No. 9,446,162) |
| 5 | Information Disclosure Statement, filed December 11, 2015 in U.S. Patent App. No. 13/939,159 (U.S. Patent No. 9,446,162) |
| 6 | Information Disclosure Statement, filed November 15, 2016 in U.S. Patent App. No. 15/243,509 (U.S. Patent No. 10,073,430) |
| 7 | USPTO Transaction History of U.S. Patent App. No. 16/126,075 (U.S. Patent No. 10,838,388) |
| 8 | Excerpts of Deposition Transcript of Matthew Browne, taken May 11, 2023 **(UNDER SEAL)** |
| 9 | ScentAir Patents & Certifications: 2023-2024, available at https://scentair.com/patents |
| 10 | Excerpts of Deposition Transcript of Robert Dezmelyk, taken October 30, 2024 **(UNDER SEAL)** |
| 11 | Rebuttal Expert Report of Robert Dezmelyk Regarding Invalidity, with Exhibits A-B, dated July 14, 2023 **(UNDER SEAL)** |
| 12 | "Using WebCTRL 2.0" Automated Logic Corporation ("WebCtrl"), produced at PROLITEC00001131-1438 |
| 13 | U.S. Patent No. 7,783,380 ("York") |
| 14 | PCT Patent Pub. No. 02/083190 ("Messager") |
| 15 | U.S. Patent No. 9,541,912 ("Grossman") |
| 16 | ████████████████████████████████ produced as ScentAir_00055324-00055346 **(UNDER SEAL)** |

## I.     SUMMARY OF ARGUMENTS

A.     Prolitec's invalidity defenses do not rely on a claim construction that would allow the "in table" and "out table" to be met by the same table. Prolitec agrees that a proper construction of the claim terms of U.S. Patent No. 10,838,388 (the "'388 patent") prohibits them from being met by the same element, which is the basis of Prolitec's motion for summary judgment of non-infringement. If the Court concludes that two sub-tables cannot meet the "in table" and "out table" limitations of the patent, summary judgment would still be improper because Prolitec has provided an independent alternative basis for anticipation, citing evidence that Hamada discloses two distinct tables that meet the "in table" and "out table" limitations.

B.     Based on the undisputed facts, ScentAir's March 2012 contract with the Barclays Center constitutes an offer to sell the patented invention meeting the first prong of the *Pfaff* test. Under the Federal Circuit's decision in *August Technology Corp. v. Camtek Ltd*., unmentioned by ScentAir, a "***subsequent conception*** will cause [an offer for sale] to become an offer for sale of the invention as of the conception date." 655 F.3d 1278, 1289 (Fed. Cir. 2011) (emphasis added). There is no genuine issue of material fact that the Barclays Center Agreement, which explicitly referenced a ███████████████████████ that the inventor testified was ██████ was for what would become the patented invention. Further, there is no genuine issue of material fact that the Barclays Center system met the "command data" element of the claims, as set forth in Prolitec's motion for summary judgment.

C.     Dr. Plock's opinions on anticipation and obviousness are more than sufficient to meet Rule 702's standards of admissibility. Dr. Plock's opinions are specific as to each combination and not conclusory. Each of Dr. Plock's opinions concerning combinations of prior art references is backed by specific explanations of the motivation to combine a secondary reference with the primary reference based on a specific benefit from the secondary reference.

ScentAir's attack on Dr. Plock's testimony all goes to the weight of the evidence, not its admissibility.

D.    Summary judgment dismissing Prolitec's inequitable conduct defense would be improper because there is substantial evidence sufficient to allow a factfinder to reasonably conclude that deceptive intent is the single most reasonable inference. The inventors of the '388 patent designed the Barclays Center system, knew that this control system was the foundation behind the asserted patent, and were well-versed in patent law and its requirements. ScentAir and the inventors and falsely declared to the U.S. Patent and Trademark Office ("USPTO") that they were disclosing all information material to patentability while withholding information about the Barclays Center system. Drawing all reasonable inferences in favor of Prolitec, as required on ScentAir's motion, those facts are sufficient to allow a reasonable fact finder to conclude that deceptive intent is the single most reasonable inference.

## II.    STATEMENT OF FACTS

### A.    The Asserted '388 Patent

The '388 patent is entitled "Scent Schedule Based on Relatedness of Scent Delivery Devices in a Scent Delivery System" and broadly relates to using a central controller to configure networked scent delivery devices to release a scent in a controlled manner. *See* Mot., Ex. 1 ('388 patent). The '388 patent claims priority to and shares a specification with previously asserted U.S. Patent No. 9,446,162, which was filed on July 10, 2013. *Id.*, cover page. The '388 patent has a priority date of July 10, 2013. *Id.*

The '388 patent includes twenty claims, from which claims 1, 8, and 15 are independent claims. *Id.*, claims. Claims 8 to 20 are not materially different from claims 1-7. *Id.* The independent claims recite, among other things, an in table and an out table. *Id.* The "in table" stores verification information relating to the networked scent delivery device, while the "out table" stores

instructions relating to the networked scent delivery device, and command data is generated based on these instructions. *Id.* None of the claims define command data or these instructions. *Id.*

### B.    Dr. Plock's Anticipation and Obviousness Opinions

Dr. Plock opined that the claims of the '388 patent are obvious relying on either Hamada or Van Roemburg as the primary reference. *See, e.g.*, Mot., Ex. 4 (Plock Opening Rpt.) ¶¶ 264, 329. In his Opening Report, Dr. Plock identified where each of the claim elements is found in each of these references and relied on secondary references where any claim element was arguably missing. *Id.* Dr. Plock identified five secondary references (Yamada, Messager, Grossman, York, and WebCtrl), and proposed 24 specific prior art combinations. *Id.* For each secondary reference Dr. Plock relied upon, he explained why a person of ordinary skill in the art ("POSITA") would be motivated to combine the secondary reference. *Id.* ¶¶ 264-284; 288-290; 296-332. In his Reply Report, Dr. Plock opined that the knowledge of a POSITA would also be used to modify the prior art combinations to have separate tables. *See* Mot., Ex. 6 (Plock Reply Rpt.) ¶¶ 119-25.

Dr. Plock further opined that Hamada anticipates the claims of the '388 patent on three independent grounds. Under the first ground, Dr. Plock identified a scent registration table that includes two distinct sub-tables: one sub-table stores instructions and the other sub-table stores verification information. Mot., Ex. 4 ¶¶ 95-105. Under the second ground, Dr. Plock identified an entirely different table (service information table of Figure 3) as meeting the "out table" claim element and the scent registration table of Figure 4 (sub-table with verification information) as meeting the "in table" claim element. *Id.* ¶ 106. The third ground relies on inherency. *See, e.g.*, *id.* ¶¶ 152-58.

### C.    ScentAir's Sale of the Patented Invention to the Barclays Center

In March 2012, ScentAir signed a contract with Brooklyn Events Center, LLC (the "Barclays Center") to deliver an "on-premise fragrance delivery system," which includes a

"Control Panel/Networking System." Mot., Ex. 13 (Barclays Agreement). The Barclays Center

paid ScentAir an additional $19,500 for this control system. *Id.* ████████████████

██████████████████████████████████████████████

████████████████████████    ██████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████    ████████████

    █████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████    ██████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████

### D.    The Inventors' Inequitable Conduct

The engineers who designed the Barclays Center control system are also the inventors of

the '388 patent: Mr. Chandler and Mr. Morton. *See* Mot., Ex. 1, cover page; Ex. 1 at 82406; Ex. 2

(Morton Dep. Tr.), 23:4-13; 45:1-9. ████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

ScentAir submitted four information disclosure statements ("IDSs") during prosecution of

the parent applications of the '388 patent under its duty of candor and good faith to disclose all information material to patentability. Ex. 3 (July 10, 2013 IDS in U.S. Pat. App. No. 13/939,159); Ex. 4 (December 1, 2014 IDS in U.S. Pat. App. No. 13/939,159); Ex. 5 (December 11, 2015 IDS in U.S. Pat. App. No. 13/939,159); Ex. 6 (November 15, 2016 IDS in U.S. Pat. App. No. 15/243,509).[1] None of these IDSs disclosed the Barclays Center control system. *See* Exs. 3-6. Nor did ScentAir submit any additional IDSs in the original prosecution of the '388 patent. Ex. 7 ('388 Patent USPTO Transaction History). At no point, did ScentAir or the inventors inform the USPTO that the invention was on sale before the critical date. *See* Ex. 3-7.

## III.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although the 'mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,' a factual dispute is genuine where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Carrier Corp. v. Goodman Global, Inc.*, 64 F. Supp. 3d 602, 609 (D. Del. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

### B.    Motion to Exclude

Federal Rule of Evidence 702, which formalizes the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), governs the admissibility of expert testimony and requires, in part, that the "(b) the testimony is based on sufficient facts or data; (c)

---

[1] The '388 patent claims priority to U.S. Patent Application Nos. 13/939,159 and 15/243,509. Mot., Ex. 1, cover page.

the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case" by a preponderance of the evidence. Fed. R. Evid. 702. Rule 702 enables the court to act as a "gatekeeper," but "[c]onsistent with 'a strong preference for admitting any evidence that may assist the trier of fact' under the Federal Rules of Evidence, 'Rule 702 . . . has a liberal policy of admissibility.'" *Exelixis, Inc. v. MSN Lab'ys Private Ltd.*, No. 19-2017-RGA-SRF, 2022 WL 6697634, at *2 (D. Del. April 20, 2022) (citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations and quotation marks omitted)).

Rule 702 does not exclude opinions simply because they are disagreeable, nor because they are insufficient to grant the proponent summary judgment. "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## IV.    ARGUMENT

### A.    Prolitec's Anticipation and Obviousness Defenses Properly Interpret the Claims and Are Supported by Evidence

ScentAir argues that Prolitec's anticipation and obviousness defenses should be rejected because they allegedly rely on an improper claim construction. ScentAir is incorrect. But even under its erroneous proposed claim construction, summary judgment would be improper because ScentAir fails to show that there is no genuine dispute as to anticipation or obviousness.

#### 1.    Different Terms of the Asserted Claims Refer to Distinct Components

Prolitec agrees with ScentAir that different terms of the asserted claims are distinct

6

elements that should be given different meanings. Prolitec also agrees that nothing in the claims, the specification, or the prosecution history teaches that the distinct elements recited in the claim may be met by the same feature. This is the basis for Prolitec's motion for summary judgment of non-infringement. *See* D.I. 383 at 28-34.

ScentAir challenges Prolitec's assertion that Hamada discloses an "in table" and an "out table" as recited in the asserted claims. Mot. at 12-13. ScentAir argues that the same table has been asserted to meet both limitations. *Id.* But this is incorrect. Instead, Prolitec asserts that Figure 4 of Hamada includes two distinct sub-tables that separately correspond to the in table and the out table recited in the claims. The relevant table is reproduced below.

[Fig. 4]

Example of Scent Service Registration Table

| Terminal ID | Retail Store ID | Service ID | Scent Content Information | Scheduled Time of Arrival | "Provided" Flag |
|---|---|---|---|---|---|
| 123 | 01 | ABC | Scent B | MM/DD | |
| 234 | 02 | ... | ... | ... | Provided |
| ... | 03 | ... | ... | ... | |
| ... | ... | ... | ... | ... | ... |

Mot., Ex. 8 (Hamada).

As explained by Dr. Plock, the column designated "'Provided' Flag" highlighted in red stores verification information and corresponds to the claimed in table while the "Service ID" and "Scent Content Information" columns highlighted in green correspond to the instructions stored in the out table. *See, e.g.*, Mot., Ex. 6 ¶ 105. The "Terminal ID" and "Retail Store ID" columns are shared between the two sub-tables. *See, e.g.*, *id.* Thus, the in table and the out table are two tables contained within the Scent Service Registration Table (Fig. 4).

Dr. Plock's opinion differs from those in the cases cited by ScentAir. In *Sun Pharmaceutical*, the court held that a single ingredient could not satisfy two separate ingredient

limitations recited in a claim to a pharmaceutical formulation. *Sun Pharm. Indus. Ltd. v. Saptalis Pharm., LLC*, No. CV 18-648-WCB, 2019 WL 2549267, at *7 (D. Del. June 19, 2019). Similarly in *Becton* the court held that a single component of the accused product could not meet both a limitation requiring a hinged arm and a limitation requiring a spring means connected to the hinged arm. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

Dr. Plock's opinion about the tables in Hamada is more akin to the situation addressed by the court in *Linear Technology Corp. v. International Trade Commission*. 566 F.3d 1049 (Fed. Cir. 2009). There the claims required a second circuit and a third circuit. *Id*. at 1055-1056. The court rejected a construction that required the second and third circuits to be entirely separate and distinct. *Id*. Instead, the court recognized that the two circuits may have overlapping components so long as the circuits performed their respective functions. *Id*.

Here, the identified in table and out table perform their respective functions as identified in the claims. The in table stores verification information relating to each networked scent delivery device, and the out table stores instructions for each networked scent delivery device. The fact that the identified in and out tables include overlapping components, namely, the shared columns, does not preclude them from meeting the claim limitations.

Finally, ScentAir's reliance on *Shire* to argue that the in table and out table are mutually exclusive is flawed. There, the court addressed a claim requiring an inner matrix and an outer matrix and found that "the matrices are defined by mutually exclusive spatial characteristics—one inner, one outer." *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015). But that reasoning is inapplicable here as the in table and out table are not defined based on spatial orientation, but rather by the type of data they contain.

> **2.     Summary Judgment Should Be Denied Even Under ScentAir's Proposed Construction**

Even if the two sub-tables identified in Figure 4 of Hamada cannot meet the in table and out table limitations, summary judgment on this issue would still be improper because Prolitec has provided an alternative basis for anticipation, citing evidence that Hamada discloses two distinct tables that meet the in table and out table limitations. In particular, Dr. Plock has provided an opinion that the content/instruction information in the scent service information table shown in Figure 3 of Hamada is the claimed "out table" and the scent service registration table shown in Figure 4 of Hamada is the claimed "in table." Mot., Ex. 6 ¶ 106. ScentAir does not address this evidence in its motion and therefore has failed to meet its burden to show no genuine issue of material fact.[2] As ScentAir's motion as to both anticipation and obviousness are premised on ignoring this fact issue, ScentAir has failed to meet its summary judgment burden.

Further, as to obviousness, ScentAir appears to concede that, absent the exclusion of Dr. Plock's obviousness testimony, summary judgment is not warranted at least because Dr. Plock has provided expert opinion that a person of skill in the art would find it obvious to modify the cited references to use separate tables for controlling and monitoring a scent device. *See* Mot. at 14 (citing Mot., Ex. 6 ¶¶ 119-125).

## B.    Prolitec, Not ScentAir, Is Entitled to Summary Judgment on Its On-Sale Bar Defense

### 1.    The Undisputed Facts Show an Offer for Sale of the Patented Invention Prior to the Critical Date

ScentAir's motion for summary judgment seeking to dismiss Prolitec's on-sale bar defense should be denied because it is based on misinterpretations of the law governing the defense. Under the correct legal standards, the undisputed facts show that ScentAir's agreement with the Barclays

---

[2] Prolitec notes that Dr. Plock relied on another ground under which Hamada anticipates the asserted claims under inherency. *See, e.g.*, *id.* ¶¶ 152-58. ScentAir incorrectly challenges this opinion as inadmissible under Rule 702. *See infra* § IV.C.2.

Center constitutes an offer to sell the patented invention before the critical date, thus meeting the first prong of the test set forth in *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998).

First, relying on *Sparton Corp. v. U.S.*, 399 F.3d 1321 (Fed. Cir. 2005), ScentAir argues there can be no offer for sale because there is no genuine issue of material fact that the invention had not been conceived as of the date of the Barclays Agreement. Mot. at 14-15. The Federal Circuit later rejected this argument in a case like this one, where the invention was conceived ***after*** the offer for sale was made but ***before*** the critical date. *August Tech.*, 655 F.3d at 1288-91 (decided in 2011). In *August Tech.*, the Federal Circuit held that when an offer for sale is made and not retracted, "***a subsequent conception*** will cause it to become an offer for sale of the invention ***as of the conception date***" because the seller is offering to sell the invention once he has conceived of it; prior to conception, he is only offering to sell an idea for a product. *Id.* at 1289 (emphasis added); *see also Ferag AG v. Quipp, Inc.*, 45 F.3d 1562, 1565 (Fed. Cir. 1995) (holding that the on-sale bar would apply to a contract similar to the one here, where the invention had not been conceived at the time of the offer to provide the inventive conveyor system); *Robotic Vision Sys. v. View Eng'g, Inc.*, 249 F.3d 1307, 1313 (Fed. Cir. 2001) (holding that completion of the invention prior to the critical date pursuant to an offer to sell creates a bar to patentability) .

In this case, there is no genuine issue of material fact that the offer for sale contained in the Barclays Agreement to provide the patented invention was not retracted. Instead, pursuant to the contract, ScentAir developed and installed the patented invention at the Barclays Center. ScentAir does not contend that the invention was not conceived prior to the critical date, nor could it. As discussed in Prolitec's motion for summary judgment, by no later than July 6, 2012, all the relevant details of the systems concerning the claimed subject matter of the '388 patent were documented

in the Barclays Center documents and thus were ready for patenting. *See* D.I. 383 at 5, 20-26.[3]

Second, ScentAir argues that "the Barclays Agreement could not have sold the patented invention in March 2012 because ScentAir had not even started developing it yet." Mot. at 15. ScentAir then cites testimony from the inventors concerning the development process that occurred after the date of the Barclays Agreement. *Id.* Under *August Tech.*, the facts of the development process are immaterial to the first prong of *Pfaff*. 655 F.3d at 1288-90. What matters is when the invention was conceived. *Id.* And Prolitec has cited design documents for the Barclays Center project that undisputedly show the conception of the invention prior to the critical date. *See* Ex. 1; Mot., Exs. 11, 12. Under *August Tech.*, that is sufficient for the offer for sale to meet the first prong of *Pfaff*.

ScentAir goes on to argue that the development of the Barclays Center system was not completed before the critical date, and this "puts this case outside of the on-sale bar . . . based on the longstanding and well-settled precedent that the on-sale bar is triggered only when an invention 'is complete, rather than merely one that is "substantially complete."'" Mot. at 16 (quoting *Pfaff*, 525 U.S. at 66). In making this argument, ScentAir is switching gears to the second prong of *Pfaff*, even though it says it seeks summary judgment only based on the first prong. In any event, ScentAir's statement misapplies the law to this case.[4] In *Pfaff*, the court was merely commenting

---

[3] Given that, there is no question the invention was conceived prior to the critical date. Even in the first revision of the Barclays Center documents dated April 5, 2012, the system included all of the details that ScentAir contends in its motion are missing from the Barclays Agreement about the patented invention, namely, "whether and how the [control system] would manage data input and output to a central controller, the data structures it would use, or whether it enabled 'real time' status updates." *See* Ex. 1. In other words, the details that ScentAir contends are needed for conception are all included in design documents created as of April 5, 2012, well before the critical date of July 10, 2012.

[4] Neither of the other two cases ScentAir cites supports its argument. In *Honeywell International, Inc. v. Universal Avionics Systems Corp.*, the court found that inventions were not ready for

that reduction to practice ordinarily provides the best evidence that the invention is complete but rejected that reduction to practice is the only way to show application of on-sale bar. 525 U.S. at 66. An invention may also be ready for patenting "by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67-68. In this case, the Barclays Center documents meet that requirement based on the undisputed facts as described in Prolitec's motion for summary judgment. D.I. 383 at 18-28.

Even under the second *Pfaff* prong, ScentAir fails to meet its burden to prove the lack of a genuine issue of material fact that the invention was not ready for patenting as of the critical date. As Prolitec demonstrates in its motion for summary judgment, the undisputed facts show that the invention *was* ready for patenting based on the Barclays Center design documents. *See* D.I. 383 at 18-28. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

patenting not simply because there was ongoing development work, but instead because the technical descriptions and proposals were not enabling descriptions. 343 F. Supp. 2d 272, 298, 306 (D. Del. 2004), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007). Additionally, ScentAir cites to *Honeywell* to suggest that the experimental use exception may apply, but there is no basis for applying this exception, and none has been provided by ScentAir because ScentAir's sale to Barclays Center was not an experimental use. Similarly, in *Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, the court found that the invention was not ready for patenting because the inventor had not enabled the idea and "a bare conception that has not been enabled is not a completed invention ready for patenting." 271 F.3d 1076, 1080 (Fed. Cir. 2001).

[5] When the control system was installed is immaterial so long as the patented invention was ready for patenting before the critical date. *Pfaff*, 525 U.S. at 67 (holding that proof of reduction to practice is not required; instead, the on-sale bar can be satisfied by proof that prior to the critical date, inventor had prepared drawings of other descriptions of the invention that were sufficiently enabling for a POSITA to practice the invention).

██████████████████████.[6] These are all red herrings because, as Prolitec demonstrates in its motion for summary judgment, the pre-critical date Barclays Center documents describe every element of the '388 patent claims.

Third, ScentAir claims that the Barclays Agreement "does not demonstrate that what ScentAir was selling in March 2012 was the patented invention." Mot. at 17. Essentially, ScentAir argues that because the Agreement is missing many details of the invention it cannot qualify as an offer for sale under the first prong of *Pfaff*. *Id.* at 15-16. This argument flouts black letter patent law that the details of the invention need not be in the agreement: "It is well settled in the law that there is no requirement that a sales offer specifically identify all the characteristics of an invention offered for sale or that the parties recognize the significance of all these characteristics at the time of the offer." *Abbott Lab'ys v. Geneva Pharm., Inc.*, 182 F.3d 1315, 1319 (Fed. Cir. 1999).

To the extent ScentAir means to say that the Barclays Agreement does not cover what became the invention, such a contention is belied by the undisputed facts. This case is nothing like *Sparton*, where "Sparton offered and contracted to sell the Navy something entirely different than the patented design." *August Tech.*, 655 F.3d at 1289 (citing *Sparton*, 388 F.3d at 1323-24). Rather, there is no dispute that in this case, ScentAir offered and contracted to sell the Barclays Center what would become the patented invention. The agreement is an objective manifestation of ScentAir's attempt to commercialize its invention. *See Ferag*, 45 F.3d at 1516.

---

[6] ScentAir confuses the timeline concerning the switch to Wi-Fi as having any bearing on the critical date. ScentAir suggests that the switch to Wi-Fi happened after the latest document dated to July 6, 2012. Mot. at 16. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The agreement was for an "on-premise fragrance delivery system"[7] of multiple scent devices that included a "Control Panel/Networking System" for which the Barclays Center paid an additional charge of $19,800. Mot., Ex. 13. As the inventor, Mr. Chandler, testified, ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ *See, e.g.*, Ex. 9 (ScentAir Patent Flipbook). Thus, contrary to ScentAir's suggestion, the cited agreement appears to suggest that "on-premise fragrance delivery system" references the patented invention. Mot., Ex 14.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████. Even

ScentAir acknowledges that it "was only after the Agreement was signed that the inventors began developing the scenting system for the Barclays Center." Mot. at 15.

### 2.    The Undisputed Facts Show that the Barclays Center System Has Command Data

ScentAir's argument that Prolitec has not met its burden to show command data in the Barclays Center system is meritless because it ignores the totality of the factual record. Each of the reasons set forth below is independently sufficient to defeat ScentAir's motion for summary judgment. As discussed in Prolitec's motion for summary judgment, there is no genuine issue of material fact that the Barclays Center system includes command data claimed by the '388 patent.

First, ScentAir faults Dr. Plock for not specifically and narrowly identifying command data. Mot. at 18-19. ScentAir asserts that Dr. Plock did "not get into specific details." *Id.* But Dr. Plock correctly explained how the Barclays Center documents disclose that ████████████

██████████████████████████████████████████████

████████████████████████████████████

Second, Dr. Plock's opinion is independently corroborated by Mr. Chandler's testimony, who is not only the inventor of the '388 patent, but also the principal architect of the Barclays Center system. Mr. Chandler testified that the system ██████████████████

15



Mr. Chandler's testimony and explanation not only corroborate Dr. Plock's opinion of what constitutes command data and how the out table consists of instructions—which machines are active and what the scent settings are—but leaves no doubt that these documents provide an enabling disclosure because they provide far more details than the patent itself. Thus, this claim element is described and also meets the ready for patenting standard—a fact that is uncontested by ScentAir's expert.

Third, as noted above, ScentAir's own expert does not dispute that the Barclays Center documents describe this claim element,

███████████████████████████████████████████

████████████  Accordingly, the weight of evidence is not only overwhelming but entirely one-sided in favor of Prolitec: Dr. Plock's opinion and independent corroboration by inventor versus no challenge or dispute by ScentAir's expert.

Fourth, ScentAir is wrong that Dr. Plock did not explain what corresponds to command data. In fact, Dr. Plock's Reply Report is replete with references to what is command data. For example, ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

    ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████

Dr. Plock further explained that one of the purposes of the Barclays Center system is that

███████████████████████████████████████████

17

████████████████████████████████████████████████████████████████

████████████████████████████████    As evidenced from the numerous references in Dr. Plock's report, ScentAir is wrong that Dr. Plock did not explain what corresponds to command data. Instead, Dr. Plock provided a detailed explanation of what can constitute command data in the Barclays Center documents, including the on/off signals, consistent with the embodiment described in the '388 patent.

Fifth, ScentAir unfairly chastises Dr. Plock for failing to identify how command data is generated based on the instructions stored in the out table. All the claim requires is "command data is generated based on the instructions stored in the out table of the central controller." Consistent with the language in the claim, Dr. Plock cited to the nearly identical language in the Barclays Center documents which state that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████. This language is sufficient to meet the claim element because it describes that the out table includes instructions for activating the machines and at certain scent settings. These instructions are used to generate command data. As noted above, Mr. Chandler's testimony corroborates Dr. Plock's opinion.

Dr. Plock concluded that the disclosure in the Barclays Center documents was sufficiently enabling, which is also corroborated by Mr. Chandler given his explanation of all the technical details provided in the Barclays Center documents. Even ScentAir's expert does not dispute this point, which is not surprising because the specification of the '388 patent only provides threadbare details about the out table, let alone describing its contents or even depicting one as the Barclays Center documents do. Thus, ScentAir cannot contest whether this element was ready for patenting

because if it did, then the '388 patent would fail the 112 requirement.[8] *Id.* ¶ 90.

Finally, ScentAir misleadingly suggests that Dr. Plock did not address the "transmitting command data" claim element. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

Accordingly, the Barclays Center documents undisputedly describe "command data" required for the '388 patent claims.

**C.    Dr. Plock's Obviousness and Anticipation Opinions Should Not Be Excluded**

ScentAir's motions to exclude Dr. Plock's obviousness and anticipation opinions should be denied because ScentAir fails to apply the correct standard for excluding expert testimony under *Daubert* and Federal Rule of Evidence 702. ScentAir argues that Dr. Plock's opinions should be excluded because they are "legally insufficient" and thus unsupported and unreliable, all while

---

[8] ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

applying a mish-mash standard and cherry-picking portions of Dr. Plock's opinions. Mot. at 19-20. When viewed in their entirety, under the correct standard, Dr. Plock's opinions are clearly admissible, and ScentAir's concerns go to the weight of his opinions, which is an issue for the jury.[9]

### 1.    Dr. Plock's Obviousness Opinions Are Admissible

ScentAir seeks to exclude paragraphs 264-332 of Dr. Plock's Opening Report and paragraphs 69, 119-125, and 132-133 of Dr. Plock's Reply Report. Mot. at 20 n.4. To do so, ScentAir improperly cherry-picks portions of Dr. Plock's reports to give the illusion of vague conclusory opinions to support its arguments. Dr. Plock does not propose "innumerable potential combinations" of prior art references, nor are his opinions regarding motivations to combine merely conclusory or generic. Rather, Dr. Plock's opinions satisfy Rule 702's standards for admissibility. The weakness of ScentAir's motion is revealed in ScentAir's almost exclusive reliance on cases that "did not arise in the context of a *Daubert* motion to exclude the opinion of an expert witness." *Exelixis*, 2022 WL 6697634, at *4; *see infra* § IV.C.1.c. None of ScentAir's cases are analogous to the case at hand. *See infra* § IV.C.1.c.

### a.    Dr. Plock Articulates Specific Prior Art Combinations

Dr. Plock's Opening Report proposes 24 total prior art combinations using seven total references—twelve with Hamada as the primary reference,[10] and twelve with Van Roemburg as

---

[9] Dr. Plock's opinions further contain enough issues of material fact to preclude summary judgment of no obviousness and no anticipation, as explained below.

[10] Paragraph 287 identifies (i) Hamada in view of Yamada, (ii) Hamada in view of Yamada and Van Roemburg, (iii) Hamada in view of Yamada and Messager, (iv) Hamada in view of Yamada and Grossman, (v) Hamada in view of Yamada and WebCtrl, (vi) Hamada in view of Yamada and York, (vii) Hamada in view of WebCtrl, (viii) Hamada in view of WebCtrl and Yamada, (ix) Hamada in view of WebCtrl and Van Roemburg, (x) Hamada in view of WebCtrl and Messager, (xi) Hamada in view of WebCtrl and Grossman, and (xii) Hamada in view of WebCtrl and York.

the primary reference.[11] Mot., Ex. 4 ¶¶ 287, 329. Dr. Plock specifically explains which reference he relies on for each claim element. *See, e.g.*, *supra* § II.B. ScentAir's complaint that it cannot understand Dr. Plock's opinions is belied by the fact that ScentAir had no difficulty responding to Dr. Plock's opinions with rebuttal testimony from its own expert witness. *See* Ex. 11 (Dezmelyk Rebuttal Rpt.) ¶¶ 90-128 (articulating specific prior art combinations and disputing their disclosures). "Because [Mr. Dezmelyk] was able to 'respond in proportion to [Dr. Plock]'s explanation,' exclusion of [Dr. Plock]'s opinion is not warranted on this record." *Exelixis*, 2022 WL 6697634 at *4.

### b.    Dr. Plock's Motivations to Combine Are Sufficient

Assessed under the correct standard, Dr. Plock's motivation to combine opinions are sufficient for admissibility. The courts have rejected a rigid reading of the teaching, motivation, suggestion standard that governs the combination of references for obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416-19 (U.S. 2007). Instead, "[a] motivation to combine may be found explicitly or implicitly in market forces; design incentives; the 'interrelated teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creativity, and common sense of the person of ordinary skill." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1371 (Fed. Cir. 2018). Courts frequently find obviousness where the motivation to combine is a secondary reference's benefit, even if the primary reference does not express a need for that benefit. *See, e.g.*, *In re Kahn*,

---

[11] Paragraph 329 identifies (i) Van Roemburg in view of Hamada, (ii) Van Roemburg in view of Hamada and Yamada, (iii) Van Roemburg in view of Hamada and Messager, (iv) Van Roemburg in view of Hamada and Grossman, (v) Van Roemburg in view of Hamada and WebCtrl, (vi) Van Roemburg in view of Hamada and York, (vii) Van Roemburg in view of WebCtrl, (viii) Van Roemburg in view of WebCtrl and Hamada, (ix) Van Roemburg in view of WebCtrl and Yamada, (x) Van Roemburg in view of WebCtrl and Messager, (xi) Van Roemburg in view of WebCtrl and Grossman, and (xii) Van Roemburg in view of WebCtrl and York.

441 F.3d 977, 982-83, 989 (Fed. Cir. 2006) (finding a reference's benefit of "acoustic imaging in reading systems" sufficient motivation to combine that reference with two other references that did not express a need for or relate to acoustic imaging). Further, "a rationale is not inherently suspect merely because it's generic in the sense of having broad applicability or appeal." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021).

Dr. Plock's opinions meet this standard. Contrary to ScentAir's assertions, Dr. Plock's motivation to combine opinions are not conclusory, unsupported, or generic. For each secondary reference he proposes, Dr. Plock explains that the motivation to combine that reference with the primary reference comes from a specific benefit of that secondary reference: Yamada provides "power consumption benefits," Mot., Ex. 4 ¶¶ 268, 301, 310; WebCtrl provides "the capability to monitor and record the status of the [devices] to, among other things, track usage and operability, and provide maintenance when needed," *id.* ¶¶ 271, 303, 311; York "addresses the need to measure, monitor and control product dispensers so as to prevent product outages, reduce unnecessary waste, increase safety, and improve productivity of maintenance personnel," *id.* ¶¶ 274, 312; Van Roemburg provides "an improved means of actuating dispersion from a scenting device," *id.* ¶ 276 (cleaned up); Messager enables exchange of maintenance information through self-diagnostic means, *id.* ¶¶ 278, 313; Grossman provides appliance synchronization based on user schedules, *id.* ¶¶ 280, 314; and Hamada enables data collection regarding device usage, *id.* ¶¶ 299, 309. Each of these benefits has explicit basis in the respective reference. *See, e.g.*, Mot., Ex. 9 (Yamada) ¶ 42; Ex. 12, (WebCtrl) at 240; Ex. 13 (York), 1:45-53; Mot., Ex. 10 (Van Roemburg) ¶ 7; Ex. 14 (Messager) at 4; Ex. 15 (Grossman), 8:40-57; Mot., Ex. 8 (Hamada) ¶ 16. Further, under *Intel*, the fact that the benefits Dr. Plock identifies for each secondary reference apply to multiple primary references or multiple claim elements does not make them legally

insufficient. *See* 21 F.4th at 798.

Courts have held that expert opinions like Dr. Plock's are not conclusory or generic, as ScentAir alleges. In *Indect USA Corp. v. Park Assist, LLC*, the court determined that the expert had not merely provided a "conclusory analysis" because he had identified "specific elements and combines multiple references in great detail while analyzing five separate claims for obviousness" and "describe[d] with specificity how the prior art references can be combined and identifies the limitations taught by each primary reference and secondary reference." No. 18-cv-02409-BEN-DEB, 2021 WL 4428923 (S.D. Cal. Sept. 24, 2021) (denying Rule 702 motion). Similarly, in *Days Corp. v. Lippert Components, Inc.*, expert opinions that identified specific elements of the relevant prior art and included a brief motivation to combine discussion were explicitly found to not be conclusory. Nos. 3:17CV208-PPS/MGG, 3:17CV327-PPS/MGG, 2022 WL 1237433, at *3 (N.D. Ind. Apr. 27, 2022) ("Conclusory would be if [the expert] merely asserted that each limitation of Claim 7 is taught by [the reference], without more."). Dr. Plock does not simply state that a POSITA would be motivated to combine the identified references, without anything more. Accordingly, his motivation to combine opinions are not conclusory.

Courts routinely deny *Daubert* motions seeking to exclude a technical expert's obviousness opinions where the expert identifies specific combinations of prior art references and provides non-conclusory motivations to combine, as Dr. Plock has done here. *See, e.g.*, *Exelixis*, 2022 WL 6697634, at *3-*6; *Nox Med. EHF v. Natus Neurology Inc.*, No. CV 15-709-RGA, 2018 WL 845635, at *11 (D. Del. Feb. 13, 2018) (denying both parties' *Daubert* motions; stating that patentee's arguments regarding combining references "amount to failure of proof arguments, rather than *Daubert* arguments. [Patentee] can address them in cross-examination at trial."); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 WL 5112062, *2-*5

(N.D. Ill. 2016) (denying motion to strike accused infringer's technical expert's opinion on obviousness, the court finding that the expert's analysis sufficiently consider the claim limitations, the prior art, and why there would be a reason to combine and that the patentee's challenges went to weight, not admissibility); *Intellectual Ventures I LLC v. Canon Inc.*, 36 F. Supp. 3d 449, 474 (D. Del. 2014) (rejecting argument that expert "used the asserted claims of the patents-in-suit as guides to find missing elements in the prior art" and stating that "[patentee] is free to challenge [patent challenger]'s experts on cross-examination as to why a person of ordinary skill in the art would be motivated to combine the selected references"), *new trial granted on other grounds*, 104 F. Supp. 3d 629, 656-57 (D. Del. 2015).

In *Exelixis*, this Court denied-in-part a patentee's motion to exclude expert testimony of obviousness under Rule 702. 2022 WL 6697634, at *3-*6. The Court rejected the patentee's arguments that the expert's opinions were unreliable because he failed to identify specific prior art combinations. Like ScentAir has done here, the patentee contended that it had "been left to guess from among the millions of possible obviousness combinations," but did not show that identifying prior art references in a way that "opens the door to many possible permutations" "is unacceptable under Rule 702." *Id.* at *3. Although the expert presented several categories of prior art references rather than individual combinations, the Court found this methodology to be in line with precedent and did not prevent the patentee's expert witness from meaningfully responding. *Id.* at *4. The Court highlighted the patentee's reliance on non-*Daubert* case law and found that "[t]he failure to adequately identify specific obviousness combinations goes to this ultimate burden of proof under 35 U.S.C. § 103, and not the admissibility of an expert opinion." *Id.* Additionally, the Court rejected the patentee's arguments that the expert's testimony was conclusory because "it [was] grounded in acceptable sources, including the prior art references themselves." *Id.* at *5 (giving

examples of the expert's testimony of benefits provided by the specific modifying references). Dr. Plock's opinions—and ScentAir's alleged concerns—are similar to those at issue in *Exelixis* and warrant a similar finding of admissibility.

### c. ScentAir's Case Law Is Inapposite

Dr. Plock's explanations starkly contrast with the case law cited by ScentAir, both in form and in substance. Only ***two*** of the ***twenty*** cases cited by ScentAir concern exclusion of expert testimony based on the insufficiency of the opinions. *See Acceleration Bay, LLC v. Amazon Web Servs., Inc.*, No. CV 22-904-RGA, 2024 WL 4164876, at *3 (D. Del. Sept. 12, 2024); *Innogenetics N.V. v. Abbott Lab'ys*, 512 F.3d 1363 (Fed. Cir. 2008). The rest of ScentAir's case law considers the expert testimony on the merits, which is exactly what ScentAir is trying to prevent here.

The two exclusion cases, *Acceleration Bay* and *Innogenetics*, are fundamentally different from the case at issue. In *Acceleration Bay*, the expert testimony at issue did "***nothing more*** than explain why the prior art references are analogous to each other and to the claimed invention." 2024 WL 4164876, at *18 (emphasis added). In *Innogenetics*, the expert "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious to perform the genotyping method in [asserted claims].'" 512 F.3d at 1373. He did not identify any specific combinations, nor any specific motivation to combine. *Id.* At best, the *Innogenetics* expert "suggested" a POSITA would have been motivated by a generalized problem disclosed by "at least one prior art reference." *Id.* Dr. Plock's opinions, by contrast, are more complete. Unlike the *Acceleration Bay* expert, Dr. Plock also explains why a POSITA would be motivated to combine the references based on the specific benefits achieved by adding each secondary reference ***in addition*** to his explanation of how the prior art references are analogous. *See* Mot., Ex. 4 ¶¶ 268, 271, 274, 276, 278, 280, 299, 301, 303, 309-14. And unlike the *Innogenetics* expert, Dr. Plock has laid out both specific combinations and specific motivations to

combine. *See supra* §§ IV.C.1.a-b.

ScentAir relies on *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.* in arguing what constitutes "conclusory analysis,"[12] but it too is distinguishable. 694 F.3d 1312, 1327 (Fed. Cir. 2012) (affirming JMOL of no obviousness).[13] The *ActiveVideo* court found the motivation to combine testimony of the patent challenger's expert to be impermissibly generic because "the expert's testimony was essentially a conclusory statement that a [POSITA] would have known, based on the 'modular' nature of the claimed components, how to combine any of a number of references to achieve the claimed inventions." *Id.* The *ActiveVideo* expert did not provide any specific combination of references, nor did he provide a factual basis for the assertion that the components in the references were "modular." *Id.* His motivation to combine was similarly not

---

[12] ScentAir uses *ActiveVideo*'s motion to combine analysis to argue the insufficiency of Dr. Plock's reasonable expectation of success. Mot. at 27. These analyses, however, are not interchangeable: "Unlike a motivation to combine determination, which requires an explicit analysis, a finding of reasonable expectation of success can be implicit." *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1376 (Fed. Cir. 2023) (citations omitted). Regardless, Dr. Plock's reasonable expectation of success opinions are not conclusory because he provides analysis that is firmly rooted in the disclosures of the references. *See, e.g.*, Mot, Ex. 4 ¶¶ 289-90, 331-31. To the extent that ScentAir challenges Dr. Plock's reasonable expectation of success analysis, this again goes towards the weight of his testimony, not its admissibility. *See, e.g.*, *Corning Inc. v. Wilson Wolf Mfg. Corp.*, No. CV 20-700 (DWF/TNL), 2024 WL 3694218, at *22 (D. Minn. Aug. 7, 2024) (denying Rule 702 motion to exclude expert testimony on obviousness where the expert's reasonable expectation of success was based on the analogous fields of the references, stating that the sufficiency of such opinions could be explored on cross-examination at trial).

[13] ScentAir also cites *Schumer* and *Koito* in support of finding Dr. Plock's analysis conclusory, which are particularly inapposite because 1) the cited portions pertain to anticipation and thus do not discuss any motivation to combine, and 2) the courts found the testimony to be conclusory because they failed to even map the prior art to the claims at issue. *See Schumer v. Lab'y Compu. Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002) (vacating summary judgment of obviousness where Mr. Dezmelyk only explained the prior art reference and what was known by a POSITA and "[did] not clearly describe the operative steps of the method recited in claim 13, nor how those operative steps are performed by the Seiko driver"); *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1145 (Fed. Cir. 2004) (vacating denial of JMOL of no obviousness where patent challenger "merely entered the [prior art] reference into evidence and provided **no specific testimony relating to it whatsoever**." (emphasis added)).

directed to any particular reference, nor even to any particular reason. *Id.* at *1328 (quoting expert's motivation to combine). By contrast, Dr. Plock specifies both particular combinations of references as well as motivations to combine that are specific to each reference. *See supra* §§ IV.C.1.a-b.

Finally, ScentAir repeatedly argues that Dr. Plock used hindsight in constructing his prior art combinations. Mot. 23-24, 27-29. None of the hindsight cases cited by ScentAir are in the context of a Rule 702 motion to exclude expert testimony. ScentAir's hindsight citations are also flawed because most of the cited cases were decided prior to *KSR*, which rejected the Federal Circuit's strict interpretation of the teaching, suggestion, motivation test for finding a motivation to combine. *KSR*, 550 U.S. 398 at 415-22; *see Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 726 (Fed. Cir. 1990); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 101 F. Supp. 2d 1257, 1259-60 (N.D. Cal. 1999), *denying recons.*, 63 F. Supp. 2d, 1064, 1075 (N.D. Cal. 1999); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998); *Princeton Biochemicals v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005).[14] Post-*KSR*, hindsight has been found primarily where expert testimony relies on inventor testimony or disclosures of the patent-at-issue. *See, e.g.*, *TQ Delta v. Cisco Sys., Inc.*, 942 F.3d 1352, 1360-62 (Fed. Cir. 2019) (reversing IPR final written decision where expert's motivation to combine was only supported by patent-in-suit's disclosure); *Delta T LLC v. Macroair Techs., Inc.*, No. EDCV 20-728-GW-JPRx, 2022 U.S. Dist. LEXIS 210989, at *28 (C.D. Cal. Nov. 18, 2022) (motivation to combine based on inventor testimony), *ruling made final by* D.I. 264 (C.D. Cal. Dec. 20, 2022); *Purdue Pharma L.P. v. Depomed, Inc.*, 643 F. App'x 960, 963 (Fed. Cir. 2016) (affirming PTAB finding of hindsight

---

[14] Notably, *Princeton Biochemicals* did not find hindsight and instead affirmed grant of JMOL of obviousness because the motivation to combine was found in the knowledge of a POSITA. 411 F.3d at 1337.

where motivation to combine was a problem that appeared to be supplied by the challenged claims); *see also WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1327 (Fed. Cir. 2018) (rejecting hindsight argument where "nothing suggest[ed] that [expert] testimony or the other evidence [relied upon] invoked facts unavailable to [a POSITA]"). Dr. Plock has not relied on such patent disclosures or inventor testimony here. *See supra* § IV.C.1.b.

### d.    ScentAir's Challenges to Dr. Plock's Obviousness Opinions in His Reply Report Are Unsupported by the Law

ScentAir argues that Dr. Plock's obviousness opinions in his Reply Report are insufficient, but does so without a single case citation. Mot. at 27-29. Unsurprisingly, the case law does not support ScentAir's positions.

ScentAir finds Dr. Plock's opinions that it would be obvious to separate a single table into two tables based on a POSITA's knowledge insufficient based on hindsight. Mot. at 27-28. As discussed above, ScentAir's understanding of hindsight is outdated. *See supra* § IV.C.1.c. Furthermore, ScentAir specifically takes issue with Dr. Plock's opinion that splitting one table into two tables would provide "performance benefits," implying that Dr. Plock is merely relying on the benefit provided by the '388 patent to justify his opinion, but providing no other analysis. Mot. at 27-28. ScentAir is mistaken. As Prolitec points out in its motion for summary judgment under Section 101, the '388 patent does not disclose performance benefits stemming from the use of two tables. D.I. 383 at 12-16. Rather, Dr. Plock cites outside references that explicitly discuss the performance benefits of splitting tables. *See, e.g.*, Mot., Ex. 6 ¶¶ 14-18. Again, ScentAir cannot argue that Dr. Plock's opinions are insufficient by blinding itself to the portions of Dr. Plock's reports that undermine its misplaced arguments. It must consider Dr. Plock's opinions as a whole.

More egregiously, ScentAir argues that Hamada and Yamada "effectively teach away" from the use of separate tables. Mot. at 28. The standard for "teaching away" is much higher than

ScentAir seems to believe. "A reference may be said to teach away when a person of ordinary skill, upon examining the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) (cleaned up). Disclosing one embodiment and silence as to any problems with that embodiment does not teach away from another embodiment. *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l., Inc.*, 73 F.3d 1085, 1090 (Fed. Cir. 1995) (reference that did not teach convergence, as claimed, and was silent on whether convergence would work, did not teach away).

ScentAir also accuses Dr. Plock of using "hindsight-based and improperly non-specific reasoning" by opining that a POSITA would have found it obvious to integrate a scent delivery device controller with a relay and a network module. Mot. 29; Mot., Ex. 6 ¶ 69. As noted above, ScentAir's conclusory arguments are without merit because they do not meet the standard for hindsight. *See supra* §§ IV.C.1.b-c. Additionally, the "known-technique" rationale is sufficient to find a motivation to combine. *See, e.g.*, *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1379-81 (Fed. Cir. 2023) (reversing PTAB's finding of no obviousness, where the Board erred by ruling that there was no motivation to combine because the petitioner failed to show an improvement). Furthermore, knowledge of a POSITA can provide a motivation to combine. *See, e.g.*, *KSR* at 420 (stating that common sense could motivate a POSITA to combine different teachings); *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1222–23 (Fed. Cir. 2022) (finding a motivation to combine in the "knowledge, creativity, and common sense of a skilled artisan"). Dr. Plock opines that such a combination is both within the knowledge of a POSITA and could be performed through known techniques that yield predictable results. Mot., Ex. 6 ¶ 69.

## 2.    Dr. Plock's Opinions on Inherency Are Proper

ScentAir further seeks to exclude paragraphs 144, 148-160, 295 and 304 of Dr. Plock's

Opening Expert report for allegedly misusing inherency with regard to Hamada and Van Roemburg. Mot. at 31-34.

As to Hamada, ScentAir first argues that Dr. Plock's opinions as to inherency are improper because he cites to a second reference ("Kurose") and "[c]ombining references is for obviousness, not anticipation or inherency." This argument misses the point. Dr. Plock's opinion is not that it would be obvious to combine Hamada and Kurose. Instead, Dr. Plock opines that the provision of acknowledgement signals is inherently a part of the embodiments disclosed in Hamada that operate over the internet. Dr. Plock cites Kurose as evidence that these acknowledgement signals are in fact inherent. This evidence is entirely proper in an inherent anticipation analysis. *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991) ("To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence.").

Next, ScentAir argues that inherency does not apply to Hamada because it contemplates embodiments that are not networked over the internet. But anticipation has never required that every embodiment disclosed in a reference anticipate. Instead, "the fact that a characteristic is a necessary feature or result of *a prior-art embodiment* (that is itself sufficiently described and enabled) is enough for inherent anticipation." *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1321 (Fed. Cir. 2004) (emphasis added). ScentAir does not contend that the acknowledgement signals are not necessarily inherent in the embodiments of Hamada that are networked over the internet.

ScentAir also argues that Dr. Plock's opinions regarding claims 2-4 are inconsistent with his opinion as to claim 1. This is a misreading of the relevant testimony. With regard to claim 1, Dr. Plock provides two theories as to the recited "status data." First, he opines that the status data is met by the "'Provided' Flag" shown in Figure 4 of Hamada. Mot, Ex. 4 ¶¶ 143, 148. But Dr.

Plock also provides an alternate theory that the Hamada system inherently discloses the status data and this theory explicitly references the discussion in paragraphs 152-158 that are challenged by ScentAir. *Id.* ¶¶ 143, 148. It is clear that Dr. Plock's opinions that dependent claims 2-4 are inherently disclosed by Hamada are a reference to this second, theory of infringement. There is no inconsistency.

Finally, as to Hamada, ScentAir challenges paragraph 281 of Dr. Plock's Opening Report for allegedly improper use of inherency. But this paragraph does not assert inherency. Instead, it is an argument regarding the obviousness of providing real time status information as disclosed in the cited references. ScentAir also takes the paragraph out of context and ignores the opinions regarding the disclosure of status information provided in, for example, paragraphs 180, 196, 198, 199, and 267-280 of Dr. Plock's Opening Report.

ScentAir also challenges Dr. Plock's opinions regarding the inherent disclosure of an out table by Van Roemberg. Mot. at 34 (citing Mot., Ex. 4 ¶¶ 295, 304). This again takes the challenged paragraphs out of context. Dr. Plock also provides opinion that Van Roemberg discloses controlling multiple dispensing devices with a central server and that a user may set the scent, strength, duty cycle, and schedule the dispensers either individually or as a group. Mot., Ex. 4 ¶¶ 179-180, 275, 292-294. Given this context, in the challenged paragraphs, Dr. Plock explains that the system disclosed in Van Roemberg is a computer implemented method that relies on software. Software necessarily requires a list or table of instructions to control the devices' scent, strength, and duty cycle according to the user provided schedule.

ScentAir's challenges to the opinions in paragraphs 144, 148-160, 295 and 304 of Dr. Plock's Opening Report rely on misinterpretations of the law and taking the challenged paragraphs out of context. ScentAir cites only two cases addressing Rule 702. In *Integra Life Sciences*, the

31

court denied a motion to exclude expert testimony that was based on personal experience without supporting data. *Integra Lifesciences Corp. v. HyperBranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018). The court explained that "Plaintiffs' concerns regarding the lack of data may be explored on cross-examination." In the second cited case, the Supreme Court addressed the standard of review for a district court's decision to admit or exclude scientific evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The case did not address patent law, but instead was directed to the admissibility of evidence to support causation in a toxic tort claim. *Id.* ScentAir has not shown that the challenged testimony should be excluded. Its motion should be denied.

### 3. ScentAir's Arguments, at Best, Go to the Weight of Dr. Plock's Testimony, Not Its Admissibility

Ultimately, ScentAir's attempts to exclude Dr. Plock's opinions fail because the alleged deficiencies go to the weight of Dr. Plock's testimony, not its admissibility. The adequacy of Dr. Plock's identification of "specific obviousness combinations goes to [the] ultimate burden of proof under 35 U.S.C. § 103, and not to the admissibility of an expert opinion." *Execelis*, 2022 WL 6697634 at *4. ScentAir's disagreements with Dr. Plock's motivations to combine are issues of fact that are not only improper bases to find expert testimony inadmissible, but also sufficient to preclude summary judgment. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (en banc) ("What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact."). To the extent ScentAir wants to argue that Hamada and Yamada "teach away" from using separate tables are used for incoming and outgoing data, Mot. at 28, that is also an issue of fact that is in dispute. *Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344, 1354 (Fed. Cir. 2012) ("Whether a prior art reference teaches away from the claimed invention is a question of fact."). Similarly, "[w]hether a claim limitation is

inherent in a prior art reference is a question of fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328 (Fed. Cir. 2001).

### D. Factual Issues Make Summary Judgment of No Inequitable Conduct Inappropriate

ScentAir seeks summary judgment of no inequitable conduct because it asserts that Prolitec cannot prove "specific intent."[15] Mot. 34-36. ScentAir bases its motion on its mistaken belief that Prolitec's only evidence concerns "materiality."

Intent to deceive is a question of fact. *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1367 (Fed. Cir. 2010). Because "direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence," if such intent is the single reasonable inference. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (appeal from bench trial). Importantly, such proof is not required at the summary judgment stage. As this Court observed, the defendant "should not be required to prove its case now—i.e., it should not have to actually demonstrate that deceptive intent is the single most reasonable inference." *Sysmex Corp. v. Beckman Coulter, Inc.*, No. CV 19-1642-JFB-CJB, 2022 WL 1503987, at *4 (D. Del. May 6, 2022), *report and recommendation adopted,* No. CV 19-1642-JFB-CJB, 2022 WL 1744573 (D. Del. May 31, 2022). Instead, the focus "should simply be on whether BCI [defendant] has mustered sufficient evidence that, at the trial stage, a factfinder could reasonably conclude that deceptive intent is the single most reasonable inference." *Id.* In *Sysmex*, the court held that at the summary judgment stage, it "should be denied if, drawing all reasonable inferences in favor of [defendant], a reasonable factfinder *could reasonably* find that intent to deceive is the single most reasonable inference." *Id.* (emphasis in original) (citing other cases); *see*

---

[15] Prolitec does not allege that the patent prosecuting attorneys committed inequitable conduct.

*also EIS, Inc. v. IntiHealth Ger GmbH*, No. CV 19-1227-GBW, 2023 WL 6799332, at *9 (D. Del. Aug. 23, 2023) (recognizing the summary judgment standard adopted by the *Sysmex* court and denying summary judgment motion because of disputes of material fact on the specific intent element because it is inherently factual); *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982728, at *4 (D. Del. Mar. 16, 2021) (same).

In this case, drawing all reasonable inferences in favor of Prolitec, there is sufficient evidence from which a reasonable factfinder could conclude that deceptive intent is the single most reasonable inference.



. During prosecution of the parent applications of the '388 patent, ScentAir's patent attorney, and by extension the inventors, filed four IDSs under its duty of candor and good faith to disclose all information material to patentability. Exs. 3-6. Yet these IDSs did not mention anything about the Barclays Center system. *See id.* Given their knowledge of patent law requirements, the inventors knowingly failed to inform the USPTO that the invention was offered for sale before the critical date—information that the inventors knew full well can render the patents invalid.

Applying the correct legal standard as explained by the court in *Sysmex*, and drawing all inferences in favor of Prolitec, the factual record is sufficient to enable the trier of fact to determine that the single most reasonable inference is that the inventors knowingly and intentionally deceived the USPTO by failing to disclose the withheld information concerning the Barclays Center documents. The inventors were the same ones who were designing the Barclays Center control system, knew that this control system was the foundation behind the asserted patent, and were well-versed in patent law and its requirements. ScentAir and the inventors falsely declared to the USPTO that they were disclosing all information material to patentability while withholding information about the Barclays Center control system. The court in *Sysmex* found similar facts to be sufficient to deny motion for summary judgment. *Sysmex*, 2022 WL 1503987, at *6-*7 ("a factfinder could reasonably infer that Nagai and Narisada had the relevant knowledge of the

withheld information in the relevant timeframe" because they themselves "were involved in developing the XE-210"; "a fact finder could infer that Horie, Nagai and Narisada, who were well aware of the disclosure obligations of a patent applicant, intended to conceal the withheld information, while submitting less detailed information.").

## V.    CONCLUSION

For the reasons discussed above, Prolitec respectfully requests that the Court deny ScentAir's motions for summary judgment and to exclude expert testimony.

Dated: November 19, 2024                AKERMAN LLP

OF COUNSEL:                             s/Brian Lemon
                                        Brian Lemon (#4730)
Marc C. Levy                            222 Delaware Avenue, Suite 1710
Syed M. Abedi                           Wilmington, DE 19801
Jessica Gritton                         Tel.: (302) 596-9200
Emily M. Ross                           Brian.Lemon@akerman.com
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400            *Attorneys for Plaintiff/Counter-Defendant*
Seattle, WA 98104                       *Prolitec Inc.*
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

10192280_

36