## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PROLITEC INC., | |
| Plaintiff/Counter-Defendant, | C.A. No. 20-984-WCB |
| v. | |
| SCENTAIR TECHNOLOGIES, LLC., | |
| Defendant/Counter-Plaintiff. | |

## [PROPOSED] FINAL PRETRIAL ORDER

On March 31, 2025, at 2:00 p.m. (Eastern Time), counsel for Plaintiff/Counter-Defendant Prolitec Inc. ("Prolitec") and counsel for Defendant/Counter-Plaintiff ScentAir Technologies, LLC ("ScentAir") will participate in a Pretrial Conference via Zoom video conference before this Court pursuant to Federal Rule of Civil Procedure 16, Local Rule 16.3, Revised Scheduling Order (D.I. 330), Revised Scheduling Order (D.I. 351), and the Pretrial Exchange Scheduling Order (D.I. 402) in this case. The parties hereby submit for the Court's approval this Proposed Final Pretrial Order governing the above-captioned jury trial, which is currently scheduled to commence on April 21, 2025, at 9:00 a.m.

The parties have conducted meet and confers and will continue to engage in good faith efforts to reduce the number of disputes and objections contained herein.

## <u>TABLE OF CONTENTS</u>

**Page**

I.  NATURE OF THE ACTION ..................................................................................1

    A.  Nature of the Action.................................................................................1

    B.  Claim Construction ..................................................................................3

    C.  Pending Motions ......................................................................................3

II.  JURISDICTION ..................................................................................................4

III.  ISSUES OF FACT...............................................................................................4

    A.  Uncontested Facts ....................................................................................4

    B.  Contested Facts ........................................................................................4

IV.  ISSUES OF LAW ...............................................................................................4

V.  EXHIBITS ..........................................................................................................5

    A.  Demonstratives ........................................................................................8

VI.  WITNESSES.......................................................................................................9

    A.  Trial Witnesses ........................................................................................9

    B.  Deposition Designations ........................................................................10

VII.  STATEMENTS OF INTENDED PROOFS ........................................................12

VIII.  AMENDMENTS TO THE PLEADINGS ...........................................................12

IX.  SETTLEMENT..................................................................................................12

X.  HANDLING OF RESTRICTED INFORMATION AT TRIAL ...................................13

XI.  MISCELLANEOUS ..........................................................................................13

## INDEX OF ATTACHED EXHIBITS

**Exhibit 1**    Joint Statement of Uncontested Facts

**Exhibit 2P**    ScentAir's Issues of Facts that Remain to be Litigated

**Exhibit 2D**    Prolitec's Issues of Facts that Remain to be Litigated

**Exhibit 3P**    ScentAir's Issues of Law that Remain to be Litigated

**Exhibit 3D**    Prolitec's Issues of Law that Remain to be Litigated

**Exhibit 4**    Joint List of Trial Exhibits

**Exhibit 5P**    ScentAir's List of Trial Exhibits, with Prolitec's Objections

**Exhibit 5D**    Prolitec's List of Trial Exhibits, with ScentAir's Objections

**Exhibit 6P**    ScentAir's Trial Witness List

**Exhibit 6D**    Prolitec's Trial Witness List

**Exhibit 7P**    ScentAir's List of Deposition Designations, with Prolitec's Counter Designations and Objections

**Exhibit 7D**    Prolitec's List of Deposition Designations, with ScentAir's Counter Designations and Objections

**Exhibit 8P**    ScentAir's Statement of Intended Proofs

**Exhibit 8D**    Prolitec's Statement of Intended Proofs

## I.       NATURE OF THE ACTION

### A.       Nature of the Action

1.       This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, of U.S. Patent No. 10,838,388 (the "'388 patent" or "the ScentAir Asserted Patent").

2.       On July 24, 2020, Plaintiff Prolitec Inc. ("Prolitec") filed a Complaint (D.I. 1) against Defendant ScentAir Technologies, LLC ("ScentAir"), alleging direct infringement of four patents, two of which were subsequently withdrawn by later amendments. D.I. 1. Prolitec sought a judgment against ScentAir for infringement, injunctive relief, pre-judgment and post-judgment interest, attorneys' fees, and costs. Prolitec also demanded a jury trial. *Id*.

3.       ScentAir filed an Answer to Prolitec's Complaint on September 11, 2020, denying all liability and denying that Prolitec was entitled to any of its requested relief. D.I. 11. ScentAir also alleged the following defenses: (1) failure to state a claim; (2) invalidity; (3) non-infringement; (4) prosecution history estoppel; (5) equitable defenses of estoppel, waiver, laches, unclean hands, and/or collateral estoppel; (6) statutory limits on Prolitec's claims for damages and costs; and (7) any other defense that may become available based on discovery or further investigation. *Id*.

4.       Prolitec filed its First Amended Complaint on October 2, 2020, realleging ScentAir's infringement of three patents of the original four asserted. D.I. 19.

5.       ScentAir filed an Answer to Prolitec's First Amended Complaint on October 23, 2020, again denying all liability, denying that Prolitec was entitled to any of its requested relief, and raising the same defenses. D.I. 24. ScentAir also filed counterclaims against Prolitec, requesting declaratory judgment as to the invalidity and non-infringement of Prolitec's Asserted Patents ("ScentAir DJ Counterclaims"), and alleging patent infringement, including willful

infringement, by Prolitec of U.S. Patent No. 9,446,162, U.S. Patent No. 9,460,404, and U.S. Patent No. 9,927,789 ("ScentAir Infringement Counterclaims") (the ScentAir DJ Counterclaims and ScentAir Infringement Counterclaims are referred to, collectively, as the "Counterclaims"). *Id*. In addition to declaratory judgments of invalidity and non-infringement of Prolitec's Asserted Patents and judgment against Prolitec for infringement, ScentAir sought injunctive relief, pre-judgment and post-judgment interest, attorneys' fees, and costs. ScentAir demanded a jury trial on its Counterclaims. *Id*.

6.      Prolitec filed an Answer to ScentAir's Counterclaims on December 1, 2020, and denied infringement of any valid and enforceable claim, denied that ScentAir is entitled to any of the relief it seeks, and denied there exists any basis for injunctive relief or willful infringement. D.I. 32.

7.      ScentAir filed its First Amended Counterclaims on December 22, 2020. D.I. 33. In addition to reasserting its prior Counterclaims, ScentAir added a fourth counterclaim for patent infringement relating to U.S. Patent No. 10,838,388. *Id*.

8.      On September 17, 2021, the Court entered an order staying the case pending *inter partes* review of the Asserted Patents by the USPTO Patent Trial and Appeal Board ("PTAB"). D.I. 56. The Court lifted the stay on July 25, 2022. D.I. 70.

9.      In light of Prolitec's Motion for Judgment on the Pleadings regarding ScentAir's Counterclaims (D.I. 104, 105), and the risk of jury confusion from trying Prolitec's claims and ScentAir's counterclaims together, the Court severed ScentAir's Infringement Counterclaims from Prolitec's case on December 16, 2022. D.I. 117.

10.      ScentAir filed its Second Amended Counterclaims on June 29, 2023, by stipulation. D.I. 177, 179. ScentAir's Second Amended Counterclaims withdrew ScentAir's claims regarding

the '162 Patent, '404 Patent, and the '789 Patent and is now the operative complaint in ScentAir's portion of the case.

11.    Prolitec filed a petition for *ex parte* reexamination by the USPTO of the '388 Patent and moved to stay the ScentAir Infringement Counterclaims. *See* D.I. 186, 187.

12.    On August 8, 2023, the Court entered an order staying the ScentAir Infringement Counterclaims pending *ex parte* reexamination by the USPTO of the '388 Patent. D.I. 212. The Court lifted the stay on May 8, 2024. D.I. 330.

13.    Accordingly, the following addresses only the portion of the case relevant to ScentAir's claims of patent infringement on the '388 Patent.

**B.    Claim Construction**

14.    The Court issued four orders regarding disputed terms of the '388 Patent and other patents previously asserted by ScentAir and Prolitec. D.I. 119, 121, 124, 349. The constructions relevant to the '388 Patent are as follows:

| Claim Term | Construction |
| --- | --- |
| "generating command data that is configured to control the operation of a networked scent delivery device" | "generating, by the central controller, command data that is configured to control the operation of a networked scent delivery device, including turning the device on and off" |
| "out table" | *Needs no construction* |
| "master [scenting] schedule" | "list of scheduled events" |

**C.    Pending Motions**

15.    The parties' Motions *in Limine* will be filed concurrently with this proposed Final Pretrial Order.

16.    Prolitec further seeks to move *in limine* to exclude Mr. Dezmelyk's new opinions, as addressed in the parties' January 17, 2025 letter briefing (D.I. 397, 398), because that was not

resolved in the Court's March 13, 2025 order. ScentAir's position on this "motion" is that Prolitec

has forfeited the motion by failing to file a motion *in limine* by the necessary deadline, in addition

to the other substantive and procedural issues on Prolitec's "motion" as noted in D.I. 397.

## II.    JURISDICTION

17.    This is an action for patent infringement, and this Court has subject matter

jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

18.    Prolitec is subject to personal jurisdiction in this Court, which is not disputed.

19.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C.

§ 1400(b).

## III.    ISSUES OF FACT

### A.    Uncontested Facts

20.    Per agreement of the parties, the facts listed in Exhibit 1 hereto are not contested

for purposes of trial. These uncontested facts shall require no proof at trial and will become part

of the evidentiary record at trial. Any party may introduce any of the uncontested facts to the jury

at any time without prior notice.

### B.    Contested Facts

21.    ScentAir's statement of the issues of fact that remain to be litigated is attached as

Exhibit 2P.

22.    Prolitec's statement of the issues of fact that remain to be litigated is attached as

Exhibit 2D.

## IV.    ISSUES OF LAW

23.    ScentAir's statement of the issues of law that remain to be litigated is attached as

Exhibit 3P.

24.    Prolitec's statement of the issues of law that remain to be litigated is attached as Exhibit 3D.

## V.    EXHIBITS

25.    A joint list of exhibits that the parties intend to offer at trial is attached as Exhibit 4.

26.    ScentAir's list of exhibits that it intends to offer at trial, including Prolitec's objections, is attached as Exhibit 5P.

27.    Prolitec's list of exhibits that it intends to offer at trial, including ScentAir's objections, is attached as Exhibit 5D.

28.    The exhibit prefixes for identification, including for physical exhibits, will be: "JX" for exhibits on the Joint Exhibit List; "PX" for exhibits on ScentAir's Exhibit List; and "DX" for exhibits on Prolitec's Exhibit List.

29.    Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit should the opposing party attempt to offer it into evidence. Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

30.    This Pretrial Order contains the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits, neither of which shall be supplemented after the date of the Pretrial Conference without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted into evidence unless good cause is shown.

31.    Each exhibit list contains all of the exhibits that a party intends to present at trial other than exhibits used solely for impeachment and demonstratives discussed below. With the aforementioned exceptions, exhibits not listed on a party's exhibit list or on the opposing party's

exhibit list will not be admitted into evidence without approval of all parties or leave of the Court, on good cause shown.

32.     Exhibits to be used solely for impeachment need not be disclosed in advance of being used at trial.

33.     The parties agree to provide witness binders for each fact and expert witness for both direct examination and cross-examination.

34.     Except as provided below with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been qualified for admission into evidence.

35.     Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party producing such document in the ordinary course of business and within the scope of such person's responsibilities, shall be deemed a true and correct copy of the business record or other form of document maintained in that party's files as of the date of the party's document collection under Federal Rules of Evidence 803(6) and/or 901. For avoidance of doubt, this provision is does not constitute an admission or concession that any such document is a business record within the meaning of Federal Rule of Evidence 803(6).

36.     Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered, but only if such context is not reasonably foreseeable. All other objections to the admissibility of evidence shall be raised beforehand, pursuant to the provisions of this order and the Court's Pretrial Exchange Scheduling Order (D.I. 402).

37.     The parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

38.     The parties agree that if any party removes or otherwise withdraws an exhibit from its Exhibit List after the date of the Pretrial Conference, another party may amend its Exhibit List to include that same exhibit. The parties also agree that the parties may object to such exhibit(s), other than on the basis of untimely listing.

39.     Pursuant to the Court's Pretrial Exchange Scheduling Order (D.I. 402), the parties anticipate that all exhibit objections will have been resolved before trial. A party will identify exhibits to be used in connection with direct examination by 6:00 p.m. one (1) day before their intended use. If there are any outstanding objections to any such disclosed exhibit, those objections will be provided no later than 7:30 p.m. the night before their intended use, and the parties will meet and confer no later than 8:00 p.m. the same night to resolve the objections. If good faith efforts to resolve the objections fail, the objecting party shall raise such objection with the Court no later than 9:00 p.m. the same night.

40.     Failure to comply with these procedures, absent an agreement by the parties or approval by the Court, will result in waiver of the use of an exhibit (if the propounding party fails to provide the exhibit as called for above) or waiver of objection to the exhibit (if the objecting party fails to object to the exhibit as called for above or fails to bring its objection to the Court's attention prior to the witness being called).

41.     The parties will exchange final digital copies of their exhibits, with exhibit numbers, on March 21, 2025. The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the

electronic document (i.e., JX001.001). The exhibit prefixes for identification, including for physical exhibits, shall be: "JX" for exhibits on the Joint Exhibit List; "PX" for exhibits on ScentAir's Exhibit List, and "DX" for exhibits on Prolitec's Exhibit List. Digital copies of native files, including but not limited to PowerPoint and Excel documents, shall be provided in their native form with a slipsheet endorsed with the exhibit number and the phrase, "Native Exhibit."

42.    The parties will make their physical exhibits available for inspection prior to the first day of trial upon request by the other party. All physical exhibits must be present in the courtroom during all proceedings and may not be displayed to the jury until they are admitted into evidence. However, the parties agree that the physical exhibits may be removed from the courtroom when court is not in session for safekeeping.

43.    On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO 187 Exhibit and Witness List for each party.

### A.    Demonstratives

44.    The parties will exchange demonstratives for intended use in opening statements by 11:00 a.m. one (1) calendar day before opening statements. The parties will provide any objections to such demonstrative by 3:00 p.m. one (1) calendar day before opening statements, and the parties will meet and confer by 5:00 p.m. the same day. If good faith efforts to resolve the objections fail, the party objecting to the demonstrative shall bring its objections to the Court's attention no later than 6:00 p.m. the same day.

45.    A party will provide demonstrative exhibits to be used in connection with direct examination no later than 6:00 p.m. the calendar day before their intended use, and objections will be provided no later than 7:30 p.m. the night before their intended use, and the parties will meet and confer no later than 8:00 p.m. the same night to resolve the objections. If good faith efforts to

resolve the objections fail, the objecting party shall raise such objection with the Court no later than 9:00 p.m. the same night.

46.    Failure to comply with these procedures, absent an agreement by the parties or approval by the Court, will result in waiver of the use of a demonstrative (if the propounding party fails to provide the demonstrative as called for above) or waiver of objection to the demonstrative (if the objecting party fails to object to the demonstrative as called for above or fails to bring its objection to the Court's attention prior to the witness being called).

47.    The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF format. However, for demonstratives including video or animations (such as PowerPoint slide decks), the party seeking to use the demonstrative will provide it to the other side electronically via a native file. For irregularly sized physical demonstratives, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5" x 11" copies of the exhibits.

48.    This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use. In addition, demonstratives that consist entirely of blow-ups or highlights of admitted exhibits or parts of admitted exhibits or testimony that are properly allowed to be shown to the jury, are not required to be provided to the other side in advance of their use.

## VI.    WITNESSES

### A.    Trial Witnesses

49.    In Exhibit 6P, ScentAir identifies the witnesses it intends to call to testify in person at trial.

50.    In Exhibit 6D, Prolitec identifies the witnesses it intends to call to testify in person at trial.

### B.    Deposition Designations

51.    In Exhibit 7P, ScentAir identifies a list of all depositions, or portions thereof, to be read or played into evidence and Prolitec's counter-designations and objections thereto.

52.    In Exhibit 7D, Prolitec identifies a list of all depositions, or portions thereof, to be read or played into evidence and ScentAir's counter-designations and objections thereto.

53.    This pretrial order contains the parties' good faith efforts to provide deposition designations, counter-designations, and counter-counter-designations. The parties may not add new deposition designations or counter-designations, or provide new objections to the listed designations or counter-designations, except for good cause shown or by agreement of the parties. Each party reserves the right to provide deposition designations for witnesses on their Trial Witness Lists to the extent that the witness should become unavailable to testify at trial. The parties are expected to continue to engage in good faith efforts to reduce the number of deposition designations and counter-designations and objections thereto included in this pretrial order.

54.    Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

55.    For any witness whose testimony the parties intend to present at trial by deposition, the parties shall identify a list of deposition designations to be played to the jury, the order in which the witness(es) will be played, and the proposed exhibits used in the designations by 6:00 p.m. two (2) calendar days before the designations are to be played to the jury. The other side must identify any objections and counter-designations to the designated testimony (which must have been included in the deposition designations submitted herewith), objections to the exhibits, and the proposed exhibits used in the counter-designations by 6:00 p.m. one (1) calendar day before the designations are to be played to the jury, and the parties will meet and confer no later than 8:00 p.m. the same night to resolve the objections. If good faith efforts to resolve the objections fail,

the objecting party shall raise such objection with the Court no later than 9:00 p.m. the same night. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in a waiver of the use of deposition testimony or waiver of objection to the use of the deposition testimony.

56.     When a witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with one (1) copy of the transcript of the designations, counter-designations, and counter-counter designations that will be played. The party calling the witness will also provide the other side a breakdown of time for designations and counters to be charged to each side, and once confirmed, will provide that breakdown to the Court staff.

57.     The designations, counter-designations, and counter-counter-designations will be read or played by video in chronological order at the same time. Consistent with the prior paragraphs, the parties will be charged for time according to the following proportions: each side shall be charged only with the time needed to play its own designations, counter-designations, or counter-counter-designations, and will not be charged with the time necessary to play the other side's designations, counter-designations, or counter-counter-designations.

58.     Discussion between counsel, requests to have the court reporter read back a question, and objections will be eliminated when a deposition excerpt is played at trial.

59.     The party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness. A copy of the video deposition clips shall be provided to the opposing party no later than 8:30 p.m. the day before the deposition testimony is expected to be played, or state in writing that the deposition will be read into the record.

60.     For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name, position or title,

and/or the company with which he or she is associated, the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the parties. The parties shall advise each other of the intended language to be used to a forthcoming transition statement; any objections shall be raised with the Court at sidebar. The parties' calculation of the time to be charged to each party for witnesses testifying by deposition will be provided to the court's law clerk in advance of the playing of each witness's testimony. The court's law clerk will keep the official record of the time used by each party throughout the trial.

61.    Time will be charged against a party for (1) opening statements and closing arguments by that party; (2) time spent by that party examining that party's witnesses; and (3) time spent on objections raised by that party.

62.    The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness. Any sworn testimony of a witness may be used at trial for the purpose of impeachment of that witness, regardless of whether a party identified that testimony on its list of deposition designations. The parties agree that they may object to the use of deposition and other prior testimony for impeachment purposes, including, but not limited to, objections based on lack of completeness and/or lack of inconsistency.

## VII.    STATEMENTS OF INTENDED PROOFS

63.    ScentAir's brief statement of intended proofs is attached as Exhibit 8P. ScentAir intends to seek relief as outlined in Exhibit 8P.

64.    Prolitec's brief statement of intended proofs is attached as Exhibit 8D.

## VIII.    AMENDMENTS TO THE PLEADINGS

65.    The parties do not seek to amend the pleadings at present.

## IX.    SETTLEMENT

66.     The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement.

## X.    HANDLING OF RESTRICTED INFORMATION AT TRIAL

67.     Persons entitled to have access to CONFIDENTIAL or RESTRICTED – ATTORNEYS' EYES ONLY information under the Protective Order (D.I. 94) shall not be excluded from the courtroom and shall have the right to review any information presented by either party at trial, including, but not limited to, exhibits and trial transcripts.

68.     With the exception of a single corporate representative for each party, persons not entitled to have access to RESTRICTED – ATTORNEYS' EYES ONLY information shall be excluded from the courtroom, at the request of any party and subject to the Court's approval, during the presentation of any evidence designated RESTRICTED – ATTORNEYS' EYES ONLY, or any testimony that is reasonably anticipated to solicit such information.

## XI.    MISCELLANEOUS

69.     ScentAir requests that the Court refer to ScentAir as the "Plaintiff" and Prolitec as the "Defendant" to the jury and in the papers given to them, including in the case caption in the Jury Instructions and Verdict Form, given that "Defendant/Counter-Plaintiff" and "Plaintiff/Counter-Defendant" have the potential to lead to jury confusion.

70.     ScentAir requests that the Court address, pre-trial, a dispute that has arisen between the parties during pretrial proceedings regarding the scope of Prolitec's on-sale bar defense to be presented to the jury. Dr. Plock's Reply Report at ¶ 69 is the only disclosure of an obviousness theory under the on-sale bar, but it is premised on (and thus limited to) "Mr. Dezmelyk contend[ing] that simply because the controller with the relay and network module are separately connected to the scent delivery devices they would fall outside the scope of the claims." That, however, is not Mr. Dezmelyk's contention. Mr. Dezmelyk instead contends that the Barclays

13

Center documents do not show that the invention is ready for patenting because, among other reasons, the networked relay control board does not extend networking functionality to the scent delivery device, making that scent delivery device *not* the required "networked scent delivery device." Moreover, the framing of Dr. Plock's obviousness opinion is as a rebuttal to Mr. Dezmelyk, not an affirmative basis for invalidity. Therefore, because Mr. Dezmelyk does not and will not contend at trial "that simply because the controller with the relay and network module are separately connected to the scent delivery devices they would fall outside the scope of the claims," there should be no such obviousness presentation from Dr. Plock at trial in Prolitec's case in chief or in rebuttal.

71.    Prolitec disagrees with ScentAir's characterization of Mr. Dezmelyk's opinions as stated in paragraph 70. First, Mr. Dezmelyk's opinion for why the Barclays Center system, as described in the design documents, is not networked is because the switch/relay and network card are external to the scent delivery device. Mr. Dezmelyk isolates the relay/network card from the system by opining that the only the relay is networked.  According to the Dr. Plock, if the relay is isolated in this manner, it would be obvious to make it internal to the system. Second, the Barclays Center system is directed to the dumb device embodiment of the '388 patent. The dumb device only turns on and off, which uses a switch. This switch could be external or internal. If it is external, it would be obvious to install it internally. As long as ScentAir continues to argue that the scent delivery device in this system is not networked, Prolitec's expert can testify concerning his obviousness opinions.

72.    ScentAir requests that the Court address, pre-trial, another dispute regarding the scope of Prolitec's permitted invalidity theories that is likely to arise and require an extensive sidebar at trial. The Court's summary judgment opinion, D.I. 408 at 37, limits Prolitec to "the 24

combinations it has identified in its opposition briefing" (those at D.I. 387 at 20-21, nn. 10-11). Given that ScentAir has challenged Prolitec's and Dr. Plock's support and reasoning behind those 24 combinations as wholly insufficient, ScentAir expects that Prolitec will significantly supplement Dr. Plock's support and reasoning at trial. For example, Dr. Plock's obviousness theories based on Hamada use secondary references only to meet the "receiving a signal …" element of the '388 Patent claims (*e.g.*, Plock Opening Report at ¶¶ 265-281). And he gives scant reasoning for each such combination. While Dr. Plock and Prolitec may reasonably expand on the reasoning disclosed in the reports, they cannot provide wholly new reasons to combine or wholly new elements to be met by the secondary references. In short, ScentAir seeks the Court's confirmation that Dr. Plock and Prolitec are not permitted to argue that the secondary references provide any other claim elements nor that the combination is supported by other reasoning outside of what is disclosed in Dr. Plock's reports. This request is separate from Prolitec's "motion" *in limine* on Mr. Dezmelyk referred to in Paragraph 16 above but, to the extent the Court grants Prolitec's "motion," that is all the more reason to prevent Prolitec and Dr. Plock from going outside the strictly defined combinations, combined elements, and reasoning in Dr. Plock's reports.

73.     Prolitec's response to paragraph 72: Prolitec and its expert Dr. Plock will provide opinions consistent with opinions provided in Dr. Plock's reports.

74.     Subject to the Court's approval, the parties agree that the current version of the Federal Judicial Center Introduction to the Patent System video (2013 revision) should be played as part of the Court's preliminary jury instructions.

75.     Subject to the Court's approval, the parties agree that each juror shall be provided with a notepad, pen, and copies of the Asserted Patents. ScentAir will provide these materials.

76.    Subject to the Court's approval, the parties agree that they will provide lunch to the jurors and will coordinate with Court personnel regarding lunches. Cost will be split between the parties. Lunches will not be marked in any way with either party's or law firm's names or logos.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated: March 25, 2025

Of Counsel:

Vincent J. Galluzzo
K&L GATES LLP
300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Phone: (704) 331-7400

Devon C. Beane
Nathan J. Fuller
Jared R. Lund
K&L GATES LLP
70 West Madison Street, Suite 3300
Chicago, IL 60602
Phone: (312) 807-4313
Phone: (312) 372-1121

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
megan.oconnor@klgates.com

*Counsel for Counterclaim-Plaintiff,*
*ScentAir Technologies, LLC*

Of Counsel:

Marc C. Levy
Syed M. Abedi
Jessica S. Gritton
Emily M. Ross
SEED IP LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: (206) 622-4900
MarcL@seedip.com
SyedA@seedip.com
Jessica.Gritton@seedip.com
Emily.Ross@seedip.com

**AKERMAN LLP**

*/s/ Brian R. Lemon*
Brian R. Lemon (#4730)
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801
Tel.: (302) 596-9200
Brian.Lemon@akerman.com

*Counsel for Plaintiff/Counterclaim-*
*Defendant, Prolitec Inc.*

SO ORDERED this _____ day of March, 2025

_____
THE HONORABLE WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE