## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PROLITEC INC., | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant*, | § | |
| | § | |
| v. | § | Civil Action No. 20-984-WCB |
| | § | |
| SCENTAIR TECHNOLOGIES, LLC, | § | |
| | § | |
| *Defendant/Counterclaim Plaintiff*. | § | |
| | § | |

### ORDER REGARDING DEPOSITION DESIGNATIONS AND EXHIBITS

For reasons discussed at the pretrial conference, the court makes the following pretrial rulings.

The objections to Mr. Ansley's testimony at 60:2–61:7 and 129:8–15 will be sustained. ScentAir has withdrawn its designation of his testimony at 93:8–17, so that testimony will be excluded. ScentAir has withdrawn its objection to his testimony at 113:14 and 129:6–7, so that testimony will be admitted.

The objections to Mr. Chandler's testimony at 100:10–13, 100:16–105:14, 107:20–23, 107:25–110:20, 110:22–24, 111:02–04, 151:07–153:05, 153:13–25, 155:25–157:19, 171:04–22, 173:22–175:18, 176:07–177:14, 181:13–18, 181:20–22, 206:09–13, 206:16–20, 206:23–207:19, 207:20–208:9, and 208:22–209:10 will be overruled.

The objections to Mr. Weening's testimony at 101:14–102:12 will be sustained.

The objections to Mr. Morton's testimony at 29:9–25, 34:16–35:09, 35:7–11, 35:11–23, 36:24–37:03, 37:05–10, 37:12–20, 37:22–38:02, 37:25–38:5, 38:04–05, 60:21–61:03, 61:09–25, 62:10–13, 63:01–10, 63:12–64:10, 65:01–66:19, 67:16–68:25, and 60:24–68:25 will be overruled.

The objections to Mr. Sward's testimony at 33:20–23, 99:13–20, 100:4–12, 103:23–105:4, 105:9–21, 106:2–10, 110:7–17, 110:22–111:21, 112:12–113:6, 113:12–23, and 114:2–11 will be sustained.

The objections to Mr. Andres' testimony at 213:21–25 will be sustained.

PX16, PX17, PX18, PX19, PX20, PX21, PX22, and PX28 will be excluded under Federal Rules of Evidence 402 and 403. DX43 and DX44 will be admitted. Prolitec has agreed to withdraw its objections to redacted versions of PX62, PX63, PX64, PX65, PX67, and PX69, so the redacted versions of those exhibits will be admitted. ScentAir has withdrawn PX66, PX68, PX85, PX86, PX87, and PX88, so those exhibits will be excluded.

Certain issues were not resolved at the pretrial conference. For the reasons set forth below, the court makes the following rulings.

ScentAir has objected to certain deposition testimony designated by Prolitec as improper expert testimony. The parties submitted supplemental briefing on that issue.

First, ScentAir has objected to testimony from Mr. Chandler, who is one of the inventors on the asserted patent. Mr. Chandler offered testimony regarding whether certain products or systems practice the asserted patent, and testimony interpreting certain portions of the specification of the asserted patent. That testimony is found at 150:17–19, 150:21–25, 166:21–23, 169:6–170:16, 170:23–171:02, 170:23–171:11, 171:04–11, 177:12–14, 177:16–178:17, 178:19–179:09, 181:17–18, and 181:20–22.

ScentAir contends that the designated testimony is inadmissible because Mr. Chandler has not been qualified as an expert. ScentAir cites *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008), for the proposition that a lay witness cannot testify to issues of infringement or invalidity. Prolitec responds that Mr. Chandler, as the inventor, has the knowledge

and experience to testify about the patent. Prolitec cites *Voice Technologies. Group, Inc. v. VMC System, Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999), for that proposition.

In *Sundance*, the Federal Circuit held that "a witness not qualified [as an expert] in the pertinent art may not testify as an expert as to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art reference discloses, or whether the asserted claims read on the prior art reference." 550 F.3d at 1364. In *Voice Technologies*, the Federal Circuit held that "an inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims . . . [and to] provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems." 164 F.3d at 615.

Based on that case law, Mr. Chandler can testify about his invention and what he was intending to patent, but he will not be allowed to offer testimony interpreting the patent or comparing the patent to prior art references or accused products. *See Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339–40 (Fed. Cir. 2010) (holding that "the district court properly allowed testimony from the witnesses about the patents they invented based on their personal knowledge, and properly excluded these same witnesses from providing expert testimony on invalidity for which they had not previously provided expert reports or been qualified as an expert").

The first portion of Mr. Chandler's testimony to which ScentAir objects under Rule 702 is testimony regarding the patenting of the Barclays Center system. That testimony is background information regarding Mr. Chandler's invention and what he thought he patented. As such, it is permissible under *Voice Technologies*. Therefore, the objections to Mr. Chandler's testimony at 150:17–19 and 150:21–25 will be overruled. The next objected-to portion of Mr. Chandler's

3

testimony relates to his assertion that the ScentAir products use the patented technology. That testimony does not get into specific claim language and is directed more broadly to the topic of what Mr. Chandler thought he invented and patented. Therefore, that testimony is also permissible under *Voice Technologies*, so the objections to 166:21–23, 169:6–170:16, 170:23–171:02, 170:23–171:11, and 171:04–11 will be overruled. The final objected-to portion of Mr. Chandler's testimony is his response after being shown the specification for the asserted patent and being asked to interpret certain passages of that specification. That line of questioning did not simply ask the inventor to explain "what he intended to be conveyed by the specification and covered by the claims," *Voice Technologies*, 164 F.3d at 615, but asked him to testify as to the meaning of particular language used in the patent. Testimony from an inventor who is not qualified as an expert but purports to interpret language found in the patent can lead to jury confusion if the inventor's interpretations differ from those given by the court as part of the court's construction of the patent. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) ("it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO"), *aff'd*, 517 U.S. 370 (1996). Therefore, the objections to Mr. Chandler's testimony at 177:12–14, 177:16–178:17, 178:19–179:09, 181:17–18, and 181:20–22 will be sustained.

Next, the parties dispute whether certain deposition testimony from Mr. Andres should be allowed. Mr. Andres was first asked, "The Aera product was on the market prior to the launch of ScentConnect, is that correct?" He responded, "I believe so, yes." Mr. Andres was then asked, "So it wouldn't be possible for the Aera to have copied ScentConnect, is that true?" He answered, "I – I don't know that." Counsel then asked a follow-up question: "I mean, if the Aera was on the

market before the ScentConnect was launched, would it have been possible for the Aera to copy the ScentConnect?" to which Mr. Andres responded, "I don't know."

ScentAir initially objected to that line of questioning on the ground that it was improperly seeking to elicit expert testimony from a lay witness and that it is irrelevant and prejudicial. ScentAir has now dropped its objection under the Federal Rules of Evidence governing the admissibility of expert testimony, but continues to object to the evidence on relevance grounds.

Focusing on counsel's two questions about copying, ScentAir objects to the entire line of questioning on the ground that copying is not an issue in this case. Assuming that is true, ScentAir is right that the questions about copying are irrelevant. Beyond that, Mr. Andres testified that he does not know whether, in light of the release of Aera product prior to the launch of ScentConnect it would or would not have been possible for Aera to copy ScentConnect. Counsel's questions about copying are not evidence, and in any event Mr. Andres expressed lack of knowledge as to whether the sequence of the release of the two products would suggest copying. The questions and answers about copying are therefore irrelevant and potentially confusing to the jury. The objections to Mr. Andres' testimony at 206:21–23, 207:01–07 and 207:10 will be sustained.

The first question asked of Mr. Andres—whether Prolitec's Aera product was on the market prior to the launch of ScentAir's ScentConnect product—is not objectionable. Standing alone, his answer that "I believe so, yes" does not bear on the issue of copying, and it may be relevant to other issues, such as willfulness, or simply to inform the jury of the sequence of relevant events. Therefore, the objections to Mr. Andres' testimony at 206:17–20 will be overruled.

Finally, the parties dispute whether certain evidence relating to a software called Patent Snap or "PatSnap" is admissible. PatSnap reviews certain patent databases for filings of new documents and then sends alerts regarding those new filings to subscribers. The parties have

stipulated that Prolitec received notice of the asserted patent no later than November 23, 2020, via an email alert from PatSnap.  Dkt. No. 418 at 1.  Prolitec does not object to the admission of the email from PatSnap alerting it to the issuance of the asserted patent, but Prolitec does object to the admission of other emails from PatSnap regarding filings for non-asserted patents and other patent applications on relevance grounds.  Prolitec also objects to certain testimony from Mr. Ansley regarding PatSnap on relevance grounds.

The only issue to which the PatSnap emails are relevant is willfulness, and specifically Prolitec's knowledge of the asserted patent.  Because Prolitec has stipulated to the date on which it received notice of the asserted patent and does not object to the PatSnap email regarding the asserted patent, the remaining emails regarding other patents and related applications are of marginal relevance, and their introduction would risk confusing the jury and prejudicing Prolitec. At the pretrial conference, ScentAir asked that it be permitted to use two of the PatSnap emails that address the publication of the application that eventually issued as the asserted patent.  Because the willfulness inquiry asks whether the alleged infringer had knowledge of the patent, notice of the patent application is insufficient to establish willful infringement.  More importantly, notice of the application is rendered largely irrelevant given that Prolitec has stipulated to the date on which it had notice of the patent.  Accordingly, PX23 and PX24 will be excluded.

In Mr. Ansley's objected-to testimony, he explained what the PatSnap software does.  He also testified that Prolitec subscribes to it, and he provided some explanation for why Prolitec does so.  Because Prolitec has not objected to admission of the PatSnap email regarding the asserted patent, Mr. Ansley's testimony is relevant to provide context for that PatSnap email for the jury. Moreover, nothing in his testimony is so prejudicial as to outweigh the probative value of that

testimony.   Therefore, the objections to 73:21–74:9, 74:15–23, 89:15–90:7, 91:5–21, 92:14–24, and 92:25–93:7 are overruled.

IT IS SO ORDERED.

SIGNED this 9th day of April, 2025.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE